# Exhibit 7

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
LAURENS COUNTY, GEORGIA

**2017-CG-0061-JG**
**JG - JUD L. GREEN**
**MAR 30, 2017 10:45 AM**

*Jackie H. Dalton*
Jackie H. Dalton, Clerk
Laurens County, Georgia

## IN THE SUPERIOR COURT OF LAURENS COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **LIZZIE DAVIS, PAMELA DAVIS,** | ) | |
| **DENNIS GREEN, JOHNNY MOODY,** | ) | |
| **JOHN SUBER,** and **SHIRLEY WILLIAMS,** | ) | |
| Individually and on Behalf of all Others | ) | |
| Similarly Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. **2017-CG-0061-JG** |
| | ) | |
| **OASIS LEGAL FINANCE OPERATING** | ) | |
| **COMPANY, LLC; OASIS LEGAL** | ) | |
| **FINANCE, LLC; OASIS LEGAL FINANCE** | ) | |
| **HOLDING COMPANY, LLC** and | ) | |
| **THL CREDIT, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

---

### FIRST AMENDED AND RECAST CLASS ACTION COMPLAINT

**COME NOW,** Lizzie Davis, Pamela Davis, Dennis Green, Johnny Moody, John Suber, and Shirley Williams, individually and on behalf of all others similarly situated, and hereby file this their Class Action Complaint against Defendants Oasis Legal Finance Operating Company, LLC; Oasis Legal Finance, LLC; Oasis Legal Finance Holding Company, LLC and THL Credit, Inc. showing this Honorable Court as follows:

### I.     PARTES, JURISDICTION & VENUE

1.     Plaintiffs Lizzie Davis, Pamela Davis are citizens and residents of Laurens County, Georgia.

2.     Plaintiff Dennis Green is a citizen and resident of Chatham County, Georgia.

3.     Plaintiff Johnny Moody is a citizen and resident of Jeff Davis County, Georgia.

4.     Plaintiff John Suber is a citizen and resident of Lowndes County, Georgia.

5.     Plaintiff Shirley Williams is a citizen and resident of Chatham County, Georgia.

6.     Plaintiffs bring this Class Action Complaint individually and on behalf of a putative class of Georgia residents.

7.     Defendant Oasis Legal Finance Operating Company, LLC is foreign limited liability company registered to conduct business in the State of Georgia. Oasis Legal Finance Operating Company, LLC may be served with process through its registered agent, National Registered Agents, Inc., located at 3675 Crestwood Parkway, Suite 350, Gwinnett County, Duluth, Georgia 30096.

8.     Defendant Oasis Legal Finance, LLC is a Delaware limited liability company not registered to conduct business in the State of Georgia. Oasis Legal Finance, LLC can be served with process through Colin Lawler, its Chief Operating Officer, and Kevin Connor, its General Counsel, located at 9525 Bryn Mawr Ave, Suite 900, Rosemont, IL 60018.

9.     Defendant Oasis Legal Finance Holding Company, LLC is a Delaware limited liability company not registered to conduct business in the State of Georgia. Oasis Legal Finance Holding Company, LLC may be served with process through its Delaware registered agent, National Registered Agents, Inc., located at 160 Greentree Drive, Suite 101, Dover, Kent County, Delaware 19904.

10.     Defendant THL Credit, Inc. is a Delaware corporation not registered to conduct business in the State of Georgia. THL Credit, Inc. may be served with process through its co-CEO and Director, Sam Tillinghast, located at 100 Federal Street, 31st Floor, Boston, MA 02110 and Sabrinia Rusnak-Carlson, located at 100 Federal Street, 31st Floor, Boston, MA 02110.

11.     Defendants have regularly transacted business in this state.

12.     Defendants have committed, or aided and abetted the commission of, tortious acts in this state.

13.     Defendants have established minimum contacts with this state such that the maintenance of this action does not offend traditional notions of fair play and substantial justice.

14.     Defendants have purposefully availed themselves of the privilege of conducting activities within this state, thus invoking the benefits and protections of its laws.

15.     A substantial part of the tortious acts, omissions, and/or injuries caused by Defendants have occurred within the confines of the State of Georgia, including Laurens County.

16.     Jurisdiction and venue are proper in this Honorable Court.

## II.     FACTUAL ALEGATIONS

17.     At all times relevant to this First Amended and Recast Complaint, Defendants Oasis Legal Finance Operating Company, LLC; Oasis Legal Finance, LLC; Oasis Legal Finance Holding Company, LLC (hereafter collectively "Oasis Financial") have been engaged in the business of providing loans, often in amounts of $3,000 or less, to personal injury plaintiffs in the State of Georgia.[1]

### A.     *Plaintiff Lizzie Davis*

18.     Plaintiff Lizzie Davis was injured in an automobile collision in 2015. As a result of this collision, Lizzie Davis retained an attorney and commenced a personal injury lawsuit.

19.     As a result of the injuries she sustained from the collision, Plaintiff encountered difficulties paying her debts and began communications with Oasis Financial.

---

[1] According to documents filed with the Georgia Secretary of State's office, Oasis Legal Finance Holding Company, LLC is the manager of Oasis Legal Finance Operating Company, LLC. See Exhibit **"A"**.

20.     On or around October 30, 2015, Plaintiff Lizzie Davis signed a "Purchase Agreement" with Oasis.  Copies of the documentation related to this loan, including the Purchase Agreement, are attached hereto as Exhibit **"B"**.

21.     Pursuant to the Purchase Agreement, Oasis Financial provided a loan to Plaintiff Lizzie Davis in the principal amount of $1,670.00.

22.     Although not stated in the documents provided to Plaintiff Lizzie Davis and not otherwise communicated to her, the Annual Percentage Rate ("APR") for the amount loaned to her by Oasis Financial was in excess of 100%.

### B.     *Plaintiff Pamela Davis*

23.     Plaintiff Pamela Davis was injured in a slip-and-fall incident in 2012.  As a result of this incident, Pamela Davis retained an attorney and commenced a personal injury lawsuit.

24.     Due to the injuries she suffered as a result of the slip-and-fall, Plaintiff Pamela Davis encountered difficulties paying her debts and began communications with Oasis Financial.

25.     On or around October 26, 2015 and November 24, 2015, Plaintiff Pamela Davis signed "Purchase Agreements" with Oasis Financial.  Copies of the documentation related to these loans, including the Purchase Agreements, are attached hereto as Exhibit *"C"*.

26.     Pursuant to the Purchase Agreements, Oasis Financial made loans to Plaintiff Pamela Davis in the amounts of $1,140.00 and 620.00, respectively.

27.     Although not stated in the documents provided to Plaintiff Pamela Davis and not otherwise communicated to her, the Annual Percentage Rate ("APR") for the amounts loaned to her by Oasis Financial was in excess of 100%.

### C.     *Plaintiff Dennis Green*

28.     Plaintiff Dennis Green was injured as a result of a work-related incident in 2012.

As a result of this incident, Dennis Green retained an attorney.

29.     Due to the injuries he suffered as a result of the work-related incident, Plaintiff Dennis Green encountered difficulties paying his debts and began communications with Oasis Financial.

30.     On May 9, 2014, Dennis Green signed a "Purchase Agreement" with Oasis Financial. Copies of the documentation related to this loan, including the Purchase Agreement, are attached hereto as *"D"*.

31.     Pursuant to the Purchase Agreement, Oasis Financial provided a loan to Plaintiff Dennis Green in the principal amount of $1,140.00.

32.     Although not stated in the documents provided to Plaintiff Dennis Green and not otherwise communicated to him, the APR for the amount loaned to him by Oasis Financial was in excess of 100%.

### D.      *Plaintiff Johnny Moody*

33.     Plaintiff Johnny Moody was injured as a result of a work-related incident in 2015. As a result of this incident, Johnny Moody retained an attorney.

34.     As a result of the injuries he sustained from the work-related incident, Plaintiff Johnny Moody encountered difficulties paying his debts and began communications with Oasis Financial.

35.     On or around September 24, 2015, Plaintiff Johnny Moody signed a "Purchase Agreement" with Oasis Financial. Copies of the documentation related to this loan, including the Purchase Agreement, are attached hereto as Exhibit **"E"**.

36.     Pursuant to the Purchase Agreement, Oasis Financial provided a loan to Plaintiff Johnny Moody in the principal amount of $1,140.00.

37.     Although not stated in the documents provided to Plaintiff Johnny Moody and not otherwise communicated to him, the APR for the amount loaned to him by Oasis Financial was in excess of 100%.

### E.     Plaintiff John Suber

38.     Plaintiff John Suber was injured in multiple incidents at his place of employment beginning in 2012.  As a result of these incidents, John Suber retained an attorney.

39.     Due to the multiple injuries he suffered, Plaintiff John Suber encountered difficulties paying his debts and began communications with Oasis Financial.

40.     On or around March 3, 2012, April 17, 2012, May 24, 2012, September 10, 2013, October 2, 2013, and October 5, 2016, Plaintiff John Suber signed "Purchase Agreements" with Defendant Oasis.  Copies of the documentation related to these loans, including the Purchase Agreements, are attached hereto as *"F"*.

41.     Pursuant to the Purchase Agreements, Oasis Financial provided loans to Plaintiff John Suber in the principal amounts of $2,000.00, $2,000.00, $1,100.00, $2,220.00, $1,400.00, and $620.00, respectively.

42.     Although not stated in the documents provided to Plaintiff John Suber and not otherwise communicated to him, the APR for the amount loaned to him by Oasis Financial was in excess of 100%.

### F.     Plaintiff Shirley Williams

43.     Plaintiff Shirley Williams was injured as a result of a work-related incident in 2014.  As a result of this incident, Shirley Williams retained an attorney.

44.     As a result of the injuries she sustained from her work-related injury, Plaintiff Shirley Williams encountered difficulties paying her debts and began communications with

Oasis Financial.

45.    On or around June 12, 2015 and August 12, 2015, Plaintiff Shirley Williams signed "Purchase Agreements" with Oasis Financial.  Copies of the documentation related to these loans, including the Purchase Agreements, are attached hereto as **"G"**.

46.    Pursuant to the Purchase Agreements, Oasis Financial provided loans to Plaintiff Shirley Williams in the principal amounts of $800.00 and $1,000.00, respectively.

47.    Although not stated in the documents provided to Plaintiff Shirley Williams and not otherwise communicated to her, the APR for the amount loaned to her by Oasis Financial was in excess of 100%.


### III.    <u>CAUSES OF ACTION</u>

*COUNT I – Violation of O.C.G.A. § 16-17-1, et seq.*
*Against Oasis Financial*

48.    Pursuant to O.C.G.A. § 16-17-1, *et. seq.*, it is unlawful in the State of Georgia to make advances or loans to individuals or entities in or $3,000.00 or less to be repaid in the future unless the lender is, *inter alia,* duly licensed under Georgia law.

49.    At no time relevant to this action has Oasis Financial ever been licensed to offer advances or loans of  $3,000.00 or less to borrowers in this state.

50.    Despite not being licensed, Oasis Financial has been continuously involved in the making loans and advances of $3,000.00 or less to Georgia residents to be repaid at a future date, along with all accrued interest, fees, and other charges.

51.    Such loans and advances constitute are in violation of Georgia law, specifically, O.C.G.A. § 16-17-1, *et. seq.*

52.    As such, all loans made by Oasis Financial to Plaintiffs named herein and the

putative class described below are illegal, are void *ab initio,* and are uncollectable.

53.     In addition, Oasis Financial is liable to the Plaintiffs and the putative class for an amount three times the amount of interest and fees collected, or attempted to be collected, in addition to the amount of the loan, pursuant to Georgia law.

*COUNT II – Violation of the Georgia Industrial*
*Loan Act, O.C.G.A. 7-3-1, et seq.*
*Against Oasis Financial*

54.     Pursuant to the Georgia Industrial Loan Act ("GILA"), codified at O.C.G.A. § 7-3-1, *et. seq.,* it is unlawful to loan or advance amounts of $3,000.00 or less to borrowers in this state unless the lender is duly licensed by the State of Georgia Industrial Loan Commissioner.

55.     Furthermore, if a loan or advance of $3,000.00 or less is made, the rate of interest cannot exceed 10% per annum.

56.     Oasis Financial did violate GILA by making loans and advances of $3,000.00 or less without being duly licensed and by charging interest at a rate far in excess of the amount allowed by law.

57.     As a result, all loans and advances provided by Oasis Financial in violation of GILA, including all interest and fees, were and are uncollectable and must be waived or paid back by Oasis Financial along with treble damages as provided by law.

*COUNT III – Usury*
*Against Oasis Financial*

58.     Georgia law, specifically O.C.G.A. § 7-4-18, prohibits a lender from charging interest in excess of 5% per month as usurious.

59.     Pursuant to the Funding Agreements with Plaintiffs for the loans and advances they received, Oasis Financial used an effective interest rate in excess of 100%.

60.     Accordingly, Oasis Financial has violated Georgia law and engaged in usurious conduct towards Plaintiffs and the class for which it is liable for damages as allowed by law.

*COUNT IV – Aiding and Abetting*
*Against THL Credit, Inc.*

61.     During some or all of the time period relevant to this action, Defendant THL Credit, Inc. ("THL") was an alternative credit investment manager with billions of assets under management.

62.     During the third quarter of 2013, THL invested $23.9 million in Defendant Oasis Legal Finance Holding Company, LLC. See THL Credit Third Quarter 2013 Financial Results, attached hereto as Exhibit *"H"*.

63.     On June 26, 2014, it was announced by THL that Sam Tillinghast, its Co-Chief Executive Officer and Co-Chief Investment Officer maintained a "board observer role" for Oasis Legal Finance Holding Company, LLC. See SEC Form 8-K, attached hereto as Exhibit *"I"*.

64.     On March 27, 2015, Defendant THL announced that it had sold a portion of its investment in Oasis Legal Finance Holding Company, LLC, resulting in proceeds of $9.8 million. See excerpts of SEC Form 10-K, attached hereto as Exhibit *"J"*.

65.     On or about November 9, 2016, Defendant THL announced that it had sold another portion of its investment in Oasis Legal Finance Holding Company, LLC, resulting in proceeds of $12.7 million. See Press Release, attached hereto as Exhibit *"K"*.

66.     Upon information and belief, the funds provided by Defendant THL to Oasis Legal Finance Holding Company, LLC were used, in whole or in part, to allow Oasis Financial to continue to provide loans to personal injury plaintiffs, including such borrowers in Georgia, in violation of Georgia law as set forth above.

67.     Defendant THL knew that such funds would be used, in whole or in part, for such purpose.

68.     Defendant THL aided and abetted Oasis Financial in its continuing commission of tortious conduct as set forth herein, in violation of Georgia common law.

69.     Further, pursuant to O.C.G.A. § 16-17-2(d), Defendant THL has aided and abetted Oasis Financial in the violation of Georgia's lending laws, causing it to be equally liable for such violations.

70.     As a result of Defendant THL's aiding and abetting of Oasis Financial's tortious conduct, it is similarly liable for the damages claimed by Plaintiffs herein.


*COUNT V – Attorneys' Fees*

71.     Defendants have acted in bad faith, has been stubbornly litigious, and/or have caused Plaintiffs and the putative class unnecessary trouble and expense.  As such, Plaintiffs and the class are entitled to recovery of attorney fees pursuant to O.C.G.A. § 13-6-11.


## IV.     CLASS ALLEGATIONS

72.     Upon information and belief, Oasis Financial, with the financial backing of Defendant THL, has issued thousands of loans or advances of $3,000 or less to Georgia residents.

73.     Neither Defendants, nor anyone on their behalf, have ever held a license issued by the State of Georgia to make such loans or advances.

74.     In making such loans or advances of funds to litigants to be repaid at a future date with interest, calculated at an unlawfully high rate, Defendants have systemically and repeatedly violated, or aided and abetted the violation of, Georgia law.

75.     Such loans and advances constitute illegal transactions in violation of the

O.C.G.A. § 16-17-1, *et. seq*; O.C.G.A. § 7-4-18, *et. seq.*; O.C.G.A. § 7-4-2, *et. seq.*; and/or the

Georgia Industrial Loan Act, O.C.G.A. § 7-3-1, *et. seq.*

76.     Such acts and/or omissions by Defendants give rise to claims which are properly

brought on behalf of a class because (1) the class is so numerous that joinder of all members is

impracticable, (2) there are questions of law and fact common to all individuals who received

loans of $3,000 or less from Oasis Financial, (3) the claims of the proposed class representatives

are typical of the claims or defenses of the proposed class members, and (4) the proposed class

representatives will fairly and adequately protect the interests of the class.

77.     The named Plaintiffs seek to represent a class of claimants against Oasis Financial

defined as follows:

> All individuals and/or entities who are citizens and residents of Georgia who
> received monetary loans, advances, or similar funding with a principal amount of
> $3,000.00 or less from Oasis Financial to be repaid at a later date along with
> interest and loan fees.

78.     As a result of Defendants' acts and/or omissions, each member of the proposed

class is owed a monetary penalty equal the amount actually paid or owed to Oasis Financial on

their behalf, along with three times the amount of interest and fees collected, or attempted to be

collected, from each class member.


**WHEREFORE,** Plaintiffs pray for the following relief:

(a)     that process be issued and served upon Defendants;

(b)     that Plaintiffs be given a trial by jury;

(c)     that the class as identified in this Complaint be certified so that the above-

referenced claims can be heard on a class wide basis;

(d)     that Plaintiffs recover attorney's fees and litigation expenses pursuant to

        O.C.G.A. § 13-6-11; and

(e)     such further relief as deemed just and proper by this honorable Court.

This _**30**_ day of March, 2017.

Robert Bartley Turner
Georgia Bar Number: 006440

SAVAGE, TURNER,
PINCKNEY & SAVAGE
Post Office Box 10600
Savannah, Georgia 31412
(912) 231 - 1140

Jeremy S. McKenzie
Georgia Bar No. 436655
C. Dorian Britt
Georgia Bar No.  083259

KARSMAN, McKENZIE & HART
21 West Park Avenue
Savannah, Georgia 31401
(912) 335-4977 telephone

# EXHIBIT A

# STATE OF GEORGIA

## Secretary of State
### Corporations Division
### 315 West Tower
### #2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

# CERTIFICATE
# OF
# AUTHORITY

I, **Brian P. Kemp**, the Secretary of State and the Corporations Commissioner of the State of Georgia, hereby certify under the seal of my office that

### OASIS LEGAL FINANCE OPERATING COMPANY LLC
#### a Foreign Limited Liability Company

has been duly formed under the laws of Delaware and has filed an application meeting the requirements of Georgia law to transact business as a foreign Limited Liability Company in this state.

WHEREFORE, by the authority vested in me as Secretary of State, the above Limited Liability Company is hereby granted, on **05/19/2011**, a certificate of authority to transact business in the State of Georgia as provided by Title 14 of the Official Code of Georgia Annotated. Attached hereto is a true and correct copy of said application.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on May 19, 2011



Brian P. Kemp
Secretary of State



**OFFICE OF SECRETARY OF STATE**
**CORPORATIONS DIVISION**
315 West Tower, #2 Martin Luther King, Jr. Drive
Atlanta, Georgia 30334-1530
(404) 656-2817
Registered agent, officer, entity status information via the Internet
http://www.georgiacorporations.org

Brian P. Kemp
Secretary of State

**APPLICATION FOR CERTIFICATE OF AUTHORITY**
**FOR FOREIGN LIMITED LIABILITY COMPANY**

---

**IMPORTANT**
Remember to include your e-mail address when completing this transmittal form.

Providing your e-mail address allows us to notify you via e-mail when we receive your filing and when we take action on your filing. Please enter your e-mail address on the line below. Thank you.

E-Mail: clambert@hmblaw.com

---

**NOTICE TO APPLICANT: PRINT PLAINLY OR TYPE REMAINDER OF THIS FORM**

| | |
|---|---|
| 1. | OASIS LEGAL FINANCE OPERATING COMPANY LLC |

Limited Liability Company Name     Name Reservation Number (Optional)

MAY 9, 2011

Date Business Commenced (Or Proposed) In Georgia  (NOTE: If the date provided here is more than 30 days prior to the date the application is received by the Secretary of State, a $500 penalty must be paid; penalty is statutory and cannot be waived by Secretary of State.)

| | |
|---|---|
| 2. | CHRIS LAMBERT      312-281-1116 |

Name of filing person (certificate will be mailed to this person, at address below)    Telephone Number

500 W. MADISON ST., STE. 3700    CHICAGO    IL    60661

Address      City      State      Zip Code

| | |
|---|---|
| 3. | DELAWARE      JULY 13, 2004 |

Jurisdiction (Home state/country)      Date of Organization in home state

| | |
|---|---|
| 4. | 40 NORTH SKOKIE BLVD., STE 500    NORTHBROOK    IL    60062 |

Address of Principal Place of Business      City      State      Zip Code

| | |
|---|---|
| 5. | National Registered Agents, Inc. |

Name of Registered Agent in Georgia

3675 Crestwood Parkway, Suite 350

Registered Office Street Address in Georgia (Post office box or mail drop not acceptable for registered office address)

Duluth    Gwinnett    GA    30096

City      County      State      Zip Code

| | |
|---|---|
| 6. | OASIS LEGAL FINANCE HOLDING COMPANY LLC, 40 N. SKOKIE BLVD., STE 500   NORTHBROOK   IL   60062 |

Manager's Name & Address (Person w/responsibility for maintaining records)    City    State    Zip Code

| | |
|---|---|
| 7. | 40 N. SKOKIE BLVD., STE 500     NORTHBROOK    IL    60062 |

Address Where Limited Liability Company Records Are Maintained    City    State    Zip Code

8. **NOTICE:** Mail or deliver an original and one copy of this form and the filing fee of $225.00 to the Secretary of State at the above address. Filing fees are NON-refundable.

This application is signed by a person duly authorized to sign such instruments by the laws of the jurisdiction under which the foreign limited liability company is organized. The foreign limited liability company undertakes to keep its records at the address shown in #7 above until its registration in Georgia is canceled or withdrawn. The foreign limited liability company, in accordance with Title 14 of the Official Code of Georgia Annotated, appoints the Secretary of State as agent for service of process if no agent has been appointed in Georgia or, if appointed, the agent's authority has been revoked or the agent cannot be found or served by the exercise of reasonable diligence.

Authorized Signature                    5/18/2011

Authorized Signature      Date

Reque

State of Georgia      www.georgiacorporations.org
Expedite Creation - Foreign Entity 2 Page(s)



T1113912022

# EXHIBIT B

DocuSign Envelope ID: 404B21C3-7D6B-46BE-AA1E-9DF54A4B0D17



9525 W. Bryn Mawr Ave., Suite 900
Rosemont, Illinois 60018
Phone: (847) 521-4411
Fax: (847) 897-2955

## CONSUMER DISCLOSURE

**Date:** October 29, 2015
**Consumer:** Lizzie Davis
**Oasis Case ID:** P-GA-762220

> **PLEASE CALL YOUR CASE MANAGER AT (847) 521-4411, IF YOU HAVE ANY QUESTIONS**

**What Oasis will own from Lizzie Davis's Legal Claim:**

| Date Range | Oasis Ownership Amount |
|---|---|
| October 30, 2015 to April 29, 2016 | $2,505.00 |
| April 30, 2016 to October 29, 2016 | $2,755.50 |
| October 30, 2016 to January 29, 2017 | $3,757.50 |
| January 30, 2017 to April 29, 2017 | $4,175.00 |
| April 30, 2017 to October 29, 2017 | $4,592.50 |
| October 30, 2017 to April 29, 2018 | $5,427.50 |
| April 30, 2018 and thereafter | $5,845.00 |

**Additional Fees**

| | |
|---|---|
| Archiving and document management fees | $35.00 |
| Case servicing fee for every 6 months | $35.00 |
| Subsequent case review fee for each additional funding | $20.00 |

IF SELLER (LIZZIE DAVIS) COMPLIES WITH THE NONRECOURSE PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE APPLICABLE LEGAL CLAIM(S), **THEN PURCHASER (OASIS) SHALL RECEIVE NOTHING.**

**Price paid by OASIS FINANCIAL to LIZZIE DAVIS** to purchase the contingent right to a portion of the Proceeds from the Legal Claim(s):  $1,670.00

**Optional Handling Fee;** (Handling fees vary depending on how Lizzie Davis chooses to receive the funding):
    For Western Union AND/OR Wire: $97.00-$199.00
    For Check via Overnight Delivery: $99.00          – $   0 to 219.00
    For Check via First Class (5-10 Day Delivery): Free
    For Priority Processing Featuring New E-Signature: $20.00
**Amount Lizzie Davis will receive from this funding,**
**pending final approval:**                          =$ 1,451.00 to 1,670.00

**I, Lizzie Davis, by my signature below confirm that I have read and understand this Consumer Disclosure before reading and signing the Purchase Agreement.**

| | |
|---|---|
| Lizzie Davis | 10/30/2015 |
| | Date |

## PAYMENT INSTRUCTIONS

CONSUMER PAGE
Case ID: P-GA-762220

**Seller: Lizzie Davis**
**Purchase Price to Seller: $1,670.00**

**Case ID: P-GA-762220**

| Select if Wanted | Processing Option | Details |
|---|---|---|
| X | Priority Processing | **Priority Processing featuring new E-Signature:** When Oasis receives your Purchase Agreement, Letter of Direction, and Acknowledgment signed by both you and your attorney, your Purchase Agreement will move to the next place in line for review. Priority Processing is **required** with E-Signature, but Priority Processing is also available without E-Signature. Fee: $20.00 |

| Select One | Delivery Option | How Soon? | Details | Information Needed |
|---|---|---|---|---|
| X Option 1 | **Money in Minutes** at any WESTERN UNION yes! | Same day, as soon as 1 hour | **The FASTEST way to get your funding. No waiting on a delivery service and no check cashing fees!!!** Fee: $149.00 | You must present a government issued photo ID to pick up funds. |
| Option 2 | Direct Deposit to your bank account. | Same Day | Oasis must receive the signed documents by 2:00 p.m. CST on the funding day. Fee: $149.00 | Name of Bank: _____ Bank's City, State: _____ Routing/ABA Number: _____ Account Number: _____ Bank's Phone Number: _____ Your Name on Account (must match exactly): _____ |
| Option 3 | Check via Overnight Delivery | 1 Day | A Check sent by **Overnight Delivery** service for delivery by the next business day. Fee: $99.00. (Weekends and holidays not included). | Street Address _____ Apt / Unit # ___ City _____ State _____ Zip _____ |
| Option 4 | Check via U.S. First Class Mail | 5-10 Days | A Check sent U.S. First Class Mail with Delivery Confirmation Fee: Free | Street Address _____ Apt / Unit # ___ City _____ State _____ Zip _____ |

**Please describe how we helped you during these difficult times:**

I have a lot of past due bills that piled up when I was out due to my accident.

By signing below, I, Lizzie Davis, hereby agree to the terms of the above Payment Instructions and understand that I am responsible for the information that I have provided on this form, and that Oasis is not responsible for any problem in delivery or transfer of funds, so long as it follows the instructions provided by I, Lizzie Davis. I also agree to the use of the above statements at the discretion of Oasis.

Lizzie Davis                                   10/30/2015
**Lizzie Davis**                               **Date**

CONSUMER DISCLOSURE

DocuSign Envelope ID: 404B21C3-7D68-40BE-AA1E-9DF54A4B0D17



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 521-4411
Fax: (847) 897-2955

## CREDIT AND INFORMATION RELEASE

Oasis Financial ("Oasis") may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction. Credit reports are obtained after you are provisionally approved for funding for verification of liens. **Please note your creditworthiness and credit score are not considered as part of the underwriting process.**

**PLEASE READ CAREFULLY:** BY MY SIGNATURE BELOW, I hereby authorize, without any reservation, any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the Purchase Agreement.

This authorization is valid for purposes of verifying information given and any other lawful purpose covered under the Fair Credit Reporting Act (FCRA). Upon written request, Oasis will tell you whether Oasis has obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. By signing below, you certify the information provided by you to Oasis in your application and during the underwriting process is true, accurate and complete. By signing below, you also authorize Oasis to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis, or its affiliates any and all information and documents pertaining to my current Legal Claim(s) or lawsuit, including pleadings, discovery, investigative reports, contracts, medical records/reports, deposition transcripts, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application and during the underwriting process is true, accurate, and complete.

**Lizzie Davis**

| | |
|---|---|
| *Lizzie Davis* 8D | 10/30/2015 |
| Signature | Date |
| 478-697-0017 | Redacted |
| Telephone Number | Social Security Number |
| Ga          Redacted | Redacted  1956 |
| State of Driver's License      Driver's License Number | Date of Birth |
| Post Office Box 4553 | Dublin          Ga          31021 |
| Street Address | City          State          Zip |

CREDIT AND INFORMATION RELEASE
Case ID: P-GA-762220

# NONRECOURSE PURCHASE AGREEMENT

THIS NONRECOURSE PURCHASE AGREEMENT (the "Purchase Agreement") is made and entered as of 10/30/2015 _____ by and between Oasis Financial ("Purchaser"), at 9525 W. Bryn Mawr, Suite 900, Rosemont, Illinois, 60018, and Lizzie Davis at PO Box 4553 Dublin, GA 31040 ("Seller"), (collectively "the Parties").

| | |
|---|---|
| **Purchaser:** | **Oasis Financial (Oasis)** |
| **Seller:** | Lizzie Davis |
| **Purchase Price:** | **$1,670.00** |

| **Date Range** | **Oasis Ownership Amount** |
|---|---|
| October 30, 2015 to April 29, 2016 | $2,505.00 |
| April 30, 2016 to October 29, 2016 | $2,755.50 |
| October 30, 2016 to January 29, 2017 | $3,757.50 |
| January 30, 2017 to April 29, 2017 | $4,175.00 |
| April 30, 2017 to October 29, 2017 | $4,592.50 |
| October 30, 2017 to April 29, 2018 | $5,427.50 |
| April 30, 2018 and thereafter | $5,845.00 |

| **Additional Fees** | **Fees** |
|---|---|
| Archiving and Document Management fee | $35.00 |
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |

SELLER (LIZZIE DAVIS) EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM(S) REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM(S) OR ITS PROSECUTION.

IF SELLER (LIZZIE DAVIS) COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM(S) CITED BELOW, THEN PURCHASER (OASIS) SHALL RECEIVE NOTHING. SELLER (LIZZIE DAVIS) IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER (OASIS) HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.

| Seller's Signature | Date |
|---|---|
| *Lizzie Davis*     8D<br>—7lF1ECFA3CE84E4... | 10/30/2015 |

Lizzie Davis

## SECTION 1. DEFINITIONS

1.1   "**Seller**" means Lizzie Davis.

1.2   "**Seller's Attorney**" means Ashleigh R. Madison, Esq., who is Seller's (Lizzie Davis's) attorney(s) in respect of the Legal Claim(s) described below and any substitute, new or additional attorney representing Seller (Lizzie Davis) in the Legal Claim(s).

1.3   "**Purchaser**" means Oasis Financial.

1.4   "**Legal Claim(s)**" means (a) the pending legal action(s) and/or lawsuit(s) to obtain money or property in which Seller (Lizzie Davis) is engaged as a result of injuries and/or damages arising out of a personal injury or other claim(s); (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and

processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller (Lizzie Davis) is a party.

**1.5** **"Purchase Price"** means the amount paid by Purchaser (Oasis) to Seller (Lizzie Davis) as consideration for this Purchase Agreement. The Purchase Price amount in this transaction is $1,670.00.

**1.6** **"Proceeds"** means all property or things of value payable on account of the Legal Claim(s) including without limitation, negotiable instruments, contract rights, annuities and securities whether obtained by judgment, settlement, arbitration, award or otherwise.

**1.7** **"Oasis Ownership Amount"** is the amount Purchaser (Oasis) is to be paid out of the Proceeds of the Legal Claim(s). The Oasis Ownership Amount shall be determined as of the date funds are received by Oasis as indicated by the schedule above.

**1.8** **Additional Fees.** Seller (Lizzie Davis) agrees to pay Purchaser (Oasis) the following additional fees at time of delivery of the Oasis Ownership Amount:

> **Archiving and Document Management Fee.** $35.00 per funding for Purchaser's (Oasis') archiving and document management costs.

> **Case Servicing Fee.** $35.00 every six (6) months or increment thereof for servicing of the case which will be assessed at the beginning of each six month period. Subsequent fundings on the same case will not be charged additional servicing fees.

> **Subsequent Case Review.** $20.00 each time Seller (Lizzie Davis) requests and receives additional funding from Purchaser.

**1.9** **"Purchased Right"** means the contingent right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided in this Purchase Agreement. To the extent permitted by law applicable to this transaction, Seller (Lizzie Davis) hereby sells to Purchaser (Oasis) and Purchaser (Oasis) hereby purchases from Seller (Lizzie Davis) Seller's (Lizzie Davis's) entire right and title in a portion of the Proceeds equal to the Oasis Ownership Amount. In full satisfaction for the Purchased Right and in consideration for its sale to Purchaser (Oasis), Purchaser (Oasis) shall pay to Seller (Lizzie Davis) the Purchase Price.

<div align="center">

**SECTION 2. SELLER'S (LIZZIE DAVIS'S) AND PURCHASER'S (OASIS')**
**MUTUAL ACKNOWLEDGEMENTS**

</div>

Seller (Lizzie Davis) and Purchaser (Oasis) acknowledge the following:

**2.1** **Nonrecourse; Contingent Right; Risk of Loss.** Delivery of the Oasis Ownership Amount is contingent upon Seller's (Lizzie Davis's) recovery from the Legal Claim(s). If a final resolution or settlement of the Legal Claim(s) does not result in the recovery of Proceeds, Seller (Lizzie Davis) shall have no obligation to Purchaser (Oasis) and Purchaser (Oasis) shall receive **NOTHING.** Seller (Lizzie Davis) shall provide Purchaser (Oasis) with evidence of such final resolution. The Parties intend this transaction to be, and agree that this transaction is, a purchase and sale and not a loan. The likelihood of recovering Proceeds from the Legal Claim(s) is uncertain both as to time and amount. This transaction involves a **substantial economic risk** and a bona fide risk of loss to Purchaser (Oasis). Purchaser (Oasis) and Seller (Lizzie Davis) acknowledge that the Purchased Right may be worthless and the Oasis Ownership Amount has been negotiated to account for such risk.

**2.2** **No Control Over Claim(s).** The Parties agree that Purchaser (Oasis) will have no control, influence or involvement in the prosecution or settlement of the Legal Claim(s), nor will the Purchaser (Oasis) be involved in the decisions of Seller (Lizzie Davis) and Lizzie Davis's attorney relating to the Legal Claim.

**2.3** **Purchase and Sale.** Seller (Lizzie Davis) sells and transfers the Purchased Right to the Purchaser (Oasis). Seller (Lizzie Davis) shall treat and report the sale and purchase of the Purchased Right as a sale transaction and not as a loan for any and all purposes. In all instances, Seller («PlaintiffFullName») shall cause the Purchased Right to be described as an asset of Purchaser (Oasis). See also Section 3.5.

**2.4** **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim(s).** Purchaser (Oasis) is not engaged in the practice of law and is not serving as Seller's (Lizzie Davis's) attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller (Lizzie Davis) or Seller's (Lizzie Davis's) Attorney in connection with the Legal Claim(s).

**2.5** **Decisions Regarding Legal Claim(s).** Purchaser (Oasis) and Seller (Lizzie Davis) acknowledge and agree that **Purchaser (Oasis) shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim(s) or any settlement or resolution thereof** and that the right to make such decisions remains solely with Seller (Lizzie Davis) and Seller's (Lizzie Davis's) Attorney.

## SECTION 3. SELLER'S (LIZZIE DAVIS'S) ACKNOWLEDGEMENTS AND AGREEMENTS

Seller (Lizzie Davis) acknowledges and agrees as follows:

**3.1    Title; Capacity.** Seller (Lizzie Davis) is the claimant in the Legal Claim(s) and has full right, title and interest in, to, and under the Legal Claim(s) and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

**3.2    Information True, Complete and Correct.** Seller (Lizzie Davis) warrants that all information provided to Purchaser (Oasis) is true complete and correct and that Seller (Lizzie Davis) has informed Purchaser (Oasis) of all actions, facts and circumstances that materially affect or impair the Legal Claim(s).

**3.3    No Previous Encumbrances.** Seller (Lizzie Davis) has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim(s) or the Proceeds in any manner whatsoever other than for attorney's fees and costs relating to this Legal Claim(s). There are no pending or threatened claims, liens, or judgments against Seller (Lizzie Davis) or Seller's (Lizzie Davis's) assets that would materially impair the value, priority or collectability of the Proceeds payable to Seller (Lizzie Davis) in connection with the Legal Claim(s) or the amounts owed to Purchaser (Oasis) pursuant to this Purchase Agreement. In the event that previous encumbrances exist, Seller (Lizzie Davis) shall disclose all such encumbrances in writing to Purchaser (Oasis) prior to execution of this Purchase Agreement.

**3.4    No Further Transfer.** Seller (Lizzie Davis) shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim(s) or the Proceeds without purchasing Oasis' Purchased Right or without the prior written consent of Purchaser (Oasis), except for transfers by intestacy due to Seller's (Lizzie Davis) death. In the event an interest in the Legal Claim(s) or the Proceeds is transferred by intestacy due to Seller's (Lizzie Davis's) death, Seller's (Lizzie Davis's) heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

**3.5    Treatment in Bankruptcy.** If Seller (Lizzie Davis) commences or has commenced against Seller (Lizzie Davis) any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to delivery of the full Oasis Ownership Amount to Purchaser (Oasis), Seller (Lizzie Davis) shall cause the Purchased Right to be described as an asset of Purchaser (Oasis) and not as a debt obligation of Seller (Lizzie Davis) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such proceeding, see also section 2.3 above. Further, Seller (Lizzie Davis) agrees that Oasis holds a security interest which is perfected upon attachment which occurs when Purchaser (Oasis) gives the Purchase Price to Seller (Lizzie Davis). Despite automatic perfection upon attachment, Purchaser (Oasis) reserves the right to file Uniform Commercial Code Financing Statements to give notice of its Purchased Right to third parties.

**3.6    Financing Statements and Additional Documents.** Seller (Lizzie Davis) irrevocably authorizes Purchaser (Oasis) at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto. Purchaser (Oasis) may indicate the following information in such financial statements and amendments: (a) that a portion of the Proceeds that are derived from the Legal Claim(s) are owned by Purchaser (Oasis); and (b) any other information required, in Purchaser's (Oasis') discretion, by the Uniform Commercial Code in any relevant jurisdiction. Seller (Lizzie Davis) agrees to furnish any information reasonably requested by Purchaser (Oasis) to facilitate these objectives. Seller (Lizzie Davis) will be referred to as the Seller (Lizzie Davis) and the Purchaser (Oasis) will be referred to as Buyer in such financing statements. The transaction itself will be referred to as purchase or sale, or a similar term, in such financing statements.

**3.7    Substitution of Attorneys.** If Seller (Lizzie Davis) obtains new or additional counsel in regards to the Legal Claim(s), Seller (Lizzie Davis) agrees to provide Purchaser (Oasis) with written notice of new or additional counsel and deliver a copy of the Irrevocable Letter of Direction to such new or additional counsel. Any such new or additional counsel shall be included in the definition of "Seller's Attorney in the Legal Claim(s)" for all purposes of this Purchase Agreement.

**3.8    Requests for Documents and Information.** Seller (Lizzie Davis) shall provide, and authorizes, and directs Seller's (Lizzie Davis's) Attorney to provide Purchaser (Oasis) with: (a)  prompt written notice of any receipt by Seller (Lizzie Davis) or Seller's (Lizzie Davis's) Attorney of Proceeds from the Legal Claim(s) or documents evidencing such receipt;  (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in connection with the Legal Claim(s) by any person or party; (c) copies of non-privileged documents relating to any other material development in connection to the Legal Claim(s) or the Proceeds; and (d) verbal or written information regarding non-privileged matters including periodic case statuses as reasonably requested by Purchaser (Oasis).

## SECTION 4. DELIVERY OF THE OASIS OWNERSHIP AMOUNT AND PRIORITY

**4.1    Priority of Delivery to Purchaser (Oasis).** Seller (Lizzie Davis) shall not be entitled to receive any Proceeds until Purchaser (Oasis) has received the Oasis Ownership Amount. If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser (Oasis) shall receive all of the Proceeds, subordinate only to attorneys' fees and costs and related medical liens. **If Seller (Lizzie Davis) complies with the terms of this Purchase Agreement in their entirety and recovers nothing from the Legal Claim(s), then Purchaser (Oasis) shall receive nothing.** See also Section 2.1.

**4.2 Timing of Delivery.** Seller (Lizzie Davis) shall direct Seller's (Lizzie Davis's) Attorney to tender the full Oasis Ownership Amount to Oasis from the Proceeds of the Legal Claim(s) within 10 days of Seller's (Lizzie Davis's) Attorney's receipt of the Proceeds. Seller (Lizzie Davis) shall prohibit Seller's (Lizzie Davis's) Attorney from disbursing the Oasis Ownership Amount to Seller (Lizzie Davis), any other individuals, or other entities without first satisfying the Purchased Right. Seller (Lizzie Davis) agrees not to have the Oasis Ownership amount paid to Seller (Lizzie Davis). Purchaser (Oasis) reserves the right to assess collection costs as applicable by law if the Oasis Ownership Amount remains unsatisfied more than 10 days after receipt of Proceeds by Seller's (Lizzie Davis's) Attorney. If any dispute arises over the amount owed to Oasis, Seller (Lizzie Davis) agrees to direct that Seller's (Lizzie Davis's) Attorney shall hold the funds in trust until the dispute is resolved.

### SECTION 5. EVENT OF BREACH; SPECIFIC BREACH; SELLER'S (LIZZIE DAVIS'S) RIGHT OF RESCISSION

**5.1 Event of Breach.** The breach by Seller (Lizzie Davis) of any of Seller's (Lizzie Davis's) obligations under this Purchase Agreement shall constitute an "Event of Breach" hereunder. In an Event of Breach, Purchaser (Oasis) shall have all rights, powers, and remedies provided in this Purchase Agreement and as allowed by law or in equity, including, but not necessarily limited to, reimbursement of any and all legal costs and attorney fees incurred in enforcing Purchaser's (Oasis') rights, powers, and remedies under this Purchase Agreement. Additionally, Purchaser (Oasis) reserves the right to obtain a judgment against Seller (Lizzie Davis), use a collection agency and use all other means allowed under the law and equity to enforce Purchaser's (Oasis') rights, powers, and remedies under this Purchase Agreement.

**5.2 Creation of Trust.** Should the Oasis Ownership Amount be sent to Seller (Lizzie Davis), Seller (Lizzie Davis) is appointed as Purchaser's (Oasis') trustee with respect to the Oasis Ownership Amount, the corpus of the trust. Should the Oasis Ownership Amount be paid to Seller (Lizzie Davis), Seller (Lizzie Davis), as the grantor and trustee, expressly intends that a trust be created and acknowledges and accepts that a trust is created. Seller (Lizzie Davis) agrees to hold the Oasis Ownership Amount in trust for Purchaser (Oasis) and send such amounts to Purchaser (Oasis), the beneficiary of the trust, within ten days of receipt of Proceeds.

**5.3 Receipt of Funds.** If Seller (Lizzie Davis) does not receive the Purchase Price, Seller (Lizzie Davis) shall notify Purchaser (Oasis) in writing within FIVE (5) days of Purchaser's (Oasis') receipt of the fully executed Purchase Agreement. After FIVE (5) days, Seller (Lizzie Davis) is presumed to have received the Purchase Price, and the Purchase Agreement is deemed to be in full force and effect.

**5.4 SELLER, (LIZZIE DAVIS'S) RIGHT OF RESCISSION:**

**LIZZIE DAVIS MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) DAYS FROM THE DATE LIZZIE DAVIS RECEIVES THE PURCHASE PRICE FROM PURCHASER (OASIS). TO CANCEL THIS AGREEMENT, LIZZIE DAVIS MUST EITHER:**

(a) **RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER (OASIS) BY DELIVERING THE UNCASHED CHECK TO PURCHASER (OASIS) IN PERSON WITHIN FIVE (5) DAYS; OR**

(b) **MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S (OASIS') UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED, OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S (OASIS') ADDRESS AS SET FORTH IN SECTION 6.2 BELOW.**

### SECTION 6. MISCELLANEOUS

**6.1 Survival of Representations.** All of the representations, warranties, covenants and agreements of the Parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

**6.2 Notices.** All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made if delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the Parties at the following addresses:

**If to Purchaser (Oasis):** Oasis Financial, 9525 W. Bryn Mawr Ave., Suite 900, Rosemont, Illinois, 60018, Attn: Controller.

**If to Seller (Lizzie Davis):** to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the Parties hereto shall have specified in writing to the other.

**6.3     Release to Contact Third Parties.** It may be necessary to disclose information to third parties. Seller (Lizzie Davis) explicitly and irrevocably authorizes Purchaser (Oasis) to disclose any information to third parties as it deems appropriate to the extent permitted by law and also as referenced in the Oasis Privacy Policy, a copy of which is provided with this Purchase Agreement. Seller (Lizzie Davis) releases Purchaser (Oasis) from any and all liability as a result of the release of any information.

**6.4     Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**6.5     GOVERNING LAW AND FORUM. THIS PURCHASE AGREEMENT, AND ALL LAWSUITS, DISPUTES, CLAIMS, OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, SHALL BE GOVERNED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF GEORGIA.**

**THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY CONSENT TO SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS FOR ANY DISPUTES, CLAIMS OR OTHER PROCEEDINGS ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT, OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, AND AGREE NOT TO COMMENCE ANY SUCH LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING EXCEPT IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS. THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT, OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, AND HEREBY FURTHER IRREVOCABLY AND UNCONDITIONALLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS THAT ANY SUCH LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING BROUGHT IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.**

**EACH OF THE PARTIES TO THE CONTRACT FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS BY MAILING COPIES THEREOF BY REGISTERED OR CERTIFIED UNITED STATES MAIL, POSTAGE PREPAID, TO EACH OF THE PARTIES TO THE PURCHASE AGREEMENT AT ITS ADDRESS SPECIFIED IN THIS PURCHASE AGREEMENT.**

**6.6     WAIVER OF JURY TRIAL, CONSOLIDATION AND CLASS ACTION; COSTS.**

**THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.**

**THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.**

**6.7     Counterparts; Electronic and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement. This Purchase Agreement shall be deemed to have been executed in Cook County, Illinois and shall only be in full force and effect upon the signing hereof by a duly authorized representative of Purchaser (Oasis). Information, records, and signatures (electronic or facsimile) shall not be denied legal effect, validity, or enforceability solely on the grounds that they are in electronic and/or facsimile form. Where a rule of law requires information be "written" or "in writing", or provides for certain consequences if it is not, the Parties agree that an electronic and/or facsimile record shall satisfy that rule of law. Where a rule of law requires a signature, or provides for certain consequences if a document is not signed, the parties agree that an electronic and/or facsimile signature shall satisfy that rule of law.

**6.8     Assignment; Use of Information.** Purchaser's (Oasis') rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller (Lizzie Davis). Seller's (Lizzie Davis's) rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser (Oasis), except for transfer by intestacy due to Seller's (Lizzie Davis's) death in which case Seller's (Lizzie Davis's) heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller (Lizzie Davis) agrees that Purchaser (Oasis) may share information that Purchaser (Oasis) obtained about Seller (Lizzie Davis) (whether from Seller (Lizzie Davis) or other person or entity) with potential assignees to whom Purchaser (Oasis) may assign its rights and obligations under this Purchase Agreement, provided that:   (i) such information is reasonably necessary to allow a potential assignee to make an

informed decision whether to take assignment from Purchaser (Oasis); and (ii) Purchaser (Oasis) enters into an appropriate confidentiality agreement with any such potential assignee.

**6.9     No Third Party Beneficiaries; Successors and Assigns.**  Subject to the provisions of <u>Section 6.8</u> this Purchase Agreement is solely for the benefit of Purchaser (Oasis) and Seller (Lizzie Davis); and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the Parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

**6.10    Severability.**  If any provision of this Purchase Agreement or the application of any such provision to any party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law.  If any such court of competent jurisdiction declares that any term or provision of this Purchase Agreement is invalid or unenforceable, the Parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

**6.11    LEGAL REPRESENTATION.  SELLER (LIZZIE DAVIS) UNDERSTANDS AND ACKNOWLEDGES THAT: (A) PURCHASER (OASIS) HAS RECOMMENDED THAT SELLER (LIZZIE DAVIS) ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER (LIZZIE DAVIS) HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S (LIZZIE DAVIS'S) CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.**

**6.12    Construction.**  The Parties intend that this Purchase Agreement be deemed to have been prepared by all of the Parties and that each party has had the opportunity to negotiate each term of the agreement prior to execution, and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement.

---

I, Lizzie Davis, certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages.  I have had the opportunity to negotiate each term prior to execution of this Purchase Agreement, and I agree to be bound by the terms and conditions of this Purchase Agreement.  This Purchase Agreement shall not be effective until the Purchase Price is paid to Seller (Lizzie Davis).

| Seller's Signature | Date | Purchaser's Signature | Date |
|---|---|---|---|
| | 10/30/2015 | | |
| *Lizzie Davis* | | | |
| **Lizzie Davis** | | **Oasis Financial** | |

Docusign Envelope ID: 404B21C3-7D6B-46BE-AA1E-9DF54A4B0D17



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 521-4411
Fax: (847) 897-2955

# IRREVOCABLE LETTER OF DIRECTION

<u>Sent by Fax and/or E-Mail</u>                                                         October 29, 2015

Ashleigh R. Madison, Esq.
426 Barnard St
Savannah, GA 31401

**PLEASE CONTACT OASIS IF YOUR CONTACT INFORMATION IS INCORRECT**

Dear Ashleigh R. Madison,

Be advised that I have sold a contingent right to receive a portion of the Proceeds[1] of my Legal Claim(s) equal to the Oasis Ownership Amount to Oasis Financial ("Oasis"). I hereby irrevocably direct my current attorney or any subsequent attorney or law firms that may represent me ("Seller's Attorney"), to tender the full Oasis Ownership Amount to Oasis pursuant to the Purchase Agreement from any and all of the Proceeds due to me from the Legal Claim(s) in which you represent me. I understand that by making this irrevocable direction, I can at no future time withdraw or revoke this direction. PLEASE BE ADVISED THAT UNDER NO CIRCUMSTANCES MAY YOU, SELLER'S ATTORNEY, DISBURSE THE OASIS OWNERSHIP AMOUNT TO ME, ANY OTHER INDIVIDUALS, OR OTHER ENTITIES WITHOUT FIRST SATISFYING OASIS' PURCHASED RIGHT. If a check is sent in my name, I hereby grant you the authority to endorse my check into your trust account and pay to Oasis its Ownership Amount. I certify that I do not have any outstanding past due child support obligations.

                                                                    Seller's Initials:

<u>I have read the Nonrecourse Purchase Agreement and fully understand my obligations to Oasis.</u> I instruct you, Seller's Attorney, to provide Oasis with periodic information on my case and brief case statuses at no cost to Oasis, and in the event that you no longer represent me I instruct you to provide Oasis with any insurance, new attorney or other information requested. This letter may be executed in counterparts electronically, and/or by facsimile, each of which shall be deemed an original and all of which shall together constitute a single agreement. By signing the acknowledgement below, you agree that this letter is from me and that you will comply with the terms of this Irrevocable Letter of Direction.

Sincerely,

Lizzie Davis-Seller

## ATTORNEY ACKNOWLEDGMENT

- I, Ashleigh R. Madison, Esq., acknowledge receipt of Lizzie Davis's Irrevocable Letter of Direction, the Nonrecourse Purchase Agreement, and the Notice of Purchase.

- My fee agreement is on a contingency basis and there are liens and/or letters of protection (exclusive of attorney's fees and costs) against the case of approximately _____, and I will deliver the Oasis Ownership Amount subordinate to attorney fees, costs and related medical liens as per instructions above.

- I fully expect that any Proceeds from the Legal Claim(s) will be sent to me directly and not directly to the claimant (Seller); I agree that all disbursements of proceeds will be made through my attorney trust account.

- I have not, and will not accept any advice, direction, or payment from Oasis regarding the Legal Claim(s).

- To the best of my knowledge, the above client has **NOT** received any previous cash fundings on his/her Legal Claim(s), except for the Purchase Agreement(s) with Oasis.

- I will not participate in or acknowledge any future cash funding(s) for the above client without first resolving the Oasis Ownership Amount.

- I agree and acknowledge that upon request, I will inform Oasis whether Lizzie Davis's case is still pending. I will provide other non-privileged information to Oasis and if Lizzie Davis's case settles, I will request a payoff and inform Oasis that the matter has settled.

- I acknowledge that upon my signature below, I understand the Purchase Agreement will be executed by the Parties and Oasis will provide funding to Lizzie Davis. I will contact Oasis when the Legal Claim(s) has been resolved.

Please provide email for case updates:

Ashleigh R. Madison, Esq.                              Southeast law@gmail.com
                                                                         E-mail

[1] All capitalized terms used herein are defined as set forth in the Purchase Agreement.

IRREVOCABLE LETTER OF DIRECTION
Case ID: P-GA-762220

DocuSign Envelope ID: 404B21C3-7D6B-40BE-AA1E-9DF54A4B0D17



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 521-4411
Fax: (847) 897-2955

## NOTICE OF PURCHASE

October 29, 2015

Ashleigh R. Madison, Esq.
426 Barnard St
Savannah, GA 31401

RE:     OUR CLIENT:      **Lizzie Davis**
        OUR CASE ID:     **P-GA-762220**

Dear Ashleigh R. Madison,

Oasis Financial ("Oasis") has entered into a Purchase Agreement (attached) with your client Lizzie Davis. Oasis has purchased a right in a portion of the potential Proceeds from the Legal Claim(s) of Lizzie Davis.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL THE OASIS OWNERSHIP AMOUNT (PLUS ANY APPLICABLE FEES DUE AT DELIVERY) HAS BEEN SATISFIED.**

### OASIS OWNERSHIP AMOUNT

| Date Range | Oasis Ownership Amount |
|---|---|
| October 30, 2015 to April 29, 2016 | $2,505.00 |
| April 30, 2016 to October 29, 2016 | $2,755.50 |
| October 30, 2016 to January 29, 2017 | $3,757.50 |
| January 30, 2017 to April 29, 2017 | $4,175.00 |
| April 30, 2017 to October 29, 2017 | $4,592.50 |
| October 30, 2017 to April 29, 2018 | $5,427.50 |
| April 30, 2018 and thereafter | $5,845.00 |

**Additional Fees**

| | |
|---|---|
| Archiving and document management fees | $35.00 |
| Case servicing fee for every 6 months | $35.00 |
| Subsequent case review fee for each additional funding | $20.00 |

**Please call (888) 529-1253 or by fax at (847) 521-4391 to receive more information about the Oasis Ownership Amount.**

DocuSign Envelope ID: 404B21C3-7D6B-46BE-AA1E-9DF54A4B0D17



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 521-4411
Fax: (847) 897-2955

# OASIS FINANCIAL PRIVACY POLICY (effective April 2012)

The privacy and security of your personal information is important to Oasis. We provide this Privacy Policy to advise you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

**What personal information does Oasis collect?** The types of personal information we collect and share depend on the product or service you have with us, but is clearly stated on our applications. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information can include: name, address, e-mail address, telephone number(s), your date of birth, social security number, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports. We may also use your information in order to obtain additional information regarding you, such as credit or consumer reports.

**How does Oasis share personal information?** We share customers' personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law. Some of this sharing is necessary to provide you with the services you are requesting from us. In the section below, we list the primary reasons we share customers' personal information; the reasons Oasis chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Oasis share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes—such as to process your transactions, maintain your account(s), respond to court orders and legal investigations | Yes | No |
| For our marketing purposes— to offer our products and services to you | Yes | Yes |
| For joint marketing with other financial companies | Yes | Yes |
| For our affiliates' everyday business purposes— information related to your transactions and experiences | Yes | No (except CA and VT residents) |
| For our affiliates' everyday business purposes | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For non-affiliates to market to you | Yes | Yes |

**To limit our sharing, simply complete our Opt-Out form by visiting us at www.OasisFinancial.com/privacy and follow the instructions on the site.----Why can't I limit all sharing?** In many circumstances, sharing information is necessary for us to provide you the services you are requesting. Federal law gives you the right to limit only

- sharing for affiliates' everyday business purposes
- affiliates from using your information to market to you
- sharing for non-affiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under specific state law.

**California:** In accordance with California law, Oasis Financialwill automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

**Vermont:** In accordance with Vermont law, Oasis Financialwill automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

**How Does Oasis protect my personal information?** To protect your personal information from unauthorized access and use, we use reasonable security measures that comply with applicable laws. These measures include computer safeguards and secured files and

buildings. Our agreements with service providers or other nonaffiliated companies require them to treat your personal information in a confidential and secure manner.

**How does Oasis collect my personal information?** We collect your personal information, for example, when you, your attorney, or third parties, such as credit bureaus, affiliates, or other companies provide it to us on applications and other forms, by phone, fax, the Internet, or other delivery services.

**What happens when I limit sharing for an account I hold jointly with someone else?** Your choices will apply to everyone on your account.

**Passive collection of information-**While you are on our website, we may automatically track information related to your voluntary use of the website. Such voluntary provided information may include, among other things, URL tracking information, user's browser, user's IP address, files viewed by you and your path through the website, date, time and frequency of accessing website and length of time spent reviewing certain features. In addition we may (i) use pixels provided to us by a third party to track the pages viewed, the number of pages viewed, and the number of customer conversions obtained from third parties and marketing agencies, (ii) place a cookie, provided to us by a third party, on your computer that tracks if you click on an advertisement so that future advertisements can be targeted to you based on the advertisements clicked on by you and/or your other activities on the website.

**Definitions:**

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies. *Our affiliates include Oasis Financial Holding Company, LLC and Oasis Financial Operating Company, LLC* |
| **Non-affiliates:** | Companies not related by common ownership or control. They can be financial and non financial companies. *Non-affiliates we share with can include companies such as money transfer companies, collection agencies, investment and insurance companies, mortgage and brokerage companies, retailers or marketing companies.* |
| **Joint Marketing** | A formal agreement between non-affiliated financial companies that together market financial products or services to you. *Our joint marketing partners include categories of companies such as banks or lending institutions and insurance companies.* |

**Other Terms-**We may access or disclose information about you in order to: (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Oasis, our service providers or our customers, including the enforcement of our agreements or policies governing your use of our services; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Oasis' or our service providers' employees, customers or the public. We may also disclose personal information as part of a proposed or actual corporate transaction such as a merger or sale of assets.

Through our website, you can link to other websites of third parties that provide useful information, or who have agreed to offer goods and services to our users. Any personal information you provide on the linked pages is provided directly to the applicable third party and is subject to that third party's privacy policy.

**Revisions to this Privacy Policy-**This Privacy Policy may be revised from time to time by Oasis Financial. We will provide notice on our website that the Privacy Policy has changed, and will otherwise inform you of any changes to the extent required by law. Amendments to this policy will be effective when posted to our website at **www.OasisFinancial.com/privacy**.

# EXHIBIT C

DocuSign Envelope ID: E45755B0-EF31-4EE9-BD90-03DC63CC4D66



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 521-4348
Fax: (847) 897-2955

## CONSUMER DISCLOSURE

**Date:** October 26, 2015
**Consumer:** Pamela Davis
**Oasis Case ID:** P-GA-760620

**PLEASE CALL YOUR CASE MANAGER AT (847) 521-4348, IF YOU HAVE ANY QUESTIONS**

| What Oasis will own from Pamela Davis's Legal Claim: Date Range | Oasis Ownership Amount |
|---|---|
| October 27, 2015 to April 26, 2016 | $1,710.00 |
| April 27, 2016 to October 26, 2016 | $1,881.00 |
| October 27, 2016 to January 26, 2017 | $2,565.00 |
| January 27, 2017 to April 26, 2017 | $2,850.00 |
| April 27, 2017 to October 26, 2017 | $3,135.00 |
| October 27, 2017 to April 26, 2018 | $3,705.00 |
| April 27, 2018 and thereafter | $3,990.00 |
| | |
| **Additional Fees** | |
| Archiving and document management fees | $35.00 |
| Case servicing fee for every 6 months | $35.00 |
| Subsequent case review fee for each additional funding | $20.00 |

IF SELLER (PAMELA DAVIS) COMPLIES WITH THE NONRECOURSE PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE APPLICABLE LEGAL CLAIM(S), **THEN PURCHASER (OASIS) SHALL RECEIVE NOTHING.**

**Price paid by OASIS FINANCIAL to PAMELA DAVIS** to purchase the contingent right to a portion of the Proceeds from the Legal Claim(s): $1,140.00

**Optional Handling Fee;** (Handling fees vary depending on how Pamela Davis chooses to receive the funding):
    For Western Union AND/OR Wire: $97.00-$199.00
    For Check via Overnight Delivery: $99.00            **- $   0 to 219.00**
    For Check via First Class (5-10 Day Delivery): Free
    For Priority Processing Featuring New E-Signature: $20.00
**Amount Pamela Davis will receive from this funding,**
**pending final approval:**                                  **=$ 921.00 to 1,140.00**

I, Pamela Davis, by my signature below confirm that I have read and understand this Consumer Disclosure before reading and signing the Purchase Agreement.

DocuSigned by:
*Pamela Davis*
Pamela Davis

10/26/2015
Date

## PAYMENT INSTRUCTIONS

CONSUMER PAGE
Case ID: P-GA-760620

**Seller: Pamela Davis**          **Case ID: P-GA-760620**
**Purchase Price to Seller: $1,140.00**

| Select if Wanted | Processing Option | Details |
|---|---|---|
| X | Priority Processing | **Priority Processing featuring new E-Signature:** When Oasis receives your Purchase Agreement, Letter of Direction, and Acknowledgment signed by both you and your attorney, your Purchase Agreement will move to the next place in line for review. Priority Processing is **required** with E-Signature, but Priority Processing is also available without E-Signature. **Fee: $20.00** |

| Select One | Delivery Option | How Soon? | Details | Information Needed |
|---|---|---|---|---|
| X Option 1 | **Money in Minutes** at any WESTERN UNION | Same day, as soon as 1 hour | **The FASTEST way to get your funding. No waiting on a delivery service and no check cashing fees!!!** Fee: $113.00 | You must present a government issued photo ID to pick up funds. |
| ☐ Option 2 | Direct Deposit to your bank account. | Same Day | Oasis must receive the signed documents by 2:00 p.m. CST on the funding day. Fee: $113.00 | Name of Bank: _____ Bank's City, State: _____ Routing/ABA Number: _____ Account Number: _____ Bank's Phone Number: _____ Your Name on Account (must match exactly): _____ |
| ☐ Option 3 | Check via Overnight Delivery | 1 Day | A Check sent by **Overnight Delivery** service for delivery by the next business day. Fee: $99.00. (Weekends and holidays not included). | Street Address _____ Apt / Unit # _____ City _____ State _____ Zip _____ |
| ☐ Option 4 | Check via U.S. First Class Mail | 5-10 Days | A Check sent U.S. First Class Mail with Delivery Confirmation Fee: Free | Street Address _____ Apt / Unit # _____ City _____ State _____ Zip _____ |

**Please describe how we helped you during these difficult times:**

This company helped me by paying bills that are past do.

By signing below, I, Pamela Davis, hereby agree to the terms of the above Payment Instructions and understand that I am responsible for the information that I have provided on this form, and that Oasis is not responsible for any problem in delivery or transfer of funds, so long as it follows the instructions provided by Pamela Davis. I also agree to the use of the above statements at the discretion of Oasis.

_Pamela Davis_                    10/26/2015
Pamela Davis                      Date

CONSUMER DISCLOSURE

DocuSign Envelope ID: E4575386-EF91-4EE9-BD36-C3DC89CC4D86



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 521-4348
Fax: (847) 897-2955

## CREDIT AND INFORMATION RELEASE

Oasis Financial ("Oasis") may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction. Credit reports are obtained after you are provisionally approved for funding for verification of liens. **Please note your creditworthiness and credit score are not considered as part of the underwriting process.**

**PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW,** I hereby authorize, without any reservation, any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the Purchase Agreement.

This authorization is valid for purposes of verifying information given and any other lawful purpose covered under the Fair Credit Reporting Act (FCRA). Upon written request, Oasis will tell you whether Oasis has obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. By signing below, you certify the information provided by you to Oasis in your application and during the underwriting process is true, accurate and complete. By signing below, you also authorize Oasis to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis, or its affiliates any and all information and documents pertaining to my current Legal Claim(s) or lawsuit, including pleadings, discovery, investigative reports, contracts, medical records/reports, deposition transcripts, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application and during the underwriting process is true, accurate, and complete.

**Pamela Davis**

| | |
|---|---|
| *Pamela Davis* | 10/26/2015 |
| Signature | Date |
| 478-278-1942 | Redacted |
| Telephone Number | Social Security Number |
| Ga      Redacted | Redacted '1976 |
| State of Driver's License    Driver's License Number | Date of Birth |
| Post Office Box 5034 | Dublin     Ga     31040 |
| Street Address | City      State      Zip |

Docusign Envelope ID: E4575388-EF51-4EE9-BD50-C5DC85CC4D88

# NONRECOURSE PURCHASE AGREEMENT

THIS NONRECOURSE PURCHASE AGREEMENT (the "Purchase Agreement") is made and entered as of 10/26/2015 _____ by and between Oasis Financial ("Purchaser"), at 9525 W. Bryn Mawr, Suite 900, Rosemont, Illinois, 60018, and Pamela Davis at PO Box 5034 Dublin, GA 31040 ("Seller"), (collectively "the Parties").

| | |
|---|---|
| Purchaser: | Oasis Financial (Oasis) |
| Seller: | Pamela Davis |
| Purchase Price: | $1,140.00 |

| Date Range | Oasis Ownership Amount |
|---|---|
| October 27, 2015 to April 26, 2016 | $1,710.00 |
| April 27, 2016 to October 26, 2016 | $1,881.00 |
| October 27, 2016 to January 26, 2017 | $2,565.00 |
| January 27, 2017 to April 26, 2017 | $2,850.00 |
| April 27, 2017 to October 26, 2017 | $3,135.00 |
| October 27, 2017 to April 26, 2018 | $3,705.00 |
| April 27, 2018 and thereafter | $3,990.00 |

| Additional Fees | Fees |
|---|---|
| Archiving and Document Management fee | $35.00 |
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |

SELLER (PAMELA DAVIS) EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM(S) REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM(S) OR ITS PROSECUTION.

IF SELLER (PAMELA DAVIS) COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM(S) CITED BELOW, THEN PURCHASER (OASIS) SHALL RECEIVE NOTHING. SELLER (PAMELA DAVIS) IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER (OASIS) HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.

| Seller's Signature | Date |
|---|---|
| *Pamela Davis* | 10/26/2015 |
| —DocuSigned by: 75F1ECFA3CE84E4... | |
| Pamela Davis | |

## SECTION 1. DEFINITIONS

1.1  "Seller" means Pamela Davis.

1.2  "Seller's Attorney" means Ashleigh R. Madison, Esq., who is Seller's (Pamela Davis's) attorney(s) in respect of the Legal Claim(s) described below and any substitute, new or additional attorney representing Seller (Pamela Davis) in the Legal Claim(s).

1.3  "Purchaser" means Oasis Financial.

1.4  "Legal Claim(s)" means (a) the pending legal action(s) and/or lawsuit(s) to obtain money or property in which Seller (Pamela Davis) is engaged as a result of injuries and/or damages arising out of a personal injury or other claim(s); (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution

proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller (Pamela Davis) is a party.

**1.5** **"Purchase Price"** means the amount paid by Purchaser (Oasis) to Seller (Pamela Davis) as consideration for this Purchase Agreement. The Purchase Price amount in this transaction is $1,140.00.

**1.6** **"Proceeds"** means all property or things of value payable on account of the Legal Claim(s) including without limitation, negotiable instruments, contract rights, annuities and securities whether obtained by judgment, settlement, arbitration, award or otherwise.

**1.7** **"Oasis Ownership Amount"** is the amount Purchaser (Oasis) is to be paid out of the Proceeds of the Legal Claim(s). The Oasis Ownership Amount shall be determined as of the date funds are received by Oasis as indicated by the schedule above.

**1.8** **Additional Fees.** Seller (Pamela Davis) agrees to pay Purchaser (Oasis) the following additional fees at time of delivery of the Oasis Ownership Amount:

> **Archiving and Document Management Fee.** $35.00 per funding for Purchaser's (Oasis') archiving and document management costs.

> **Case Servicing Fee.** $35.00 every six (6) months or increment thereof for servicing of the case which will be assessed at the beginning of each six month period. Subsequent fundings on the same case will not be charged additional servicing fees.

> **Subsequent Case Review.** $20.00 each time Seller (Pamela Davis) requests and receives additional funding from Purchaser.

**1.9** **"Purchased Right"** means the contingent right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided in this Purchase Agreement. To the extent permitted by law applicable to this transaction, Seller (Pamela Davis) hereby sells to Purchaser (Oasis) and Purchaser (Oasis) hereby purchases from Seller (Pamela Davis) Seller's (Pamela Davis's) entire right and title in a portion of the Proceeds equal to the Oasis Ownership Amount. In full satisfaction for the Purchased Right and in consideration for its sale to Purchaser (Oasis), Purchaser (Oasis) shall pay to Seller (Pamela Davis) the Purchase Price.

### SECTION 2. SELLER'S (PAMELA DAVIS'S) AND PURCHASER'S (OASIS') MUTUAL ACKNOWLEDGEMENTS

Seller (Pamela Davis) and Purchaser (Oasis) acknowledge the following:

**2.1** **Nonrecourse; Contingent Right; Risk of Loss.** Delivery of the Oasis Ownership Amount is contingent upon Seller's (Pamela Davis's) recovery from the Legal Claim(s). If a final resolution or settlement of the Legal Claim(s) does not result in the recovery of Proceeds, Seller (Pamela Davis) shall have no obligation to Purchaser (Oasis) and Purchaser (Oasis) shall receive **NOTHING.** Seller (Pamela Davis) shall provide Purchaser (Oasis) with evidence of such final resolution. The Parties intend this transaction to be, and agree that this transaction is, a purchase and sale and not a loan. The likelihood of recovering Proceeds from the Legal Claim(s) is uncertain both as to time and amount. This transaction involves a **substantial economic risk** and a bona fide risk of loss to Purchaser (Oasis). Purchaser (Oasis) and Seller (Pamela Davis) acknowledge that the Purchased Right may be worthless and the Oasis Ownership Amount has been negotiated to account for such risk.

**2.2** **No Control Over Claim(s).** The Parties agree that Purchaser (Oasis) will have no control, influence or involvement in the prosecution or settlement of the Legal Claim(s), nor will the Purchaser (Oasis) be involved in the decisions of Seller (Pamela Davis) and Pamela Davis's attorney relating to the Legal Claim.

**2.3** **Purchase and Sale.** Seller (Pamela Davis) sells and transfers the Purchased Right to the Purchaser (Oasis). Seller (Pamela Davis) shall treat and report the sale and purchase of the Purchased Right as a sale transaction and not as a loan for any and all purposes. In all instances, Seller («PlaintiffFullName») shall cause the Purchased Right to be described as an asset of Purchaser (Oasis). See also Section 3.5.

**2.4** **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim(s).** Purchaser (Oasis) is not engaged in the practice of law and is not serving as Seller's (Pamela Davis's) attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller (Pamela Davis) or Seller's (Pamela Davis's) Attorney in connection with the Legal Claim(s).

**2.5** **Decisions Regarding Legal Claim(s).** Purchaser (Oasis) and Seller (Pamela Davis) acknowledge and agree that **Purchaser (Oasis) shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim(s) or any settlement or resolution thereof** and that the right to make such decisions remains solely with Seller (Pamela Davis) and Seller's (Pamela Davis's) Attorney.

## SECTION 3. SELLER'S (PAMELA DAVIS'S) ACKNOWLEDGEMENTS AND AGREEMENTS

Seller (Pamela Davis) acknowledges and agrees as follows:

**3.1 Title; Capacity.** Seller (Pamela Davis) is the claimant in the Legal Claim(s) and has full right, title and interest in, to, and under the Legal Claim(s) and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

**3.2 Information True, Complete and Correct.** Seller (Pamela Davis) warrants that all information provided to Purchaser (Oasis) is true complete and correct and that Seller (Pamela Davis) has informed Purchaser (Oasis) of all actions, facts and circumstances that materially affect or impair the Legal Claim(s).

**3.3 No Previous Encumbrances.** Seller (Pamela Davis) has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim(s) or the Proceeds in any manner whatsoever other than for attorney's fees and costs relating to this Legal Claim(s). There are no pending or threatened claims, liens, or judgments against Seller (Pamela Davis) or Seller's (Pamela Davis's) assets that would materially impair the value, priority or collectability of the Proceeds payable to Seller (Pamela Davis) in connection with the Legal Claim(s) or the amounts owed to Purchaser (Oasis) pursuant to this Purchase Agreement. In the event that previous encumbrances exist, Seller (Pamela Davis) shall disclose all such encumbrances in writing to Purchaser (Oasis) prior to execution of this Purchase Agreement.

**3.4 No Further Transfer.** Seller (Pamela Davis) shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim(s) or the Proceeds without purchasing Oasis' Purchased Right or without the prior written consent of Purchaser (Oasis), except for transfers by intestacy due to Seller's (Pamela Davis) death. In the event an interest in the Legal Claim(s) or the Proceeds is transferred by intestacy due to Seller's (Pamela Davis's) death, Seller's (Pamela Davis's) heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

**3.5 Treatment in Bankruptcy.** If Seller (Pamela Davis) commences or has commenced against Seller (Pamela Davis) any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to delivery of the full Oasis Ownership Amount to Purchaser (Oasis), Seller (Pamela Davis) shall cause the Purchased Right to be described as an asset of Purchaser (Oasis) and not as a debt obligation of Seller (Pamela Davis) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such proceeding, see also section 2.3 above. Further, Seller (Pamela Davis) agrees that Oasis holds a security interest which is perfected upon attachment which occurs when Purchaser (Oasis) gives the Purchase Price to Seller (Pamela Davis). Despite automatic perfection upon attachment, Purchaser (Oasis) reserves the right to file Uniform Commercial Code Financing Statements to give notice of its Purchased Right to third parties.

**3.6 Financing Statements and Additional Documents.** Seller (Pamela Davis) irrevocably authorizes Purchaser (Oasis) at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto. Purchaser (Oasis) may indicate the following information in such financial statements and amendments: (a) that a portion of the Proceeds that are derived from the Legal Claim(s) are owned by Purchaser (Oasis); and (b) any other information required, in Purchaser's (Oasis') discretion, by the Uniform Commercial Code in any relevant jurisdiction. Seller (Pamela Davis) agrees to furnish any information reasonably requested by Purchaser (Oasis) to facilitate these objectives. Seller (Pamela Davis) will be referred to as the Seller (Pamela Davis) and the Purchaser (Oasis) will be referred to as Buyer in such financing statements. The transaction itself will be referred to as purchase or sale, or a similar term, in such financing statements.

**3.7 Substitution of Attorneys.** If Seller (Pamela Davis) obtains new or additional counsel in regards to the Legal Claim(s), Seller (Pamela Davis) agrees to provide Purchaser (Oasis) with written notice of new or additional counsel and deliver a copy of the Irrevocable Letter of Direction to such new or additional counsel. Any such new or additional counsel shall be included in the definition of "Seller's Attorney in the Legal Claim(s)" for all purposes of this Purchase Agreement.

**3.8 Requests for Documents and Information.** Seller (Pamela Davis) shall provide, and authorizes, and directs Seller's (Pamela Davis's) Attorney to provide Purchaser (Oasis) with: (a) prompt written notice of any receipt by Seller (Pamela Davis) or Seller's (Pamela Davis's) Attorney of Proceeds from the Legal Claim(s) or documents evidencing such receipt; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in connection with the Legal Claim(s) by any person or party; (c) copies of non-privileged documents relating to any other material development in connection to the Legal Claim(s) or the Proceeds; and (d) verbal or written information regarding non-privileged matters including periodic case statuses as reasonably requested by Purchaser (Oasis).

## SECTION 4. DELIVERY OF THE OASIS OWNERSHIP AMOUNT AND PRIORITY

**4.1 Priority of Delivery to Purchaser (Oasis).** Seller (Pamela Davis) shall not be entitled to receive any Proceeds until Purchaser (Oasis) has received the Oasis Ownership Amount. If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser (Oasis) shall receive all of the Proceeds, subordinate only to attorneys' fees and costs and related medical liens. **If Seller (Pamela Davis) complies with the terms of this Purchase Agreement in their entirety and recovers nothing from the Legal Claim(s), then Purchaser (Oasis) shall receive nothing.** See also Section 2.1.

DocuSign Envelope ID: E4575366-EF31-4EE9-BD50-C3DC63CC4D66

**4.2    Timing of Delivery.**  Seller (Pamela Davis) shall direct Seller's (Pamela Davis's) Attorney to tender the full Oasis Ownership Amount to Oasis from the Proceeds of the Legal Claim(s) within 10 days of Seller's (Pamela Davis's) Attorney's receipt of the Proceeds.  Seller (Pamela Davis) shall prohibit Seller's (Pamela Davis) Attorney from disbursing the Oasis Ownership Amount to Seller (Pamela Davis), any other individuals, or other entities without first satisfying the Purchased Right. Seller (Pamela Davis) agrees not to have the Oasis Ownership amount paid to Seller (Pamela Davis).  Purchaser (Oasis) reserves the right to assess collection costs as applicable by law if the Oasis Ownership Amount remains unsatisfied more than 10 days after receipt of Proceeds by Seller's (Pamela Davis's) Attorney.   If any dispute arises over the amount owed to Oasis, Seller (Pamela Davis) agrees to direct that Seller's (Pamela Davis) Attorney shall hold the funds in trust until the dispute is resolved.

## SECTION 5. EVENT OF BREACH; SPECIFIC BREACH;
## SELLER'S (PAMELA DAVIS'S) RIGHT OF RESCISSION

**5.1    Event of Breach.**  The breach by Seller (Pamela Davis) of any of Seller's (Pamela Davis's) obligations under this Purchase Agreement shall constitute an "Event of Breach" hereunder.  In an Event of Breach, Purchaser (Oasis) shall have all rights, powers, and remedies provided in this Purchase Agreement and as allowed by law or in equity, including, but not necessarily limited to, reimbursement of any and all legal costs and attorney fees incurred in enforcing Purchaser's (Oasis') rights, powers, and remedies under this Purchase Agreement. Additionally, Purchaser (Oasis) reserves the right to obtain a judgment against Seller (Pamela Davis), use a collection agency and use all other means allowed under the law and equity to enforce Purchaser's (Oasis') rights, powers, and remedies under this Purchase Agreement.

**5.2    Creation of Trust.**  Should the Oasis Ownership Amount be sent to Seller (Pamela Davis), Seller (Pamela Davis) is appointed as Purchaser's (Oasis') trustee with respect to the Oasis Ownership Amount, the corpus of the trust. Should the Oasis Ownership Amount be paid to Seller (Pamela Davis), Seller (Pamela Davis), as the grantor and trustee, expressly intends that a trust be created and acknowledges and accepts that a trust is created.  Seller (Pamela Davis) agrees to hold the Oasis Ownership Amount in trust for Purchaser (Oasis) and send such amounts to Purchaser (Oasis), the beneficiary of the trust, within ten days of receipt of Proceeds.

**5.3    Receipt of Funds.**  If Seller (Pamela Davis) does not receive the Purchase Price, Seller (Pamela Davis) shall notify Purchaser (Oasis) in writing within FIVE (5) days of Purchaser's (Oasis') receipt of the fully executed Purchase Agreement. After FIVE (5) days, Seller (Pamela Davis) is presumed to have received the Purchase Price, and the Purchase Agreement is deemed to be in full force and effect.

**5.4    SELLER, (PAMELA DAVIS'S) RIGHT OF RESCISSION:**

**PAMELA DAVIS MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) DAYS FROM THE DATE PAMELA DAVIS RECEIVES THE PURCHASE PRICE FROM PURCHASER (OASIS). TO CANCEL THIS AGREEMENT, PAMELA DAVIS MUST EITHER:**

(a) **RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER (OASIS) BY DELIVERING THE UNCASHED CHECK TO PURCHASER (OASIS) IN PERSON WITHIN FIVE (5) DAYS; OR**

(b) **MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S (OASIS') UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED, OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S (OASIS') ADDRESS AS SET FORTH IN SECTION 6.2 BELOW.**

## SECTION 6. MISCELLANEOUS

**6.1    Survival of Representations.**  All of the representations, warranties, covenants and agreements of the Parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

**6.2    Notices.**  All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made if delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the Parties at the following addresses:

**If to Purchaser (Oasis):** Oasis Financial, 9525 W. Bryn Mawr Ave., Suite 900, Rosemont, Illinois, 60018, Attn: Controller.

**If to Seller (Pamela Davis):** to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the Parties hereto shall have specified in writing to the other.

DocuSign Envelope ID: E45753B6-EF31-4EE9-BD30-C3DC63CC4D68

**6.3**     **Release to Contact Third Parties.** It may be necessary to disclose information to third parties. Seller (Pamela Davis) explicitly and irrevocably authorizes Purchaser (Oasis) to disclose any information to third parties as it deems appropriate to the extent permitted by law and also as referenced in the Oasis Privacy Policy, a copy of which is provided with this Purchase Agreement. Seller (Pamela Davis) releases Purchaser (Oasis) from any and all liability as a result of the release of any information.

**6.4**     **Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**6.5**     **GOVERNING LAW AND FORUM. THIS PURCHASE AGREEMENT, AND ALL LAWSUITS, DISPUTES, CLAIMS, OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, SHALL BE GOVERNED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF GEORGIA.**

**THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY CONSENT TO SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS FOR ANY DISPUTES, CLAIMS OR OTHER PROCEEDINGS ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT, OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, AND AGREE NOT TO COMMENCE ANY SUCH LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING EXCEPT IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS. THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT, OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, AND HEREBY FURTHER IRREVOCABLY AND UNCONDITIONALLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS THAT ANY SUCH LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING BROUGHT IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.**

**EACH OF THE PARTIES TO THE CONTRACT FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS BY MAILING COPIES THEREOF BY REGISTERED OR CERTIFIED UNITED STATES MAIL, POSTAGE PREPAID, TO EACH OF THE PARTIES TO THE PURCHASE AGREEMENT AT ITS ADDRESS SPECIFIED IN THIS PURCHASE AGREEMENT.**

**6.6**     **WAIVER OF JURY TRIAL, CONSOLIDATION AND CLASS ACTION; COSTS.**

**THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.**

**THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.**

**6.7**     **Counterparts; Electronic and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement. This Purchase Agreement shall be deemed to have been executed in Cook County, Illinois and shall only be in full force and effect upon the signing hereof by a duly authorized representative of Purchaser (Oasis). Information, records, and signatures (electronic or facsimile) shall not be denied legal effect, validity, or enforceability solely on the grounds that they are in electronic and/or facsimile form. Where a rule of law requires information be "written" or "in writing", or provides for certain consequences if it is not, the Parties agree that an electronic and/or facsimile record shall satisfy that rule of law. Where a rule of law requires a signature, or provides for certain consequences if a document is not signed, the parties agree that an electronic and/or facsimile signature shall satisfy that rule of law.

**6.8**     **Assignment; Use of Information.** Purchaser's (Oasis') rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller (Pamela Davis). Seller's (Pamela Davis's) rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser (Oasis), except for transfer by intestacy due to Seller's (Pamela Davis's) death in which case Seller's (Pamela Davis's) heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller (Pamela Davis) agrees that Purchaser (Oasis) may share information that Purchaser (Oasis) obtained about Seller (Pamela Davis) (whether from Seller (Pamela Davis) or other person or entity) with potential assignees to whom Purchaser (Oasis) may assign its rights and obligations under this

Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser (Oasis); and (ii) Purchaser (Oasis) enters into an appropriate confidentiality agreement with any such potential assignee.

6.9     **No Third Party Beneficiaries; Successors and Assigns.** Subject to the provisions of <u>Section 6.8</u> this Purchase Agreement is solely for the benefit of Purchaser (Oasis) and Seller (Pamela Davis); and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the Parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

6.10     **Severability.** If any provision of this Purchase Agreement or the application of any such provision to any party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that any term or provision of this Purchase Agreement is invalid or unenforceable, the Parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

6.11     **LEGAL REPRESENTATION. SELLER (PAMELA DAVIS) UNDERSTANDS AND ACKNOWLEDGES THAT: (A) PURCHASER (OASIS) HAS RECOMMENDED THAT SELLER (PAMELA DAVIS) ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER (PAMELA DAVIS) HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S (PAMELA DAVIS'S) CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.**

6.12     **Construction.** The Parties intend that this Purchase Agreement be deemed to have been prepared by all of the Parties and that each party has had the opportunity to negotiate each term of the agreement prior to execution, and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement.

---

**I, Pamela Davis, certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages. I have had the opportunity to negotiate each term prior to execution of this Purchase Agreement, and I agree to be bound by the terms and conditions of this Purchase Agreement. This Purchase Agreement shall not be effective until the Purchase Price is paid to Seller (Pamela Davis).**

| Seller's Signature | Date | Purchaser's Signature | Date |
|---|---|---|---|
| | 10/26/2015 | | |
| *Pamela Davis* | | | |
| **Pamela Davis** | | **Oasis Financial** | |

---



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 521-4348
Fax: (847) 897-2955

## IRREVOCABLE LETTER OF DIRECTION

<u>Sent by Fax and/or E-Mail</u>                                                    October 26, 2015

Ashleigh R. Madison, Esq.
426 Barnard St
Savannah, GA 31401

**PLEASE CONTACT OASIS IF YOUR CONTACT INFORMATION IS INCORRECT**

Dear Ashleigh R. Madison,

Be advised that I have sold a contingent right to receive a portion of the Proceeds[1] of my Legal Claim(s) equal to the Oasis Ownership Amount to Oasis Financial ("Oasis"). I hereby irrevocably direct my current attorney or any subsequent attorney or law firms that may represent me ("Seller's Attorney"), to tender the full Oasis Ownership Amount to Oasis pursuant to the Purchase Agreement from any and all of the Proceeds due to me from the Legal Claim(s) in which you represent me. I understand that by making this irrevocable direction, I can at no future time withdraw or revoke this direction. PLEASE BE ADVISED THAT UNDER NO CIRCUMSTANCES MAY YOU, SELLER'S ATTORNEY, DISBURSE THE OASIS OWNERSHIP AMOUNT TO ME, ANY OTHER INDIVIDUALS, OR OTHER ENTITIES WITHOUT FIRST SATISFYING OASIS' PURCHASED RIGHT. If a check is sent in my name, I hereby grant you the authority to endorse my check into your trust account and pay to Oasis its Ownership Amount. I certify that I do not have any outstanding past due child support obligations.

Seller's Initials: _PD_

<u>I have read the Nonrecourse Purchase Agreement and fully understand my obligations to Oasis.</u>  I instruct you, Seller's Attorney, to provide Oasis with periodic information on my case and brief case statuses at no cost to Oasis, and in the event that you no longer represent me I instruct you to provide Oasis with any insurance, new attorney or other information requested. This letter may be executed in counterparts electronically, and/or by facsimile, each of which shall be deemed an original and all of which shall together constitute a single agreement. By signing the acknowledgement below, you agree that this letter is from me and that you will comply with the terms of this Irrevocable Letter of Direction.

Sincerely,

_Pamela Davis_
—71F1ECFA0CE84E4...

Pamela Davis-Seller

### ATTORNEY ACKNOWLEDGMENT

- I, Ashleigh R. Madison, Esq., acknowledge receipt of Pamela Davis's Irrevocable Letter of Direction, the Nonrecourse Purchase Agreement, and the Notice of Purchase.

- My fee agreement is on a contingency basis and there are liens and/or letters of protection (exclusive of attorney's fees and costs) against the case of approximately _____, and I will deliver the Oasis Ownership Amount subordinate to attorney fees, costs and related medical liens as per instructions above.

- I fully expect that any Proceeds from the Legal Claim(s) will be sent to me directly and not directly to the claimant (Seller); I agree that all disbursements of proceeds will be made through my attorney trust account.

- I have not, and will not accept any advice, direction, or payment from Oasis regarding the Legal Claim(s).

- To the best of my knowledge, the above client has **NOT** received any previous cash fundings on his/her Legal Claim(s), except for the Purchase Agreement(s) with Oasis.

- I will not participate in or acknowledge any future cash funding(s) for the above client without first resolving the Oasis Ownership Amount.

- I agree and acknowledge that upon request, I will inform Oasis whether Pamela Davis's case is still pending. I will provide other non-privileged information to Oasis and if Pamela Davis's case settles, I will request a payoff and inform Oasis that the matter has settled.

- I acknowledge that upon my signature below, I understand the Purchase Agreement will be executed by the Parties and Oasis will provide funding to Pamela Davis. I will contact Oasis when the Legal Claim(s) has been resolved.

**Please provide email for case updates:**

_Ashleigh R. Madison/raw_                    _Southeast law@gmail.com_
Ashleigh R. Madison, Esq.                         E-mail

---

[1] All capitalized terms used herein are defined as set forth in the Purchase Agreement.

DocuSign Envelope ID: E457536B-EF31-4EE9-BD50-C3DC83CC4D66



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 521-4348
Fax: (847) 897-2955

## NOTICE OF PURCHASE

October 26, 2015

Ashleigh R. Madison, Esq.
426 Barnard St
Savannah, GA 31401

RE:   OUR CLIENT:   **Pamela Davis**
       OUR CASE ID:   **P-GA-760620**

Dear Ashleigh R. Madison,

Oasis Financial ("Oasis") has entered into a Purchase Agreement (attached) with your client Pamela Davis. Oasis has purchased a right in a portion of the potential Proceeds from the Legal Claim(s) of Pamela Davis.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL THE OASIS OWNERSHIP AMOUNT (PLUS ANY APPLICABLE FEES DUE AT DELIVERY) HAS BEEN SATISFIED.**

### OASIS OWNERSHIP AMOUNT

| Date Range | Oasis Ownership Amount |
|---|---|
| October 27, 2015 to April 26, 2016 | $1,710.00 |
| April 27, 2016 to October 26, 2016 | $1,881.00 |
| October 27, 2016 to January 26, 2017 | $2,565.00 |
| January 27, 2017 to April 26, 2017 | $2,850.00 |
| April 27, 2017 to October 26, 2017 | $3,135.00 |
| October 27, 2017 to April 26, 2018 | $3,705.00 |
| April 27, 2018 and thereafter | $3,990.00 |

**Additional Fees**

| | |
|---|---|
| Archiving and document management fees | $35.00 |
| Case servicing fee for every 6 months | $35.00 |
| Subsequent case review fee for each additional funding | $20.00 |

**Please call (888) 529-1253 or by fax at (847) 521-4391 to receive more information about the Oasis Ownership Amount.**

DocuSign Envelope ID: E457506B-EF31-4EE9-BD50-C5DC65CC4D06



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 521-4348
Fax: (847) 897-2955

# OASIS FINANCIAL PRIVACY POLICY (effective April 2012)

The privacy and security of your personal information is important to Oasis. We provide this Privacy Policy to advise you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

**What personal information does Oasis collect?** The types of personal information we collect and share depend on the product or service you have with us, but is clearly stated on our applications. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information can include: name, address, e-mail address, telephone number(s), your date of birth, social security number, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports. We may also use your information in order to obtain additional information regarding you, such as credit or consumer reports.

**How does Oasis share personal information?** We share customers' personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law. Some of this sharing is necessary to provide you with the services you are requesting from us. In the section below, we list the primary reasons we share customers' personal information; the reasons Oasis chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Oasis share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes—such as to process your transactions, maintain your account(s), respond to court orders and legal investigations | Yes | No |
| For our marketing purposes— to offer our products and services to you | Yes | Yes |
| For joint marketing with other financial companies | Yes | Yes |
| For our affiliates' everyday business purposes— information related to your transactions and experiences | Yes | No (except CA and VT residents) |
| For our affiliates' everyday business purposes | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For non-affiliates to market to you | Yes | Yes |

**To limit our sharing, simply complete our Opt-Out form by visiting us at www.OasisFinancial.com/privacy and follow the instructions on the site.-----Why can't I limit all sharing?** In many circumstances, sharing information is necessary for us to provide you the services you are requesting. Federal law gives you the right to limit only

- sharing for affiliates' everyday business purposes
- affiliates from using your information to market to you
- sharing for non-affiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under specific state law.

**California:** In accordance with California law, Oasis Financialwill automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

**Vermont:** In accordance with Vermont law, Oasis Financialwill automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

**How Does Oasis protect my personal information?** To protect your personal information from unauthorized access and use, we use reasonable security measures that comply with applicable laws. These measures include computer safeguards and secured files and

Docusign Envelope ID: E457536B-EF31-4EE9-BD50-C5DC65CC4D66

buildings. Our agreements with service providers or other nonaffiliated companies require them to treat your personal information in a confidential and secure manner.

**How does Oasis collect my personal information?** We collect your personal information, for example, when you, your attorney, or third parties, such as credit bureaus, affiliates, or other companies provide it to us on applications and other forms, by phone, fax, the Internet, or other delivery services.

**What happens when I limit sharing for an account I hold jointly with someone else?** Your choices will apply to everyone on your account.

**Passive collection of information**-While you are on our website, we may automatically track information related to your voluntary use of the website. Such voluntary provided information may include, among other things, URL tracking information, user's browser, user's IP address, files viewed by you and your path through the website, date, time and frequency of accessing website and length of time spent reviewing certain features. In addition we may (i) use pixels provided to us by a third party to track the pages viewed, the number of pages viewed, and the number of customer conversions obtained from third parties and marketing agencies, (ii) place a cookie, provided to us by a third party, on your computer that tracks if you click on an advertisement so that future advertisements can be targeted to you based on the advertisements clicked on by you and/or your other activities on the website.

**Definitions:**

| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. *Our affiliates include Oasis Financial Holding Company, LLC and Oasis Financial Operating Company, LLC* |
|---|---|
| **Non-affiliates:** | Companies not related by common ownership or control. They can be financial and non financial companies. *Non-affiliates we share with can include companies such as money transfer companies, collection agencies, investment and insurance companies, mortgage and brokerage companies, retailers or marketing companies.* |
| **Joint Marketing** | A formal agreement between non-affiliated financial companies that together market financial products or services to you. *Our joint marketing partners include categories of companies such as banks or lending institutions and insurance companies.* |

**Other Terms**-We may access or disclose information about you in order to: (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Oasis, our service providers or our customers, including the enforcement of our agreements or policies governing your use of our services; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Oasis' or our service providers' employees, customers or the public. We may also disclose personal information as part of a proposed or actual corporate transaction such as a merger or sale of assets.

Through our website, you can link to other websites of third parties that provide useful information, or who have agreed to offer goods and services to our users. Any personal information you provide on the linked pages is provided directly to the applicable third party and is subject to that third party's privacy policy.

**Revisions to this Privacy Policy**-This Privacy Policy may be revised from time to time by Oasis Financial. We will provide notice on our website that the Privacy Policy has changed, and will otherwise inform you of any changes to the extent required by law. Amendments to this policy will be effective when posted to our website at **www.OasisFinancial.com/privacy**.

DocuSign Envelope ID: 7AFF063C-1D0E-48E3-B1B3-26B31DC1DC28



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 521-4411
Fax: (847) 897-2955

## CONSUMER DISCLOSURE

| | |
|---|---|
| **Date:** November 24, 2015 | **PLEASE CALL YOUR CASE MANAGER AT (847) 521-4411, IF YOU HAVE ANY QUESTIONS** |
| **Consumer:** Pamela Davis | |
| **Oasis Case ID:** P-GA-760620 | |

| What Oasis will own from Pamela Davis's Legal Claim: | |
|---|---|
| **Date Range** | **Oasis Ownership Amount** |
| **November 25, 2015 to May 24, 2016** | $930.00 |
| **May 25, 2016 to November 24, 2016** | $1,023.00 |
| **November 25, 2016 to February 24, 2017** | $1,395.00 |
| **February 25, 2017 to May 24, 2017** | $1,550.00 |
| **May 25, 2017 to November 24, 2017** | $1,705.00 |
| **November 25, 2017 to May 24, 2018** | $2,015.00 |
| **May 25, 2018 and thereafter** | $2,170.00 |
| | |
| **Additional Fees** | |
| Archiving and document management fees | $35.00 |
| Case servicing fee for every 6 months | $35.00 |
| Subsequent case review fee for each additional funding | $20.00 |

IF SELLER (PAMELA DAVIS) COMPLIES WITH THE NONRECOURSE PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE APPLICABLE LEGAL CLAIM(S), **THEN PURCHASER (OASIS) SHALL RECEIVE NOTHING**.

**Price paid by OASIS FINANCIAL to PAMELA DAVIS** to purchase the contingent
right to a portion of the Proceeds from the Legal Claim(s):                    $620.00

**Optional Handling Fee;** (Handling fees vary depending on how
Pamela Davis chooses to receive the funding):
    For Western Union AND/OR Wire: $97.00-$199.00
    For Check via Overnight Delivery: $99.00          - $    0 to 219.00
    For Check via First Class (5-10 Day Delivery): Free
    For Priority Processing Featuring New E-Signature: $20.00
**Amount Pamela Davis will receive from this funding,**          =$ 401.00 to 620.00
**pending final approval:**

I, Pamela Davis, by my signature below confirm that I have read and understand this Consumer Disclosure before reading and signing the Purchase Agreement.

| DocuSigned by: | |
|---|---|
| *Pamela Davis* | 11/24/2015 |
| Pamela Davis | Date |

## PAYMENT INSTRUCTIONS

CONSUMER PAGE
Case ID: P-GA-760620

**Seller: Pamela Davis**
**Purchase Price to Seller: $620.00**

**Case ID: P-GA-760620**

| Select if Wanted | Processing Option | Details |
|---|---|---|
| ☒ | Priority Processing | **Priority Processing featuring new E-Signature:** When Oasis receives your Purchase Agreement, Letter of Direction, and Acknowledgment signed by both you and your attorney, your Purchase Agreement will move to the next place in line for review. Priority Processing **is required** with E-Signature, but Priority Processing is also available without E-Signature. **Fee: $20.00** |

| Select One | Delivery Option | How Soon? | Details | Information Needed |
|---|---|---|---|---|
| ☒ Option 1 | **Money in Minutes at any WESTERN UNION** | Same day, as soon as 1 hour | **The FASTEST way to get your funding. No waiting on a delivery service and no check cashing fees!!!** Fee: $97.00 | You must present a government issued photo ID to pick up funds. |
| ☐ Option 2 | Direct Deposit to your bank account. | Same Day | Oasis must receive the signed documents by 2:00 p.m. CST on the funding day. Fee: $97.00 | Name of Bank: ___ Bank's City, State: ___ Routing/ABA Number: ___ Account Number: ___ Bank's Phone Number: ___ Your Name on Account (must match exactly): ___ |
| ☐ Option 3 | Check via Overnight Delivery | 1 Day | A Check sent by **Overnight Delivery** service for delivery by the next business day. Fee: $99.00. (Weekends and holidays not included). | Street Address ___ Apt / Unit # ___ City ___ State ___ Zip ___ |
| ☐ Option 4 | Check via U.S. First Class Mail | 5-10 Days | A **Check** sent U.S. First Class Mail with Delivery Confirmation Fee: Free | Street Address ___ Apt / Unit # ___ City ___ State ___ Zip ___ |

**Please describe how we helped you during these difficult times:**

I am having difficulty with my bills and I need a little help from my settlement.

By signing below, I, Pamela Davis, hereby agree to the terms of the above Payment Instructions and understand that I am responsible for the information that I have provided on this form, and that Oasis is not responsible for any problem in delivery or transfer of funds, so long as it follows the instructions provided by Pamela Davis. I also agree to the use of the above statements at the discretion of Oasis.

*Pamela Davis*
—71F1ECFA3CE84E4...

**Pamela Davis**

11/24/2015

**Date**

CONSUMER DISCLOSURE

DocuSign Envelope ID: 7AFF063C-1D0E-48E3-B1B3-26B31DC1DC28



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 521-4411
Fax: (847) 897-2955

## CREDIT AND INFORMATION RELEASE

Oasis Financial ("Oasis") may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction. Credit reports are obtained after you are provisionally approved for funding for verification of liens. **Please note your creditworthiness and credit score are not considered as part of the underwriting process.**

**PLEASE READ CAREFULLY:** BY MY SIGNATURE BELOW, I hereby authorize, without any reservation, any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the Purchase Agreement.

This authorization is valid for purposes of verifying information given and any other lawful purpose covered under the Fair Credit Reporting Act (FCRA). Upon written request, Oasis will tell you whether Oasis has obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. By signing below, you certify the information provided by you to Oasis in your application and during the underwriting process is true, accurate and complete. By signing below, you also authorize Oasis to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis, or its affiliates any and all information and documents pertaining to my current Legal Claim(s) or lawsuit, including pleadings, discovery, investigative reports, contracts, medical records/reports, deposition transcripts, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application and during the underwriting process is true, accurate, and complete.

**Pamela Davis**

| | |
|---|---|
| *DocuSigned by:* Pamela Davis | 11/24/2015 |
| Signature | Date |
| 478-278-1942 | Redacted |
| Telephone Number | Social Security Number |
| ga       Redacted | Redacted 1976 |
| State of Driver's License ·    Driver's License Number | Date of Birth |
| post office box 5034 | dublin      ga      31040 |
| Street Address | City     State     Zip |

DocuSign Envelope ID: 7AFF063C-1D0E-48E3-B1B3-26B31DC1DC28

# NONRECOURSE PURCHASE AGREEMENT

**THIS NONRECOURSE PURCHASE AGREEMENT** (the "Purchase Agreement") is made and entered as of <u>11/24/2015</u> _____ by and between Oasis Legal Finance, LLC d/b/a Oasis Financial ("Purchaser"), at 9525 W. Bryn Mawr, Suite 900, Rosemont, Illinois, 60018, and <u>Pamela Davis</u> at <u>PO Box 5034  Dublin, GA 31040</u> ("Seller"), (collectively "the Parties").

| Purchaser: | Oasis Financial (Oasis) |
|---|---|
| **Seller:** | Pamela Davis |
| **Purchase Price:** | $620.00 |

| **Date Range** | **Oasis Ownership Amount** |
|---|---|
| **November 25, 2015 to May 24, 2016** | $930.00 |
| **May 25, 2016 to November 24, 2016** | $1,023.00 |
| **November 25, 2016 to February 24, 2017** | $1,395.00 |
| **February 25, 2017 to May 24, 2017** | $1,550.00 |
| **May 25, 2017 to November 24, 2017** | $1,705.00 |
| **November 25, 2017 to May 24, 2018** | $2,015.00 |
| **May 25, 2018 and thereafter** | $2,170.00 |

| **Additional Fees** | **Fees** |
|---|---|
| **Archiving and Document Management fee** | $35.00 |
| **Case Servicing Fee every 6 months** | $35.00 |
| **Subsequent Case Review for each additional funding** | $20.00 |

**SELLER (PAMELA DAVIS) EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM(S) REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM(S) OR ITS PROSECUTION.**

**IF SELLER (PAMELA DAVIS) COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM(S) CITED BELOW, THEN PURCHASER (OASIS) SHALL RECEIVE NOTHING. SELLER (PAMELA DAVIS) IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER (OASIS) HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.**

| Seller's Signature | Date |
|---|---|
| DocuSigned by: *Pamela Davis* — 71F1ECFA3CE84E4... | 11/24/2015 |

**Pamela Davis**

## SECTION 1. DEFINITIONS

**1.1** "**Seller**" means Pamela Davis.

**1.2** "**Seller's Attorney**" means Ashleigh R. Madison, Esq., who is Seller's (Pamela Davis's) attorney(s) in respect of the Legal Claim(s) described below and any substitute, new or additional attorney representing Seller (Pamela Davis) in the Legal Claim(s).

**1.3** "**Purchaser**" means Oasis Financial.

**1.4** "**Legal Claim(s)**" means (a) the pending legal action(s) and/or lawsuit(s) to obtain money or property in which Seller (Pamela Davis) is engaged as a result of injuries and/or damages arising out of a personal injury or other claim(s); (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution

proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller (Pamela Davis) is a party.

**1.5** **"Purchase Price"** means the amount paid by Purchaser (Oasis) to Seller (Pamela Davis) as consideration for this Purchase Agreement. The Purchase Price amount in this transaction is $620.00.

**1.6** **"Proceeds"** means all property or things of value payable on account of the Legal Claim(s) including without limitation, negotiable instruments, contract rights, annuities and securities whether obtained by judgment, settlement, arbitration, award or otherwise.

**1.7** **"Oasis Ownership Amount"** is the amount Purchaser (Oasis) is to be paid out of the Proceeds of the Legal Claim(s). The Oasis Ownership Amount shall be determined as of the date funds are received by Oasis as indicated by the schedule above.

**1.8** **Additional Fees.** Seller (Pamela Davis) agrees to pay Purchaser (Oasis) the following additional fees at time of delivery of the Oasis Ownership Amount:

**Archiving and Document Management Fee.** $35.00 per funding for Purchaser's (Oasis') archiving and document management costs.

**Case Servicing Fee.** $35.00 every six (6) months or increment thereof for servicing of the case which will be assessed at the beginning of each six month period. Subsequent fundings on the same case will not be charged additional servicing fees.

**Subsequent Case Review.** $20.00 each time Seller (Pamela Davis) requests and receives additional funding from Purchaser.

**1.9** **"Purchased Right"** means the contingent right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided in this Purchase Agreement. To the extent permitted by law applicable to this transaction, Seller (Pamela Davis) hereby sells to Purchaser (Oasis) and Purchaser (Oasis) hereby purchases from Seller (Pamela Davis) Seller's (Pamela Davis's) entire right and title in a portion of the Proceeds equal to the Oasis Ownership Amount. In full satisfaction for the Purchased Right and in consideration for its sale to Purchaser (Oasis), Purchaser (Oasis) shall pay to Seller (Pamela Davis) the Purchase Price.

<u>**SECTION 2. SELLER'S (PAMELA DAVIS'S) AND PURCHASER'S (OASIS')**</u>
<u>**MUTUAL ACKNOWLEDGEMENTS**</u>

Seller (Pamela Davis) and Purchaser (Oasis) acknowledge the following:

**2.1** **Nonrecourse; Contingent Right; Risk of Loss.** Delivery of the Oasis Ownership Amount is contingent upon Seller's (Pamela Davis's) recovery from the Legal Claim(s). If a final resolution or settlement of the Legal Claim(s) does not result in the recovery of Proceeds, Seller (Pamela Davis) shall have no obligation to Purchaser (Oasis) and Purchaser (Oasis) shall receive **NOTHING.** Seller (Pamela Davis) shall provide Purchaser (Oasis) with evidence of such final resolution. The Parties intend this transaction to be, and agree that this transaction is, a purchase and sale and not a loan. The likelihood of recovering Proceeds from the Legal Claim(s) is uncertain both as to time and amount. This transaction involves a **substantial economic risk** and a bona fide risk of loss to Purchaser (Oasis). Purchaser (Oasis) and Seller (Pamela Davis) acknowledge that the Purchased Right may be worthless and the Oasis Ownership Amount has been negotiated to account for such risk.

**2.2** **No Control Over Claim(s).** The Parties agree that Purchaser (Oasis) will have no control, influence or involvement in the prosecution or settlement of the Legal Claim(s), nor will the Purchaser (Oasis) be involved in the decisions of Seller (Pamela Davis) and Pamela Davis's attorney relating to the Legal Claim.

**2.3** **Purchase and Sale.** Seller (Pamela Davis) sells and transfers the Purchased Right to the Purchaser (Oasis). Seller (Pamela Davis) shall treat and report the sale and purchase of the Purchased Right as a sale transaction and not as a loan for any and all purposes. In all instances, Seller («PlaintiffFullName») shall cause the Purchased Right to be described as an asset of Purchaser (Oasis). See also Section 3.5.

**2.4** **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim(s).** Purchaser (Oasis) is not engaged in the practice of law and is not serving as Seller's (Pamela Davis's) attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller (Pamela Davis) or Seller's (Pamela Davis's) Attorney in connection with the Legal Claim(s).

**2.5** **Decisions Regarding Legal Claim(s).** Purchaser (Oasis) and Seller (Pamela Davis) acknowledge and agree that **Purchaser (Oasis) shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim(s) or any settlement or resolution thereof** and that the right to make such decisions remains solely with Seller (Pamela Davis) and Seller's (Pamela Davis's) Attorney.

## SECTION 3. SELLER'S (PAMELA DAVIS'S) ACKNOWLEDGEMENTS AND AGREEMENTS

Seller (Pamela Davis) acknowledges and agrees as follows:

**3.1     Title; Capacity.** Seller (Pamela Davis) is the claimant in the Legal Claim(s) and has full right, title and interest in, to, and under the Legal Claim(s) and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

**3.2     Information True, Complete and Correct.** Seller (Pamela Davis) warrants that all information provided to Purchaser (Oasis) is true complete and correct and that Seller (Pamela Davis) has informed Purchaser (Oasis) of all actions, facts and circumstances that materially affect or impair the Legal Claim(s).

**3.3     No Previous Encumbrances.** Seller (Pamela Davis) has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim(s) or the Proceeds in any manner whatsoever other than for attorney's fees and costs relating to this Legal Claim(s). There are no pending or threatened claims, liens, or judgments against Seller (Pamela Davis) or Seller's (Pamela Davis's) assets that would materially impair the value, priority or collectability of the Proceeds payable to Seller (Pamela Davis) in connection with the Legal Claim(s) or the amounts owed to Purchaser (Oasis) pursuant to this Purchase Agreement. In the event that previous encumbrances exist, Seller (Pamela Davis) shall disclose all such encumbrances in writing to Purchaser (Oasis) prior to execution of this Purchase Agreement.

**3.4     No Further Transfer.** Seller (Pamela Davis) shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim(s) or the Proceeds without purchasing Oasis' Purchased Right or without the prior written consent of Purchaser (Oasis), except for transfers by intestacy due to Seller's (Pamela Davis) death. In the event an interest in the Legal Claim(s) or the Proceeds is transferred by intestacy due to Seller's (Pamela Davis's) death, Seller's (Pamela Davis's) heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

**3.5     Treatment in Bankruptcy.** If Seller (Pamela Davis) commences or has commenced against Seller (Pamela Davis) any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to delivery of the full Oasis Ownership Amount to Purchaser (Oasis), Seller (Pamela Davis) shall cause the Purchased Right to be described as an asset of Purchaser (Oasis) and not as a debt obligation of Seller (Pamela Davis) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such proceeding, see also section 2.3 above. Further, Seller (Pamela Davis) agrees that Oasis holds a security interest which is perfected upon attachment which occurs when Purchaser (Oasis) gives the Purchase Price to Seller (Pamela Davis). Despite automatic perfection upon attachment, Purchaser (Oasis) reserves the right to file Uniform Commercial Code Financing Statements to give notice of its Purchased Right to third parties.

**3.6     Financing Statements and Additional Documents.** Seller (Pamela Davis) irrevocably authorizes Purchaser (Oasis) at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto. Purchaser (Oasis) may indicate the following information in such financial statements and amendments: (a) that a portion of the Proceeds that are derived from the Legal Claim(s) are owned by Purchaser (Oasis); and (b) any other information required, in Purchaser's (Oasis') discretion, by the Uniform Commercial Code in any relevant jurisdiction. Seller (Pamela Davis) agrees to furnish any information reasonably requested by Purchaser (Oasis) to facilitate these objectives. Seller (Pamela Davis) will be referred to as the Seller (Pamela Davis) and the Purchaser (Oasis) will be referred to as Buyer in such financing statements. The transaction itself will be referred to as purchase or sale, or a similar term, in such financing statements.

**3.7     Substitution of Attorneys.** If Seller (Pamela Davis) obtains new or additional counsel in regards to the Legal Claim(s), Seller (Pamela Davis) agrees to provide Purchaser (Oasis) with written notice of new or additional counsel and deliver a copy of the Irrevocable Letter of Direction to such new or additional counsel. Any such new or additional counsel shall be included in the definition of "Seller's Attorney in the Legal Claim(s)" for all purposes of this Purchase Agreement.

**3.8     Requests for Documents and Information.** Seller (Pamela Davis) shall provide, and authorizes, and directs Seller's (Pamela Davis's) Attorney to provide Purchaser (Oasis) with: (a) prompt written notice of any receipt by Seller (Pamela Davis) or Seller's (Pamela Davis's) Attorney of Proceeds from the Legal Claim(s) or documents evidencing such receipt; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in connection with the Legal Claim(s) by any person or party; (c) copies of non-privileged documents relating to any other material development in connection to the Legal Claim(s) or the Proceeds; and (d) verbal or written information regarding non-privileged matters including periodic case statuses as reasonably requested by Purchaser (Oasis).

## SECTION 4. DELIVERY OF THE OASIS OWNERSHIP AMOUNT AND PRIORITY

**4.1     Priority of Delivery to Purchaser (Oasis).** Seller (Pamela Davis) shall not be entitled to receive any Proceeds until Purchaser (Oasis) has received the Oasis Ownership Amount. If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser (Oasis) shall receive all of the Proceeds, subordinate only to attorneys' fees and costs and related medical liens. **If Seller (Pamela Davis) complies with the terms of this Purchase Agreement in their entirety and recovers nothing from the Legal Claim(s), then Purchaser (Oasis) shall receive nothing.** See also Section 2.1.

**4.2    Timing of Delivery.** Seller (Pamela Davis) shall direct Seller's (Pamela Davis's) Attorney to tender the full Oasis Ownership Amount to Oasis from the Proceeds of the Legal Claim(s) within 10 days of Seller's (Pamela Davis's) Attorney's receipt of the Proceeds.  Seller (Pamela Davis) shall prohibit Seller's (Pamela Davis) Attorney from disbursing the Oasis Ownership Amount to Seller (Pamela Davis), any other individuals, or other entities without first satisfying the Purchased Right. Seller (Pamela Davis) agrees not to have the Oasis Ownership amount paid to Seller (Pamela Davis).  Purchaser (Oasis) reserves the right to assess collection costs as applicable by law if the Oasis Ownership Amount remains unsatisfied more than 10 days after receipt of Proceeds by Seller's (Pamela Davis's) Attorney.  If any dispute arises over the amount owed to Oasis, Seller (Pamela Davis) agrees to direct that Seller's (Pamela Davis's) Attorney shall hold the funds in trust until the dispute is resolved.

## SECTION 5. EVENT OF BREACH: SPECIFIC BREACH:
## SELLER'S (PAMELA DAVIS'S) RIGHT OF RESCISSION

**5.1    Event of Breach.**  The breach by Seller (Pamela Davis) of any of Seller's (Pamela Davis's) obligations under this Purchase Agreement shall constitute an "Event of Breach" hereunder.  In an Event of Breach, Purchaser (Oasis) shall have all rights, powers, and remedies provided in this Purchase Agreement and as allowed by law or in equity, including, but not necessarily limited to, reimbursement of any and all legal costs and attorney fees incurred in enforcing Purchaser's (Oasis') rights, powers, and remedies under this Purchase Agreement. Additionally, Purchaser (Oasis) reserves the right to obtain a judgment against Seller (Pamela Davis), use a collection agency and use all other means allowed under the law and equity to enforce Purchaser's (Oasis') rights, powers, and remedies under this Purchase Agreement.

**5.2    Creation of Trust.**  Should the Oasis Ownership Amount be sent to Seller (Pamela Davis), Seller (Pamela Davis) is appointed as Purchaser's (Oasis') trustee with respect to the Oasis Ownership Amount, the corpus of the trust. Should the Oasis Ownership Amount be paid to Seller (Pamela Davis), Seller (Pamela Davis), as the grantor and trustee, expressly intends that a trust be created and acknowledges and accepts that a trust is created.  Seller (Pamela Davis) agrees to hold the Oasis Ownership Amount in trust for Purchaser (Oasis) and send such amounts to Purchaser (Oasis), the beneficiary of the trust, within ten days of receipt of Proceeds.

**5.3    Receipt of Funds.**  If Seller (Pamela Davis) does not receive the Purchase Price, Seller (Pamela Davis) shall notify Purchaser (Oasis) in writing within FIVE (5) days of Purchaser's (Oasis') receipt of the fully executed Purchase Agreement.  After FIVE (5) days, Seller (Pamela Davis) is presumed to have received the Purchase Price, and the Purchase Agreement is deemed to be in full force and effect.

**5.4    SELLER, (PAMELA DAVIS'S) RIGHT OF RESCISSION:**

**PAMELA DAVIS MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) DAYS FROM THE DATE PAMELA DAVIS RECEIVES THE PURCHASE PRICE FROM PURCHASER (OASIS). TO CANCEL THIS AGREEMENT, PAMELA DAVIS MUST EITHER:**

(a) **RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER (OASIS) BY DELIVERING THE UNCASHED CHECK TO PURCHASER (OASIS) IN PERSON WITHIN FIVE (5) DAYS; OR**

(b) **MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S (OASIS) UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED, OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S (OASIS) ADDRESS AS SET FORTH IN SECTION 6.2 BELOW.**

## SECTION 6. MISCELLANEOUS

**6.1    Survival of Representations.**  All of the representations, warranties, covenants and agreements of the Parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

**6.2    Notices.**  All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made if delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the Parties at the following addresses:

**If to Purchaser (Oasis):** Oasis Financial, 9525 W. Bryn Mawr Ave., Suite 900, Rosemont, Illinois, 60018, Attn: Controller.

**If to Seller (Pamela Davis):** to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the Parties hereto shall have specified in writing to the other.

DocuSign Envelope ID: 7AFF063C-1D0E-48E3-B1B3-26B31DC1DC28

**6.3     Release to Contact Third Parties.** It may be necessary to disclose information to third parties. Seller (Pamela Davis) explicitly and irrevocably authorizes Purchaser (Oasis) to disclose any information to third parties as it deems appropriate to the extent permitted by law and also as referenced in the Oasis Privacy Policy, a copy of which is provided with this Purchase Agreement.  Seller (Pamela Davis) releases Purchaser (Oasis) from any and all liability as a result of the release of any information.

**6.4     Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed by the party waiving such rights.  The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**6.5     GOVERNING LAW AND FORUM.  THIS PURCHASE AGREEMENT, AND ALL LAWSUITS, DISPUTES, CLAIMS, OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, SHALL BE GOVERNED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF GEORGIA.**

**THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY CONSENT TO SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS FOR ANY DISPUTES, CLAIMS OR OTHER PROCEEDINGS ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT, OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, AND AGREE NOT TO COMMENCE ANY SUCH LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING EXCEPT IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS.  THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY OBJECTION TO THE LAYING OF VENUE OF ANY LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING ARISING OUT OF OR RELATING TO THIS PURCHASE AGREEMENT, OR THE RELATIONSHIPS THAT RESULT FROM THIS PURCHASE AGREEMENT, IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, AND HEREBY FURTHER IRREVOCABLY AND UNCONDITIONALLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS THAT ANY SUCH LAWSUIT, DISPUTE, CLAIM OR OTHER PROCEEDING BROUGHT IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.**

**EACH OF THE PARTIES TO THE CONTRACT FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS BY MAILING COPIES THEREOF BY REGISTERED OR CERTIFIED UNITED STATES MAIL, POSTAGE PREPAID, TO EACH OF THE PARTIES TO THE PURCHASE AGREEMENT AT ITS ADDRESS SPECIFIED IN THIS PURCHASE AGREEMENT.**

**6.6     WAIVER OF JURY TRIAL, CONSOLIDATION AND CLASS ACTION; COSTS.**

**THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.**

**THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.**

**6.7     Counterparts; Electronic and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement. This Purchase Agreement shall be deemed to have been executed in Cook County, Illinois and shall only be in full force and effect upon the signing hereof by a duly authorized representative of Purchaser (Oasis). Information, records, and signatures (electronic or facsimile) shall not be denied legal effect, validity, or enforceability solely on the grounds that they are in electronic and/or facsimile form. Where a rule of law requires information be "written" or "in writing", or provides for certain consequences if it is not, the Parties agree that an electronic and/or facsimile record shall satisfy that rule of law. Where a rule of law requires a signature, or provides for certain consequences if a document is not signed, the parties agree that an electronic and/or facsimile signature shall satisfy that rule of law.

**6.8     Assignment; Use of Information.**  Purchaser's (Oasis') rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller (Pamela Davis).  Seller's (Pamela Davis's) rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser (Oasis), except for transfer by intestacy due to Seller's (Pamela Davis's)  death in which case Seller's (Pamela Davis's)  heirs, estate executors and personal representatives will be bound by this Purchase Agreement.  Seller (Pamela Davis) agrees that Purchaser (Oasis) may share information that Purchaser (Oasis) obtained about Seller (Pamela Davis) (whether from Seller (Pamela Davis) or other person or entity) with potential assignees to whom Purchaser (Oasis) may assign its rights and obligations under this

DocuSign Envelope ID: 7AFF063C-1D0E-48E3-B1B3-26B31DC1DC28

Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser (Oasis); and (ii) Purchaser (Oasis) enters into an appropriate confidentiality agreement with any such potential assignee.

6.9 **No Third Party Beneficiaries; Successors and Assigns.** Subject to the provisions of <u>Section 6.8</u> this Purchase Agreement is solely for the benefit of Purchaser (Oasis) and Seller (Pamela Davis); and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the Parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

6.10 **Severability.** If any provision of this Purchase Agreement or the application of any such provision to any party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that any term or provision of this Purchase Agreement is invalid or unenforceable, the Parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

6.11 **LEGAL REPRESENTATION. SELLER (PAMELA DAVIS) UNDERSTANDS AND ACKNOWLEDGES THAT: (A) PURCHASER (OASIS) HAS RECOMMENDED THAT SELLER (PAMELA DAVIS) ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER (PAMELA DAVIS) HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S (PAMELA DAVIS'S) CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.**

6.12 **Construction.** The Parties intend that this Purchase Agreement be deemed to have been prepared by all of the Parties and that each party has had the opportunity to negotiate each term of the agreement prior to execution, and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement.

I, Pamela Davis, certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages. I have had the opportunity to negotiate each term prior to execution of this Purchase Agreement, and I agree to be bound by the terms and conditions of this Purchase Agreement. This Purchase Agreement shall not be effective until the Purchase Price is paid to Seller (Pamela Davis).

| Seller's Signature | Date | Purchaser's Signature | Date |
|---|---|---|---|
| | 11/24/2015 | | |

DocuSigned by:

*Pamela Davis*

71F4ECEA2CEB4E4...

**Pamela Davis**                                            **Oasis Financial**



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 521-4411
Fax: (847) 897-2955

## IRREVOCABLE LETTER OF DIRECTION

<u>Sent by Fax and/or E-Mail</u>                                                                     November 24, 2015

Ashleigh R. Madison, Esq.
426 Barnard St
Savannah, GA 31401

Dear Ashleigh R. Madison,                    **PLEASE CONTACT OASIS IF YOUR CONTACT INFORMATION IS INCORRECT**

Be advised that I have sold a contingent right to receive a portion of the Proceeds[1] of my Legal Claim(s) equal to the Oasis Ownership Amount to Oasis Financial ("Oasis"). I hereby irrevocably direct my current attorney or any subsequent attorney or law firms that may represent me ("Seller's Attorney"), to tender the full Oasis Ownership Amount to Oasis pursuant to the Purchase Agreement from any and all of the Proceeds due to me from the Legal Claim(s) in which you represent me. I understand that by making this irrevocable direction, I can at no future time withdraw or revoke this direction. PLEASE BE ADVISED THAT UNDER NO CIRCUMSTANCES MAY YOU, SELLER'S ATTORNEY, DISBURSE THE OASIS OWNERSHIP AMOUNT TO ME, ANY OTHER INDIVIDUALS, OR OTHER ENTITIES WITHOUT FIRST SATISFYING OASIS' PURCHASED RIGHT. If a check is sent in my name, I hereby grant you the authority to endorse my check into your trust account and pay to Oasis its Ownership Amount. I certify that I do not have any outstanding past due child support obligations.

Seller's Initials: _____

<u>I have read the Nonrecourse Purchase Agreement and fully understand my obligations to Oasis.</u> I instruct you, Seller's Attorney, to provide Oasis with periodic information on my case and brief case statuses at no cost to Oasis, and in the event that you no longer represent me I instruct you to provide Oasis with any insurance, new attorney or other information requested. This letter may be executed in counterparts electronically, and/or by facsimile, each of which shall be deemed an original and all of which shall together constitute a single agreement. By signing the acknowledgement below, you agree that this letter is from me and that you will comply with the terms of this Irrevocable Letter of Direction.

Sincerely,

_Pamela Davis_
————————————
**Pamela Davis-Seller**

## ATTORNEY ACKNOWLEDGMENT

- I, Ashleigh R. Madison, Esq., acknowledge receipt of Pamela Davis's Irrevocable Letter of Direction, the Nonrecourse Purchase Agreement, and the Notice of Purchase.
- My fee agreement is on a contingency basis and there are liens and/or letters of protection (exclusive of attorney's fees and costs) against the case of approximately _____, and I will deliver the Oasis Ownership Amount subordinate to attorney fees, costs and related medical liens as per instructions above.
- I fully expect that any Proceeds from the Legal Claim(s) will be sent to me directly and not directly to the claimant (Seller); I agree that all disbursements of proceeds will be made through my attorney trust account.
- I have not, and will not accept any advice, direction, or payment from Oasis regarding the Legal Claim(s).
- To the best of my knowledge, the above client has **NOT** received any previous cash fundings on his/her Legal Claim(s), except for the Purchase Agreement(s) with Oasis.
- I will not participate in or acknowledge any future cash funding(s) for the above client without first resolving the Oasis Ownership Amount.
- I agree and acknowledge that upon request, I will inform Oasis whether Pamela Davis's case is still pending. I will provide other non-privileged information to Oasis and if Pamela Davis's case settles, I will request a payoff and inform Oasis that the matter has settled.
- I acknowledge that upon my signature below, I understand the Purchase Agreement will be executed by the Parties and Oasis will provide funding to Pamela Davis. I will contact Oasis when the Legal Claim(s) has been resolved.

Please provide email for case updates:

_____                    _____
Ashleigh R. Madison, Esq.                          E-mail

[1] All capitalized terms used herein are defined as set forth in the Purchase Agreement.

IRREVOCABLE LETTER OF DIRECTION
Case ID: P-GA-760620

DocuSign Envelope ID: 7AFF063C-1D0E-48E3-B1B3-26B31DC1DC28



9525 W. Bryn Mawr Ave., Suite 900
Rosemont, Illinois 60018
Phone: (847) 521-4411
Fax: (847) 897-2955

## NOTICE OF PURCHASE

November 24, 2015

Ashleigh R. Madison, Esq.
426 Barnard St
Savannah, GA 31401

RE:   OUR CLIENT:   **Pamela Davis**
      OUR CASE ID:   **P-GA-760620**

Dear Ashleigh R. Madison,

Oasis Financial ("Oasis") has entered into a Purchase Agreement (attached) with your client Pamela Davis. Oasis has purchased a right in a portion of the potential Proceeds from the Legal Claim(s) of Pamela Davis.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL THE OASIS OWNERSHIP AMOUNT (PLUS ANY APPLICABLE FEES DUE AT DELIVERY) HAS BEEN SATISFIED.**

### OASIS OWNERSHIP AMOUNT

| Date Range | Oasis Ownership Amount |
| --- | --- |
| November 25, 2015 to May 24, 2016 | $930.00 |
| May 25, 2016 to November 24, 2016 | $1,023.00 |
| November 25, 2016 to February 24, 2017 | $1,395.00 |
| February 25, 2017 to May 24, 2017 | $1,550.00 |
| May 25, 2017 to November 24, 2017 | $1,705.00 |
| November 25, 2017 to May 24, 2018 | $2,015.00 |
| May 25, 2018 and thereafter | $2,170.00 |

**Additional Fees**

| | |
| --- | --- |
| Archiving and document management fees | $35.00 |
| Case servicing fee for every 6 months | $35.00 |
| Subsequent case review fee for each additional funding | $20.00 |

**Please call (888) 529-1253 or by fax at (847) 521-4391 to receive more information about the Oasis Ownership Amount.**

DocuSign Envelope ID: 7AFF063C-1D0E-48E3-B1B3-26B31DC1DC28



**9525 W. Bryn Mawr Ave., Suite 900**
**Rosemont, Illinois 60018**
Phone: (847) 521-4411
Fax: (847) 897-2955

## OASIS FINANCIAL PRIVACY POLICY (effective April 2012)

The privacy and security of your personal information is important to Oasis. We provide this Privacy Policy to advise you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

**What personal information does Oasis collect?** The types of personal information we collect and share depend on the product or service you have with us, but is clearly stated on our applications. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information can include: name, address, e-mail address, telephone number(s), your date of birth, social security number, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports. We may also use your information in order to obtain additional information regarding you, such as credit or consumer reports.

**How does Oasis share personal information?** We share customers' personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law. Some of this sharing is necessary to provide you with the services you are requesting from us. In the section below, we list the primary reasons we share customers' personal information; the reasons Oasis chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Oasis share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes—such as to process your transactions, maintain your account(s), respond to court orders and legal investigations | Yes | No |
| For our marketing purposes— to offer our products and services to you | Yes | Yes |
| For joint marketing with other financial companies | Yes | Yes |
| For our affiliates' everyday business purposes— information related to your transactions and experiences | Yes | No (except CA and VT residents) |
| For our affiliates' everyday business purposes | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For non-affiliates to market to you | Yes | Yes |

**To limit our sharing, simply complete our Opt-Out form by visiting us at www.OasisFinancial.com/privacy and follow the instructions on the site.-----Why can't I limit all sharing?** In many circumstances, sharing information is necessary for us to provide you the services you are requesting. Federal law gives you the right to limit only

- sharing for affiliates' everyday business purposes
- affiliates from using your information to market to you
- sharing for non-affiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under specific state law.

**California:** In accordance with California law, Oasis Financialwill automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

**Vermont:** In accordance with Vermont law, Oasis Financialwill automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

**How Does Oasis protect my personal information?** To protect your personal information from unauthorized access and use, we use reasonable security measures that comply with applicable laws. These measures include computer safeguards and secured files and

Case ID: P-GA-760620

buildings. Our agreements with service providers or other nonaffiliated companies require them to treat your personal information in a confidential and secure manner.

**How does Oasis collect my personal information?** We collect your personal information, for example, when you, your attorney, or third parties, such as credit bureaus, affiliates, or other companies provide it to us on applications and other forms, by phone, fax, the Internet, or other delivery services.

**What happens when I limit sharing for an account I hold jointly with someone else?** Your choices will apply to everyone on your account.

**Passive collection of information**-While you are on our website, we may automatically track information related to your voluntary use of the website. Such voluntary provided information may include, among other things, URL tracking information, user's browser, user's IP address, files viewed by you and your path through the website, date, time and frequency of accessing website and length of time spent reviewing certain features. In addition we may (i) use pixels provided to us by a third party to track the pages viewed, the number of pages viewed, and the number of customer conversions obtained from third parties and marketing agencies, (ii) place a cookie, provided to us by a third party, on your computer that tracks if you click on an advertisement so that future advertisements can be targeted to you based on the advertisements clicked on by you and/or your other activities on the website.

**Definitions:**

| | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies. *Our affiliates include Oasis Financial Holding Company, LLC and Oasis Financial Operating Company, LLC* |
| **Non-affiliates:** | Companies not related by common ownership or control. They can be financial and non financial companies. *Non-affiliates we share with can include companies such as money transfer companies, collection agencies, investment and insurance companies, mortgage and brokerage companies, retailers or marketing companies.* |
| **Joint Marketing** | A formal agreement between non-affiliated financial companies that together market financial products or services to you. *Our joint marketing partners include categories of companies such as banks or lending institutions and insurance companies.* |

**Other Terms**-We may access or disclose information about you in order to: (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Oasis, our service providers or our customers, including the enforcement of our agreements or policies governing your use of our services; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Oasis' or our service providers' employees, customers or the public. We may also disclose personal information as part of a proposed or actual corporate transaction such as a merger or sale of assets.

Through our website, you can link to other websites of third parties that provide useful information, or who have agreed to offer goods and services to our users. Any personal information you provide on the linked pages is provided directly to the applicable third party and is subject to that third party's privacy policy.

**Revisions to this Privacy Policy**-This Privacy Policy may be revised from time to time by Oasis Financial. We will provide notice on our website that the Privacy Policy has changed, and will otherwise inform you of any changes to the extent required by law. Amendments to this policy will be effective when posted to our website at **www.OasisFinancial.com/privacy**.

# EXHIBIT D

DocuSign Envelope ID: BACE0DAD-BA0A-4DC9-A945-EF7B089E8AD9

**Parties:** Dennis Green is Seller and Oasis Legal Finance, LLC is Purchaser

**Offer Date:** May 9, 2014

**Purchase Price to Seller:**    $1,140.00



(please initial)

**Priority Processing featuring new E-Signature:** When Oasis receives your purchase agreement signed by both you and your attorney your funding will move to Next in Line and Oasis will have its Priority Processing staff rush the delivery of your funds in the way you have chosen. E-signature is only available with priority processing. With E-signature you can conveniently sign the purchase agreement through email on yours or a family members' smartphone or home computer. Priority Processing is available with or without E-Signature. A handling fee of $20.00 will be deducted from purchase price-no out of pocket cost to you.

## HOW DO YOU WANT TO RECEIVE YOUR MONEY?

### (Select only one, and please check the box next to the option that you choose):

☐  Money in Minutes at any **WESTERN UNION** *yes* near you. **The Fastest way to get your funding. Many Western Union locations are open late! No waiting on a delivery service or the mail for a check, no check cashing fee, and no waiting on a bank to cash that check or release the cash to you. Many Locations Open Late!**
Funds available on the **SAME DAY** if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details.

| Purchase Price to Seller | | Handling Fee |
|---|---|---|
| $0 – $750.00 | | $97.00 |
| $751.00 – $1,250.00 | | $113.00 |
| $1,251.00 – $2,000.00 | | $149.00 |
| $2,001.00 – $5,000.00 | | $199.00 |

☒  **Direct Deposit Wire Transfer** to bank account in my name.
Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day. Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details:

| Purchase Price to Seller | | Handling Fee |
|---|---|---|
| $0 – $750.00 | | $97.00 |
| $751.00 – $1,250.00 | | $113.00 |
| $1,251.00 – $2,000.00 | | $149.00 |
| $2,001.00 – $5,000.00 | | $199.00 |



| | |
|---|---|
| Name of Bank: | Bank of America |
| Bank's City, State: | Savannah, Georgia |
| Routing/ABA Number: | 061000052 |
| Account Number: | Redacted |
| Bank's Phone Number: | 18004321000 |
| Name on Account: (your name must be on the account) | Dennis Green |

Case ID: P-GA-552424

# **Oasis** Legal Finance

## CREDIT AND INFORMATION RELEASE

Oasis Legal Finance, LLC may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction.

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Legal Finance, LLC or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the agreement.

This authorization is valid for purposes of verifying information given pursuant to business negotiations, or any other lawful purpose covered under the Fair Credit Reporting Act. (FCRA).
Upon written request, we will tell you whether we have obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. We also request that by signing below, you certify the information provided by you to Oasis Legal Finance, LLC in your application and underwriting process is true, accurate and complete. You also authorize Oasis Legal Finance LLC to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis Legal Finance, LLC ("Oasis"), or its affiliates any and all information and documents pertaining to my current legal claim or lawsuit, including pleadings, discovery, investigation, contracts, medical records/reports, depositions, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application is true, accurate, and complete.

| | |
|---|---|
| Dennis Green | 5/9/2014 |
| | Date |
| *Dennis Green* | Redacted |
| Signature | Social Security Number |
| 912 335 4901 | Redacted 1960 |
| Telephone Number | Date of Birth |
| Drivers License #: Redacted | State of Driver's License Ga |

| 1 Saint Georgia Blvd Apt 509 | Savannah | Ga | 31419 |
|---|---|---|---|
| Street Address | City | State | Zip Code |

DocuSign Envelope ID: BACE0DAD-BA0A-4DC9-A945-EF7B089EBAD9

# PURCHASE AGREEMENT

| | |
|---|---|
| **Purchaser:** | Oasis Legal Finance, LLC (Oasis) |
| **Seller:** | Dennis Green |
| **Purchase Price:** | **$1,140.00** |

**Oasis Ownership Amount**

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| May 10, 2014 to November 9, 2014 | $1,710.00 |
| November 10, 2014 to May 9, 2015 | $1,881.00 |
| May 10, 2015 to August 9, 2015 | $2,565.00 |
| August 10, 2015 to November 9, 2015 | $2,850.00 |
| November 10, 2015 to May 9, 2016 | $3,135.00 |
| May 10, 2016 to November 9, 2016 | $3,705.00 |
| November 10, 2016 and thereafter | $3,990.00 |

**Fees Due at Payment**

| | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Archival and Document Management Fee per Funding | $35.00 |

**SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION**

**IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING. SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.**

**SELLER:** Dennis Green **Address:** 1 Saint George Blvd #509, Savannah, GA 31419

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages. I agree to be bound by the terms and conditions of this Purchase Agreement. This Agreement shall not be effective until the Purchase Price is paid to Seller.

| Seller's Signature | Date | Purchaser' Signature | Date |
|---|---|---|---|
| *Dennis Green* | 5/9/2014 | | |
| Dennis Green | | Oasis Legal Finance, LLC | |

## SECTION 1.    DEFINITIONS.

**1.1**    **"Legal Claim"** means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

**1.2**    **"Oasis Ownership Amount"** is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

**1.3**    **"Proceeds"** means whatever you receive as a result of the legal claim, for example through a judgment. Arbitration or the like.

**1.4**    **"Purchased Interest"** means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

DocuSign Envelope ID: BACE0DAD-BA0A-4DC9-A945-EF7B089EBAD9

# PURCHASE AGREEMENT

    **1.5**    **"Purchaser"** means Oasis Legal Finance, LLC.

    **1.6**    **"Seller"** means Dennis Green.

    **1.7**    **"Seller's Attorney"** means, collectively, Chris Daly, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.**    **SELLER'S STATEMENTS.** Seller states to Purchaser as follows:

    **2.1**    **Purchase and Sale.** Seller sells, and the Purchaser buys, the Purchased Interest.

    **2.2**    **Title; Capacity.** Seller believes the Legal Claim to be meritorious and filed in good faith. Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

    **2.3**    **Information True, Complete and Correct.** Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3. SELLER'S ACKNOWLEDGEMENTS.** Seller acknowledges the following:

    **3.1**    **Risk of Loss.** This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser. The Oasis Ownership Amount has been negotiated to account for such risk.

    **3.2**    **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.** Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

    **3.3**    **No Previous Encumbrance** Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4. PURCHASER'S ACKNOWLEDGEMENT.** Purchaser acknowledges the following:

    **4.1**    **Purchaser's Acknowledgment.** Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5. SELLER'S AGREEMENTS.** Seller agrees as follows:

    **5.1**    **Treatment of Transaction.** Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes). Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

    **5.2**    **Treatment in Bankruptcy.** If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

    **5.3**    **No Assignment.** Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death. In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

DocuSign Envelope ID: BACE0DAD-BA0A-4DC9-A945-EF7B089EBAD9

# PURCHASE AGREEMENT

**5.4    Prosecution of Claim and Facilitation of Payment.** Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

**5.5    Subsequent Case Review.** Seller agrees to an additional case review charge of $20.00 each time seller requests and receives additional funding from Purchaser.

**5.6    Case Servicing Fee.** Seller agrees to pay to Purchaser a case servicing fee of $35.00 every six (6) months or increment thereof. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

**5.7    Archiving and Document Management Fee.** Seller agrees to pay to Purchaser a fee of $35.00 per funding to defray Seller's archiving and document management costs. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount

**5.8    Substitution of Attorneys in the Legal Claim.** If Seller determines to hire new or additional attorneys to represent Seller in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

**5.9    No Assignment of Workers Compensation Benefits.** The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

**5.10    Requests for Documents and Information.** Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with: (a) prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6. PAYMENT AND PRIORITY.

**6.1    Priority Payment to Purchaser.** Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount. If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens. **If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Purchaser shall receive nothing**

**6.2    Mechanics and Timing of Payment.** The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction. Seller agrees not to have the Oasis Ownership amount paid to him. Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis. Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller. The Oasis Ownership Amount shall be determined as of the date it is received by Oasis. Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser. Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

**6.3    Risk of Loss.** Purchaser and Seller acknowledge that the Purchased Interest may be worthless. Purchaser accepts the risk of loss with respect to the Purchased Interest.

**6.4    RIGHT TO PAY PURCHASER FROM ANY SOURCE.    THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME**

# EXHIBIT E

# PAYMENT INSTRUCTIONS
## Page 1 of 2

**Parties:** Johnny Moody is Seller and Oasis Financial is Purchaser

**Offer Date:** September 23, 2015

**Purchase Price to Seller:**  **$1,140.00**



**Priority Processing featuring new E-Signature:** When Oasis receives your purchase agreement signed by both you and your attorney your funding will move to Next in Line and Oasis will have its Priority Processing staff rush the delivery of your funds in the way you have chosen. E-signature is only available with priority processing. With E-signature you can conveniently sign the purchase agreement through email on yours or a family members' smartphone or home computer. Priority Processing is available with or without E-Signature. A handling fee of $20.00 will be deducted from purchase price-no out of pocket cost to you.

(please initial)

## HOW DO YOU WANT TO RECEIVE YOUR MONEY?

### (Select only one, and please check the box next to the option that you choose):

[ ]   🕐 Money in Minutes at any **WESTERN UNION** *yes!* near you. The Fastest way to get your funding. Many Western Union locations are open late! No waiting on a delivery service or the mail for a check, no check cashing fee, and no waiting on a bank to cash that check or release the cash to you. Many Locations Open Late!
Funds available on the **SAME DAY** if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details.

| Purchase Price to Seller | Handling Fee |
|---|---|
| $0 - $750.00 | $97.00 |
| $751.00 - $1,250.00 | $113.00 |
| $1,251.00 - $2,000.00 | $149.00 |
| $2,001.00 - $5,000.00 | $199.00 |

[X]   **Direct Deposit Wire Transfer** to bank account in my name
Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day. Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details:

| Purchase Price to Seller | Handling Fee |
|---|---|
| $0 - $750.00 | $97.00 |
| $751.00 - $1,250.00 | $113.00 |
| $1,251.00 - $2,000.00 | $149.00 |
| $2,001.00 - $5,000.00 | $199.00 |



| | |
|---|---|
| Name of Bank: | Interstate credit union |
| Bank's City, State: | Hazlehurst GA 31539 |
| Routing/ABA Number: | 261272826 |
| Account Number: | Redacted |
| Bank's Phone Number: | 9123740640 |
| Name on Account: (your name must be on the account) | Johnny z moody II |

DocuSign Envelope ID: 03CD3F70-D000-47B0-8839-A62C41AF988F

# PAYMENT INSTRUCTIONS
## Page 2 of 2

☐ A **Check** sent in my name by **Overnight Delivery** service for delivery by the next business day.
($99.00 deducted from purchase price-no out of pocket cost to you. Overnight delivery does not include weekends.
Saturday delivery available for an extra charge):

Street Address Apt/Unit : _____

City: _____  State: _____  Zip: _____

☐ A **Check** sent in my name by **U.S. First Class Mail** with Delivery Confirmation
(**Free**– delivered within 5 to 10 days from post date. Not responsible for delays due to postal or bank holidays, or weekends).

Street Address Apt/Unit : _____

City: _____  State: _____  Zip: _____

**Terms:** Purchaser agrees to provide funds to the Seller as requested below by the Seller. Seller agrees that funds received from Purchaser are a purchase of property, not a loan, and that Purchaser owns a portion of the potential proceeds from the legal claim.

### Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| September 24, 2015 to March 23, 2016 | $1,710.00 |
| March 24, 2016 to September 23, 2016 | $1,881.00 |
| September 24, 2016 to December 23, 2016 | $2,565.00 |
| December 24, 2016 to March 23, 2017 | $2,850.00 |
| March 24, 2017 to September 23, 2017 | $3,135.00 |
| September 24, 2017 to March 23, 2018 | $3,705.00 |
| March 24, 2018 and thereafter | $3,990.00 |

Please describe how we helped you during these difficult times:

Have helped

By signing below, I hereby agree to the terms of the Payment Instructions and understand that I am responsible for the information that I have provided on this form and that Purchaser is not responsible for any problem in delivery or transfer of funds, so long as it follows the instructions provided by the Seller. I also agree to the use of the above statements in any way as Purchaser sees fit.

*Johnny Moody*  9/24/2015

Johnny Moody Purchaser's Signature | Date | Oasis Financial – Purchaser | Date

Case ID: P-GA-748208



## CREDIT AND INFORMATION RELEASE

Oasis Financial may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction.

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Financial or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the agreement.

This authorization is valid for purposes of verifying information given pursuant to business negotiations, or any other lawful purpose covered under the Fair Credit Reporting Act. (FCRA).
Upon written request, we will tell you whether we have obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. We also request that by signing below, you certify the information provided by you to Oasis Financial in your application and underwriting process is true, accurate and complete. You also authorize Oasis Financial to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis Financial ("Oasis"), or its affiliates any and all information and documents pertaining to my current legal claim or lawsuit, including pleadings, discovery, investigation, contracts, medical records/reports, depositions, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application is true, accurate, and complete.

| | |
|---|---|
| Johnny Moody | Date: 9/24/2015 |
| *Johnny Moody* | Social Security Number: Redacted |
| DocuSigned by: 78A413FDEFF24E3... | Telephone Number: 9122307400 |
| Signature | Date of Birth: Redacted 1990 |
| Drivers License # Redacted | State of Drivers License: Ga |

| 1159 uvalda HWY | Hazlehurst | Ga | 31539 |
|---|---|---|---|
| Street Address | City | State | Zip Code |

DocuSign Envelope ID: 03CD3F70-D000-47B0-8839-A62C41AF988F

# PURCHASE AGREEMENT
## PAGE 1 OF 6

| | |
|---|---|
| **Purchaser:** | Oasis Financial (Oasis) |
| **Seller:** | Johnny Moody |
| **Purchase Price:** | **$1,140.00** |

**Oasis Ownership Amount**

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| September 24, 2015 to March 23, 2016 | $1,710.00 |
| March 24, 2016 to September 23, 2016 | $1,881.00 |
| September 24, 2016 to December 23, 2016 | $2,565.00 |
| December 24, 2016 to March 23, 2017 | $2,850.00 |
| March 24, 2017 to September 23, 2017 | $3,135.00 |
| September 24, 2017 to March 23, 2018 | $3,705.00 |
| March 24, 2018 and thereafter | $3,990.00 |

**Fees Due at Payment**

| | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Archival and Document Management Fee per Funding | $35.00 |

**SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION**

**IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING. SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.**

**SELLER:** Johnny Moody  **Address:** 1150 Vala hy, Hazel Hurst, GA 31539

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages. I agree to be bound by the terms and conditions of this Purchase Agreement. This Agreement shall not be effective until the Purchase Price is paid to Seller.

| Seller's Signature | Date | Purchaser' Signature | Date |
|---|---|---|---|
| *Johnny Moody*<br>Johnny Moody | 9/24/2015 | Oasis Financial - Purchaser | |

## SECTION 1.   DEFINITIONS.

1.1   "**Legal Claim**" means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

1.2   "**Oasis Ownership Amount**" is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

1.3   "**Proceeds**" means whatever you receive as a result of the legal claim, for example through a judgment. Arbitration or the like.

1.4   "**Purchased Interest**" means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

Case ID: P-GA-748208

DocuSign Envelope ID: 03CD3F70-D000-47B0-8839-A62C41AF988F

# PURCHASE AGREEMENT

1.5 **"Purchaser"** means Oasis Financial.

1.6 **"Seller"** means Johnny Moody.

1.7 **"Seller's Attorney"** means, collectively, Stephen Stincer, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.** **SELLER'S STATEMENTS.** Seller states to Purchaser as follows:

2.1 **Purchase and Sale.** Seller sells, and the Purchaser buys, the Purchased Interest.

2.2 **Title; Capacity.** Seller believes the Legal Claim to be meritorious and filed in good faith. Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

2.3 **Information True, Complete and Correct.** Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3. SELLER'S ACKNOWLEDGEMENTS.** Seller acknowledges the following:

3.1 **Risk of Loss.** This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser. The Oasis Ownership Amount has been negotiated to account for such risk.

3.2 **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.** Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

3.3 **No Previous Encumbrance** Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4. PURCHASER'S ACKNOWLEDGEMENT.** Purchaser acknowledges the following:

4.1 **Purchaser's Acknowledgment.** Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5. SELLER'S AGREEMENTS.** Seller agrees as follows:

5.1 **Treatment of Transaction.** Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes). Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

5.2 **Treatment in Bankruptcy.** If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

5.3 **No Assignment.** Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death. In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

DocuSign Envelope ID: 03CD3F70-D000-47B0-8839-A62C41AF988F

**5.4    Prosecution of Claim and Facilitation of Payment.**  Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

**5.5    Subsequent Case Review.**  Seller agrees to an additional case review charge of $20.00 each time seller requests and receives additional funding from Purchaser.

**5.6    Case Servicing Fee.**  Seller agrees to pay to Purchaser a case servicing fee of $35.00 every six (6) months or increment thereof.  Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

**5.7    Archiving and Document Management Fee.**  Seller agrees to pay to Purchaser a fee of $35.00 per funding  to defray Seller's archiving and document management costs.  Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount

**5.8    Substitution of Attorneys in the Legal Claim.**  If Seller determines to hire new or additional attorneys to represent Seller. in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

**5.9    No Assignment of Workers Compensation Benefits.**  The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

**5.10    Requests for Documents and Information.**  Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with: (a) prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6.  PAYMENT AND PRIORITY.

**6.1    Priority Payment to Purchaser.**  Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount. · If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens. **If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Purchaser shall receive nothing**

**6.2    · Mechanics and Timing of Payment.**  The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction. Seller agrees not to have the Oasis Ownership amount paid to him.  Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis.   Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller.   The Oasis Ownership Amount shall be determined as of the date it is received by Oasis. Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser.  Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

**6.3    Risk of Loss.**  Purchaser and Seller acknowledge that the Purchased Interest may be worthless.  Purchaser accepts the risk of loss with respect to the Purchased Interest.

**6.4    RIGHT TO PAY PURCHASER FROM ANY SOURCE.     THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME**

DocuSign Envelope ID: 03CD3F70-D000-47B0-8839-A62C41AF988F

# PURCHASE AGREEMENT

WITHOUT PENALTY PRIOR TO THE PROCEEDS DUE FROM THE LEGAL CLAIM BEING DISTRIBUTED. IF SELLER SO ELECTS, PAYMENT MUST BE RECEIVED AND ACKNOWLEDGED BY PURCHASER PRIOR TO SELLER RECEIVING ANY PROCEEDS FROM THE LEGAL CLAIM. UPON SELLER'S RECEIPT OF THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT, PURCHASER SHALL BE DEEMED TO HAVE TENDERED BACK TO SELLER PURCHASER'S INTEREST IN THE PROCEEDS.

SECTION 7.  EVENT OF DEFAULT; SPECIFIC DEFAULT; RIGHT OF RESCISSION.

      7.1     **Event of Default.**  The breach by Seller of any of Seller's obligations under this Purchase Agreement shall constitute an "Event of Default" hereunder.  In an Event of Default, Purchaser shall have all rights, powers, and remedies provided in the Purchase Agreement and as allowed by law or in equity.

      7.2     **Seller's Right of Rescission.** CONSUMER'S RIGHT TO CANCELLATION:  YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE THE PURCHASE PRICE FROM PURCHASER.

TO CANCEL THIS AGREEMENT, YOU MUST EITHER:

    (I)    RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER BY DELIVERING THE UNCASHED CHECK TO PURCHASER IN PERSON WITHIN FIVE (5) BUSINESS DAYS; OR

    (II)    MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) BUSINESS DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S ADDRESS AS SET FORTH IN <u>SECTION 8.2</u> BELOW.

SECTION 8.  MISCELLANEOUS.

      8.1     **Survival of Representations.**  All of the representations, warranties, covenants and Purchase Agreements of the parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

      8.2     **Notices.**  All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing.  All such notices or communications shall be deemed to have been given or made delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the parties at the following addresses:

if to Purchaser, to:    Oasis Financial
                        9525 W. Bryn Mawr, Suite 900
                        Rosemont, IL 60018
                        Attn:    Controller

and if to Seller, to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the parties hereto shall have specified in writing to the other.

      8.3     **Financing Statements and Additional Documents.**  Seller irrevocably authorizes Purchaser at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto.  Purchaser may indicate the following information in such financial statements and amendments:  (a) that a portion of the proceeds that are derived from the Legal Claim are owned by Purchaser; and (b) any other information required, in Purchaser's discretion, by the Uniform Commercial Code in any relevant jurisdiction.

      8.4     **Release to Contact Third Parties.**  As part of this Purchase Agreement it may be necessary to disclose information to third parties. Seller explicitly and irrevocably authorizes Purchaser to disclose any information to third parties as

DocuSign Envelope ID: 03CD3F70-D000-47B0-8839-A62C41AF988F

it deems appropriate to the extent permitted by law and also as referenced in the Oasis Financial privacy policy. Seller releases Purchaser from any and all liability as a result of the release of any information.

**8.5    Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**8.6    Governing Law and Forum.** This Purchase Agreement, and all lawsuits, disputes, claims, or proceedings arising out of or relating to this Purchase Agreement or the relationships that result from this Purchase Agreement, shall be governed, construed and enforced in accordance with the laws of the State of Georgia.

The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in an inconvenient forum.

Each of the parties to the Contract further irrevocably consents to the service of process out of the Circuit Court of Cook County, Illinois by mailing copies thereof by Registered or Certified United States mail, postage prepaid, to each of the parties of the Purchase Agreement at its address specified in this Contract.

**8.7    Waiver of Jury Trial, Consolidation and Class Action; Costs.**

**THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.**

**THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.**

**8.8    Counterparts and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.

**8.9    Assignment; Use of Information.** Purchaser's rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent or notice to Seller. Seller's rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser, except for transfer by intestate due to Seller's death in which case Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller agrees that Purchaser may share information that Purchaser obtained about Seller (whether from Seller or other person or entity) with potential assignees to whom Purchaser may assign its rights and obligations under this Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser; and (ii) Purchaser enters into an appropriate confidentiality Purchase Agreement with any such potential assignee.

**8.10    No Third Party Beneficiaries; Successors and Assigns.** Subject to the provisions of Section 8.9, (a) this Purchase Agreement is solely for the benefit of Purchaser and Seller; and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

**8.11    Severability.** If any provision of this Purchase Agreement or the application of any such provision to any

DocuSign Envelope ID: 03CD3F70-D000-47B0-8839-A62C41AF988F

party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that any term or provision of this Purchase Agreement is invalid or unenforceable, the parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

    **8.12    Legal Representation.    SELLER UNDERSTANDS AND ACKNOWLEDGES THAT:    (A) PURCHASER HAS RECOMMENDED THAT SELLER ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.**

    **8.13    Construction.**  The parties intend that this Purchase Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement

(REMAINDER OF PAGE LEFT INTENTIONALLY BLANK).



# NOTICE OF PAYMENT SCHEDULE

September 23, 2015

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

RE:    OUR CLIENT: **Johnny Moody**
        OUR CASE ID:**P-GA-748208**

Dear Stephen Stincer,

Oasis Financial has entered into a Purchase Agreement (attached) with Johnny Moody. Oasis Financialhas purchased an interest in the potential proceeds from the legal claim of Johnny Moody.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL OUR PURCHASED INTEREST (PLUS ANY APPLICABLE SECOND FUNDING OR SERVICING FEES) HAS BEEN SATISFIED.**

### OASIS OWNERSHIP AMOUNT

| Payment Schedule | Oasis Ownership Amount |
| --- | --- |
| September 24, 2015 to March 23, 2016 | $1,710.00 |
| March 24, 2016 to September 23, 2016 | $1,881.00 |
| September 24, 2016 to December 23, 2016 | $2,565.00 |
| December 24, 2016 to March 23, 2017 | $2,850.00 |
| March 24, 2017 to September 23, 2017 | $3,135.00 |
| September 24, 2017 to March 23, 2018 | $3,705.00 |
| March 24, 2018 and thereafter | $3,990.00 |

| Fees Due at Payment | |
| --- | --- |
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $35.00 |

**Please call (866) 206-4800 (Press Option 6) or by fax at (847) 521-4392 to receive more information about payment.**

**9525 W. Bryn Mawr, Suite 900, Rosemont, IL 60018**
**Phone (847) 521-4349 – Fax (847) 897-3143**
<TO_FAXNUM:1(912) 233-3584>
<NOTE:Case Number P-GA-748208 Johnny Moody>
<TO_NAME: Johnny Moody>

# OASIS FINANCIAL PRIVACY POLICY

Effective date April 2012
The privacy and security of your personal information is important to Oasis. We provide this Privacy Policy to advise you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

## What personal information does Oasis collect?

The types of personal information we collect and share depend on the product or service you have with us, but is clearly stated on our applications. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information can include: name, address, e-mail address, telephone number(s), your date of birth, social security number, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports. We may also use your information in order to obtain additional information regarding you, such as credit or consumer reports.

## How does Oasis share personal information?

We share customers' personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law. Some of this sharing is necessary to provide you with the services you are requesting from us. In the section below, we list the primary reasons we share customers' personal information; the reasons Oasis chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Oasis share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes— such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes— to offer our products and services to you | Yes | Yes |
| For joint marketing with other financial companies | Yes | Yes |
| For our affiliates' everyday business purposes— information related to your transactions and experiences | Yes | No (except CA and VT residents) |
| For our affiliates' everyday business purposes— information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

To limit our sharing, simply complete our Opt-Out form by visiting us at www.OasisFinancial.com/privacy and follow the instructions on the site.

## Why can't I limit all sharing?

In many circumstances, sharing information is necessary for us to provide you the services you are requesting. Federal law gives you the right to limit only

- sharing for affiliates' everyday business purposes—information about your creditworthiness
- affiliates from using your information to market to you
- sharing for nonaffiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law.

California: In accordance with California law, Oasis Financial will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

Vermont: In accordance with Vermont law, Oasis Financial will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

Case ID: P-GA-748208

## How Does Oasis protect my personal information?

To protect your personal information from unauthorized access and use, we use reasonable security measures that comply with applicable laws. These measures include computer safeguards and secured files and buildings. Our agreements with service providers or other nonaffiliated companies require them to treat your personal information in a confidential and secure manner.

## How does Oasis collect my personal information?

We collect your personal information, for example, when you, your attorney, or third parties, such as credit bureaus, affiliates, or other companies provide it to us on applications and other forms, by phone, fax, the Internet, or other delivery services.

## What happens when I limit sharing for an account I hold jointly with someone else?

Your choices will apply to everyone on your account.

## Passive collection of information

While you are on our website, we may automatically track information related to your voluntary use of the website. Such voluntary provided information may include, among other things, URL tracking information, user's browser, user's IP address, files viewed by you and your path through the website, date, time and frequency of accessing website and length of time spent reviewing certain features. In addition we may (i) use pixels provided to us by a third party to track the pages viewed, the number of pages viewed, and the number of customer conversions obtained from third parties and marketing agencies, (ii) place a cookie, provided to us by a third party, on your computer that tracks if you click on an advertisement so that future advertisements can be targeted to you based on the advertisements clicked on by you and/or your other activities on the website.

## Definitions

| | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. |
| | *Our affiliates include Oasis FinancialHolding Company, LLC and Oasis FinancialOperating Company, LLC* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies |
| | *Nonaffiliats we share with can include companies such as money transfer companies, collection agencies, investment and insurance companies, mortgage and brokerage companies, retailers or marketing companies.* |
| Joint Marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |
| | *Our joint marketing partners include categories of companies such as banks or lending institutions and insurance companies.* |

## Other Terms

We may access or disclose information about you in order to: (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Oasis, our service providers or our customers, including the enforcement of our agreements or policies governing your use of our services; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Oasis' or our service providers' employees, customers or the public. We may also disclose personal information as part of a proposed or actual corporate transaction such as a merger or sale of assets.

Through our website, you can link to other websites of third parties that provide useful information, or who have agreed to offer goods and services to our users. Any personal information you provide on the linked pages is provided directly to the applicable third-party and is subject to that third party's privacy policy.

## Revisions to this Privacy Policy

This Privacy Policy may be revised from time to time by Oasis Financial. We will provide notice on our website that the Privacy Policy has changed, and will otherwise inform you of any changes to the extent required by law. Amendments to this policy will be effective when posted to our website at **www.OasisFinancial.com/privacy** .

# Xerox Color 570
## Banner Sheet

angel

User Name :

# angel

Job Name :          Exhibit F.pdf

Start Page

# PAYMENT INSTRUCTIONS
## Page 1 of 2

**Parties:** John Suber is Seller and Oasis Legal Finance, LLC is Purchaser

**Offer Date:** March 2, 2012

**Purchase Price to Seller:**     $2,000.00

(Select only one, and please check the box next to the option that you choose):

☐    ○ Money in Minutes at any **WESTERN UNION** near you. The Fastest way to get your funding. Many Western Union locations are open late! No waiting on a delivery service or the mail for a check, no check cashing fee, and no waiting on a bank to cash that check or release the cash to you. Many Locations Open Late!
Funds available on the SAME DAY if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details.

| Purchase Price to Seller | | Handling Fee |
|---|---|---|
| $0 | $750.00 | $85.00 |
| $751.00 - | $1,250.00 | $99.00 |
| $1,251.00 - | $2,000.00 | $130.00 |
| $2,001.00 - | $5,000.00 | $175.00 |

☐    **Direct Deposit Wire Transfer** to bank account in my name.
Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day. Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details:

| Purchase Price to Seller | | Handling Fee |
|---|---|---|
| $0 | $750.00 | $85.00 |
| $751.00 - | $1,250.00 | $99.00 |
| $1,251.00 - | $2,000.00 | $130.00 |
| $2,001.00 | and up | $175.00 |



Note: The routing and account numbers may be in different places on your check.

| Name of Bank: | |
|---|---|
| Bank's City, State: | |
| Routing/ABA Number: | |
| Account Number: | |
| Bank's Phone Number: | |
| Name on Account: (your name must be on the account) | |

☐    A **Check** sent in my name by U.S. **First Class Mail** with Delivery Confirmation
(Free– delivered within 5 to 10 days from post date. Not responsible for delays due to postal or bank holidays, or weekends).

Street Address Apt/Unit # _____

City, _____ State _____ Zip _____

# PAYMENT INSTRUCTIONS
## Page 2 of 2

☐    A **Check** sent in my name by **Overnight Delivery** service for delivery by the next business day.
     ($89.00 deducted from purchase price-no out of pocket cost to you. Overnight delivery does not include weekends. Saturday
     delivery available for an extra charge):

Street Address Apt/Unit # _____

City, _____ State _____ Zip _____

**Terms:** Purchaser agrees to provide funds to the Seller as requested below by the Seller. Seller agrees that funds received from
Purchaser are a purchase of property, not a loan, and that Purchaser owns a portion of the potential proceeds from the legal claim.

### Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| March 3, 2012 to September 2, 2012 | $3,000.00 |
| September 3, 2012 to March 2, 2013 | $3,300.00 |
| March 3, 2013 to June 2, 2013 | $4,500.00 |
| June 3, 2013 to September 2, 2013 | $5,000.00 |
| September 3, 2013 to March 2, 2014 | $5,500.00 |
| March 3, 2014 to September 2, 2014 | $6,500.00 |
| September 3, 2014 and thereafter | $7,000.00 |

Please describe how we helped you during these difficult times:_____

_____

By signing below, I hereby agree to the terms of the Payment Instructions and understand that I am responsible for the information
that I have provided on this form and that Purchaser is not responsible for any problem in delivery or transfer of funds, so long as it
follows the instructions provided by the Seller. I also agree to the use of the above statements in any way as Purchaser sees fit.

_____    _____    _____    _____
John Suber - Seller           Date          Oasis Legal Finance, LLC - Purchaser    Date

 **Oasis** Legal Finance

## CREDIT AND INFORMATION RELEASE

Oasis Legal Finance, LLC may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction.

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Legal Finance, LLC or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the agreement.

This authorization is valid for purposes of verifying information given pursuant to business negotiations, or any other lawful purpose covered under the Fair Credit Reporting Act. (FCRA).
Upon written request, we will tell you whether we have obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. We also request that by signing below, you certify the information provided by you to Oasis Legal Finance, LLC in your application and underwriting process is true, accurate and complete. You also authorize Oasis Legal Finance LLC to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis Legal Finance, LLC ("Oasis"), or its affiliates any and all information and documents pertaining to my current legal claim or lawsuit, including pleadings, discovery, investigation, contracts, medical records/reports, depositions, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application is true, accurate, and complete.


John Suber

_____
Date


_____     _____
Signature                                    Social Security Number


_____     _____
Telephone Number                  Date of Birth

Drivers License #: _____     State of Driver's License _____

_____
Street Address          City                State        Zip Code

# PURCHASE AGREEMENT
### PAGE 1 OF 6

| | |
|---|---|
| Purchaser: | Oasis Legal Finance, LLC (Oasis) |
| Seller: | John Suber |
| Purchase Price: | $2,000.00 |

**Oasis Ownership Amount**

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| March 3, 2012 to September 2, 2012 | $3,000.00 |
| September 3, 2012 to March 2, 2013 | $3,300.00 |
| March 3, 2013 to June 2, 2013 | $4,500.00 |
| June 3, 2013 to September 2, 2013 | $5,000.00 |
| September 3, 2013 to March 2, 2014 | $5,500.00 |
| March 3, 2014 to September 2, 2014 | $6,500.00 |
| September 3, 2014 and thereafter | $7,000.00 |

| Fees Due at Payment | |
|---|---|
| Case Servicing Fee every 6 months | $30.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $25.00 |

**SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION**

IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING. SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.

| SELLER: John Suber | Address: | 23 Eugene St, Valdosta, GA 31601 |
|---|---|---|

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of five (5) pages. I agree to be bound by the terms and conditions of this Purchase Agreement. This Agreement shall not be effective until the Purchase Price is paid to Seller.

Seller's Signature          Date                    Purchaser' Signature          Date

_____          _____

John Suber                    Oasis Legal Finance, LLC

## SECTION 1.    DEFINITIONS.

1.1    **"Legal Claim"** means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

1.2    **"Oasis Ownership Amount"** is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

1.3    **"Proceeds"** means whatever you receive as a result of the legal claim, for example through a judgment. Arbitration or the like.

1.4    **"Purchased Interest"** means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

# PURCHASE AGREEMENT
### PAGE 2 OF 6

**1.5** **"Purchaser"** means Oasis Legal Finance, LLC.

**1.6** **"Seller"** means John Suber.

**1.7** **"Seller's Attorney"** means, collectively, Stephen Stincer, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.**    **SELLER'S STATEMENTS.** Seller states to Purchaser as follows:

**2.1** **Purchase and Sale.** Seller sells, and the Purchaser buys, the Purchased Interest.

**2.2** **Title; Capacity.** Seller believes the Legal Claim to be meritorious and filed in good faith. Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

**2.3** **Information True, Complete and Correct.** Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3. SELLER'S ACKNOWLEDGEMENTS.** Seller acknowledges the following:

**3.1** **Risk of Loss.** This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser. The Oasis Ownership Amount has been negotiated to account for such risk.

**3.2** **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.** Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

**3.3** **No Previous Encumbrance** Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4. PURCHASER'S ACKNOWLEDGEMENT** Purchaser acknowledges the following:

**4.1** **Purchaser's Acknowledgment.** Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5. SELLER'S AGREEMENTS.** Seller agrees as follows:

**5.1** **Treatment of Transaction.** Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes). Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

**5.2** **Treatment in Bankruptcy.** If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

**5.3** **No Assignment.** Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death. In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

# PURCHASE AGREEMENT
### PAGE 3 OF 6

**5.4**   **Prosecution of Claim and Facilitation of Payment.** Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

**5.5**   **Subsequent Case Review.** Seller agrees to an additional case review charge of $20.00 each time seller requests and receives additional funding from Purchaser.

**5.6**   **Case Servicing Fee.** Seller agrees to pay to Purchaser a case servicing fee of $30.00 every six (6) months or increment thereof. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

**5.7**   **Substitution of Attorneys in the Legal Claim.** If Seller determines to hire new or additional attorneys to represent Seller in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

**5.8**   **No Assignment of Workers Compensation Benefits.** The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

**5.9**   **Requests for Documents and Information.** Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with: (a) prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6. PAYMENT AND PRIORITY.

**6.1**   **Priority Payment to Purchaser.** Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount. If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens. **If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Purchaser shall receive nothing**

**6.2**   **Mechanics and Timing of Payment.** The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction. Seller agrees not to have the Oasis Ownership amount paid to him. Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis. Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller. The Oasis Ownership Amount shall be determined as of the date it is received by Oasis. Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser. Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

**6.3**   **Risk of Loss.** Purchaser and Seller acknowledge that the Purchased Interest may be worthless. Purchaser accepts the risk of loss with respect to the Purchased Interest.

**6.4**   RIGHT TO PAY PURCHASER FROM ANY SOURCE.    THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME WITHOUT PENALTY PRIOR TO THE PROCEEDS DUE FROM THE LEGAL CLAIM BEING DISTRIBUTED. IF SELLER SO ELECTS, PAYMENT MUST BE RECEIVED AND ACKNOWLEDGED BY PURCHASER PRIOR TO SELLER RECEIVING ANY PROCEEDS FROM THE LEGAL CLAIM. UPON SELLER'S RECEIPT OF THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT, PURCHASER SHALL BE DEEMED TO HAVE TENDERED

# PURCHASE AGREEMENT
### PAGE 4 OF 6

BACK TO SELLER PURCHASER'S INTEREST IN THE PROCEEDS.

**SECTION 7. EVENT OF DEFAULT; SPECIFIC DEFAULT; RIGHT OF RESCISSION.**

    **7.1    Event of Default.** The breach by Seller of any of Seller's obligations under this Purchase Agreement shall constitute an "Event of Default" hereunder. In an Event of Default, Purchaser shall have all rights, powers, and remedies provided in the Purchase Agreement and as allowed by law or in equity.

    **7.2    Seller's Right of Rescission.** CONSUMER'S RIGHT TO CANCELLATION: YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE THE PURCHASE PRICE FROM PURCHASER.

TO CANCEL THIS AGREEMENT, YOU MUST EITHER:

    (I)      RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER BY DELIVERING THE UNCASHED CHECK TO PURCHASER IN PERSON WITHIN FIVE (5) BUSINESS DAYS; OR

    (II)      MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) BUSINESS DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S ADDRESS AS SET FORTH IN <u>SECTION 8.2</u> BELOW.

**SECTION 8.    MISCELLANEOUS.**

    **8.1    Survival of Representations.** All of the representations, warranties, covenants and Purchase Agreements of the parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

    **8.2    Notices.** All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the parties at the following addresses:

if to Purchaser, to:      Oasis Legal Finance, LLC
                            40 North Skokie Blvd, Suite 500
                            Northbrook, Illinois 60062
                            Attn:     Controller

and if to Seller, to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the parties hereto shall have specified in writing to the other.

    **8.3    Financing Statements and Additional Documents.** Seller irrevocably authorizes Purchaser at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto. Purchaser may indicate the following information in such financial statements and amendments: (a) that a portion of the proceeds that are derived from the Legal Claim are owned by Purchaser; and (b) any other information required, in Purchaser's discretion, by the Uniform Commercial Code in any relevant jurisdiction.

    **8.4    Release to Contact Third Parties.** As part of this Purchase Agreement it may be necessary to disclose information to third parties. Seller explicitly and irrevocably authorizes Purchaser to disclose any information to third parties as it deems appropriate to the extent permitted by law and also as referenced in the Oasis Legal Finance, LLC privacy policy. Seller releases Purchaser from any and all liability as a result of the release of any information.

    **8.5    Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed

# PURCHASE AGREEMENT
### PAGE 5 OF 6

by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**8.6 Governing Law and Forum.** This Purchase Agreement, and all lawsuits, disputes, claims, or proceedings arising out of or relating to this Purchase Agreement or the relationships that result from this Purchase Agreement, shall be governed, construed and enforced in accordance with the laws of the State of Georgia.

The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in an inconvenient forum.

Each of the parties to the Contract further irrevocably consents to the service of process out of the Circuit Court of Cook County, Illinois by mailing copies thereof by Registered or Certified United States mail, postage prepaid, to each of the parties of the Purchase Agreement at its address specified in this Contract.

**8.7 Waiver of Jury Trial, Consolidation and Class Action; Costs.**

THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.

THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.

**8.8 Counterparts and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.

**8.9 Assignment; Use of Information.** Purchaser's rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller. Seller's rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser, except for transfer by intestate due to Seller's death in which case Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller agrees that Purchaser may share information that Purchaser obtained about Seller (whether from Seller or other person or entity) with potential assignees to whom Purchaser may assign its rights and obligations under this Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser; and (ii) Purchaser enters into an appropriate confidentiality Purchase Agreement with any such potential assignee.

**8.10 No Third Party Beneficiaries; Successors and Assigns.** Subject to the provisions of Section 8.9, (a) this Purchase Agreement is solely for the benefit of Purchaser and Seller; and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

**8.11 Severability.** If any provision of this Purchase Agreement or the application of any such provision to any party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that

# PURCHASE AGREEMENT
### PAGE 6 OF 6

any term or provision of this Purchase Agreement is invalid or unenforceable, the parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

     8.12    **Legal Representation.**    SELLER UNDERSTANDS AND ACKNOWLEDGES THAT:  (A) PURCHASER HAS RECOMMENDED THAT SELLER ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.

     8.13    **Construction.**   The parties intend that this Purchase Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement

(REMAINDER OF PAGE LEFT INTENTIONALLY BLANK).

# IRREVOCABLE LETTER OF DIRECTION
### Sent by Fax to (912) 527-2010 and by US Mail

March 2, 2012

Stephen Stincer, Esq.
2 East Bryan
Savannah, GA 31401

Dear Stephen Stincer,

Be advised that I have sold a portion of the proceeds of my legal claim equal to the Oasis Ownership Amount to Oasis Legal Finance, LLC. I, John Suber, hereby irrevocably direct Stephen Stincer or any subsequent attorney(s) and law firms that may represent me, to tender the Oasis Ownership Amount to Oasis Legal Finance, LLC pursuant to this purchase agreement from any and all of the proceeds due to me from the legal claim(s)/case(s) in which you represent me, after payment of any and all legal fees and reimbursable costs before releasing any funds to me unless Oasis Legal Finance LLC advises you that I have already paid to them the Oasis Ownership Amount in full. If any dispute arises over the amount owed Oasis, I instruct you NOT to release any funds to me until that dispute is resolved. If a check is sent in my name, I hereby grant you a limited, irrevocable power of attorney to endorse and deposit my check into your trust account and pay to Oasis Legal Finance, LLC, its Ownership Amount, before releasing any funds to me. I also state that I do not have any significant outstanding child support obligations. I understand that any such significant outstanding child support obligation may delay or prevent my funding.

_____
(please initial)

I have read the Purchase Agreement and fully understand my obligations. I understand that Oasis has relied on this Irrevocable Letter of Direction to fund the Purchase Agreement, that the purchase price is $2,000.00, and that the Oasis Ownership Amount will increase based on a multiple of the purchase price and the date Oasis receives payment per the Purchase Agreement. In the event that you no longer represent me, I instruct you to provide Oasis with any insurance, attorney or other information requested that will allow it to protect its interest and to follow my irrevocable instructions. This letter may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute an agreement. By signing the acknowledgement below, you acknowledge that this letter is from me and that you will comply with this Irrevocable Letter of Direction

Sincerely,


_____
John Suber

## ATTORNEY ACKNOWLEDGMENT

- I, Stephen Stincer, Esq., acknowledge receipt of this Letter and the Purchase Agreement from my client.
- My fee agreement is on a contingency basis and there are liens (exclusive of attorneys fees and costs) against the case of approximately $_____, and I will honor my client's irrevocable letter of direction, subordinate to attorney fees, costs and appropriate medical liens as per instructions above. I acknowledge that John Suber has the right to pay the Oasis Ownership Amount in full from any source at any time prior to distribution of the proceeds.
- I fully expect and anticipate that any proceeds from the legal claim will be sent to me from the defendant and/or insurance company, and not to the Plaintiff, and I agree that all disbursements of funds, including plaintiff's share of proceeds, will be through my attorney trust account,
- I have not and will not accept any advice, direction or payment from Oasis Legal Finance LLC regarding the legal claim.
- To the best of my knowledge, John Suber has NOT received any previous cash fundings on his/her legal claim(s).
- Without the prior written consent of Oasis Legal Finance, LLC, I will not participate in or acknowledge any future cash fundings for John Suber.

_____      <u>How should we contact your office for case updates?</u>
Stephen Stincer, Esq.                               _____

                                          E-mail is Preferred (or Fax Number)

# **Oasis** Legal Finance

# NOTICE OF PAYMENT SCHEDULE

March 2, 2012

Stephen Stincer, Esq.
2 East Bryan
Savannah, GA 31401

RE:     OUR CLIENT: John Suber
        OUR CASE ID: P-GA-367408

Dear Stephen Stincer,

Oasis Legal Finance LLC has entered into a Purchase Agreement (attached) with John Suber. Oasis Legal Finance has purchased an interest in the potential proceeds from the legal claim of John Suber.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL OUR PURCHASED INTEREST (PLUS ANY APPLICABLE SECOND FUNDING OR SERVICING FEES) HAS BEEN SATISFIED.**

## OASIS OWNERSHIP AMOUNT

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| March 3, 2012 to September 2, 2012 | $3,000 00 |
| September 3, 2012 to March 2, 2013 | $3,300 00 |
| March 3, 2013 to June 2, 2013 | $4,500 00 |
| June 3, 2013 to September 2, 2013 | $5,000.00 |
| September 3, 2013 to March 2, 2014 | $5,500.00 |
| March 3, 2014 to September 2, 2014 | $6,500.00 |
| September 3, 2014 and thereafter | $7,000.00 |

| Fees Due at Payment | |
|---|---|
| Case Servicing Fee every 6 months | $30.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $25.00 |

Please call (866) 206-4800 (Press Option 6) or by fax at (847) 521-4392 to receive more information about payment.

**40 North Skokie Blvd, Suite 500, Northbrook, IL 60062**
**Phone (847) 521-4349 – Fax (847) 897-3143**
&lt;TO_FAXNUM:1(912) 527-2010&gt;
&lt;NOTE:Case Number P-GA-367408 John Suber&gt;
&lt;TO_NAME: John Suber&gt;

# OASIS LEGAL FINANCE, LLC PRIVACY POLICY
Effective date January 2010

At Oasis Legal Finance we are committed to providing you the best service while earning your trust. A critical part of earning that trust is protecting your privacy rights. We have created this document to explain our privacy policy to you. In addition, we are complying with both federal and state laws which require financial services companies to notify you, our valued customers, about how we intend to treat your personal information that you have entrusted with us.

We want our customers to be aware of what information Oasis collects and how it is handled, with whom the information may be shared, and our customers' "opt out" rights. This policy sets forth our policies with respect to nonpublic personally identifiable information ("personal information") about potential, current, and former customers

## I. PERSONAL INFORMATION
To provide reliable, quality service Oasis Legal Finance must collect certain personal financial, legal, and medical information regarding its customers and potential customers. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information may include, but is not limited to, name, address, e-mail address, telephone number(s), your date of birth, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports.

## II. OASIS LEGAL FINANCE'S COLLECTION AND USE OF INFORMATION
All personal information that Oasis Legal Finance collects when you or your attorney speak to an Oasis Legal Finance representative, or via any of Oasis' web sites when you inquire about or complete an application for one or more of our products or services (or begin the inquiry or application process, whether you complete the process or not), is handled by Oasis Legal Finance in accordance with this privacy statement.

Oasis Legal Finance uses personal information: for the stated purpose for which such information is gathered, for marketing analysis and sales planning purposes; for servicing and collection purposes; for legal, financial, accounting and tax record keeping; for other business purposes associated with its services; to manage its business; and to comply with requirements imposed by governmental authorities. Oasis Legal Finance discloses personal information to certain service providers that are contractually obligated to keep the information we provide them confidential and to use the personal information we share only to provide the services we ask them to perform.

In an effort to provide a diversity of product and service offers that may benefit our customers or potential customers, Oasis Legal Finance may provide non-public information about our customers to affiliated and unaffiliated companies. This information may include; name, address, e-mail address, and phone number(s). At no time will we ever disclose any medical, legal or transactional information for these purposes. Information that is collected or maintained by any company other than Oasis Legal Finance, including additional information collected by such company, will be governed by that other company's privacy policy.

Oasis Legal Finance will not disclose your personal information to a third party unless (i) disclosure is necessary to render services or to perform related business activities expressed in this privacy policy; (ii) disclosure is required pursuant a request for specific customer information to comply with a subpoena, court order, and/or other legal instrument, legal proceeding or relevant law, including compliance with the USA Patriot Act; or (iii) as otherwise permitted by law.

## III. OASIS LEGAL FINANCE'S INFORMATION SECURITY

Oasis Legal Finance maintains physical, electronic, and procedural safeguards that comply with federal and state regulations to guard your personal information, and secure your information from unauthorized access, use and disclosure. To this end, we use industry-standard methods such as firewalls, encryption and system access controls, and our security practices are regularly reviewed against industry best practices by internal staff and independent third parties.

All personal information that Oasis Legal Finance collects is accessible by Oasis Legal Finance employees and contractors and, to the extent required for the tax, accounting, legal and other professionals hired by Oasis Legal Finance, for business purposes only and to fulfill their fiduciary or representative duty. All such professionals are bound to maintain the confidentiality of information supplied to them by contractual and/or ethical obligations.

## VI. "OPT-OUT" PROVISION
Oasis Legal Finance offers any person the opportunity to "opt-out" of receiving future offers from Oasis or from affiliated and unaffiliated companies. To remove your information from our database so as not to receive future advertising communications, you can send an email to optout@oasislegal.com. Or you can send a written correspondence to the same effect to:

Opt-Out
Oasis Legal Finance, LLC
40 N. Skokie Blvd, Suite 500
Northbrook, IL 60062

Please note that it may take up to 30 days from the date of receipt of notification for your request to become active. In your opt-out instructions, so that we can accurately remove your record, please include your name, address, phone number, and attorney's name that is handling or handled your case.

California: In accordance with California law, Oasis Legal Finance will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

Vermont: In accordance with Vermont law, Oasis Legal Finance will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

## VII. REVISION OF THIS POLICY
This Privacy Policy may be revised from time to time by Oasis Legal Finance. We will inform you of any changes as required by law. Amendments to this policy will be effective when posted to our website at www.oasislegal.com.

⊕ 04/16/2012 3:49 PM     RECEIVED   04/16/2012 16:47   9122333584     CARDILLO AND STINCER
04/16/2012 Mon 15:48    Fax Services       → Stephen Stincer, Esq.                 D 3
                          Oasis Legal Finance                                 ID: #544031   Page 3 of 14

# PAYMENT INSTRUCTIONS
## Page 1 of 2

**Parties:** John Suber is Seller and Oasis Legal Finance, LLC is Purchaser

**Offer Date:** April 16, 2012

**Purchase Price to Seller:**     $2,000.00

(Select only one, and please check the box next to the option that you choose):

☐    ⊕ Money in Minutes at any   [WESTERN UNION | yes!]   near you. The Fastest way to get your funding. Many Western Union locations are open late! No waiting on a delivery service or the mail for a check, no check cashing fee, and no waiting on a bank to cash that check or release the cash to you. Many Locations Open Late!
Funds available on the SAME DAY if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details.

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $85.00 |
| $751.00 | - | $1,250.00 | $99.00 |
| $1,251.00 | - | $2,000.00 | $137.00 |
| $2,001.00 | - | $5,000.00 | $184.00 |

☐    **Direct Deposit Wire Transfer** to bank account in my name.
Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day. Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details:

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $85.00 |
| $751.00 | - | $1,250.00 | $99.00 |
| $1,251.00 | - | $2,000.00 | $137.00 |
| $2,001.00 | and up | | $184.00 |



| | |
|---|---|
| Name of Bank: | |
| Bank's City, State: | |
| Routing/ABA Number: | |
| Account Number: | |
| Bank's Phone Number: | |
| Name on Account: (your name must be on the account) | |

☐    A **Check** sent in my name by **U.S. First Class Mail** with Delivery Confirmation
(Free– delivered within 5 to 10 days from post date. Not responsible for delays due to postal or bank holidays, or weekends).

Street Address Apt/Unit # _____

City, _____ State _____ Zip _____

04/16/2012 3:49 PM
04/16/2012 Mon 15:48

RECEIVED   04/16/2012 16:47   9122333584          CARDILLO AND STINCER
Fax Services                  → Stephen Stincer, Esq.                    D 4
                              Oasis Legal Finance        ID: #544031  Page 4 of 14

# PAYMENT INSTRUCTIONS
## Page 2 of 2

☐   A **Check** sent in my name by **Overnight Delivery** service for delivery by the next business day.
($94.00 deducted from purchase price-no out of pocket cost to you.  Overnight delivery does not include weekends.  Saturday delivery available for an extra charge):

Street Address Apt/Unit # _____

City, _____ State _____ Zip _____

**Terms:**  Purchaser agrees to provide funds to the Seller as requested below by the Seller. Seller agrees that funds received from Purchaser are a purchase of property, not a loan, and that Purchaser owns a portion of the potential proceeds from the legal claim.

### Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| April 17, 2012 to October 16, 2012 | $3,000.00 |
| October 17, 2012 to April 16, 2013 | $3,300.00 |
| April 17, 2013 to July 16, 2013 | $4,500.00 |
| July 17, 2013 to October 16, 2013 | $5,000.00 |
| October 17, 2013 to April 16, 2014 | $5,500.00 |
| April 17, 2014 to October 16, 2014 | $6,500.00 |
| October 17, 2014 and thereafter | $7,000.00 |

Please describe how we helped you during these difficult times:_____

_____

By signing below, I hereby agree to the terms of the Payment Instructions and understand that I am responsible for the information that I have provided on this form and that Purchaser is not responsible for any problem in delivery or transfer of funds, so long as it follows the instructions provided by the Seller.  I also agree to the use of the above statements in any way as Purchaser sees fit.

_____         _____              _____         _____
John Suber - Seller        Date                      Oasis Legal Finance, LLC - Purchaser    Date

Case ID: P-GA-367408

# Oasis Legal Finance

## CREDIT AND INFORMATION RELEASE

Oasis Legal Finance, LLC may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction.

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Legal Finance, LLC or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the agreement.

This authorization is valid for purposes of verifying information given pursuant to business negotiations, or any other lawful purpose covered under the Fair Credit Reporting Act. (FCRA).

Upon written request, we will tell you whether we have obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. We also request that by signing below, you certify the information provided by you to Oasis Legal Finance, LLC in your application and underwriting process is true, accurate and complete. You also authorize Oasis Legal Finance LLC to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis Legal Finance, LLC ("Oasis"), or its affiliates any and all information and documents pertaining to my current legal claim or lawsuit, including pleadings, discovery, investigation, contracts, medical records/reports, depositions, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application is true, accurate, and complete.

John Suber
_____                    _____
                                                   Date

_____                    _____
Signature                                          Social Security Number

_____                    _____
Telephone Number                                   Date of Birth

Drivers License #: _____                  State of Driver's License _____

_____
Street Address            City                     State         Zip Code

04/16/2012 3:49 PM
04/16/2012 Mon 15:48

RECEIVED 04/16/2012 16:47 9122333584
Fax Services →Stephen Stincer, Esq.
Oasis Legal Finance

CARDILLO AND STINCER
D 6
ID:#544031 Page 6 of 14

# PURCHASE AGREEMENT
### PAGE 1 OF 6

| | |
|---|---|
| **Purchaser:** | Oasis Legal Finance, LLC (Oasis) |
| **Seller:** | John Suber |
| **Purchase Price:** | $2,000.00 |

**Oasis Ownership Amount**

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| April 17, 2012 to October 16, 2012 | $3,000.00 |
| October 17, 2012 to April 16, 2013 | $3,300.00 |
| April 17, 2013 to July 16, 2013 | $4,500.00 |
| July 17, 2013 to October 16, 2013 | $5,000.00 |
| October 17, 2013 to April 16, 2014 | $5,500.00 |
| April 17, 2014 to October 16, 2014 | $6,500.00 |
| October 17, 2014 and thereafter | $7,000.00 |

**Fees Due at Payment**

| | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $35.00 |

SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION

IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING. SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.

**SELLER:** John Suber  **Address:** 203 Eugene St, Valdosta, GA 31601

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of five (5) pages. I agree to be bound by the terms and conditions of this Purchase Agreement. This Agreement shall not be effective until the Purchase Price is paid to Seller.

Seller's Signature          Date                    Purchaser' Signature          Date

_____          _____
John Suber                                Oasis Legal Finance, LLC

## SECTION 1.    DEFINITIONS.

    **1.1** "**Legal Claim**" means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

    **1.2** "**Oasis Ownership Amount**" is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

    **1.3** "**Proceeds**" means whatever you receive as a result of the legal claim, for example through a judgment. Arbitration or the like.

    **1.4** "**Purchased Interest**" means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

# PURCHASE AGREEMENT
### PAGE 2 OF 6

**1.5**    "**Purchaser**" means Oasis Legal Finance, LLC.

**1.6**    "**Seller**" means John Suber.

**1.7**    "**Seller's Attorney**" means, collectively, Stephen Stincer, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.**    **SELLER'S STATEMENTS.**  Seller states to Purchaser as follows:

**2.1**    **Purchase and Sale.**  Seller sells, and the Purchaser buys, the Purchased Interest.

**2.2**    **Title; Capacity.**  Seller believes the Legal Claim to be meritorious and filed in good faith.  Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

**2.3**    **Information True, Complete and Correct.**  Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3.**  **SELLER'S ACKNOWLEDGEMENTS.**  Seller acknowledges the following:

**3.1**    **Risk of Loss.**  This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser. The Oasis Ownership Amount has been negotiated to account for such risk.

**3.2**    **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.**  Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

**3.3**    **No Previous Encumbrance** Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4.**  **PURCHASER'S ACKNOWLEDGEMENT.**  Purchaser acknowledges the following:

**4.1**    **Purchaser's Acknowledgment.**  Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5.**  **SELLER'S AGREEMENTS.**  Seller agrees as follows:

**5.1**    **Treatment of Transaction.**  Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes).  Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

**5.2**    **Treatment in Bankruptcy.**  If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

**5.3**    **No Assignment.**  Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death.  In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

# PURCHASE AGREEMENT
### PAGE 3 OF 6

**5.4** **Prosecution of Claim and Facilitation of Payment.** Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

**5.5** **Subsequent Case Review.** Seller agrees to an additional case review charge of $20.00 each time seller requests and receives additional funding from Purchaser.

**5.6** **Case Servicing Fee.** Seller agrees to pay to Purchaser a case servicing fee of $35.00 every six (6) months or increment thereof. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

**5.7** **Substitution of Attorneys in the Legal Claim.** If Seller determines to hire new or additional attorneys to represent Seller in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

**5.8** **No Assignment of Workers Compensation Benefits.** The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

**5.9** **Requests for Documents and Information.** Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with: (a) prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6. PAYMENT AND PRIORITY.

**6.1** **Priority Payment to Purchaser.** Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount. If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens. **If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Purchaser shall receive nothing**

**6.2** **Mechanics and Timing of Payment.** The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction. Seller agrees not to have the Oasis Ownership amount paid to him. Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis. Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller. The Oasis Ownership Amount shall be determined as of the date it is received by Oasis. Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser. Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

**6.3** **Risk of Loss.** Purchaser and Seller acknowledge that the Purchased Interest may be worthless. Purchaser accepts the risk of loss with respect to the Purchased Interest.

**6.4** **RIGHT TO PAY PURCHASER FROM ANY SOURCE.** THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME WITHOUT PENALTY PRIOR TO THE PROCEEDS DUE FROM THE LEGAL CLAIM BEING DISTRIBUTED. IF SELLER SO ELECTS, PAYMENT MUST BE RECEIVED AND ACKNOWLEDGED BY PURCHASER PRIOR TO SELLER RECEIVING ANY PROCEEDS FROM THE LEGAL CLAIM. UPON SELLER'S RECEIPT OF THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT, PURCHASER SHALL BE DEEMED TO HAVE TENDERED

# PURCHASE AGREEMENT
### PAGE 4 OF 6

BACK TO SELLER PURCHASER'S INTEREST IN THE PROCEEDS.

**SECTION 7.  EVENT OF DEFAULT; SPECIFIC DEFAULT; RIGHT OF RESCISSION.**

    **7.1**    **Event of Default.** The breach by Seller of any of Seller's obligations under this Purchase Agreement shall constitute an "Event of Default" hereunder.  In an Event of Default, Purchaser shall have all rights, powers, and remedies provided in the Purchase Agreement and as allowed by law or in equity.

    **7.2**    **Seller's Right of Rescission.** CONSUMER'S RIGHT TO CANCELLATION:  YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE THE PURCHASE PRICE FROM PURCHASER.

TO CANCEL THIS AGREEMENT, YOU MUST EITHER:

    (I)    RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER BY DELIVERING THE UNCASHED CHECK TO PURCHASER IN PERSON WITHIN FIVE (5) BUSINESS DAYS; OR

    (II)    MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) BUSINESS DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S ADDRESS AS SET FORTH IN SECTION 8.2 BELOW.

**SECTION 8.  MISCELLANEOUS.**

    **8.1**    **Survival of Representations.** All of the representations, warranties, covenants and Purchase Agreements of the parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

    **8.2**    **Notices.** All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing.  All such notices or communications shall be deemed to have been given or made delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the parties at the following addresses:

if to Purchaser, to:      Oasis Legal Finance, LLC
                    40 North Skokie Blvd, Suite 500
                    Northbrook, Illinois 60062
                    Attn:    Controller

and if to Seller, to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the parties hereto shall have specified in writing to the other.

    **8.3**    **Financing Statements and Additional Documents.** Seller irrevocably authorizes Purchaser at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto.  Purchaser may indicate the following information in such financial statements and amendments: (a) that a portion of the proceeds that are derived from the Legal Claim are owned by Purchaser; and (b) any other information required, in Purchaser's discretion, by the Uniform Commercial Code in any relevant jurisdiction.

    **8.4**    **Release to Contact Third Parties.** As part of this Purchase Agreement it may be necessary to disclose information to third parties. Seller explicitly and irrevocably authorizes Purchaser to disclose any information to third parties as it deems appropriate to the extent permitted by law and also as referenced in the Oasis Legal Finance, LLC privacy policy. Seller releases Purchaser from any and all liability as a result of the release of any information.

    **8.5**    **Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed

⊙ 04/16/2012 3:49 PM    RECEIVED  04/16/2012 16:47  9122333584     CARDILLO AND STINCER
04/16/2012 Mon 15:48    Fax Services        →Stephen Stincer, Esq.                         🗋 10
                             Oasis Legal Finance                                 ID:#544031  Page 10 of 14

# PURCHASE AGREEMENT
### PAGE 5 OF 6

by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

    **8.6      Governing Law and Forum.** This Purchase Agreement, and all lawsuits, disputes, claims, or proceedings arising out of or relating to this Purchase Agreement or the relationships that result from this Purchase Agreement, shall be governed, construed and enforced in accordance with the laws of the State of Georgia.

    The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in an inconvenient forum.

    Each of the parties to the Contract further irrevocably consents to the service of process out of the Circuit Court of Cook County, Illinois by mailing copies thereof by Registered or Certified United States mail, postage prepaid, to each of the parties of the Purchase Agreement at its address specified in this Contract.

    **8.7      Waiver of Jury Trial, Consolidation and Class Action; Costs.**

    THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.

    THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.

    **8.8      Counterparts and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.

    **8.9      Assignment; Use of Information.** Purchaser's rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller. Seller's rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser, except for transfer by intestate due to Seller's death in which case Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller agrees that Purchaser may share information that Purchaser obtained about Seller (whether from Seller or other person or entity) with potential assignees to whom Purchaser may assign its rights and obligations under this Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser; and (ii) Purchaser enters into an appropriate confidentiality Purchase Agreement with any such potential assignee.

    **8.10    No Third Party Beneficiaries; Successors and Assigns.** Subject to the provisions of Section 8.9, (a) this Purchase Agreement is solely for the benefit of Purchaser and Seller; and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

    **8.11    Severability.** If any provision of this Purchase Agreement or the application of any such provision to any party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that

# PURCHASE AGREEMENT
### PAGE 6 OF 6

any term or provision of this Purchase Agreement is invalid or unenforceable, the parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

    8.12    **Legal Representation.**    SELLER UNDERSTANDS AND ACKNOWLEDGES THAT: (A) PURCHASER HAS RECOMMENDED THAT SELLER ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.

    8.13    **Construction.**  The parties intend that this Purchase Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement

    (REMAINDER OF PAGE LEFT INTENTIONALLY BLANK).

## IRREVOCABLE LETTER OF DIRECTION
Sent by Fax to (912) 233-3584 and by US Mail

April 16, 2012

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

Dear Stephen Stincer,

Be advised that I have sold a portion of the proceeds of my legal claim equal to the Oasis Ownership Amount to Oasis Legal Finance, LLC. I, John Suber, hereby irrevocably direct Stephen Stincer or any subsequent attorney(s) and law firms that may represent me, to tender the Oasis Ownership Amount to Oasis Legal Finance, LLC pursuant to this purchase agreement from any and all of the proceeds due to me from the legal claim(s)/case(s) in which you represent me, after payment of any and all legal fees and reimbursable costs before releasing any funds to me unless Oasis Legal Finance LLC advises you that I have already paid to them the Oasis Ownership Amount in full. If any dispute arises over the amount owed Oasis, I instruct you NOT to release any funds to me until that dispute is resolved. If a check is sent in my name, I hereby grant you a limited, irrevocable power of attorney to endorse and deposit my check into your trust account and pay to Oasis Legal Finance, LLC, its Ownership Amount, before releasing any funds to me. I also state that I do not have any significant outstanding child support obligations. I understand that any such significant outstanding child support obligation may delay or prevent my funding.

_____
(please initial)

I have read the Purchase Agreement and fully understand my obligations. I understand that Oasis has relied on this Irrevocable Letter of Direction to fund the Purchase Agreement, that the purchase price is $2,000.00, and that the Oasis Ownership Amount will increase based on a multiple of the purchase price and the date Oasis receives payment per the Purchase Agreement. In the event that you no longer represent me, I instruct you to provide Oasis with any insurance, attorney or other information requested that will allow it to protect its interest and to follow my irrevocable instructions. This letter may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute an agreement. By signing the acknowledgement below, you acknowledge that this letter is from me and that you will comply with this Irrevocable Letter of Direction.

Sincerely,


_____
John Suber

### ATTORNEY ACKNOWLEDGMENT

- I, Stephen Stincer, Esq., acknowledge receipt of this Letter and the Purchase Agreement from my client.
- My fee agreement is on a contingency basis and there are liens (exclusive of attorneys fees and costs) against the case of approximately $_____, and I will honor my client's irrevocable letter of direction, subordinate to attorney fees, costs and appropriate medical liens as per instructions above. I acknowledge that John Suber has the right to pay the Oasis Ownership Amount in full from any source at any time prior to distribution of the proceeds.
- I fully expect and anticipate that any proceeds from the legal claim will be sent to me from the defendant and/or insurance company, and not to the Plaintiff, and I agree that all disbursements of funds, including plaintiff's share of proceeds, will be through my attorney trust account.
- I have not and will not accept any advice, direction or payment from Oasis Legal Finance LLC regarding the legal claim.
- To the best of my knowledge, John Suber has NOT received any previous cash fundings on his/her legal claim(s), except for the Purchase Agreement dated Mar 02, 2012 with Oasis Legal Finance, LLC.
- Without the prior written consent of Oasis Legal Finance, LLC, I will not participate in or acknowledge any future cash fundings for John Suber.

How should we contact your office for case updates?


_____                    _____
Stephen Stincer, Esq.                       E-mail is Preferred (or Fax Number)

04/16/2012 3:49 PM    RECEIVED 04/16/2012 16:47   9122333584      CARDILLO AND STINCER
04/16/2012 Mon 15:48    Fax Services          →Stephen Stincer, Esq.          D 13
           Oasis Legal Finance          ID: #544031   Page 13 of 14

**Oasis** Legal Finance

# NOTICE OF PAYMENT SCHEDULE

April 16, 2012

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

RE:     OUR CLIENT: John Suber
        OUR CASE ID: P-GA-367408

Dear Stephen Stincer,

Oasis Legal Finance LLC has entered into a Purchase Agreement (attached) with John Suber. Oasis Legal Finance has purchased an interest in the potential proceeds from the legal claim of John Suber.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL OUR PURCHASED INTEREST (PLUS ANY APPLICABLE SECOND FUNDING OR SERVICING FEES) HAS BEEN SATISFIED.**

### OASIS OWNERSHIP AMOUNT

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| April 17, 2012 to October 16, 2012 | $3,000.00 |
| October 17, 2012 to April 16, 2013 | $3,300.00 |
| April 17, 2013 to July 16, 2013 | $4,500.00 |
| July 17, 2013 to October 16, 2013 | $5,000.00 |
| October 17, 2013 to April 16, 2014 | $5,500.00 |
| April 17, 2014 to October 16, 2014 | $6,500.00 |
| October 17, 2014 and thereafter | $7,000.00 |

| Fees Due at Payment | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $35.00 |

Please call (866) 206-4800 (Press Option 6) or by fax at (847) 521-4392 to receive more information about payment.

**40 North Skokie Blvd, Suite 500, Northbrook, IL 60062**
**Phone (847) 521-4349 – Fax (847) 897-3143**
<TO_FAXNUM:1(912) 233-3584>
<NOTE:Case Number P-GA-367408 John Suber>
<TO_NAME: John Suber>

04/16/2012 3:49 PM  
04/16/2012 Mon 15:48

RECEIVED 04/16/2012 16:47 9122333584  
Fax Services  
→ Stephen Stincer, Esq.  
Oasis Legal Finance

CARDILLO AND STINCER  
D 14  
ID: #544031 Page 14 of 14

OASIS LEGAL FINANCE, LLC PRIVACY POLICY  
Effective date January 2010

At Oasis Legal Finance we are committed to providing you the best service while earning your trust. A critical part of earning that trust is protecting your privacy rights. We have created this document to explain our privacy policy to you. In addition, we are complying with both federal and state laws which require financial services companies to notify you, our valued customers, about how we intend to treat your personal information that you have entrusted with us.

We want our customers to be aware of what information Oasis collects and how it is handled, with whom the information may be shared, and our customers' "opt out" rights. This policy sets forth our policies with respect to nonpublic personally identifiable information ("personal information") about potential, current, and former customers.

I. PERSONAL INFORMATION  
To provide reliable, quality service Oasis Legal Finance must collect certain personal financial, legal, and medical information regarding its customers and potential customers. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information may include, but is not limited to, name, address, e-mail address, telephone number(s), your date of birth, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports.

II. OASIS LEGAL FINANCE'S COLLECTION AND USE OF INFORMATION  
All personal information that Oasis Legal Finance collects when you or your attorney speak to an Oasis Legal Finance representative, or via any of Oasis' web sites when you inquire about or complete an application for one or more of our products or services (or begin the inquiry or application process, whether you complete the process or not), is handled by Oasis Legal Finance in accordance with this privacy statement.

Oasis Legal Finance uses personal information: for the stated purpose for which such information is gathered; for marketing analysis and sales planning purposes; for servicing and collection purposes; for legal, financial, accounting and tax record keeping; for other business purposes associated with its services; to manage its business; and to comply with requirements imposed by governmental authorities. Oasis Legal Finance discloses personal information to certain service providers that are contractually obligated to keep the information we provide them confidential and to use the personal information we share only to provide the services we ask them to perform.

In an effort to provide a diversity of product and service offers that may benefit our customers or potential customers, Oasis Legal Finance may provide non-public information about our customers to affiliated and unaffiliated companies. This information may include; name, address, e-mail address, and phone number(s). At no time will we ever disclose any medical, legal or transactional information for these purposes. Information that is collected or maintained by any company other than Oasis Legal Finance, including additional information collected by such company, will be governed by that other company's privacy policy.

Oasis Legal Finance will not disclose your personal information to a third party unless (i) disclosure is necessary to render services or to perform related business activities expressed in this privacy policy; (ii) disclosure is required pursuant a request for specific customer information to comply with a subpoena, court order, and/or other legal instrument, legal proceeding or relevant law, including compliance with the USA Patriot Act; or (iii) as otherwise permitted by law.

III. OASIS LEGAL FINANCE'S INFORMATION SECURITY

Oasis Legal Finance maintains physical, electronic, and procedural safeguards that comply with federal and state regulations to guard your personal information, and secure your information from unauthorized access, use and disclosure. To this end, we use industry-standard methods such as firewalls, encryption and system access controls, and our security practices are regularly reviewed against industry best practices by internal staff and independent third parties.

All personal information that Oasis Legal Finance collects is accessible by Oasis Legal Finance employees and contractors and, to the extent required for the tax, accounting, legal and other professionals hired by Oasis Legal Finance, for business purposes only and to fulfill their fiduciary or representative duty. All such professionals are bound to maintain the confidentiality of information supplied to them by contractual and/or ethical obligations.

VI. "OPT-OUT" PROVISION  
Oasis Legal Finance offers any person the opportunity to "opt-out" of receiving future offers from Oasis or from affiliated and unaffiliated companies. To remove your information from our database so as not to receive future advertising communications, you can send an email to optout@oasislegal.com. Or you can send a written correspondence to the same effect to:

Opt-Out  
Oasis Legal Finance, LLC  
40 N. Skokie Blvd, Suite 500  
Northbrook, IL 60062

Please note that it may take up to 30 days from the date of receipt of notification for your request to become active. In your opt-out instructions, so that we can accurately remove your record, please include your name, address, phone number, and attorney's name that is handling or handled your case.

California: In accordance with California law, Oasis Legal Finance will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

Vermont: In accordance with Vermont law, Oasis Legal Finance will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

VII. REVISION OF THIS POLICY  
This Privacy Policy may be revised from time to time by Oasis Legal Finance. We will inform you of any changes as required by law. Amendments to this policy will be effective when posted to our website at www.oasislegal.com.

# PAYMENT INSTRUCTIONS
## Page 1 of 2

**Parties:** John Suber is Seller and Oasis Legal Finance, LLC is Purchaser

**Offer Date:** May 23, 2012

**Purchase Price to Seller:**        $1,100.00

### (Select only one, and please check the box next to the option that you choose):

☐   ⟳ Money in Minutes at any **WESTERN UNION** near you. The Fastest way to get your funding. Many Western Union locations are open late! No waiting on a delivery service or the mail for a check, no check cashing fee, and no waiting on a bank to cash that check or release the cash to you. Many Locations Open Late!
Funds available on the **SAME DAY** if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details.

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $85.00 |
| $751.00 | - | $1,250.00 | $99.00 |
| $1,251.00 | - | $2,000.00 | $137.00 |
| $2,001.00 | - | $5,000.00 | $184.00 |

☐   **Direct Deposit Wire Transfer** to bank account in my name.
Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day. Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details:

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $85.00 |
| $751.00 | - | $1,250.00 | $99.00 |
| $1,251.00 | - | $2,000.00 | $137.00 |
| $2,001.00 | and up | | $184.00 |



Note. The routing and account numbers may be in different places on your check.

| | |
|---|---|
| Name of Bank: | |
| Bank's City, State: | |
| Routing/ABA Number: | |
| Account Number: | |
| Bank's Phone Number: | |
| Name on Account: (your name must be on the account) | |

☐   A Check sent in my name by U.S. First Class Mail with Delivery Confirmation
(Free– delivered within 5 to 10 days from post date. Not responsible for delays due to postal or bank holidays, or weekends).

Street Address Apt/Unit # _____

City, _____  State _____  Zip _____

05/23/2012 12:12 PM
05/23/2012 Wed 12:12

RECEIVED 05/23/2012 13:11 9122333584
Fax Services → Stephen Stincer, Esq.
Oasis Legal Finance

CARDILLO AND STINGER
D 4
ID: #564196 Page 4 of 14

## PAYMENT INSTRUCTIONS
### Page 2 of 2

☐     A **Check** sent in my name by **Overnight Delivery** service for delivery by the next business day.
($94.00 deducted from purchase price-no out of pocket cost to you. Overnight delivery does not include weekends. Saturday delivery available for an extra charge):

Street Address Apt/Unit # _____

City, _____ State _____ Zip _____

**Terms:** Purchaser agrees to provide funds to the Seller as requested below by the Seller. Seller agrees that funds received from Purchaser are a purchase of property, not a loan, and that Purchaser owns a portion of the potential proceeds from the legal claim.

### Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| May 24, 2012 to November 23, 2012 | $1,650.00 |
| November 24, 2012 to May 23, 2013 | $1,815.00 |
| May 24, 2013 to August 23, 2013 | $2,475.00 |
| August 24, 2013 to November 23, 2013 | $2,750.00 |
| November 24, 2013 to May 23, 2014 | $3,025.00 |
| May 24, 2014 to November 23, 2014 | $3,575.00 |
| November 24, 2014 and thereafter | $3,850.00 |

Please describe how we helped you during these difficult times: _____

_____

By signing below, I hereby agree to the terms of the Payment Instructions and understand that I am responsible for the information that I have provided on this form and that Purchaser is not responsible for any problem in delivery or transfer of funds, so long as it follows the instructions provided by the Seller. I also agree to the use of the above statements in any way as Purchaser sees fit.

_____ _____    _____ _____
John Suber - Seller     Date      Oasis Legal Finance, LLC - Purchaser    Date

Case ID: P-GA-367408

# Oasis Legal Finance

## CREDIT AND INFORMATION RELEASE

Oasis Legal Finance, LLC may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction.

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Legal Finance, LLC or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the agreement.

This authorization is valid for purposes of verifying information given pursuant to business negotiations, or any other lawful purpose covered under the Fair Credit Reporting Act. (FCRA).

Upon written request, we will tell you whether we have obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. We also request that by signing below, you certify the information provided by you to Oasis Legal Finance, LLC in your application and underwriting process is true, accurate and complete. You also authorize Oasis Legal Finance LLC to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis Legal Finance, LLC ("Oasis"), or its affiliates any and all information and documents pertaining to my current legal claim or lawsuit, including pleadings, discovery, investigation, contracts, medical records/reports, depositions, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application is true, accurate, and complete.

John Suber

_____          _____
                                          Date

_____          _____
Signature                                 Social Security Number

_____          _____
Telephone Number                          Date of Birth

Drivers License #: _____          State of Driver's License _____

_____
Street Address                City                State          Zip Code

05/23/2012 12:12 PM
05/23/2012 Wed 12:12

RECEIVED  05/23/2012 13:11   9122333584
Fax Services              → Stephen Stincer, Esq.
              Oasis Legal Finance

CARDILLO AND STINCER
                                    □ 6
ID: #564196  Page 6 of 14

# PURCHASE AGREEMENT
### PAGE 1 OF 6

| | |
|---|---|
| Purchaser: | Oasis Legal Finance, LLC (Oasis) |
| Seller: | John Suber |
| Purchase Price: | **$1,100.00** |

**Oasis Ownership Amount**

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| May 24, 2012 to November 23, 2012 | $1,650.00 |
| November 24, 2012 to May 23, 2013 | $1,815.00 |
| May 24, 2013 to August 23, 2013 | $2,475.00 |
| August 24, 2013 to November 23, 2013 | $2,750.00 |
| November 24, 2013 to May 23, 2014 | $3,025.00 |
| May 24, 2014 to November 23, 2014 | $3,575.00 |
| November 24, 2014 and thereafter | $3,850.00 |

**Fees Due at Payment**

| | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $35.00 |

SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION

IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING. SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.

SELLER:   John Suber      Address:      203 Eugene St,  Valdosta, GA 31601

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of five (5) pages. I agree to be bound by the terms and conditions of this Purchase Agreement. This Agreement shall not be effective until the Purchase Price is paid to Seller.

Seller's Signature         Date                    Purchaser' Signature          Date

_____                     _____
John Suber                                  Oasis Legal Finance, LLC

## SECTION 1.   DEFINITIONS.

1.1    "Legal Claim" means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

1.2    "Oasis Ownership Amount" is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

1.3    "Proceeds" means whatever you receive as a result of the legal claim, for example through a judgment, Arbitration or the like.

1.4    "Purchased Interest" means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

Case ID: P-GA-367408                                                    All Ver. 3.0

# PURCHASE AGREEMENT
### PAGE 2 OF 6

**1.5**    "Purchaser" means Oasis Legal Finance, LLC.

**1.6**    "Seller" means John Suber.

**1.7**    "Seller's Attorney" means, collectively, Stephen Stincer, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.    SELLER'S STATEMENTS.**  Seller states to Purchaser as follows:

**2.1    Purchase and Sale.**  Seller sells, and the Purchaser buys, the Purchased Interest.

**2.2    Title; Capacity.**  Seller believes the Legal Claim to be meritorious and filed in good faith.  Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

**2.3    Information True, Complete and Correct.**  Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3.  SELLER'S ACKNOWLEDGEMENTS.**  Seller acknowledges the following:

**3.1    Risk of Loss.**  This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser. The Oasis Ownership Amount has been negotiated to account for such risk.

**3.2    No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.**  Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

**3.3    No Previous Encumbrance**  Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4.  PURCHASER'S ACKNOWLEDGEMENT.**  Purchaser acknowledges the following:

**4.1    Purchaser's Acknowledgment.**  Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5.  SELLER'S AGREEMENTS.**  Seller agrees as follows:

**5.1    Treatment of Transaction.**  Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes).  Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

**5.2    Treatment in Bankruptcy.**  If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

**5.3    No Assignment.**  Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death.  In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

⊙ 05/23/2012 12:12 PM    RECEIVED   05/23/2012 13:11   9122333584    CARDILLO AND STINGER
    05/23/2012 Wed 12:12    Fax Services     → Stephen Stincer, Esq.     D 8
                       Oasis Legal Finance     ID: #564196   Page 8 of 14

# PURCHASE AGREEMENT
PAGE 3 OF 6

**5.4**     **Prosecution of Claim and Facilitation of Payment.** Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

**5.5**     **Subsequent Case Review.** Seller agrees to an additional case review charge of $20.00 each time seller requests and receives additional funding from Purchaser.

**5.6**     **Case Servicing Fee.** Seller agrees to pay to Purchaser a case servicing fee of $35.00 every six (6) months or increment thereof. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

**5.7**     **Substitution of Attorneys in the Legal Claim.** If Seller determines to hire new or additional attorneys to represent Seller in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

**5.8**     **No Assignment of Workers Compensation Benefits.** The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

**5.9**     **Requests for Documents and Information.** Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with: (a) prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6. PAYMENT AND PRIORITY.

**6.1**     **Priority Payment to Purchaser.** Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount. If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens. **If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Seller shall receive nothing**

**6.2**     **Mechanics and Timing of Payment.** The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction. Seller agrees not to have the Oasis Ownership amount paid to him. Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis. Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller. The Oasis Ownership Amount shall be determined as of the date it is received by Oasis. Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser. Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

**6.3**     **Risk of Loss.** Purchaser and Seller acknowledge that the Purchased Interest may be worthless. Purchaser accepts the risk of loss with respect to the Purchased Interest.

**6.4**     **RIGHT TO PAY PURCHASER FROM ANY SOURCE.**     THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME WITHOUT PENALTY PRIOR TO THE PROCEEDS DUE FROM THE LEGAL CLAIM BEING DISTRIBUTED. IF SELLER SO ELECTS, PAYMENT MUST BE RECEIVED AND ACKNOWLEDGED BY PURCHASER PRIOR TO SELLER RECEIVING ANY PROCEEDS FROM THE LEGAL CLAIM. UPON SELLER'S RECEIPT OF THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT, PURCHASER SHALL BE DEEMED TO HAVE TENDERED

# PURCHASE AGREEMENT
PAGE 4 OF 6

BACK TO SELLER PURCHASER'S INTEREST IN THE PROCEEDS.

SECTION 7.  EVENT OF DEFAULT; SPECIFIC DEFAULT; RIGHT OF RESCISSION.

7.1  **Event of Default.** The breach by Seller of any of Seller's obligations under this Purchase Agreement shall constitute an "Event of Default" hereunder.  In an Event of Default, Purchaser shall have all rights, powers, and remedies provided in the Purchase Agreement and as allowed by law or in equity.

7.2  **Seller's Right of Rescission.** CONSUMER'S RIGHT TO CANCELLATION:  YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE THE PURCHASE PRICE FROM PURCHASER.

TO CANCEL THIS AGREEMENT, YOU MUST EITHER:

(I)  RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER BY DELIVERING THE UNCASHED CHECK TO PURCHASER IN PERSON WITHIN FIVE (5) BUSINESS DAYS; OR

(II)  MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) BUSINESS DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S ADDRESS AS SET FORTH IN SECTION 8.2 BELOW.

SECTION 8.  MISCELLANEOUS.

8.1  **Survival of Representations.** All of the representations, warranties, covenants and Purchase Agreements of the parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

8.2  **Notices.** All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the parties at the following addresses:

if to Purchaser, to:  Oasis Legal Finance, LLC
40 North Skokie Blvd, Suite 500
Northbrook, Illinois 60062
Attn:  Controller

and if to Seller, to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the parties hereto shall have specified in writing to the other.

8.3  **Financing Statements and Additional Documents.** Seller irrevocably authorizes Purchaser at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto. Purchaser may indicate the following information in such financial statements and amendments: (a) that a portion of the proceeds that are derived from the Legal Claim are owned by Purchaser; and (b) any other information required, in Purchaser's discretion, by the Uniform Commercial Code in any relevant jurisdiction.

8.4  **Release to Contact Third Parties.** As part of this Purchase Agreement it may be necessary to disclose information to third parties. Seller explicitly and irrevocably authorizes Purchaser to disclose any information to third parties as it deems appropriate to the extent permitted by law and also as referenced in the Oasis Legal Finance, LLC privacy policy. Seller releases Purchaser from any and all liability as a result of the release of any information.

8.5  **Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed

# PURCHASE AGREEMENT
### PAGE 5 OF 6

by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**8.6     Governing Law and Forum.** This Purchase Agreement, and all lawsuits, disputes, claims, or proceedings arising out of or relating to this Purchase Agreement or the relationships that result from this Purchase Agreement, shall be governed, construed and enforced in accordance with the laws of the State of Georgia.

The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in an inconvenient forum.

Each of the parties to the Contract further irrevocably consents to the service of process out of the Circuit Court of Cook County, Illinois by mailing copies thereof by Registered or Certified United States mail, postage prepaid, to each of the parties of the Purchase Agreement at its address specified in this Contract.

**8.7     Waiver of Jury Trial, Consolidation and Class Action; Costs.**

THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.

THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.

**8.8     Counterparts and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.

**8.9     Assignment; Use of Information.** Purchaser's rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller. Seller's rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser, except for transfer by intestate due to Seller's death in which case Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller agrees that Purchaser may share information that Purchaser obtained about Seller (whether from Seller or other person or entity) with potential assignees to whom Purchaser may assign its rights and obligations under this Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser; and (ii) Purchaser enters into an appropriate confidentiality Purchase Agreement with any such potential assignee.

**8.10     No Third Party Beneficiaries; Successors and Assigns.** Subject to the provisions of Section 8.9, (a) this Purchase Agreement is solely for the benefit of Purchaser and Seller; and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

**8.11     Severability.** If any provision of this Purchase Agreement or the application of any such provision to any party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that

RECEIVED 05/23/2012 13:11 9122333584 CARDILLO AND STINGER
Fax Services → Stephen Stincer, Esq. □ 11
Oasis Legal Finance ID: #564196 Page 11 of 14

05/23/2012 12:12 PM
05/23/2012 Wed 12:12

# PURCHASE AGREEMENT
### PAGE 6 OF 6

any term or provision of this Purchase Agreement is invalid or unenforceable, the parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

8.12 **Legal Representation.** SELLER UNDERSTANDS AND ACKNOWLEDGES THAT: (A) PURCHASER HAS RECOMMENDED THAT SELLER ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.

8.13 **Construction.** The parties intend that this Purchase Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement

(REMAINDER OF PAGE LEFT INTENTIONALLY BLANK).

⊙ 05/23/2012 12:12 PM
05/23/2012 Wed 12:12

RECEIVED  05/23/2012 13:11  9122333584
Fax Services        →Stephen Stincer, Esq.
        Oasis Legal Finance

CARDILLO AND STINCER
                    □ 13
ID: #564196  Page 13 of 14

**Oasis** Legal Finance

# NOTICE OF PAYMENT SCHEDULE

May 23, 2012

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

RE:   OUR CLIENT: John Suber
      OUR CASE ID:P-GA-367408

Dear Stephen Stincer,

Oasis Legal Finance LLC has entered into a Purchase Agreement (attached) with John Suber. Oasis Legal Finance has purchased an interest in the potential proceeds from the legal claim of John Suber.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL OUR PURCHASED INTEREST (PLUS ANY APPLICABLE SECOND FUNDING OR SERVICING FEES) HAS BEEN SATISFIED.**

OASIS OWNERSHIP AMOUNT

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| May 24, 2012 to November 23, 2012 | $1,650.00 |
| November 24, 2012 to May 23, 2013 | $1,815.00 |
| May 24, 2013 to August 23, 2013 | $2,475.00 |
| August 24, 2013 to November 23, 2013 | $2,750.00 |
| November 24, 2013 to May 23, 2014 | $3,025.00 |
| May 24, 2014 to November 23, 2014 | $3,575.00 |
| November 24, 2014 and thereafter | $3,850.00 |

| Fees Due at Payment | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $35.00 |

Please call (866) 206-4800 (Press Option 6) or by fax at (847) 521-4392 to receive more information about payment.

40 North Skokie Blvd, Suite 500, Northbrook, IL 60062
**Phone (847) 521-4349 – Fax (847) 897-3143**
<TO_FAXNUM:1(912) 233-3584>
<NOTE:Case Number P-GA-367408 John Suber>
<TO_NAME: John Suber>

Case ID: P-GA-367408                    All Ver. 3.0

**OASIS LEGAL FINANCE, LLC PRIVACY POLICY**
Effective date January 2010

At Oasis Legal Finance we are committed to providing you the best service while earning your trust. A critical part of earning that trust is protecting your privacy rights. We have created this document to explain our privacy policy to you. In addition, we are complying with both federal and state laws which require financial services companies to notify you, our valued customers, about how we intend to treat your personal information that you have entrusted with us.

We want our customers to be aware of what information Oasis collects and how it is handled, with whom the information may be shared, and our customers' "opt out" rights. This policy sets forth our policies with respect to nonpublic personally identifiable information ("personal information") about potential, current, and former customers.

**I. PERSONAL INFORMATION**
To provide reliable, quality service Oasis Legal Finance must collect certain personal financial, legal, and medical information regarding its customers and potential customers. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information may include, but is not limited to, name, address, e-mail address, telephone number(s), your date of birth, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports.

**II. OASIS LEGAL FINANCE'S COLLECTION AND USE OF INFORMATION**
All personal information that Oasis Legal Finance collects when you or your attorney speak to an Oasis Legal Finance representative, or via any of Oasis' web sites when you inquire about or complete an application for one or more of our products or services (or begin the inquiry or application process, whether you complete the process or not), is handled by Oasis Legal Finance in accordance with this privacy statement.

Oasis Legal Finance uses personal information: for the stated purpose for which such information is gathered; for marketing analysis and sales planning purposes; for servicing and collection purposes; for legal, financial, accounting and tax record keeping; for other business purposes associated with its services; to manage its business; and to comply with requirements imposed by governmental authorities. Oasis Legal Finance discloses personal information to certain service providers that are contractually obligated to keep the information we provide them confidential and to use the personal information we share only to provide the services we ask them to perform.

In an effort to provide a diversity of product and service offers that may benefit our customers or potential customers, Oasis Legal Finance may provide non-public information about our customers to affiliated and unaffiliated companies. This information may include; name, address, e-mail address, and phone number(s). At no time will we ever disclose any medical, legal or transactional information for these purposes. Information that is collected or maintained by any company other than Oasis Legal Finance, including additional information collected by such company, will be governed by that other company's privacy policy.

Oasis Legal Finance will not disclose your personal information to a third party unless (i) disclosure is necessary to render services or to perform related business activities expressed in this privacy policy; (ii) disclosure is required pursuant a request for specific customer information to comply with a subpoena, court order, and/or other legal instrument, legal proceeding or relevant law, including compliance with the USA Patriot Act; or (iii) as otherwise permitted by law.

**III. OASIS LEGAL FINANCE'S INFORMATION SECURITY**

Oasis Legal Finance maintains physical, electronic, and procedural safeguards that comply with federal and state regulations to guard your personal information, and secure your information from unauthorized access, use and disclosure. To this end, we use industry-standard methods such as firewalls, encryption and system access controls, and our security practices are regularly reviewed against industry best practices by internal staff and independent third parties.

All personal information that Oasis Legal Finance collects is accessible by Oasis Legal Finance employees and contractors and, to the extent required for the tax, accounting, legal and other professionals hired by Oasis Legal Finance, for business purposes only and to fulfill their fiduciary or representative duty. All such professionals are bound to maintain the confidentiality of information supplied to them by contractual and/or ethical obligations.

**VI. "OPT-OUT" PROVISION**
Oasis Legal Finance offers any person the opportunity to "opt-out" of receiving future offers from Oasis or from affiliated and unaffiliated companies. To remove your information from our database so as not to receive future advertising communications, you can send an email to optout@oasislegal.com. Or you can send a written correspondence to the same effect to:

Opt-Out
Oasis Legal Finance, LLC
40 N. Skokie Blvd, Suite 500
Northbrook, IL 60062

Please note that it may take up to 30 days from the date of receipt of notification for your request to become active. In your opt-out instructions, so that we can accurately remove your record, please include your name, address, phone number, and attorney's name that is handling or handled your case.

California: In accordance with California law, Oasis Legal Finance will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

Vermont: In accordance with Vermont law, Oasis Legal Finance will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

**VII. REVISION OF THIS POLICY**
This Privacy Policy may be revised from time to time by Oasis Legal Finance. We will inform you of any changes as required by law. Amendments to this policy will be effective when posted to our website at www.oasislegal.com.

## PAYMENT INSTRUCTIONS
### Page 1 of 2

**Parties:**   John Suber is Seller and Oasis Legal Finance, LLC is Purchaser

**Offer Date:**   September 9, 2013

**Purchase Price to Seller:**   **$2,220.00**



**Priority Processing featuring new E-Signature:**  When Oasis receives your purchase agreement signed by both you and your attorney your funding will move to Next in Line and Oasis will have its Priority Processing staff rush the delivery of your funds in the way you have chosen.  E-signature is only available with priority processing.  With E-signature you can conveniently sign the purchase agreement through email on yours or a family members' smartphone or home computer.  Priority Processing is available with or without E-Signature.  A handling fee of $20.00 will be deducted from purchase price-no out of pocket cost to you.

(please initial)

## HOW DO YOU WANT TO RECEIVE YOUR MONEY?
### (Select only one, and please check the box next to the option that you choose):

□   Money in Minutes at any [WESTERN UNION | yes!] near you.  The Fastest way to get your funding.  Many Western Union locations are open late!  No waiting on a delivery service or the mail for a check, no check cashing fee, and no waiting on a bank to cash that check or release the cash to you.  Many Locations Open Late!
Funds available on the **SAME DAY** if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m.  A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details.

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $97.00 |
| $751.00 | - | $1,250.00 | $113.00 |
| $1,251.00 | - | $2,000.00 | $149.00 |
| $2,001.00 | - | $5,000.00 | $199.00 |

□   **Direct Deposit Wire Transfer** to bank account in my name.
Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day.  Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank.  A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details:

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $97.00 |
| $751.00 | - | $1,250.00 | $113.00 |
| $1,251.00 | - | $2,000.00 | $149.00 |
| $2,001.00 | - | $5,000.00 | $199.00 |



Note: The routing and account numbers may be in different places on your check

| | |
|---|---|
| Name of Bank: | |
| Bank's City, State: | |
| Routing/ABA Number: | |
| Account Number: | |
| Bank's Phone Number: | |
| Name on Account: (your name must be on the account) | |

Case ID: P-GA-509111

## PAYMENT INSTRUCTIONS
### Page 2 of 2

☐    A **Check** sent in my name by U.S. First Class Mail with Delivery Confirmation
     (**Free**– delivered within 5 to 10 days from post date. Not responsible for delays due to postal or bank holidays, or weekends).

     Street Address Apt/Unit # _____

     City, _____ State _____ Zip _____

☐    A **Check** sent in my name by **Overnight Delivery** service for delivery by the next business day.
     ($99.00 deducted from purchase price-no out of pocket cost to you. Overnight delivery does not include weekends. Saturday
     delivery available for an extra charge):

     Street Address Apt/Unit # _____

     City, _____ State _____ Zip _____

**Terms:** Purchaser agrees to provide funds to the Seller as requested below by the Seller. Seller agrees that funds received from
Purchaser are a purchase of property, not a loan, and that Purchaser owns a portion of the potential proceeds from the legal claim.

|  Oasis Ownership Amount | |
| Payment Schedule | Oasis Ownership Amount |
| --- | --- |
| September 10, 2013 to March 9, 2014 | $3,330.00 |
| March 10, 2014 to September 9, 2014 | $3,663.00 |
| September 10, 2014 to December 9, 2014 | $4,995.00 |
| December 10, 2014 to March 9, 2015 | $5,550.00 |
| March 10, 2015 to September 9, 2015 | $6,105.00 |
| September 10, 2015 to March 9, 2016 | $7,215.00 |
| March 10, 2016 and thereafter | $7,770.00 |

Please describe how we helped you during these difficult times: _____

_____

By signing below, I hereby agree to the terms of the Payment Instructions and understand that I am responsible for the information
that I have provided on this form and that Purchaser is not responsible for any problem in delivery or transfer of funds, so long as it
follows the instructions provided by the Seller. I also agree to the use of the above statements in any way as Purchaser sees fit.

_____     _____        _____     _____
John Suber - Seller           Date             Oasis Legal Finance, LLC - Purchaser   Date

                                    3, ᵘ63. ꞈ
                                       ꝗᵖᵘ. ꞈ
                                    2/   763
                                    ⟨ 763
                                       /

Case ID: P-GA-509111

**Oasis** Legal Finance

## CREDIT AND INFORMATION RELEASE

Oasis Legal Finance, LLC may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction.

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Legal Finance, LLC or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the agreement.

This authorization is valid for purposes of verifying information given pursuant to business negotiations, or any other lawful purpose covered under the Fair Credit Reporting Act. (FCRA).

Upon written request, we will tell you whether we have obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. We also request that by signing below, you certify the information provided by you to Oasis Legal Finance, LLC in your application and underwriting process is true, accurate and complete. You also authorize Oasis Legal Finance LLC to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis Legal Finance, LLC ("Oasis"), or its affiliates any and all information and documents pertaining to my current legal claim or lawsuit, including pleadings, discovery, investigation, contracts, medical records/reports, depositions, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application is true, accurate, and complete.


John Suber
_____                    _____
                                           Date

_____                    _____
Signature                                  Social Security Number

_____                    _____
Telephone Number                           Date of Birth

Drivers License #: _____          State of Driver's License _____

_____
Street Address                City              State        Zip Code

Case ID: P-GA-509111

09/09/2013 1:02 PM    RECEIVED   09/09/2013 13:58   9122333584     CARDILLO AND STINCER
09/09/2013 Mon 13:01    (847) 897-3143     →Stephen Stincer, Esq.        ☐ 6
               Carl Cook    (847) 897-3143            ID: #725361   Page 6 of 15

# PURCHASE AGREEMENT
### PAGE 1 OF 6

| | |
|---|---|
| **Purchaser:** | Oasis Legal Finance, LLC (Oasis) |
| **Seller:** | John Suber |
| **Purchase Price:** | $2,220.00 |

**Oasis Ownership Amount**

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| September 10, 2013 to March 9, 2014 | $3,330.00 |
| March 10, 2014 to September 9, 2014 | $3,663.00 |
| September 10, 2014 to December 9, 2014 | $4,995.00 |
| December 10, 2014 to March 9, 2015 | $5,550.00 |
| March 10, 2015 to September 9, 2015 | $6,105.00 |
| September 10, 2015 to March 9, 2016 | $7,215.00 |
| March 10, 2016 and thereafter | $7,770.00 |

**Fees Due at Payment**

| | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Archival and Document Management Fee per Funding | $60.00 |

SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION

IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING. SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.

**SELLER:**   John Suber     **Address:**    4212 Wilshire Drive,   Valdosta, GA 31605

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages. I agree to be bound by the terms and conditions of this Purchase Agreement. This Agreement shall not be effective until the Purchase Price is paid to Seller.

Seller's Signature       Date                  Purchaser' Signature         Date

_____            _____
John Suber                            Oasis Legal Finance, LLC

## SECTION 1.   DEFINITIONS.

     **1.1**    **"Legal Claim"** means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

     **1.2**    **"Oasis Ownership Amount"** is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

     **1.3**    **"Proceeds"** means whatever you receive as a result of the legal claim, for example through a judgment. Arbitration or the like.

     **1.4**    **"Purchased Interest"** means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

⊖ 09/09/2013 1:02 PM
09/09/2013 Mon 13:01

RECEIVED 09/09/2013 13:58    9122333584        CARDILLO AND STINCER
(847) 897-3143              →Stephen Stincer, Esq.                    D7
Carl Cook   (847) 897-3143        ID: #725361  Page 7 of 15

# PURCHASE AGREEMENT
### PAGE 2 OF 6

1.5    "**Purchaser**" means Oasis Legal Finance, LLC.

1.6    "**Seller**" means John Suber.

1.7    "**Seller's Attorney**" means, collectively, Stephen Stincer, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.    SELLER'S STATEMENTS.**  Seller states to Purchaser as follows:

2.1    **Purchase and Sale.**  Seller sells, and the Purchaser buys, the Purchased Interest.

2.2    **Title; Capacity.**  Seller believes the Legal Claim to be meritorious and filed in good faith.  Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

2.3    **Information True, Complete and Correct.**  Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3.    SELLER'S ACKNOWLEDGEMENTS.**  Seller acknowledges the following:

3.1    **Risk of Loss.**  This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser.  The Oasis Ownership Amount has been negotiated to account for such risk.

3.2    **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.**  Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

3.3    **No Previous Encumbrance** Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4.    PURCHASER'S ACKNOWLEDGEMENT.**  Purchaser acknowledges the following:

4.1    **Purchaser's Acknowledgment.**  Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5. SELLER'S AGREEMENTS.**  Seller agrees as follows:

5.1    **Treatment of Transaction.**  Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes).  Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

5.2    **Treatment in Bankruptcy.**  If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

5.3    **No Assignment.**  Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death.  In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

# PURCHASE AGREEMENT
### PAGE 3 OF 6

**5.4    Prosecution of Claim and Facilitation of Payment.** Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

**5.5    Subsequent Case Review.** Seller agrees to an additional case review charge of $20 00 each time seller requests and receives additional funding from Purchaser.

**5.6    Case Servicing Fee.** Seller agrees to pay to Purchaser a case servicing fee of $35.00 every six (6) months or increment thereof. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

**5.7    Archiving and Document Management Fee.** Seller agrees to pay to Purchaser a fee of $60.00 per funding to defray Seller's archiving and document management costs. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount

**5.8    Substitution of Attorneys in the Legal Claim.** If Seller determines to hire new or additional attorneys to represent Seller in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

**5.9    No Assignment of Workers Compensation Benefits.** The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

**5.10    Requests for Documents and Information.** Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with: (a) prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6. PAYMENT AND PRIORITY.

**6.1    Priority Payment to Purchaser.** Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount. If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens. **If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Purchaser shall receive nothing**

**6.2    Mechanics and Timing of Payment.** The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction. Seller agrees not to have the Oasis Ownership amount paid to him. Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis. Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller. The Oasis Ownership Amount shall be determined as of the date it is received by Oasis. Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser. Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

**6.3    Risk of Loss.** Purchaser and Seller acknowledge that the Purchased Interest may be worthless. Purchaser accepts the risk of loss with respect to the Purchased Interest.

**6.4    RIGHT TO PAY PURCHASER FROM ANY SOURCE.    THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME**

# PURCHASE AGREEMENT
### PAGE 4 OF 6

WITHOUT PENALTY PRIOR TO THE PROCEEDS DUE FROM THE LEGAL CLAIM BEING DISTRIBUTED. IF SELLER SO ELECTS, PAYMENT MUST BE RECEIVED AND ACKNOWLEDGED BY PURCHASER PRIOR TO SELLER RECEIVING ANY PROCEEDS FROM THE LEGAL CLAIM. UPON SELLER'S RECEIPT OF THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT, PURCHASER SHALL BE DEEMED TO HAVE TENDERED BACK TO SELLER PURCHASER'S INTEREST IN THE PROCEEDS.

SECTION 7.  EVENT OF DEFAULT; SPECIFIC DEFAULT; RIGHT OF RESCISSION.

7.1     **Event of Default.** The breach by Seller of any of Seller's obligations under this Purchase Agreement shall constitute an "Event of Default" hereunder.  In an Event of Default, Purchaser shall have all rights, powers, and remedies provided in the Purchase Agreement and as allowed by law or in equity.

7.2     **Seller's Right of Rescission.** CONSUMER'S RIGHT TO CANCELLATION:  YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE THE PURCHASE PRICE FROM PURCHASER.

TO CANCEL THIS AGREEMENT, YOU MUST EITHER:

(I)     RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER BY DELIVERING THE UNCASHED CHECK TO PURCHASER IN PERSON WITHIN FIVE (5) BUSINESS DAYS; OR

(II)    MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) BUSINESS DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S ADDRESS AS SET FORTH IN SECTION 8.2 BELOW.

SECTION 8.    MISCELLANEOUS.

8.1     **Survival of Representations.** All of the representations, warranties, covenants and Purchase Agreements of the parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

8.2     **Notices.** All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing.  All such notices or communications shall be deemed to have been given or made delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the parties at the following addresses:

if to Purchaser, to:       Oasis Legal Finance, LLC
                                    40 North Skokie Blvd, Suite 500
                                    Northbrook, Illinois 60062
                                    Attn:      Controller

and if to Seller, to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the parties hereto shall have specified in writing to the other.

8.3     **Financing Statements and Additional Documents.** Seller irrevocably authorizes Purchaser at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto.  Purchaser may indicate the following information in such financial statements and amendments: (a) that a portion of the proceeds that are derived from the Legal Claim are owned by Purchaser; and (b) any other information required, in Purchaser's discretion, by the Uniform Commercial Code in any relevant jurisdiction.

8.4     **Release to Contact Third Parties.** As part of this Purchase Agreement it may be necessary to disclose information to third parties. Seller explicitly and irrevocably authorizes Purchaser to disclose any information to third parties as

Case ID: P-GA-S09111

# PURCHASE AGREEMENT
### PAGE 5 OF 6

it deems appropriate to the extent permitted by law and also as referenced in the Oasis Legal Finance, LLC privacy policy. Seller releases Purchaser from any and all liability as a result of the release of any information.

     **8.5**    **Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

     **8.6**    **Governing Law and Forum.** This Purchase Agreement, and all lawsuits, disputes, claims, or proceedings arising out of or relating to this Purchase Agreement or the relationships that result from this Purchase Agreement, shall be governed, construed and enforced in accordance with the laws of the State of Georgia.

     The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in an inconvenient forum.

     Each of the parties to the Contract further irrevocably consents to the service of process out of the Circuit Court of Cook County, Illinois by mailing copies thereof by Registered or Certified United States mail, postage prepaid, to each of the parties of the Purchase Agreement at its address specified in this Contract.

     8.7    Waiver of Jury Trial, Consolidation and Class Action; Costs.

     THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.

     THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.

     **8.8**    **Counterparts and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.

     **8.9**    **Assignment; Use of Information.** Purchaser's rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller. Seller's rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser, except for transfer by intestate due to Seller's death in which case Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller agrees that Purchaser may share information that Purchaser obtained about Seller (whether from Seller or other person or entity) with potential assignees to whom Purchaser may assign its rights and obligations under this Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser; and (ii) Purchaser enters into an appropriate confidentiality Purchase Agreement with any such potential assignee.

     **8.10**    **No Third Party Beneficiaries; Successors and Assigns.** Subject to the provisions of Section 8.9, (a) this Purchase Agreement is solely for the benefit of Purchaser and Seller; and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

     **8.11**    **Severability.** If any provision of this Purchase Agreement or the application of any such provision to any

# PURCHASE AGREEMENT
### PAGE 6 OF 6

party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law.  If any such court of competent jurisdiction declares that any term or provision of this Purchase Agreement is invalid or unenforceable, the parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

8.12    **Legal Representation.**  SELLER UNDERSTANDS AND ACKNOWLEDGES THAT:    (A) PURCHASER HAS RECOMMENDED THAT SELLER ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.

8.13    **Construction.**  The parties intend that this Purchase Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement

(REMAINDER OF PAGE LEFT INTENTIONALLY BLANK).

09/09/2013 1:02 PM
09/09/2013 Mon 13:01

RECEIVED 09/09/2013 13:58 9122333584
(847) 897-3143 →Stephen Stincer, Esq.
Carl Cook (847) 897-3143

CARDILLO AND STINCER
D 13
ID: #725361 Page 13 of 15

# NOTICE OF PAYMENT SCHEDULE

September 9, 2013

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

RE:     OUR CLIENT: John Suber
        OUR CASE ID:P-GA-509111

Dear Stephen Stincer,

Oasis Legal Finance LLC has entered into a Purchase Agreement (attached) with John Suber. Oasis Legal Finance has purchased an interest in the potential proceeds from the legal claim of John Suber.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL OUR PURCHASED INTEREST (PLUS ANY APPLICABLE SECOND FUNDING OR SERVICING FEES) HAS BEEN SATISFIED.**

### OASIS OWNERSHIP AMOUNT

| Payment Schedule | Oasis Ownership Amount |
| --- | --- |
| September 10, 2013 to March 9, 2014 | $3,330.00 |
| March 10, 2014 to September 9, 2014 | $3,663.00 |
| September 10, 2014 to December 9, 2014 | $4,995.00 |
| December 10, 2014 to March 9, 2015 | $5,550.00 |
| March 10, 2015 to September 9, 2015 | $6,105.00 |
| September 10, 2015 to March 9, 2016 | $7,215.00 |
| March 10, 2016 and thereafter | $7,770.00 |

| Fees Due at Payment | |
| --- | --- |
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $60.00 |

Please call (866) 206-4800 (Press Option 6) or by fax at (847) 521-4392 to receive more information about payment.

40 North Skokie Blvd, Suite 500, Northbrook, IL 60062
Phone (847) 521-4349 – Fax (847) 897-3143
<TO_FAXNUM:1(912) 233-3584>
<NOTE:Case Number P-GA-509111 John Suber>
<TO_NAME: John Suber>

Case ID P-GA-509111

# OASIS LEGAL FINANCE, LLC PRIVACY POLICY

**Effective date April 2012**

The privacy and security of your personal information is important to Oasis.  We provide this Privacy Policy to advise  you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

## What personal information does Oasis collect?

The types of personal information we collect and share depend on the product or service you have with us, but is clearly stated on our applications. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information can include: name, address, e-mail address, telephone number(s), your date of birth, social security number, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports.  We may also use your information in order to obtain additional information regarding you, such as credit or consumer reports.

## How does Oasis share personal information?

We share customers' personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law.  Some of this sharing is necessary to provide you with the services you are requesting from us.  In the section below, we list the primary reasons we share customers' personal information; the reasons Oasis chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Oasis share? | Can you limit this sharing? |
| --- | --- | --- |
| For our everyday business purposes— such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes— to offer our products and services to you | Yes | Yes |
| For joint marketing with other financial companies | Yes | Yes |
| For our affiliates' everyday business purposes— information related to your transactions and experiences | Yes | No (except CA and VT residents) |
| For our affiliates' everyday business purposes— information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

To limit our sharing, simply complete our Opt-Out form by visiting us at www.oasislegal.com/privacy and follow the instructions on the site.

## Why can't I limit all sharing?

In many circumstances, sharing information is necessary for us to provide you the services you are requesting.  Federal law gives you the right to limit only

- sharing for affiliates' everyday business purposes—information about your creditworthiness
- affiliates from using your information to market to you
- sharing for nonaffiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law.

California: In accordance with California law, Oasis Legal Finance will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

Vermont: In accordance with Vermont law, Oasis Legal Finance will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

Case ID P-GA-509111

⊙ 09/09/2013 1:02 PM
09/09/2013 Mon 13:01

RECEIVED 09/09/2013 13:58 9122333584
(847) 897-3143                     →Stephen Stincer, Esq.
Carl Cook  (847) 897-3143

CARDILLO AND STINCER
                    D 15
ID: #725361  Page 15 of 15

## How Does Oasis protect my personal information?

To protect your personal information from unauthorized access and use, we use reasonable security measures that comply with applicable laws. These measures include computer safeguards and secured files and buildings. Our agreements with service providers or other nonaffiliated companies require them to treat your personal information in a confidential and secure manner.

## How does Oasis collect my personal information?

We collect your personal information, for example, when you, your attorney, or third parties, such as credit bureaus, affiliates, or other companies provide it to us on applications and other forms, by phone, fax, the Internet, or other delivery services.

## What happens when I limit sharing for an account I hold jointly with someone else?

Your choices will apply to everyone on your account.

## Passive collection of information

While you are on our website, we may automatically track information related to your voluntary use of the website. Such voluntary provided information may include, among other things, URL tracking information, user's browser, user's IP address, files viewed by you and your path through the website, date, time and frequency of accessing website and length of time spent reviewing certain features. In addition we may (i) use pixels provided to us by a third party to track the pages viewed, the number of pages viewed, and the number of customer conversions obtained from third parties and marketing agencies, (ii) place a cookie, provided to us by a third party, on your computer that tracks if you click on an advertisement so that future advertisements can be targeted to you based on the advertisements clicked on by you and/or your other activities on the website.

## Definitions

| | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. |
| | *Our affiliates include Oasis Legal Finance Holding Company, LLC and Oasis Legal Finance Operating Company, LLC* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies |
| | *Nonaffiliate we share with can include companies such as money transfer companies, collection agencies, investment and insurance companies, mortgage and brokerage companies, retailers or marketing companies.* |
| Joint Marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |
| | *Our joint marketing partners include categories of companies such as banks or lending institutions and insurance companies.* |

## Other Terms

We may access or disclose information about you in order to: (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Oasis, our service providers or our customers, including the enforcement of our agreements or policies governing your use of our services; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Oasis' or our service providers' employees, customers or the public. We may also disclose personal information as part of a proposed or actual corporate transaction such as a merger or sale of assets.

Through our website, you can link to other websites of third parties that provide useful information, or who have agreed to offer goods and services to our users. Any personal information you provide on the linked pages is provided directly to the applicable third-party and is subject to that third party's privacy policy.

## Revisions to this Privacy Policy

This Privacy Policy may be revised from time to time by Oasis Legal Finance, LLC. We will provide notice on our website that the Privacy Policy has changed, and will otherwise inform you of any changes to the extent required by law. Amendments to this policy will be effective when posted to our website at www.oasislegal.com/privacy .

Case ID: P-GA-509111

## PAYMENT INSTRUCTIONS
### Page 1 of 2

**Parties:**  John Suber is Seller and Oasis Legal Finance, LLC is Purchaser

**Offer Date:**  October 1, 2013

**Purchase Price to Seller:**      $1,400.00



**Priority Processing featuring new E-Signature:**  When Oasis receives your purchase agreement signed by both you and your attorney your funding will move to Next in Line and Oasis will have its Priority Processing staff rush the delivery of your funds in the way you have chosen.  E-signature is only available with priority processing. With E-signature you can conveniently sign the purchase agreement through email on yours or a family members' smartphone or home computer.  Priority Processing is available with or without E-Signature.  A handling fee of $20.00 will be deducted from purchase price-no out of pocket cost to you.

(please initial)

## HOW DO YOU WANT TO RECEIVE YOUR MONEY?

### (Select only one, and please check the box next to the option that you choose):

☒        **Money in Minutes** at any  **WESTERN UNION**  near you.  The Fastest way to get your funding.  Many Western Union locations are open late!  No waiting on a delivery service or the mail for a check, no check cashing fee, and no waiting on a bank to cash that check or release the cash to you. Many Locations Open Late!
Funds available on the **SAME DAY** if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details.

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $97.00 |
| $751.00 | - | $1,250.00 | $113.00 |
| $1,251.00 | - | $2,000.00 | $149.00 |
| $2,001.00 | - | $5,000.00 | $199.00 |

☐        **Direct Deposit Wire Transfer** to bank account in my name.
Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day.  Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank.  A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details:

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $97.00 |
| $751.00 | - | $1,250.00 | $113.00 |
| $1,251.00 | - | $2,000.00 | $149.00 |
| $2,001.00 | - | $5,000.00 | $199.00 |

| | |
|---|---|
| Name of Bank: | |
| Bank's City, State: | |
| Routing/ABA Number: | |
| Account Number: | |
| Bank's Phone Number: | |
| Name on Account: (your name must be on the account) | |

Note: The routing and account numbers may be in different places on your check

Case ID: P-GA-50911

# PAYMENT INSTRUCTIONS
## Page 2 of 2

☐　A Check sent in my name by U.S. First Class Mail with Delivery Confirmation
(Free– delivered within 5 to 10 days from post date. Not responsible for delays due to postal or bank holidays, or weekends).

Street Address Apt/Unit # _____

City, _____ State _____ Zip _____

☐　A Check sent in my name by Overnight Delivery service for delivery by the next business day.
($99.00 deducted from purchase price-no out of pocket cost to you. Overnight delivery does not include weekends. Saturday delivery available for an extra charge):

Street Address Apt/Unit # _____

City, _____ State _____ Zip _____

**Terms:** Purchaser agrees to provide funds to the Seller as requested below by the Seller. Seller agrees that funds received from Purchaser are a purchase of property, not a loan, and that Purchaser owns a portion of the potential proceeds from the legal claim.

### Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| October 2, 2013 to April 1, 2014 | $2,100.00 |
| April 2, 2014 to October 1, 2014 | $2,310.00 |
| October 2, 2014 to January 1, 2015 | $3,150.00 |
| January 2, 2015 to April 1, 2015 | $3,500.00 |
| April 2, 2015 to October 1, 2015 | $3,850.00 |
| October 2, 2015 to April 1, 2016 | $4,550.00 |
| April 2, 2016 and thereafter | $4,900.00 |

Please describe how we helped you during these difficult times:_____

ok _____

By signing below, I hereby agree to the terms of the Payment Instructions and understand that I am responsible for the information that I have provided on this form and that Purchaser is not responsible for any problem in delivery or transfer of funds, so long as it follows the instructions provided by the Seller. I also agree to the use of the above statements in any way as Purchaser sees fit.

—DocuSigned by:
*John Suber*
_____   10/1/2013   _____
John Suber - Seller     Date          Oasis Legal Finance, LLC - Purchaser     Date     _____

Case ID: P-GA-509111

⏱ 10/01/2013 1:39 PM    RECEIVED   10/01/2013 14:35   9122333584     CARDILLO AND STINGER
D. 10/01/2013 Tue 13:38      (847) 897-3143        →Stephen Stincer, Esq.          D 5
DocuSign Envelope ID:        Brian Moonin   (847) 897-3143           ID:#736984   Page 5 of 15

## Oasis Legal Finance

## CREDIT AND INFORMATION RELEASE

Oasis Legal Finance, LLC may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction.

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Legal Finance, LLC or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the agreement.

This authorization is valid for purposes of verifying information given pursuant to business negotiations, or any other lawful purpose covered under the Fair Credit Reporting Act. (FCRA).

Upon written request, we will tell you whether we have obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. We also request that by signing below, you certify the information provided by you to Oasis Legal Finance, LLC in your application and underwriting process is true, accurate and complete. You also authorize Oasis Legal Finance LLC to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis Legal Finance, LLC ("Oasis"), or its affiliates any and all information and documents pertaining to my current legal claim or lawsuit, including pleadings, discovery, investigation, contracts, medical records/reports, depositions, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application is true, accurate, and complete.

John Suber
DocuSigned by:

*John Suber*
—837C0121CC5C40A—
Signature

(229) 300-7474
Telephone Number

Drivers License #: Redacted

4212 Wilshire Dr.       Valdosta       GA      31605
Street Address           City            State      Zip Code

10/1/2013
Date

Redacted
Social Security Number

Redacted 1980
Date of Birth

State of Driver's License GA

Case ID: P-GA-509111

10/01/2013 1:39 PM
10/01/2013 Tue 13:38
RECEIVED 10/01/2013 14:35    9122333584
(847) 897-3143
Brian Moonin
→Stephen Stincer, Esq.
(847) 897-3143
CARDILLO AND STINGER
ID: #736984  Page 6 of 15
D 6

# PURCHASE AGREEMENT
### PAGE 1 OF 6

| | |
|---|---|
| Purchaser: | Oasis Legal Finance, LLC (Oasis) |
| Seller: | John Suber |
| Purchase Price: | $1,400.00 |

**Oasis Ownership Amount**

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| October 2, 2013 to April 1, 2014 | $2,100.00 |
| April 2, 2014 to October 1, 2014 | $2,310.00 |
| October 2, 2014 to January 1, 2015 | $3,150.00 |
| January 2, 2015 to April 1, 2015 | $3,500.00 |
| April 2, 2015 to October 1, 2015 | $3,850.00 |
| October 2, 2015 to April 1, 2016 | $4,550.00 |
| April 2, 2016 and thereafter | $4,900.00 |

**Fees Due at Payment**

| | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Archival and Document Management Fee  per Funding | $35.00 |

SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION

IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING.  SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.
SELLER:   John Suber          Address:      4212 Wilshire Drive,  Valdosta, GA 31605

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages. I agree to be bound by the terms and conditions of this Purchase Agreement.  This Agreement shall not be effective until the Purchase Price is paid to Seller.

| Seller's Signature       Date | Purchaser' Signature        Date |
|---|---|
| *John Suber* | |
| John Suber                    10/1/2013 | Oasis Legal Finance, LLC |

## SECTION 1.   DEFINITIONS.

1.1    "**Legal Claim**" means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

1.2    "**Oasis Ownership Amount**" is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

1.3    "**Proceeds**" means whatever you receive as a result of the legal claim, for example through a judgment. Arbitration or the like.

1.4    "**Purchased Interest**" means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

⊙ 10/01/2013 1:39 PM    RECEIVED 10/01/2013 14:35    9122333584    CARDILLO AND STINCER
D. 10/01/2013 Tue 13:38    (847) 897-3143    →Stephen Stincer, Esq.    ☐ 7
     Brian Moonin    (847) 897-3143    ID: #736984   Page 7 of 15

# PURCHASE AGREEMENT
### PAGE 2 OF 6

**1.5**    "Purchaser" means Oasis Legal Finance, LLC.

**1.6**    "Seller" means John Suber.

**1.7**    "Seller's Attorney" means, collectively, Stephen Stincer, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.**    **SELLER'S STATEMENTS.** Seller states to Purchaser as follows:

**2.1**    **Purchase and Sale.** Seller sells, and the Purchaser buys, the Purchased Interest.

**2.2**    **Title; Capacity.** Seller believes the Legal Claim to be meritorious and filed in good faith. Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

**2.3**    **Information True, Complete and Correct.** Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3. SELLER'S ACKNOWLEDGEMENTS.** Seller acknowledges the following:

**3.1**    **Risk of Loss.** This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser. The Oasis Ownership Amount has been negotiated to account for such risk.

**3.2**    **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.** Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

**3.3**    **No Previous Encumbrance** Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4. PURCHASER'S ACKNOWLEDGEMENT.** Purchaser acknowledges the following.

**4.1**    **Purchaser's Acknowledgment.** Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5. SELLER'S AGREEMENTS.** Seller agrees as follows:

**5.1**    **Treatment of Transaction.** Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes). Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

**5.2**    **Treatment in Bankruptcy.** If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

**5.3**    **No Assignment.** Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death. In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

# PURCHASE AGREEMENT
### PAGE 3 OF 6

**5.4      Prosecution of Claim and Facilitation of Payment.**  Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

**5.5      Subsequent Case Review.**  Seller agrees to an additional case review charge of $20.00 each time seller requests and receives additional funding from Purchaser.

**5.6      Case Servicing Fee.**  Seller agrees to pay to Purchaser a case servicing fee of $35.00 every six (6) months or increment thereof.  Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

**5.7      Archiving and Document Management Fee.**  Seller agrees to pay to Purchaser a fee of $35.00 per funding to defray Seller's archiving and document management costs.  Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount

**5.8      Substitution of Attorneys in the Legal Claim.**  If Seller determines to hire new or additional attorneys to represent Seller in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

**5.9      No Assignment of Workers Compensation Benefits.**  The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

**5.10      Requests for Documents and Information.**  Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with: (a) prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6. PAYMENT AND PRIORITY.

**6.1      Priority Payment to Purchaser.**  Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount.  If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens. If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Purchaser shall receive nothing

**6.2      Mechanics and Timing of Payment.**  The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction.  Seller agrees not to have the Oasis Ownership amount paid to him.  Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis.  Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller.   The Oasis Ownership Amount shall be determined as of the date it is received by Oasis.  Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser.  Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

**6.3      Risk of Loss.**  Purchaser and Seller acknowledge that the Purchased Interest may be worthless.  Purchaser accepts the risk of loss with respect to the Purchased Interest.

**6.4      RIGHT TO PAY PURCHASER FROM ANY SOURCE.      THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME**

10/01/2013 1:39 PM
D.                  10/01/2013 Tue 13:38
(847) 897-3143
Brian Moonin
→ Stephen Stincer, Esq.
(847) 897-3143
CARDILLO AND STINCER
☐ 9
ID: #736984   Page 9 of 15

# PURCHASE AGREEMENT
PAGE 4 OF 6

WITHOUT PENALTY PRIOR TO THE PROCEEDS DUE FROM THE LEGAL CLAIM BEING DISTRIBUTED. IF SELLER SO ELECTS, PAYMENT MUST BE RECEIVED AND ACKNOWLEDGED BY PURCHASER PRIOR TO SELLER RECEIVING ANY PROCEEDS FROM THE LEGAL CLAIM. UPON SELLER'S RECEIPT OF THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT, PURCHASER SHALL BE DEEMED TO HAVE TENDERED BACK TO SELLER PURCHASER'S INTEREST IN THE PROCEEDS.

**SECTION 7. EVENT OF DEFAULT; SPECIFIC DEFAULT; RIGHT OF RESCISSION.**

**7.1     Event of Default.** The breach by Seller of any of Seller's obligations under this Purchase Agreement shall constitute an "Event of Default" hereunder. In an Event of Default, Purchaser shall have all rights, powers, and remedies provided in the Purchase Agreement and as allowed by law or in equity.

**7.2     Seller's Right of Rescission.** CONSUMER'S RIGHT TO CANCELLATION: YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE THE PURCHASE PRICE FROM PURCHASER.

TO CANCEL THIS AGREEMENT, YOU MUST EITHER:

(I)     RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER BY DELIVERING THE UNCASHED CHECK TO PURCHASER IN PERSON WITHIN FIVE (5) BUSINESS DAYS; OR

(II)    MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) BUSINESS DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S ADDRESS AS SET FORTH IN SECTION 8.2 BELOW.

**SECTION 8.    MISCELLANEOUS.**

**8.1     Survival of Representations.** All of the representations, warranties, covenants and Purchase Agreements of the parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

**8.2     Notices.** All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the parties at the following addresses:

if to Purchaser, to:     Oasis Legal Finance, LLC
                         40 North Skokie Blvd, Suite 500
                         Northbrook, Illinois 60062
                         Attn:   Controller

and if to Seller, to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the parties hereto shall have specified in writing to the other.

**8.3     Financing Statements and Additional Documents.** Seller irrevocably authorizes Purchaser at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto. Purchaser may indicate the following information in such financial statements and amendments: (a) that a portion of the proceeds that are derived from the Legal Claim are owned by Purchaser; and (b) any other information required, in Purchaser's discretion, by the Uniform Commercial Code in any relevant jurisdiction.

**8.4     Release to Contact Third Parties.** As part of this Purchase Agreement it may be necessary to disclose information to third parties. Seller explicitly and irrevocably authorizes Purchaser to disclose any information to third parties as

Case ID: P-GA-509111

# PURCHASE AGREEMENT
### PAGE 5 OF 6

it deems appropriate to the extent permitted by law and also as referenced in the Oasis Legal Finance, LLC privacy policy. Seller releases Purchaser from any and all liability as a result of the release of any information.

**8.5    Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**8.6    Governing Law and Forum.** This Purchase Agreement, and all lawsuits, disputes, claims, or proceedings arising out of or relating to this Purchase Agreement or the relationships that result from this Purchase Agreement, shall be governed, construed and enforced in accordance with the laws of the State of Georgia.

The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in an inconvenient forum.

Each of the parties to the Contract further irrevocably consents to the service of process out of the Circuit Court of Cook County, Illinois by mailing copies thereof by Registered or Certified United States mail, postage prepaid, to each of the parties of the Purchase Agreement at its address specified in this Contract.

**8.7    Waiver of Jury Trial, Consolidation and Class Action; Costs.**

THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.

THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.

**8.8    Counterparts and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.

**8.9    Assignment; Use of Information.** Purchaser's rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller. Seller's rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser, except for transfer by intestate due to Seller's death in which case Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller agrees that Purchaser may share information that Purchaser obtained about Seller (whether from Seller or other person or entity) with potential assignees to whom Purchaser may assign its rights and obligations under this Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser; and (ii) Purchaser enters into an appropriate confidentiality Purchase Agreement with any such potential assignee.

**8.10    No Third Party Beneficiaries; Successors and Assigns.** Subject to the provisions of Section 8.9, (a) this Purchase Agreement is solely for the benefit of Purchaser and Seller; and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

**8.11    Severability.** If any provision of this Purchase Agreement or the application of any such provision to any

# PURCHASE AGREEMENT
### PAGE 6 OF 6

party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that any term or provision of this Purchase Agreement is invalid or unenforceable, the parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

8.12     **Legal Representation.**    SELLER UNDERSTANDS AND ACKNOWLEDGES THAT: (A) PURCHASER HAS RECOMMENDED THAT SELLER ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.

8.13     **Construction.** The parties intend that this Purchase Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement

(REMAINDER OF PAGE LEFT INTENTIONALLY BLANK).

**Oasis** Legal Finance

# NOTICE OF PAYMENT SCHEDULE

October 1, 2013

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

RE:   OUR CLIENT: John Suber
      OUR CASE ID:P-GA-509111

Dear Stephen Stincer,

Oasis Legal Finance LLC has entered into a Purchase Agreement (attached) with John Suber. Oasis Legal Finance has purchased an interest in the potential proceeds from the legal claim of John Suber.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL OUR PURCHASED INTEREST (PLUS ANY APPLICABLE SECOND FUNDING OR SERVICING FEES) HAS BEEN SATISFIED.**

### OASIS OWNERSHIP AMOUNT

| Payment Schedule | Oasis Ownership Amount |
| --- | --- |
| October 2, 2013 to April 1, 2014 | $2,100.00 |
| April 2, 2014 to October 1, 2014 | $2,310.00 |
| October 2, 2014 to January 1, 2015 | $3,150.00 |
| January 2, 2015 to April 1, 2015 | $3,500.00 |
| April 2, 2015 to October 1, 2015 | $3,850.00 |
| October 2, 2015 to April 1, 2016 | $4,550.00 |
| April 2, 2016 and thereafter | $4,900.00 |

| Fees Due at Payment | |
| --- | --- |
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $35.00 |

Please call (866) 206-4800 (Press Option 6) or by fax at (847) 521-4392 to receive more information about payment.

40 North Skokie Blvd, Suite 500, Northbrook, IL 60062
Phone (847) 521-4349 – Fax (847) 897-3143
<TO_FAXNUM:1(912) 233-3584>
<NOTE:Case Number P-GA-509111 John Suber>
<TO_NAME: John Suber>

# OASIS LEGAL FINANCE, LLC PRIVACY POLICY

Effective date April 2012
The privacy and security of your personal information is important to Oasis. We provide this Privacy Policy to advise you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

## What personal information does Oasis collect?

The types of personal information we collect and share depend on the product or service you have with us, but is clearly stated on our applications. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information can include: name, address, e-mail address, telephone number(s), your date of birth, social security number, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports. We may also use your information in order to obtain additional information regarding you, such as credit or consumer reports.

## How does Oasis share personal information?

We share customers' personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law. Some of this sharing is necessary to provide you with the services you are requesting from us. In the section below, we list the primary reasons we share customers' personal information; the reasons Oasis chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Oasis share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes— such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes—to offer our products and services to you | Yes | Yes |
| For joint marketing with other financial companies | Yes | Yes |
| For our affiliates' everyday business purposes— information related to your transactions and experiences | Yes | No (except CA and VT residents) |
| For our affiliates' everyday business purposes— information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

To limit our sharing, simply complete our Opt-Out form by visiting us at www.oasislegal.com/privacy and follow the instructions on the site.

## Why can't I limit all sharing?

In many circumstances, sharing information is necessary for us to provide you the services you are requesting. Federal law gives you the right to limit only

- sharing for affiliates' everyday business purposes—information about your creditworthiness
- affiliates from using your information to market to you
- sharing for nonaffiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law.

California: In accordance with California law, Oasis Legal Finance will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

Vermont: In accordance with Vermont law, Oasis Legal Finance will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

Case ID  P-GA-509111

## How Does Oasis protect my personal information?

To protect your personal information from unauthorized access and use, we use reasonable security measures that comply with applicable laws. These measures include computer safeguards and secured files and buildings. Our agreements with service providers or other nonaffiliated companies require them to treat your personal information in a confidential and secure manner.

## How does Oasis collect my personal information?

We collect your personal information, for example, when you, your attorney, or third parties, such as credit bureaus, affiliates, or other companies provide it to us on applications and other forms, by phone, fax, the Internet, or other delivery services.

## What happens when I limit sharing for an account I hold jointly with someone else?

Your choices will apply to everyone on your account.

## Passive collection of information

While you are on our website, we may automatically track information related to your voluntary use of the website. Such voluntary provided information may include, among other things, URL tracking information, user's browser, user's IP address, files viewed by you and your path through the website, date, time and frequency of accessing website and length of time spent reviewing certain features. In addition we may (i) use pixels provided to us by a third party to track the pages viewed, the number of pages viewed, and the number of customer conversions obtained from third parties and marketing agencies, (ii) place a cookie, provided to us by a third party, on your computer that tracks if you click on an advertisement so that future advertisements can be targeted to you based on the advertisements clicked on by you and/or your other activities on the website.

## Definitions

| | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. |
| | *Our affiliates include Oasis Legal Finance Holding Company, LLC and Oasis Legal Finance Operating Company, LLC* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies |
| | *Nonaffiliates we share with can include companies such as money transfer companies, collection agencies, investment and insurance companies, mortgage and brokerage companies, retailers or marketing companies.* |
| Joint Marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |
| | *Our joint marketing partners include categories of companies such as banks or lending institutions and insurance companies.* |

## Other Terms

We may access or disclose information about you in order to: (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Oasis, our service providers or our customers, including the enforcement of our agreements or policies governing your use of our services; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Oasis' or our service providers' employees, customers or the public. We may also disclose personal information as part of a proposed or actual corporate transaction such as a merger or sale of assets.

Through our website, you can link to other websites of third parties that provide useful information, or who have agreed to offer goods and services to our users. Any personal information you provide on the linked pages is provided directly to the applicable third-party and is subject to that third party's privacy policy.

## Revisions to this Privacy Policy

This Privacy Policy may be revised from time to time by Oasis Legal Finance, LLC. We will provide notice on our website that the Privacy Policy has changed, and will otherwise inform you of any changes to the extent required by law. Amendments to this policy will be effective when posted to our website at www.oasislegal.com/privacy .

·2016 11:32 AM    RECEIVED 10/04/2016 12:24    9122333584    CARDILLO AND STINGER
/04/2016 Tue 11:32    (847) 521-4386      →Stephen Stincer, Esq.      ☐3
     Vanessa Ellinger     (847) 521-4386    ID: #1221614   Page 3 of 15

## PAYMENT INSTRUCTIONS
## Page 1 of 2

**Parties:** John Suber is Seller and Oasis Financial is Purchaser

**Offer Date:** October 4, 2016

**Purchase Price to Seller:**    $620.00



**Priority Processing featuring new E-Signature:** When Oasis receives your purchase agreement signed by both you and your attorney your funding will move to Next in Line and Oasis will have its Priority Processing staff rush the delivery of your funds in the way you have chosen. E-signature is only available with priority processing. With E-signature you can conveniently sign the purchase agreement through email on yours or a family members' smartphone or home computer. Priority Processing is available with or without E-Signature. A handling fee of $20.00 will be deducted from purchase price-no out of pocket cost to you.

(please initial)

# HOW DO YOU WANT TO RECEIVE YOUR MONEY?

**(Select only one, and please check the box next to the option that you choose):**

☐ Money in Minutes at any WESTERN UNION near you. The Fastest way to get your funding. Many Western Union locations are open late! No waiting on a delivery service or the mail for a check, no check cashing fee, and no waiting on a bank to cash that check or release the cash to you. Many Locations Open Late!
Funds available on the **SAME DAY** if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details.

| Purchase Price to Seller | Handling Fee |
|---|---|
| $0 - $750.00 | $97.00 |
| $751.00 - $1,250.00 | $113.00 |
| $1,251.00 - $2,000.00 | $149.00 |
| $2,001.00 - $5,000.00 | $199.00 |

☐ **Direct Deposit Wire Transfer** to bank account in my name
Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day. Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details:

| Purchase Price to Seller | Handling Fee |
|---|---|
| $0 - $750.00 | $97.00 |
| $751.00 - $1,250.00 | $113.00 |
| $1,251.00 - $2,000.00 | $149.00 |
| $2,001.00 - $5,000.00 | $199.00 |

| | |
|---|---|
| Name of Bank: | |
| Bank's City, State: | |
| Routing/ABA Number: | |
| Account Number: | |
| Bank's Phone Number: | |
| Name on Account:<br>(your name must be<br>on the account) | |

Case ID: P-GA-865898

.0-04-2016 11:32 AM
10/04/2016 Tue 11:32

RECEIVED 10/04/2016 12:24 9122933584
(847) 521-4386 →Stephen Stincer, Esq.
Vanessa Ellinger (847) 521-4386

CARDILLO AND STINCER D 4
ID: #1221614 Page 4 of 15

## PAYMENT INSTRUCTIONS
### Page 2 of 2

☐ A Check sent in my name by **Overnight Delivery** service for delivery by the next business day.
($99.00 deducted from purchase price-no out of pocket cost to you. Overnight delivery does not include weekends.
Saturday delivery available for an extra charge):

Street Address Apt/Unit : _____

City: _____  State: _____  Zip: _____

☐ A Check sent in my name by **U.S. First Class Mail** with Delivery Confirmation
(Free– delivered within 5 to 10 days from post date. Not responsible for delays due to postal or bank holidays, or
weekends).

Street Address Apt/Unit: _____

City: _____  State: _____  Zip: _____

**Terms:** Purchaser agrees to provide funds to the Seller as requested below by the Seller. Seller agrees that funds received from Purchaser are a purchase of property, not a loan. and that Purchaser owns a portion of the potential proceeds from the legal claim.

### Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount |
| --- | --- |
| October 5, 2016 to April 4, 2017 | $930.00 |
| April 5, 2017 to October 4, 2017 | $1,023.00 |
| October 5, 2017 to January 4, 2018 | $1,395.00 |
| January 5, 2018 to April 4, 2018 | $1,550.00 |
| April 5, 2018 to October 4, 2018 | $1,705.00 |
| October 5, 2018 to April 4, 2019 | $2,015.00 |
| April 5, 2019 and thereafter | $2,170.00 |

Please describe how we helped you during these difficult times:

_____

By signing below, I hereby agree to the terms of the Payment Instructions and understand that I am responsible for the information that I have provided on this form and that Purchaser is not responsible for any problem in delivery or transfer of funds, so long as it follows the instructions provided by the Seller. I also agree to the use of the above statements in any way as Purchaser sees fit.

| John Suber    Seller's Signature | Date | Oasis Financial - Purchaser | Date |

 Financial

### CREDIT AND INFORMATION RELEASE

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation, any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Financial (Oasis) or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me, and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the Purchase Agreement.

Oasis may use your social security number and other identifying information to obtain a consumer credit report, financial information, and/or other credit information as part of the proposed transaction. Credit reports may be obtained after you are provisionally approved for funding for verification of liens. Please note your credit score is not considered as part of the underwriting process.

This authorization is valid for purposes of verifying information given including, but not limited to, use in funding database(s), and any other lawful purpose covered under the Fair Credit Reporting Act (FCRA). Upon written request, Oasis will tell you whether Oasis has obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. By signing below, you certify the information provided by you to Oasis in your application and during the underwriting process is true, accurate and complete. By signing below, you also authorize Oasis to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis, or its affiliates any and all information and documents pertaining to my current Legal Claim(s) or lawsuit, including pleadings, discovery, investigative reports, contracts, medical records/reports, deposition transcripts, settlement information, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application and during the underwriting process is true, accurate, and complete.

John Suber

Date: _____

Social Security Number: _____

Telephone Number: _____

_____
Signature                           Date of Birth: _____

Drivers License #                   State of Drivers License: _____

_____
Street Address          City                    State          Zip Code

Case ID: P-GA-865898

⊙ 10-04-2016 11:32 AM
10/04/2016 Tue 11:32

RECEIVED  10/04/2016 12:24  9122333564
(847) 521-4386        →Stephen Stincer, Esq.
Vanessa Ellinger   (847) 521-4386

CARDILLO AND STINCER   D 6
ID: #1221614  Page 6 of 15

## PURCHASE AGREEMENT
### PAGE 1 OF 6

| | |
|---|---|
| Purchaser: | Oasis Legal Finance, LLC d/b/a Oasis Financial (Oasis) |
| Seller: | John Suber |
| Purchase Price: | $620.00 |

**Oasis Ownership Amount**

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| October 5, 2016 to April 4, 2017 | $930.00 |
| April 5, 2017 to October 4, 2017 | $1,023.00 |
| October 5, 2017 to January 4, 2018 | $1,395.00 |
| January 5, 2018 to April 4, 2018 | $1,550.00 |
| April 5, 2018 to October 4, 2018 | $1,705.00 |
| October 5, 2018 to April 4, 2019 | $2,015.00 |
| April 5, 2019 and thereafter | $2,170.00 |

**Fees Due at Payment**

| | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Archival and Document Management Fee  per Funding | $35.00 |

SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION

IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING. SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.

SELLER:   John Suber   Address:   2713 Pineview Dr,  Valdosta, GA 31602

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages. I agree to be bound by the terms and conditions of this Purchase Agreement. This Agreement shall not be effective until the Purchase Price is paid to Seller.

| Seller's Signature | Date | Purchaser' Signature | Date |
|---|---|---|---|
| | | Oasis Financial - Purchaser | |
| John Suber | | | |

## SECTION 1.  DEFINITIONS.

1.1  **"Legal Claim"** means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

1.2  **"Oasis Ownership Amount"** is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

1.3  **"Proceeds"** means whatever you receive as a result of the legal claim, for example through a judgment, Arbitration or the like.

1.4  **"Purchased Interest"** means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

⊙ 10-04-2016 11:32 AM
10/04/2016 Tue 11:32

RECEIVED  10/04/2016 12:24  9122333584
(847) 521-4386        →Stephen Stincer, Esq.
Vanessa Ellinger    (847) 521-4386

CARDILLO AND STINCER

☐ 7
ID: #1221614  Page 7 of 15

## PURCHASE AGREEMENT
### PAGE 2 OF 6

1.5    "**Purchaser**" means Oasis Legal Finance, LLC d/b/a Oasis Financial.

1.6    "**Seller**" means John Suber.

1.7    "**Seller's Attorney**" means, collectively, Stephen Stincer, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.    SELLER'S STATEMENTS.** Seller states to Purchaser as follows:

2.1    **Purchase and Sale.** Seller sells, and the Purchaser buys, the Purchased Interest.

2.2    **Title; Capacity.** Seller believes the Legal Claim to be meritorious and filed in good faith. Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

2.3    **Information True, Complete and Correct.** Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3. SELLER'S ACKNOWLEDGEMENTS.** Seller acknowledges the following:

3.1    **Risk of Loss.** This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser. The Oasis Ownership Amount has been negotiated to account for such risk.

3.2    **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.** Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

3.3    **No Previous Encumbrance** Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4. PURCHASER'S ACKNOWLEDGEMENT.** Purchaser acknowledges the following:

4.1    **Purchaser's Acknowledgment.** Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5. SELLER'S AGREEMENTS.** Seller agrees as follows:

5.1    **Treatment of Transaction.** Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes). Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

5.2    **Treatment in Bankruptcy.** If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

5.3    **No Assignment.** Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death. In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

⊙ 10-04-2016 11:32 AM
10/04/2016 Tue 11:32

RECEIVED 10/04/2016 12:24   5122555564

(847) 521-4386           →Stephen Stincer, Esq.
        Vanessa Ellinger   (847) 521-4386

□ 8
ID: #1221614  Page 8 of 15

# PURCHASE AGREEMENT
### PAGE 3 OF 6

    **5.4**    **Prosecution of Claim and Facilitation of Payment.** Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

    **5.5**    **Subsequent Case Review.** Seller agrees to an additional case review charge of $20.00 each time seller requests and receives additional funding from Purchaser.

    **5.6**    **Case Servicing Fee.** Seller agrees to pay to Purchaser a case servicing fee of $35.00 every six (6) months or increment thereof. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

    **5.7**    **Archiving and Document Management Fee.** Seller agrees to pay to Purchaser a fee of $35.00 per funding to defray Seller's archiving and document management costs. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount

    **5.8**    **Substitution of Attorneys in the Legal Claim.** If Seller determines to hire new or additional attorneys to represent Seller in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

    **5.9**    **No Assignment of Workers Compensation Benefits.** The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

    **5.10**    **Requests for Documents and Information.** Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with: (a) prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6. PAYMENT AND PRIORITY.

    **6.1**    **Priority Payment to Purchaser.** Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount. If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens. **If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Purchaser shall receive nothing**

    **6.2**    **Mechanics and Timing of Payment.** The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction. Seller agrees not to have the Oasis Ownership amount paid to him. Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis. Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller. The Oasis Ownership Amount shall be determined as of the date it is received by Oasis. Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser. Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

    **6.3**    **Risk of Loss.** Purchaser and Seller acknowledge that the Purchased Interest may be worthless. Purchaser accepts the risk of loss with respect to the Purchased Interest.

    **6.4**    **RIGHT TO PAY PURCHASER FROM ANY SOURCE.**    **THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME**

# PURCHASE AGREEMENT
### PAGE 4 OF 6

WITHOUT PENALTY PRIOR TO THE PROCEEDS DUE FROM THE LEGAL CLAIM BEING DISTRIBUTED. IF SELLER SO ELECTS, PAYMENT MUST BE RECEIVED AND ACKNOWLEDGED BY PURCHASER PRIOR TO SELLER RECEIVING ANY PROCEEDS FROM THE LEGAL CLAIM. UPON SELLER'S RECEIPT OF THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT, PURCHASER SHALL BE DEEMED TO HAVE TENDERED BACK TO SELLER PURCHASER'S INTEREST IN THE PROCEEDS.

SECTION 7. EVENT OF DEFAULT; SPECIFIC DEFAULT; RIGHT OF RESCISSION.

    **7.1**     **Event of Default.** The breach by Seller of any of Seller's obligations under this Purchase Agreement shall constitute an "Event of Default" hereunder. In an Event of Default, Purchaser shall have all rights, powers, and remedies provided in the Purchase Agreement and as allowed by law or in equity.

    **7.2**     **Seller's Right of Rescission. CONSUMER'S RIGHT TO CANCELLATION:** YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE THE PURCHASE PRICE FROM PURCHASER.

TO CANCEL THIS AGREEMENT, YOU MUST EITHER:

    (I)     RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER BY DELIVERING THE UNCASHED CHECK TO PURCHASER IN PERSON WITHIN FIVE (5) BUSINESS DAYS; OR

    (II)     MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) BUSINESS DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S ADDRESS AS SET FORTH IN SECTION 8.2 BELOW.

SECTION 8.     MISCELLANEOUS.

    **8.1**     **Survival of Representations.** All of the representations, warranties, covenants and Purchase Agreements of the parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

    **8.2**     **Notices.** All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the parties at the following addresses:

if to Purchaser, to:     Oasis Financial
                        9525 W. Bryn Mawr, Suite 900
                        Rosemont, IL 60018
                        Attn:     Controller

and if to Seller, to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the parties hereto shall have specified in writing to the other.

    **8.3**     **Financing Statements and Additional Documents.** Seller irrevocably authorizes Purchaser at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto. Purchaser may indicate the following information in such financial statements and amendments: (a) that a portion of the proceeds that are derived from the Legal Claim are owned by Purchaser; and (b) any other information required, in Purchaser's discretion, by the Uniform Commercial Code in any relevant jurisdiction.

    **8.4**     **Release to Contact Third Parties.** As part of this Purchase Agreement it may be necessary to disclose information to third parties. Seller explicitly and irrevocably authorizes Purchaser to disclose any information to third parties as

## PURCHASE AGREEMENT
### PAGE 5 OF 6

it deems appropriate to the extent permitted by law and also as referenced in the Oasis Financial privacy policy. Seller releases Purchaser from any and all liability as a result of the release of any information.

8.5   **Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

8.6   **Governing Law and Forum.** This Purchase Agreement, and all lawsuits, disputes, claims, or proceedings arising out of or relating to this Purchase Agreement or the relationships that result from this Purchase Agreement, shall be governed, construed and enforced in accordance with the laws of the State of Georgia.

The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in an inconvenient forum.

Each of the parties to the Contract further irrevocably consents to the service of process out of the Circuit Court of Cook County, Illinois by mailing copies thereof by Registered or Certified United States mail, postage prepaid, to each of the parties of the Purchase Agreement at its address specified in this Contract.

8.7   Waiver of Jury Trial, Consolidation and Class Action; Costs.

THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.  THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.

THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.

8.8   **Counterparts and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.

8.9   **Assignment; Use of Information.** Purchaser's rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller. Seller's rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser, except for transfer by intestate due to Seller's death in which case Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller agrees that Purchaser may share information that Purchaser obtained about Seller (whether from Seller or other person or entity) with potential assignees to whom Purchaser may assign its rights and obligations under this Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser; and (ii) Purchaser enters into an appropriate confidentiality Purchase Agreement with any such potential assignee.

8.10   No Third Party Beneficiaries; Successors and Assigns. Subject to the provisions of <u>Section 8.9</u>, (a) this Purchase Agreement is solely for the benefit of Purchaser and Seller; and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

8.11   Severability. If any provision of this Purchase Agreement or the application of any such provision to any

10-04-2016 11:32 AM
10/04/2016 Tue 11:32

RECEIVED 10/04/2016 12:24 9122993584
(847) 521-4386          → Stephen Stincer, Esq.
Vanessa Ellinger    (847) 521-4386

CARDILLO AND STINCER
🗋 11
ID: #1221614   Page 11 of 15

## PURCHASE AGREEMENT
### PAGE 6 OF 6

party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that any term or provision of this Purchase Agreement is invalid or unenforceable, the parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

8.12    **Legal Representation.**    SELLER UNDERSTANDS AND ACKNOWLEDGES THAT:    (A) PURCHASER HAS RECOMMENDED THAT SELLER ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.

8.13    **Construction.**    The parties intend that this Purchase Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement

(REMAINDER OF PAGE LEFT INTENTIONALLY BLANK).

Case ID: P-GA-865898

⊘ 10-04-2016 11:32 AM
10/04/2016 Tue 11:32
RECEIVED  10/04/2016 12:24    9122333584
(847) 521-4386              → Stephen Stincer, Esq.
Vanessa Ellinger    (847) 521-4386
CARDILLO AND STINCER
℗ 1
ID: #1221614  Page 1 of 15

# Oasis Financial

9525 W. Bryn Mawr Ave, Suite 900
Rosemont, IL 60018

| | | | |
|---|---|---|---|
| Recipient: | *Stephen Stincer, Esq.* | Pages: | *15* |
| Fax Number: | *19122333584* | Date / Time: | *10/04/2016 Tue / 11:32* |
| Sender: | | Phone: | |
| Subject: | *John Suber* | | |

### IRREVOCABLE LETTER OF DIRECTION
#### Sent by Fax to (912) 233-3584 and by US Mail

October 4, 2016

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

Dear Stephen Stincer,

Be advised that I have sold a portion of the proceeds of my legal claim equal to the Oasis Ownership Amount to Oasis Financial. I, John Suber, hereby irrevocably direct Stephen Stincer or any subsequent attorney(s) and law firms that may represent me, to tender the Oasis Ownership Amount to Oasis Financial pursuant to this purchase agreement from any and all of the proceeds due to me from the legal claim(s)/case(s) in which you represent me, after payment of any and all legal fees and reimbursable costs before releasing any funds to me unless Oasis Financial LLC advises you that I have already paid to them the Oasis Ownership Amount in full. If any dispute arises over the amount owed Oasis, I instruct you NOT to release any funds to me until that dispute is resolved. If a check is sent in my name, I hereby grant you a limited, irrevocable power of attorney to endorse and deposit my check into your trust account and pay to Oasis Financial, its Ownership Amount, before releasing any funds to me. I also state that I do not have any significant outstanding child support obligations. I understand that any such significant outstanding child support obligation may delay or prevent my funding.

_____
(please initial)

I have read the Purchase Agreement and fully understand my obligations. I understand that Oasis has relied on this Irrevocable Letter of Direction to fund the Purchase Agreement, that the purchase price is $620.00, and that the Oasis Ownership Amount will increase based on a multiple of the purchase price and the date Oasis receives payment per the Purchase Agreement. In the event that you no longer represent me, I instruct you to provide Oasis with any insurance, attorney or other information requested that will allow it to protect its interest and to follow my irrevocable instructions. This letter may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute an agreement. By signing the acknowledgement below, you acknowledge that this letter is from me and that you will comply with this Irrevocable Letter of Direction.

Sincerely,


_____
John Suber

### ATTORNEY ACKNOWLEDGMENT

- I, Stephen Stincer, Esq., acknowledge receipt of this Letter and the Purchase Agreement from my client.
- My fee agreement is on a contingency basis and there are liens (exclusive of attorneys fees and costs) against the case of approximately $_____, and I will honor my client's irrevocable letter of direction, subordinate to attorney fees, costs and appropriate medical liens as per instructions above. I acknowledge that John Suber has the right to pay the Oasis Ownership Amount in full from any source at any time prior to distribution of the proceeds.
- I fully expect and anticipate that any proceeds from the legal claim will be sent to me from the defendant and/or insurance company, and not to the Plaintiff, and I agree that all disbursements of funds, including plaintiff's share of proceeds, will be through my attorney trust account,
- I have not and will not accept any advice, direction or payment from Oasis Financial regarding the legal claim.
- To the best of my knowledge, John Suber has NOT received any previous cash fundings on his/her legal claim(s).
- Without the prior written consent of Oasis Financial, I will not participate in or acknowledge any future cash fundings for John Suber.

#### How should we contact your office for case updates?

_____                    _____
Stephen Stincer, Esq.                       E-mail is Preferred (or Fax Number)



# NOTICE OF PAYMENT SCHEDULE

October 4, 2016

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

RE:    OUR CLIENT: John Suber
       OUR CASE ID:P-GA-865898

Dear Stephen Stincer,

Oasis Financial has entered into a Purchase Agreement (attached) with John Suber. Oasis Financial has purchased an interest in the potential proceeds from the legal claim of John Suber.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL OUR PURCHASED INTEREST (PLUS ANY APPLICABLE SECOND FUNDING OR SERVICING FEES) HAS BEEN SATISFIED.**

### OASIS OWNERSHIP AMOUNT

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| October 5, 2016 to April 4, 2017 | $930.00 |
| April 5, 2017 to October 4, 2017 | $1,023.00 |
| October 5, 2017 to January 4, 2018 | $1,395.00 |
| January 5, 2018 to April 4, 2018 | $1,550.00 |
| April 5, 2018 to October 4, 2018 | $1,705.00 |
| October 5, 2018 to April 4, 2019 | $2,015.00 |
| April 5, 2019 and thereafter | $2,170.00 |

| Fees Due at Payment | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $35.00 |

Please call (866) 206-4800 (Press Option 6) or by fax at (847) 521-4392 to receive more information about payment.

**9525 W. Bryn Mawr, Suite 900, Rosemont, IL 60018**
**Phone (847) 521-4400 – Fax (847) 521-4386**
<TO_FAXNUM:1(912) 233-3584>
<NOTE:Case Number P-GA-865898 John Suber>
<TO_NAME: John Suber>

Case ID P-GA-865898

⊘ 10-04-2016 11:32 AM
10/04/2016 Tue 11:32

RECEIVED   10/04/2016 12:24   9122335564          CARDILLO AND STINGER      □ 14
(847) 521-4386                      → Stephen Stincer, Esq.
                    Vanessa Ellinger    (847) 521-4386          ID: #1221614  Page 14 of 15

# OASIS FINANCIAL PRIVACY POLICY

**Effective date April 2012**
The privacy and security of your personal information is important to Oasis.  We provide this Privacy Policy to advise  you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

## What personal information does Oasis collect?

The types of personal information we collect and share depend on the product or service you have with us, but is clearly stated on our applications. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information can include:  name, address, e-mail address, telephone number(s), your date of birth, social security number, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports.  We may also use your information in order to obtain additional information regarding you, such as credit or consumer reports.

## How does Oasis share personal information?

We share customers' personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law.  Some of this sharing is necessary to provide you with the services you are requesting from us.  In the section below, we list the primary reasons we share customers' personal information; the reasons Oasis chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Oasis share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes— such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes—to offer our products and services to you | Yes | Yes |
| For joint marketing with other financial companies | Yes | Yes |
| For our affiliates' everyday business purposes— information related to your transactions and experiences | Yes | No (except CA and VT residents) |
| For our affiliates' everyday business purposes— information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

To limit our sharing, simply complete our Opt-Out form by visiting us at www.OasisFinancial.com/privacy and follow the instructions on the site.

## Why can't I limit all sharing?

In many circumstances, sharing information is necessary for us to provide you the services you are requesting.  Federal law gives you the right to limit only

- sharing for affiliates' everyday business purposes—information about your creditworthiness
- affiliates from using your information to market to you
- sharing for nonaffilates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law.

California: In accordance with California law, Oasis Financial will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

Vermont: In accordance with Vermont law, Oasis Financial will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

Case ID P-GA-865898

RECEIVED  10/04/2016 12:24   9122333584          CARDILLO AND STINCER

10-04-2016 11:32 AM        (847) 521-4386           → Stephen Stincer, Esq.                        ID: #1221614  Page 15 of 15
10/04/2016 Tue 11:32                    Vanessa Ellinger   (847) 521-4386

## How Does Oasis protect my personal information?

To protect your personal information from unauthorized access and use, we use reasonable security measures that comply with applicable laws. These measures include computer safeguards and secured files and buildings. Our agreements with service providers or other nonaffiliated companies require them to treat your personal information in a confidential and secure manner.

## How does Oasis collect my personal information?

We collect your personal information, for example, when you, your attorney, or third parties, such as credit bureaus, affiliates, or other companies provide it to us on applications and other forms, by phone, fax, the Internet, or other delivery services.

## What happens when I limit sharing for an account I hold jointly with someone else?

Your choices will apply to everyone on your account.

## Passive collection of information

While you are on our website, we may automatically track information related to your voluntary use of the website. Such voluntary provided information may include, among other things, URL tracking information, user's browser, user's IP address, files viewed by you and your path through the website, date, time and frequency of accessing website and length of time spent reviewing certain features. In addition we may (i) use pixels provided to us by a third party to track the pages viewed, the number of pages viewed, and the number of customer conversions obtained from third parties and marketing agencies, (ii) place a cookie, provided to us by a third party, on your computer that tracks if you click on an advertisement so that future advertisements can be targeted to you based on the advertisements clicked on by you and/or your other activities on the website.

## Definitions

| | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. |
| | *Our affiliates include Oasis Financial Holding Company, LLC and Oasis Financial Operating Company, LLC* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies |
| | *Nonaffiliates we share with can include companies such as money transfer companies, collection agencies, investment and insurance companies, mortgage and brokerage companies, retailers or marketing companies.* |
| Joint Marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |
| | *Our joint marketing partners include categories of companies such as banks or lending institutions and insurance companies.* |

## Other Terms

We may access or disclose information about you in order to: (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Oasis, our service providers or our customers, including the enforcement of our agreements or policies governing your use of our services; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Oasis' or our service providers' employees, customers or the public. We may also disclose personal information as part of a proposed or actual corporate transaction such as a merger or sale of assets.

Through our website, you can link to other websites of third parties that provide useful information, or who have agreed to offer goods and services to our users. Any personal information you provide on the linked pages is provided directly to the applicable third-party and is subject to that third party's privacy policy.

## Revisions to this Privacy Policy

This Privacy Policy may be revised from time to time by Oasis Financial. We will provide notice on our website that the Privacy Policy has changed, and will otherwise inform you of any changes to the extent required by law. Amendments to this policy will be effective when posted to our website at www.OasisFinancial.com/privacy.

Case ID: P-GA-865898

# EXHIBIT F

# PAYMENT INSTRUCTIONS
## Page 1 of 2

**Parties:** John Suber is Seller and Oasis Legal Finance, LLC is Purchaser

**Offer Date:** March 2, 2012

**Purchase Price to Seller:**     $2,000.00

(Select only one, and please check the box next to the option that you choose):

☐     ⏱ Money in Minutes at any [WESTERN UNION] near you.   The Fastest way to get your funding.  Many Western Union locations are open late!  No waiting on a delivery service or the mail for a check, no check cashing fee, and no waiting on a bank to cash that check or release the cash to you. Many Locations Open Late!
Funds available on the **SAME DAY** if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details.

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $85.00 |
| $751.00 | - | $1,250.00 | $99.00 |
| $1,251.00 | - | $2,000.00 | $130.00 |
| $2,001.00 | - | $5,000.00 | $175.00 |

☐     **Direct Deposit Wire Transfer** to bank account in my name.
Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day.   Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank.   A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details:

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $85.00 |
| $751.00 | - | $1,250.00 | $99.00 |
| $1,251.00 | - | $2,000.00 | $130.00 |
| $2,001.00 | and up | | $175.00 |



Note: The routing and account numbers may be in different places on your check.

| | |
|---|---|
| Name of Bank: | |
| Bank's City, State: | |
| Routing/ABA Number: | |
| Account Number: | |
| Bank's Phone Number: | |
| Name on Account: (your name must be on the account) | |

☐     A **Check** sent in my name by U.S. **First Class Mail** with Delivery Confirmation
(Free– delivered within 5 to 10 days from post date.  Not responsible for delays due to postal or bank holidays, or weekends).
Street Address Apt/Unit # _____
City, _____     State _____  Zip _____

# PAYMENT INSTRUCTIONS
## Page 2 of 2

☐        A **Check** sent in my name by **Overnight** Delivery service for delivery by the next business day.
($89.00 deducted from purchase price-no out of pocket cost to you. Overnight delivery does not include weekends. Saturday
delivery available for an extra charge):

Street Address Apt/Unit # _____

City, _____ State _____ Zip _____

**Terms:**  Purchaser agrees to provide funds to the Seller as requested below by the Seller. Seller agrees that funds received from
Purchaser are a purchase of property, not a loan, and that Purchaser owns a portion of the potential proceeds from the legal claim.

### Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| March 3, 2012 to September 2, 2012 | $3,000.00 |
| September 3, 2012 to March 2, 2013 | $3,300.00 |
| March 3, 2013 to June 2, 2013 | $4,500.00 |
| June 3, 2013 to September 2, 2013 | $5,000.00 |
| September 3, 2013 to March 2, 2014 | $5,500.00 |
| March 3, 2014 to September 2, 2014 | $6,500.00 |
| September 3, 2014 and thereafter | $7,000.00 |

Please describe how we helped you during these difficult times:_____

_____

By signing below, I hereby agree to the terms of the Payment Instructions and understand that I am responsible for the information
that I have provided on this form and that Purchaser is not responsible for any problem in delivery or transfer of funds, so long as it
follows the instructions provided by the Seller.  I also agree to the use of the above statements in any way as Purchaser sees fit.

_____    _____        _____    _____
John Suber - Seller              Date              Oasis Legal Finance, LLC - Purchaser      Date

# **Oasis** Legal Finance

## CREDIT AND INFORMATION RELEASE

Oasis Legal Finance, LLC may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction.

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Legal Finance, LLC or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the agreement.

This authorization is valid for purposes of verifying information given pursuant to business negotiations, or any other lawful purpose covered under the Fair Credit Reporting Act. (FCRA).
Upon written request, we will tell you whether we have obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. We also request that by signing below, you certify the information provided by you to Oasis Legal Finance, LLC in your application and underwriting process is true, accurate, and complete. You also authorize Oasis Legal Finance LLC to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis Legal Finance, LLC ("Oasis"), or its affiliates any and all information and documents pertaining to my current legal claim or lawsuit, including pleadings, discovery, investigation, contracts, medical records/reports, depositions, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application is true, accurate, and complete.

John Suber
_____
Date

_____       _____
Signature                                Social Security Number

_____       _____
Telephone Number                Date of Birth

Drivers License #: _____       State of Driver's License _____

_____
Street Address           City               State       Zip Code

# PURCHASE AGREEMENT
### PAGE 1 OF 6

| | |
|---|---|
| Purchaser: | Oasis Legal Finance, LLC (Oasis) |
| Seller: | John Suber |
| Purchase Price: | $2,000.00 |

**Oasis Ownership Amount**

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| March 3, 2012 to September 2, 2012 | $3,000.00 |
| September 3, 2012 to March 2, 2013 | $3,300.00 |
| March 3, 2013 to June 2, 2013 | $4,500.00 |
| June 3, 2013 to September 2, 2013 | $5,000.00 |
| September 3, 2013 to March 2, 2014 | $5,500.00 |
| March 3, 2014 to September 2, 2014 | $6,500.00 |
| September 3, 2014 and thereafter | $7,000.00 |

**Fees Due at Payment**

| | |
|---|---|
| Case Servicing Fee every 6 months | $30.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $25.00 |

**SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION**

**IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING. SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.**

**SELLER:**   John Suber         **Address:**      23 Eugene St,  Valdosta, GA 31601

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of five (5) pages. I agree to be bound by the terms and conditions of this Purchase Agreement. This Agreement shall not be effective until the Purchase Price is paid to Seller.

Seller's Signature          Date                    Purchaser' Signature          Date

John Suber                                          Oasis Legal Finance, LLC

## SECTION 1.    DEFINITIONS.

    1.1    **"Legal Claim"** means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

    1.2    **"Oasis Ownership Amount"** is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

    1.3    **"Proceeds"** means whatever you receive as a result of the legal claim, for example through a judgment. Arbitration or the like.

    1.4    **"Purchased Interest"** means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

# PURCHASE AGREEMENT
### PAGE 2 OF 6

1.5      **"Purchaser"** means Oasis Legal Finance, LLC.

1.6      **"Seller"** means John Suber.

1.7      **"Seller's Attorney"** means, collectively, Stephen Stincer, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.**     **SELLER'S STATEMENTS.** Seller states to Purchaser as follows:

2.1      **Purchase and Sale.** Seller sells, and the Purchaser buys, the Purchased Interest.

2.2      **Title; Capacity.** Seller believes the Legal Claim to be meritorious and filed in good faith. Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

2.3      **Information True, Complete and Correct.** Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3. SELLER'S ACKNOWLEDGEMENTS.** Seller acknowledges the following:

3.1      **Risk of Loss.** This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser. The Oasis Ownership Amount has been negotiated to account for such risk.

3.2      **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.** Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

3.3      **No Previous Encumbrance** Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4. PURCHASER'S ACKNOWLEDGEMENT** Purchaser acknowledges the following:

4.1      **Purchaser's Acknowledgment.** Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5. SELLER'S AGREEMENTS.** Seller agrees as follows:

5.1      **Treatment of Transaction.** Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes). Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

5.2      **Treatment in Bankruptcy.** If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

5.3      **No Assignment.** Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death. In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

# PURCHASE AGREEMENT
### PAGE 3 OF 6

**5.4**     **Prosecution of Claim and Facilitation of Payment.** Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

**5.5**     **Subsequent Case Review.** Seller agrees to an additional case review charge of $20.00 each time seller requests and receives additional funding from Purchaser.

**5.6**     **Case Servicing Fee.** Seller agrees to pay to Purchaser a case servicing fee of $30.00 every six (6) months or increment thereof. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

**5.7**     **Substitution of Attorneys in the Legal Claim.** If Seller determines to hire new or additional attorneys to represent Seller in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

**5.8**     **No Assignment of Workers Compensation Benefits.** The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

**5.9**     **Requests for Documents and Information.** Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with: (a) prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6. PAYMENT AND PRIORITY.

**6.1**     **Priority Payment to Purchaser.** Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount. If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens. **If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Purchaser shall receive nothing**

**6.2**     **Mechanics and Timing of Payment.** The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction. Seller agrees not to have the Oasis Ownership amount paid to him. Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis. Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller. The Oasis Ownership Amount shall be determined as of the date it is received by Oasis. Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser. Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

**6.3**     **Risk of Loss.** Purchaser and Seller acknowledge that the Purchased Interest may be worthless. Purchaser accepts the risk of loss with respect to the Purchased Interest.

**6.4**     **RIGHT TO PAY PURCHASER FROM ANY SOURCE.**     THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME WITHOUT PENALTY PRIOR TO THE PROCEEDS DUE FROM THE LEGAL CLAIM BEING DISTRIBUTED. IF SELLER SO ELECTS, PAYMENT MUST BE RECEIVED AND ACKNOWLEDGED BY PURCHASER PRIOR TO SELLER RECEIVING ANY PROCEEDS FROM THE LEGAL CLAIM. UPON SELLER'S RECEIPT OF THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT, PURCHASER SHALL BE DEEMED TO HAVE TENDERED

# PURCHASE AGREEMENT
### PAGE 4 OF 6

BACK TO SELLER PURCHASER'S INTEREST IN THE PROCEEDS.

**SECTION 7.  EVENT OF DEFAULT; SPECIFIC DEFAULT; RIGHT OF RESCISSION.**

    **7.1**     **Event of Default.** The breach by Seller of any of Seller's obligations under this Purchase Agreement shall constitute an "Event of Default" hereunder. In an Event of Default, Purchaser shall have all rights, powers, and remedies provided in the Purchase Agreement and as allowed by law or in equity.

    **7.2**     **Seller's Right of Rescission.** CONSUMER'S RIGHT TO CANCELLATION: YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE THE PURCHASE PRICE FROM PURCHASER.

TO CANCEL THIS AGREEMENT, YOU MUST EITHER:

    (I)     RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER BY DELIVERING THE UNCASHED CHECK TO PURCHASER IN PERSON WITHIN FIVE (5) BUSINESS DAYS; OR

    (II)     MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) BUSINESS DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S ADDRESS AS SET FORTH IN SECTION 8.2 BELOW.

**SECTION 8.**     **MISCELLANEOUS.**

    **8.1**     **Survival of Representations.** All of the representations, warranties, covenants and Purchase Agreements of the parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

    **8.2**     **Notices.** All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the parties at the following addresses:

if to Purchaser, to:     Oasis Legal Finance, LLC
    40 North Skokie Blvd, Suite 500
    Northbrook, Illinois 60062
    Attn:     Controller

and if to Seller, to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the parties hereto shall have specified in writing to the other.

    **8.3**     **Financing Statements and Additional Documents.** Seller irrevocably authorizes Purchaser at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto. Purchaser may indicate the following information in such financial statements and amendments: (a) that a portion of the proceeds that are derived from the Legal Claim are owned by Purchaser; and (b) any other information required, in Purchaser's discretion, by the Uniform Commercial Code in any relevant jurisdiction.

    **8.4**     **Release to Contact Third Parties.** As part of this Purchase Agreement it may be necessary to disclose information to third parties. Seller explicitly and irrevocably authorizes Purchaser to disclose any information to third parties as it deems appropriate to the extent permitted by law and also as referenced in the Oasis Legal Finance, LLC privacy policy. Seller releases Purchaser from any and all liability as a result of the release of any information.

    **8.5**     **Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed

# PURCHASE AGREEMENT
### PAGE 5 OF 6

by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

    **8.6**     **Governing Law and Forum.** This Purchase Agreement, and all lawsuits, disputes, claims, or proceedings arising out of or relating to this Purchase Agreement or the relationships that result from this Purchase Agreement, shall be governed, construed and enforced in accordance with the laws of the State of Georgia.

    The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in an inconvenient forum.

    Each of the parties to the Contract further irrevocably consents to the service of process out of the Circuit Court of Cook County, Illinois by mailing copies thereof by Registered or Certified United States mail, postage prepaid, to each of the parties of the Purchase Agreement at its address specified in this Contract.

    **8.7**     **Waiver of Jury Trial, Consolidation and Class Action; Costs.**

    THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.

    THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.

    **8.8**     **Counterparts and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.

    **8.9**     **Assignment; Use of Information.** Purchaser's rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller. Seller's rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser, except for transfer by intestate due to Seller's death in which case Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller agrees that Purchaser may share information that Purchaser obtained about Seller (whether from Seller or other person or entity) with potential assignees to whom Purchaser may assign its rights and obligations under this Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser; and (ii) Purchaser enters into an appropriate confidentiality Purchase Agreement with any such potential assignee.

    **8.10**     **No Third Party Beneficiaries; Successors and Assigns.** Subject to the provisions of Section 8.9, (a) this Purchase Agreement is solely for the benefit of Purchaser and Seller; and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

    **8.11**     **Severability.** If any provision of this Purchase Agreement or the application of any such provision to any party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that

# PURCHASE AGREEMENT
### PAGE 6 OF 6

any term or provision of this Purchase Agreement is invalid or unenforceable, the parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

     8.12    Legal Representation.    SELLER UNDERSTANDS AND ACKNOWLEDGES THAT:   (A) PURCHASER HAS RECOMMENDED THAT SELLER ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.

     8.13    Construction.   The parties intend that this Purchase Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement

     (REMAINDER OF PAGE LEFT INTENTIONALLY BLANK).

## IRREVOCABLE LETTER OF DIRECTION
### Sent by Fax to (912) 527-2010 and by US Mail

March 2, 2012

Stephen Stincer, Esq.
2 East Bryan
Savannah, GA 31401

Dear Stephen Stincer,

Be advised that I have sold a portion of the proceeds of my legal claim equal to the Oasis Ownership Amount to Oasis Legal Finance, LLC. I, John Suber, hereby irrevocably direct Stephen Stincer or any subsequent attorney(s) and law firms that may represent me, to tender the Oasis Ownership Amount to Oasis Legal Finance, LLC pursuant to this purchase agreement from any and all of the proceeds due to me from the legal claim(s)/case(s) in which you represent me, after payment of any and all legal fees and reimbursable costs before releasing any funds to me unless Oasis Legal Finance LLC advises you that I have already paid to them the Oasis Ownership Amount in full. If any dispute arises over the amount owed Oasis, I instruct you NOT to release any funds to me until that dispute is resolved. If a check is sent in my name, I hereby grant you a limited, irrevocable power of attorney to endorse and deposit my check into your trust account and pay to Oasis Legal Finance, LLC, its Ownership Amount, before releasing any funds to me. I also state that I do not have any significant outstanding child support obligations. I understand that any such significant outstanding child support obligation may delay or prevent my funding.

_____
(please initial)

I have read the Purchase Agreement and fully understand my obligations. I understand that Oasis has relied on this Irrevocable Letter of Direction to fund the Purchase Agreement, that the purchase price is $2,000.00, and that the Oasis Ownership Amount will increase based on a multiple of the purchase price and the date Oasis receives payment per the Purchase Agreement. In the event that you no longer represent me, I instruct you to provide Oasis with any insurance, attorney or other information requested that will allow it to protect its interest and to follow my irrevocable instructions. This letter may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute an agreement. By signing the acknowledgement below, you acknowledge that this letter is from me and that you will comply with this Irrevocable Letter of Direction

Sincerely,

_____
**John Suber**

## ATTORNEY ACKNOWLEDGMENT

- I, Stephen Stincer, Esq., acknowledge receipt of this Letter and the Purchase Agreement from my client.
- My fee agreement is on a contingency basis and there are liens (exclusive of attorneys fees and costs) against the case of approximately $_____, and I will honor my client's irrevocable letter of direction, subordinate to attorney fees, costs and appropriate medical liens as per instructions above. I acknowledge that John Suber has the right to pay the Oasis Ownership Amount in full from any source at any time prior to distribution of the proceeds.
- I fully expect and anticipate that any proceeds from the legal claim will be sent to me from the defendant and/or insurance company, and not to the Plaintiff, and I agree that all disbursements of funds, including plaintiff's share of proceeds, will be through my attorney trust account,
- I have not and will not accept any advice, direction or payment from Oasis Legal Finance LLC regarding the legal claim.
- To the best of my knowledge, John Suber has NOT received any previous cash fundings on his/her legal claim(s).
- Without the prior written consent of Oasis Legal Finance, LLC, I will not participate in or acknowledge any future cash fundings for John Suber.

_____
Stephen Stincer, Esq.

How should we contact your office for case updates?

_____
E-mail is Preferred (or Fax Number)

**Oasis** Legal Finance

# NOTICE OF PAYMENT SCHEDULE

March 2, 2012

Stephen Stincer, Esq.
2 East Bryan
Savannah, GA 31401

RE:     OUR CLIENT: John Suber
        OUR CASE ID:P-GA-367408

Dear Stephen Stincer,

Oasis Legal Finance LLC has entered into a Purchase Agreement (attached) with John Suber. Oasis Legal Finance has purchased an interest in the potential proceeds from the legal claim of John Suber.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL OUR PURCHASED INTEREST (PLUS ANY APPLICABLE SECOND FUNDING OR SERVICING FEES) HAS BEEN SATISFIED.**

### OASIS OWNERSHIP AMOUNT

| Payment Schedule | Oasis Ownership Amount |
| --- | --- |
| March 3, 2012 to September 2, 2012 | $3,000.00 |
| September 3, 2012 to March 2, 2013 | $3,300.00 |
| March 3, 2013 to June 2, 2013 | $4,500.00 |
| June 3, 2013 to September 2, 2013 | $5,000.00 |
| September 3, 2013 to March 2, 2014 | $5,500.00 |
| March 3, 2014 to September 2, 2014 | $6,500.00 |
| September 3, 2014 and thereafter | $7,000.00 |

| Fees Due at Payment | |
| --- | --- |
| Case Servicing Fee every 6 months | $30.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $25.00 |

Please call (866) 206-4800 (Press Option 6) or by fax at (847) 521-4392 to receive more information about payment.

**40 North Skokie Blvd, Suite 500, Northbrook, IL 60062**
**Phone (847) 521-4349 – Fax (847) 897-3143**
<TO_FAXNUM:1(912) 527-2010>
<NOTE:Case Number P-GA-367408 John Suber>
<TO_NAME: John Suber>

**OASIS LEGAL FINANCE, LLC PRIVACY POLICY**
Effective date January 2010

At Oasis Legal Finance we are committed to providing you the best service while earning your trust. A critical part of earning that trust is protecting your privacy rights. We have created this document to explain our privacy policy to you. In addition, we are complying with both federal and state laws which require financial services companies to notify you, our valued customers, about how we intend to treat your personal information that you have entrusted with us.

We want our customers to be aware of what information Oasis collects and how it is handled, with whom the information may be shared, and our customers' "opt out" rights. This policy sets forth our policies with respect to nonpublic personally identifiable information ("personal information") about potential, current, and former customers

**I. PERSONAL INFORMATION**
To provide reliable, quality service Oasis Legal Finance must collect certain personal financial, legal, and medical information regarding its customers and potential customers. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. The information may include, but is not limited to, name, address, e-mail address, telephone number(s), your date of birth, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports.

**II. OASIS LEGAL FINANCE'S COLLECTION AND USE OF INFORMATION**
All personal information that Oasis Legal Finance collects when you or your attorney speak to an Oasis Legal Finance representative, or via any of Oasis' web sites when you inquire about or complete an application for one or more of our products or services (or begin the inquiry or application process, whether you complete the process or not), is handled by Oasis Legal Finance in accordance with this privacy statement.

Oasis Legal Finance uses personal information: for the stated purpose for which such information is gathered, for marketing analysis and sales planning purposes; for servicing and collection purposes; for legal, financial, accounting and tax record keeping; for other business purposes associated with its services; to manage its business; and to comply with requirements imposed by governmental authorities. Oasis Legal Finance discloses personal information to certain service providers that are contractually obligated to keep the information we provide them confidential and to use the personal information we share only to provide the services we ask them to perform.

In an effort to provide a diversity of product and service offers that may benefit our customers or potential customers, Oasis Legal Finance may provide non-public information about our customers to affiliated and unaffiliated companies. This information may include; name, address, e-mail address, and phone number(s). At no time will we ever disclose any medical, legal or transactional information for these purposes. Information that is collected or maintained by any company other than Oasis Legal Finance, including additional information collected by such company, will be governed by that other company's privacy policy.

Oasis Legal Finance will not disclose your personal information to a third party unless (i) disclosure is necessary to render services or to perform related business activities expressed in this privacy policy; (ii) disclosure is required pursuant to a request for specific customer information to comply with a subpoena, court order, and/or other legal instrument, legal proceeding or relevant law, including compliance with the USA Patriot Act; or (iii) as otherwise permitted by law.

**III. OASIS LEGAL FINANCE'S INFORMATION SECURITY**

Oasis Legal Finance maintains physical, electronic, and procedural safeguards that comply with federal and state regulations to guard your personal information, and secure your information from unauthorized access, use and disclosure. To this end, we use industry-standard methods such as firewalls, encryption and system access controls, and our security practices are regularly reviewed against industry best practices by internal staff and independent third parties.

All personal information that Oasis Legal Finance collects is accessible by Oasis Legal Finance employees and contractors and, to the extent required for the tax, accounting, legal and other professionals hired by Oasis Legal Finance, for business purposes only and to fulfill their fiduciary or representative duty. All such professionals are bound to maintain the confidentiality of information supplied to them by contractual and/or ethical obligations.

**VI. "OPT-OUT" PROVISION**
Oasis Legal Finance offers any person the opportunity to "opt-out" of receiving future offers from Oasis or from affiliated and unaffiliated companies. To remove your information from our database so as not to receive future advertising communications, you can send an email to optout@oasislegal.com. Or you can send a written correspondence to the same effect to:

Opt-Out
Oasis Legal Finance, LLC
40 N. Skokie Blvd, Suite 500
Northbrook, IL 60062

Please note that it may take up to 30 days from the date of receipt of notification for your request to become active. In your opt-out instructions, so that we can accurately remove your record, please include your name, address, phone number, and attorney's name that is handling or handled your case.

California: In accordance with California law, Oasis Legal Finance will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

Vermont: In accordance with Vermont law, Oasis Legal Finance will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

**VII. REVISION OF THIS POLICY**
This Privacy Policy may be revised from time to time by Oasis Legal Finance. We will inform you of any changes as required by law. Amendments to this policy will be effective when posted to our website at www.oasislegal.com.

04/16/2012 3:49 PM
04/16/2012 Mon 15:48

RECEIVED  04/16/2012 16:47  9122333584
Fax Services          →Stephen Stincer, Esq.
Oasis Legal Finance

CARDILLO AND STINCER
D 3
ID:#544031  Page 3 of 14

# PAYMENT INSTRUCTIONS
## Page 1 of 2

**Parties:** John Suber is Seller and Oasis Legal Finance, LLC is Purchaser

**Offer Date:** April 16, 2012

**Purchase Price to Seller:** $2,000.00

*(Select only one, and please check the box next to the option that you choose):*

☐ ⏱ Money in Minutes at any [WESTERN UNION] near you.  The Fastest way to get your funding.  Many Western Union locations are open late!  No waiting on a delivery service or the mail for a check, no check cashing fee, and no waiting on a bank to cash that check or release the cash to you. Many Locations Open Late!
Funds available on the **SAME DAY** if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details.

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $85.00 |
| $751.00 | - | $1,250.00 | $99.00 |
| $1,251.00 | - | $2,000.00 | $137.00 |
| $2,001.00 | - | $5,000.00 | $184.00 |

☐ **Direct Deposit Wire Transfer** to bank account in my name.
Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day.  Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank.  A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details:

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $85.00 |
| $751.00 | - | $1,250.00 | $99.00 |
| $1,251.00 | - | $2,000.00 | $137.00 |
| $2,001.00 | and up | | $184.00 |



| | |
|---|---|
| Name of Bank: | |
| Bank's City, State: | |
| Routing/ABA Number: | |
| Account Number: | |
| Bank's Phone Number: | |
| Name on Account: (your name must be on the account) | |

☐ A Check sent in my name by U.S. First Class Mail with Delivery Confirmation
(Free– delivered within 5 to 10 days from post date.  Not responsible for delays due to postal or bank holidays, or weekends).

Street Address Apt/Unit # _____

City, _____  State _____  Zip _____

⊙ 04/16/2012 3:49 PM
04/16/2012 Mon 15:48
RECEIVED  04/16/2012 16:47  9122333584
Fax Services              →Stephen Stincer, Esq.
Oasis Legal Finance
CARDILLO AND STINCER
D 4
ID: #544031  Page 4 of 14

# PAYMENT INSTRUCTIONS
## Page 2 of 2

☐ A **Check** sent in my name by **Overnight Delivery** service for delivery by the next business day.
($94.00 deducted from purchase price-no out of pocket cost to you. Overnight delivery does not include weekends. Saturday delivery available for an extra charge):

Street Address Apt/Unit # _____

City, _____ State _____ Zip _____

**Terms:** Purchaser agrees to provide funds to the Seller as requested below by the Seller. Seller agrees that funds received from Purchaser are a purchase of property, not a loan, and that Purchaser owns a portion of the potential proceeds from the legal claim.

**Oasis Ownership Amount**

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| April 17, 2012 to October 16, 2012 | $3,000.00 |
| October 17, 2012 to April 16, 2013 | $3,300.00 |
| April 17, 2013 to July 16, 2013 | $4,500.00 |
| July 17, 2013 to October 16, 2013 | $5,000.00 |
| October 17, 2013 to April 16, 2014 | $5,500.00 |
| April 17, 2014 to October 16, 2014 | $6,500.00 |
| October 17, 2014 and thereafter | $7,000.00 |

Please describe how we helped you during these difficult times:_____

_____

By signing below, I hereby agree to the terms of the Payment Instructions and understand that I am responsible for the information that I have provided on this form and that Purchaser is not responsible for any problem in delivery or transfer of funds, so long as it follows the instructions provided by the Seller. I also agree to the use of the above statements in any way as Purchaser sees fit.

_____    _____    _____    _____
John Suber - Seller          Date                Oasis Legal Finance, LLC - Purchaser   Date

04/16/2012 3:49 PM
04/16/2012 Mon 15:48

RECEIVED 04/16/2012 16:47    9122333584
Fax Services            →Stephen Stincer, Esq.
Oasis Legal Finance

CARDILLO AND STINCER
                                    □5
ID:#544031  Page 5 of 14

**Oasis** Legal Finance

## CREDIT AND INFORMATION RELEASE

Oasis Legal Finance, LLC may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction.

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Legal Finance, LLC or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the agreement.

This authorization is valid for purposes of verifying information given pursuant to business negotiations, or any other lawful purpose covered under the Fair Credit Reporting Act. (FCRA).
Upon written request, we will you whether we have obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. We also request that by signing below, you certify the information provided by you to Oasis Legal Finance, LLC in your application and underwriting process is true, accurate and complete. You also authorize Oasis Legal Finance LLC to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis Legal Finance, LLC ("Oasis"), or its affiliates any and all information and documents pertaining to my current legal claim or lawsuit, including pleadings, discovery, investigation, contracts, medical records/reports, depositions, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application is true, accurate, and complete.


John Suber                              _____
                                        Date

_____                _____
Signature                               Social Security Number

_____                _____
Telephone Number                        Date of Birth

Drivers License #: _____         State of Driver's License _____

_____
Street Address          City            State        Zip Code


Case ID: P-GA-367408                                    All Ver. 3.0

# PURCHASE AGREEMENT
### PAGE 1 OF 6

| | |
|---|---|
| **Purchaser:** | Oasis Legal Finance, LLC (Oasis) |
| **Seller:** | John Suber |
| **Purchase Price:** | $2,000.00 |

**Oasis Ownership Amount**

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| April 17, 2012 to October 16, 2012 | $3,000.00 |
| October 17, 2012 to April 16, 2013 | $3,300.00 |
| April 17, 2013 to July 16, 2013 | $4,500.00 |
| July 17, 2013 to October 16, 2013 | $5,000.00 |
| October 17, 2013 to April 16, 2014 | $5,500.00 |
| April 17, 2014 to October 16, 2014 | $6,500.00 |
| October 17, 2014 and thereafter | $7,000.00 |

| Fees Due at Payment | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $35.00 |

SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION

IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING.  SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.

**SELLER:**   John Suber        **Address:**      203 Eugene St, Valdosta, GA 31601

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of five (5) pages. I agree to be bound by the terms and conditions of this Purchase Agreement.  This Agreement shall not be effective until the Purchase Price is paid to Seller.

Seller's Signature        Date                    Purchaser' Signature                Date

_____        _____
John Suber                                      Oasis Legal Finance, LLC

## SECTION 1.    DEFINITIONS.

**1.1**    "**Legal Claim**" means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

**1.2**    "**Oasis Ownership Amount**" is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

**1.3**    "**Proceeds**" means whatever you receive as a result of the legal claim, for example through a judgment. Arbitration or the like.

**1.4**    "**Purchased Interest**" means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

④ 04/16/2012 3:49 PM    RECEIVED   04/16/2012 16:47   9122333584      CARDILLO AND STINCER
04/16/2012 Mon 15:48    Fax Services         → Stephen Stincer, Esq.        D7
                       Oasis Legal Finance              ID: #544031   Page 7 of 14

# PURCHASE AGREEMENT
### PAGE 2 OF 6

**1.5**    "**Purchaser**" means Oasis Legal Finance, LLC.

**1.6**    "**Seller**" means John Suber.

**1.7**    "**Seller's Attorney**" means, collectively, Stephen Stincer, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.**    **SELLER'S STATEMENTS.** Seller states to Purchaser as follows:

**2.1**    **Purchase and Sale.** Seller sells, and the Purchaser buys, the Purchased Interest.

**2.2**    **Title; Capacity.** Seller believes the Legal Claim to be meritorious and filed in good faith. Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

**2.3**    **Information True, Complete and Correct.** Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3. SELLER'S ACKNOWLEDGEMENTS.** Seller acknowledges the following:

**3.1**    **Risk of Loss.** This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser. The Oasis Ownership Amount has been negotiated to account for such risk.

**3.2**    **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.** Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

**3.3**    **No Previous Encumbrance** Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4. PURCHASER'S ACKNOWLEDGEMENT.** Purchaser acknowledges the following:

**4.1**    **Purchaser's Acknowledgment.** Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5. SELLER'S AGREEMENTS.** Seller agrees as follows:

**5.1**    **Treatment of Transaction.** Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes). Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

**5.2**    **Treatment in Bankruptcy.** If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

**5.3**    **No Assignment.** Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death. In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

# PURCHASE AGREEMENT
PAGE 3 OF 6

**5.4** **Prosecution of Claim and Facilitation of Payment.** Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

**5.5** **Subsequent Case Review.** Seller agrees to an additional case review charge of $20.00 each time seller requests and receives additional funding from Purchaser.

**5.6** **Case Servicing Fee.** Seller agrees to pay to Purchaser a case servicing fee of $35.00 every six (6) months or increment thereof. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

**5.7** **Substitution of Attorneys in the Legal Claim.** If Seller determines to hire new or additional attorneys to represent Seller in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

**5.8** **No Assignment of Workers Compensation Benefits.** The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

**5.9** **Requests for Documents and Information.** Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with: (a) prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6. PAYMENT AND PRIORITY.

**6.1** **Priority Payment to Purchaser.** Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount. If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens. **If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Purchaser shall receive nothing**

**6.2** **Mechanics and Timing of Payment.** The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction. Seller agrees not to have the Oasis Ownership amount paid to him. Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis. Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller. The Oasis Ownership Amount shall be determined as of the date it is received by Oasis. Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser. Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

**6.3** **Risk of Loss.** Purchaser and Seller acknowledge that the Purchased Interest may be worthless. Purchaser accepts the risk of loss with respect to the Purchased Interest.

**6.4** **RIGHT TO PAY PURCHASER FROM ANY SOURCE.** THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME WITHOUT PENALTY PRIOR TO THE PROCEEDS DUE FROM THE LEGAL CLAIM BEING DISTRIBUTED. IF SELLER SO ELECTS, PAYMENT MUST BE RECEIVED AND ACKNOWLEDGED BY PURCHASER PRIOR TO SELLER RECEIVING ANY PROCEEDS FROM THE LEGAL CLAIM. UPON SELLER'S RECEIPT OF THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT, PURCHASER SHALL BE DEEMED TO HAVE TENDERED

04/16/2012 3:49 PM
04/16/2012 Mon 15:48

RECEIVED 04/16/2012 16:47   9122333584    CARDILLO AND STINCER
Fax Services              →Stephen Stincer, Esq.              D 9
Oasis Legal Finance                ID: #544031   Page 9 of 14

# PURCHASE AGREEMENT
### PAGE 4 OF 6

BACK TO SELLER PURCHASER'S INTEREST IN THE PROCEEDS.

**SECTION 7.  EVENT OF DEFAULT; SPECIFIC DEFAULT; RIGHT OF RESCISSION.**

    **7.1**     **Event of Default.** The breach by Seller of any of Seller's obligations under this Purchase Agreement shall constitute an "Event of Default" hereunder. In an Event of Default, Purchaser shall have all rights, powers, and remedies provided in the Purchase Agreement and as allowed by law or in equity.

    **7.2**     **Seller's Right of Rescission.** CONSUMER'S RIGHT TO CANCELLATION: YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE THE PURCHASE PRICE FROM PURCHASER.

TO CANCEL THIS AGREEMENT, YOU MUST EITHER:

    (I)     RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER BY DELIVERING THE UNCASHED CHECK TO PURCHASER IN PERSON WITHIN FIVE (5) BUSINESS DAYS; OR

    (II)     MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) BUSINESS DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S ADDRESS AS SET FORTH IN <u>SECTION 8.2</u> BELOW.

**SECTION 8.  MISCELLANEOUS.**

    **8.1**     **Survival of Representations.** All of the representations, warranties, covenants and Purchase Agreements of the parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

    **8.2**     **Notices.** All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the parties at the following addresses:

if to Purchaser, to:     Oasis Legal Finance, LLC
                      40 North Skokie Blvd, Suite 500
                      Northbrook, Illinois 60062
                      Attn:    Controller

and if to Seller, to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the parties hereto shall have specified in writing to the other.

    **8.3**     **Financing Statements and Additional Documents.** Seller irrevocably authorizes Purchaser at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto. Purchaser may indicate the following information in such financial statements and amendments: (a) that a portion of the proceeds that are derived from the Legal Claim are owned by Purchaser; and (b) any other information required, in Purchaser's discretion, by the Uniform Commercial Code in any relevant jurisdiction.

    **8.4**     **Release to Contact Third Parties.** As part of this Purchase Agreement it may be necessary to disclose information to third parties. Seller explicitly and irrevocably authorizes Purchaser to disclose any information to third parties as it deems appropriate to the extent permitted by law and also as referenced in the Oasis Legal Finance, LLC privacy policy. Seller releases Purchaser from any and all liability as a result of the release of any information.

    **8.5**     **Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed

# PURCHASE AGREEMENT
### PAGE 5 OF 6

by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**8.6    Governing Law and Forum.** This Purchase Agreement, and all lawsuits, disputes, claims, or proceedings arising out of or relating to this Purchase Agreement or the relationships that result from this Purchase Agreement, shall be governed, construed and enforced in accordance with the laws of the State of Georgia.

The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in en inconvenient forum.

Each of the parties to the Contract further irrevocably consents to the service of process out of the Circuit Court of Cook County, Illinois by mailing copies thereof by Registered or Certified United States mail, postage prepaid, to each of the parties of the Purchase Agreement at its address specified in this Contract.

**8.7    Waiver of Jury Trial, Consolidation and Class Action; Costs.**

THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.

THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.

**8.8    Counterparts and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.

**8.9    Assignment; Use of Information.** Purchaser's rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller. Seller's rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser, except for transfer by intestate due to Seller's death in which case Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller agrees that Purchaser may share information that Purchaser obtained about Seller (whether from Seller or other person or entity) with potential assignees to whom Purchaser may assign its rights and obligations under this Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser; and (ii) Purchaser enters into an appropriate confidentiality Purchase Agreement with any such potential assignee.

**8.10    No Third Party Beneficiaries; Successors and Assigns.** Subject to the provisions of Section 8.9, (a) this Purchase Agreement is solely for the benefit of Purchaser and Seller; and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

**8.11    Severability.** If any provision of this Purchase Agreement or the application of any such provision to any party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that

# PURCHASE AGREEMENT
### PAGE 6 OF 6

any term or provision of this Purchase Agreement is invalid or unenforceable, the parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

**8.12    Legal Representation.**   SELLER UNDERSTANDS AND ACKNOWLEDGES THAT:   (A) PURCHASER HAS RECOMMENDED THAT SELLER ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.

**8.13    Construction.**  The parties intend that this Purchase Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement

(REMAINDER OF PAGE LEFT INTENTIONALLY BLANK).

04/16/2012 3:49 PM
04/16/2012 Mon 15:48

RECEIVED 04/16/2012 16:47 9122333584

Fax Services →Stephen Stincer, Esq.
Oasis Legal Finance

CARDILLO AND STINCER
D 12
ID: #544031 Page 12 of 14

## IRREVOCABLE LETTER OF DIRECTION
### Sent by Fax to (912) 233-3584 and by US Mail

April 16, 2012

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

Dear Stephen Stincer,

Be advised that I have sold a portion of the proceeds of my legal claim equal to the Oasis Ownership Amount to Oasis Legal Finance, LLC. I, John Suber, hereby irrevocably direct Stephen Stincer or any subsequent attorney(s) and law firms that may represent me, to tender the Oasis Ownership Amount to Oasis Legal Finance, LLC pursuant to this purchase agreement from any and all of the proceeds due to me from the legal claim(s)/case(s) in which you represent me, after payment of any and all legal fees and reimbursable costs before releasing any funds to me unless Oasis Legal Finance LLC advises you that I have already paid to them the Oasis Ownership Amount in full. If any dispute arises over the amount owed Oasis, I instruct you NOT to release any funds to me until that dispute is resolved. If a check is sent in my name, I hereby grant you a limited, irrevocable power of attorney to endorse and deposit my check into your trust account and pay to Oasis Legal Finance, LLC, its Ownership Amount, before releasing any funds to me. I also state that I do not have any significant outstanding child support obligations. I understand that any such significant outstanding child support obligation may delay or prevent my funding.

_____
(please initial)

I have read the Purchase Agreement and fully understand my obligations. I understand that Oasis has relied on this Irrevocable Letter of Direction to fund the Purchase Agreement, that the purchase price is $2,000.00, and that the Oasis Ownership Amount will increase based on a multiple of the purchase price and the date Oasis receives payment per the Purchase Agreement. In the event that you no longer represent me, I instruct you to provide Oasis with any insurance, attorney or other information requested that will allow it to protect its interest and to follow my irrevocable instructions. This letter may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute an agreement. By signing the acknowledgement below, you acknowledge that this letter is from me and that you will comply with this Irrevocable Letter of Direction.

Sincerely,

_____
John Suber

### ATTORNEY ACKNOWLEDGMENT

- I, Stephen Stincer, Esq., acknowledge receipt of this Letter and the Purchase Agreement from my client.
- My fee agreement is on a contingency basis and there are liens (exclusive of attorneys fees and costs) against the case of approximately $_____, and I will honor my client's irrevocable letter of direction, subordinate to attorney fees, costs and appropriate medical liens as per instructions above. I acknowledge that John Suber has the right to pay the Oasis Ownership Amount in full from any source at any time prior to distribution of the proceeds.
- I fully expect and anticipate that any proceeds from the legal claim will be sent to me from the defendant and/or insurance company, and not to the Plaintiff, and I agree that all disbursements of funds, including plaintiff's share of proceeds, will be through my attorney trust account,
- I have not and will not accept any advice, direction or payment from Oasis Legal Finance LLC regarding the legal claim.
- To the best of my knowledge, John Suber has NOT received any previous cash fundings on his/her legal claim(s), except for the Purchase Agreement dated Mar 02, 2012 with Oasis Legal Finance, LLC.
- Without the prior written consent of Oasis Legal Finance, LLC, I will not participate in or acknowledge any future cash fundings for John Suber.

How should we contact your office for case updates?

_____
Stephen Stincer, Esq.

_____
E-mail is Preferred (or Fax Number)

Case ID: P-GA-367408                        All Ver. 3.0

# Oasis Legal Finance

# NOTICE OF PAYMENT SCHEDULE

April 16, 2012

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

RE:      OUR CLIENT: John Suber
         OUR CASE ID: P-GA-367408

Dear Stephen Stincer,

Oasis Legal Finance LLC has entered into a Purchase Agreement (attached) with John Suber. Oasis Legal Finance has purchased an interest in the potential proceeds from the legal claim of John Suber.

PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL OUR PURCHASED INTEREST (PLUS ANY APPLICABLE SECOND FUNDING OR SERVICING FEES) HAS BEEN SATISFIED.

### OASIS OWNERSHIP AMOUNT

| Payment Schedule | Oasis Ownership Amount |
| --- | --- |
| April 17, 2012 to October 16, 2012 | $3,000.00 |
| October 17, 2012 to April 16, 2013 | $3,300.00 |
| April 17, 2013 to July 16, 2013 | $4,500.00 |
| July 17, 2013 to October 16, 2013 | $5,000.00 |
| October 17, 2013 to April 16, 2014 | $5,500.00 |
| April 17, 2014 to October 16, 2014 | $6,500.00 |
| October 17, 2014 and thereafter | $7,000.00 |

| Fees Due at Payment | |
| --- | --- |
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $35.00 |

Please call (866) 206-4800 (Press Option 6) or by fax at (847) 521-4392 to receive more information about payment.

40 North Skokie Blvd, Suite 500, Northbrook, IL 60062
Phone (847) 521-4349 – Fax (847) 897-3143
<TO_FAXNUM:1(912) 233-3584>
<NOTE:Case Number P-GA-367408 John Suber>
<TO_NAME: John Suber>

Case ID: P-GA-367408                                         All Ver. 3.0

04/16/2012 3:49 PM
04/16/2012 Mon 15:48

RECEIVED   04/16/2012 16:47   9122333584
Fax Services                    → Stephen Stincer, Esq.
                Oasis Legal Finance

CARDILLO AND STINCER
D 14
ID: #544031  Page 14 of 14

# OASIS LEGAL FINANCE, LLC PRIVACY POLICY
Effective date January 2010

At Oasis Legal Finance we are committed to providing you the best service while earning your trust. A critical part of earning that trust is protecting your privacy rights. We have created this document to explain our privacy policy to you. In addition, we are complying with both federal and state laws which require financial services companies to notify you, our valued customers, about how we intend to treat your personal information that you have entrusted with us.

We want our customers to be aware of what information Oasis collects and how it is handled, with whom the information may be shared, and our customers' "opt out" rights. This policy sets forth our policies with respect to nonpublic personally identifiable information ("personal information") about potential, current, and former customers.

## I. PERSONAL INFORMATION
To provide reliable, quality service Oasis Legal Finance must collect certain personal financial, legal, and medical information regarding its customers and potential customers. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information may include, but is not limited to, name, address, e-mail address, telephone number(s), your date of birth, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports.

## II. OASIS LEGAL FINANCE'S COLLECTION AND USE OF INFORMATION
All personal information that Oasis Legal Finance collects when you or your attorney speak to an Oasis Legal Finance representative, or via any of Oasis' web sites when you inquire about or complete an application for one or more of our products or services (or begin the inquiry or application process, whether you complete the process or not), is handled by Oasis Legal Finance in accordance with this privacy statement.

Oasis Legal Finance uses personal information: for the stated purpose for which such information is gathered; for marketing analysis and sales planning purposes; for servicing and collection purposes; for legal, financial, accounting and tax record keeping; for other business purposes associated with its services; to manage its business; and to comply with requirements imposed by governmental authorities. Oasis Legal Finance discloses personal information to certain service providers that are contractually obligated to keep the information we provide them confidential and to use the personal information we share only to provide the services we ask them to perform.

In an effort to provide a diversity of product and service offers that may benefit our customers or potential customers, Oasis Legal Finance may provide non-public information about our customers to affiliated and unaffiliated companies. This information may include; name, address, e-mail address, and phone number(s). At no time will we ever disclose any medical, legal or transactional information for these purposes. Information that is collected or maintained by any company other than Oasis Legal Finance, including additional information collected by such company, will be governed by that other company's privacy policy.

Oasis Legal Finance will not disclose your personal information to a third party unless (i) disclosure is necessary to render services or to perform related business activities expressed in this privacy policy; (ii) disclosure is required pursuant a request for specific customer information to comply with a subpoena, court order, and/or other legal instrument, legal proceeding or relevant law, including compliance with the USA Patriot Act; or (iii) as otherwise permitted by law.

## III. OASIS LEGAL FINANCE'S INFORMATION SECURITY

Oasis Legal Finance maintains physical, electronic, and procedural safeguards that comply with federal and state regulations to guard your personal information, and secure your information from unauthorized access, use and disclosure. To this end, we use industry-standard methods such as firewalls, encryption and system access controls, and our security practices are regularly reviewed against industry best practices by internal staff and independent third parties.

All personal information that Oasis Legal Finance collects is accessible by Oasis Legal Finance employees and contractors and, to the extent required for the tax, accounting, legal and other professionals hired by Oasis Legal Finance, for business purposes only and to fulfill their fiduciary or representative duty. All such professionals are bound to maintain the confidentiality of information supplied to them by contractual and/or ethical obligations.

## VI. "OPT-OUT" PROVISION
Oasis Legal Finance offers any person the opportunity to "opt-out" of receiving future offers from Oasis or from affiliated and unaffiliated companies. To remove your information from our database so as not to receive future advertising communications, you can send an email to optout@oasislegal.com. Or you can send a written correspondence to the same effect to:

Opt-Out
Oasis Legal Finance, LLC
40 N. Skokie Blvd, Suite 500
Northbrook, IL 60062

Please note that it may take up to 30 days from the date of receipt of notification for your request to become active. In your opt-out instructions, so that we can accurately remove your record, please include your name, address, phone number, and attorney's name that is handling or handled your case.

California: In accordance with California law, Oasis Legal Finance will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

Vermont: In accordance with Vermont law, Oasis Legal Finance will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

## VII. REVISION OF THIS POLICY
This Privacy Policy may be revised from time to time by Oasis Legal Finance. We will inform you of any changes as required by law. Amendments to this policy will be effective when posted to our website at www.oasislegal.com.

⊙ 05/23/2012 12:12 PM    RECEIVED   05/23/2012 13:11   5122333304    CARDILES AND STENGER
05/23/2012 Wed 12:12    Fax Services    →Stephen Stincer, Esq.     D 3
         Oasis Legal Finance      ID: #564196   Page 3 of 14

# PAYMENT INSTRUCTIONS
## Page 1 of 2

**Parties:** John Suber is Seller and Oasis Legal Finance, LLC is Purchaser

**Offer Date:** May 23, 2012

**Purchase Price to Seller:**    $1,100.00

### (Select only one, and please check the box next to the option that you choose):

☐   ⊙ Money in Minutes at any ▧▧▧▧▧▧ near you. The Fastest way to get your funding. Many Western Union locations are open late! No waiting on a delivery service or the mail for a check, no check cashing fee, and no waiting on a bank to cash that check or release the cash to you. Many Locations Open Late!
Funds available on the **SAME DAY** if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m. A handling fee will be deducted from purchase price–no out of pocket cost to you–see schedule below for details.

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $85.00 |
| $751.00 | - | $1,250.00 | $99.00 |
| $1,251.00 | - | $2,000.00 | $137.00 |
| $2,001.00 | - | $5,000.00 | $184.00 |

☐   **Direct Deposit Wire Transfer** to bank account in my name.
Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day. Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank. A handling fee will be deducted from purchase price–no out of pocket cost to you–see schedule below for details:

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $85.00 |
| $751.00 | - | $1,250.00 | $99.00 |
| $1,251.00 | - | $2,000.00 | $137.00 |
| $2,001.00 | and up | | $184.00 |



| | |
|---|---|
| Name of Bank: | |
| Bank's City, State: | |
| Routing/ABA Number: | |
| Account Number: | |
| Bank's Phone Number: | |
| Name on Account: (your name must be on the account) | |

☐   **A Check** sent in my name by U.S. First Class Mail with Delivery Confirmation
(**Free**– delivered within 5 to 10 days from post date. Not responsible for delays due to postal or bank holidays, or weekends).

Street Address Apt/Unit # _____

City, _____ State _____ Zip _____

05/23/2012 12:12 PM
05/23/2012 Wed 12:12

RECEIVED  05/23/2012 13:11  9122333584
Fax Services          → Stephen Stincer, Esq.
                      Oasis Legal Finance

CARDILLO AND STINGER                    D 4
ID: #564196  Page 4 of 14

## PAYMENT INSTRUCTIONS
### Page 2 of 2

☐   A **Check** sent in my name by **Overnight Delivery** service for delivery by the next business day.
($94.00 deducted from purchase price-no out of pocket cost to you.  Overnight delivery does not include weekends.  Saturday delivery available for an extra charge):

Street Address Apt/Unit # _____

City, _____ State _____ Zip _____

**Terms:**  Purchaser agrees to provide funds to the Seller as requested below by the Seller. Seller agrees that funds received from Purchaser are a purchase of property, not a loan, and that Purchaser owns a portion of the potential proceeds from the legal claim.

### Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| May 24, 2012 to November 23, 2012 | $1,650.00 |
| November 24, 2012 to May 23, 2013 | $1,815.00 |
| May 24, 2013 to August 23, 2013 | $2,475.00 |
| August 24, 2013 to November 23, 2013 | $2,750.00 |
| November 24, 2013 to May 23, 2014 | $3,025.00 |
| May 24, 2014 to November 23, 2014 | $3,575.00 |
| November 24, 2014 and thereafter | $3,850.00 |

Please describe how we helped you during these difficult times:_____

_____

By signing below, I hereby agree to the terms of the Payment Instructions and understand that I am responsible for the information that I have provided on this form and that Purchaser is not responsible for any problem in delivery or transfer of funds, so long as it follows the instructions provided by the Seller.  I also agree to the use of the above statements in any way as Purchaser sees fit.

_____  _____        _____  _____
John Suber - Seller        Date              Oasis Legal Finance, LLC - Purchaser    Date

Case ID: P-GA-367408

# Oasis Legal Finance

## CREDIT AND INFORMATION RELEASE

Oasis Legal Finance, LLC may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction.

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Legal Finance, LLC or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the agreement.

This authorization is valid for purposes of verifying information given pursuant to business negotiations, or any other lawful purpose covered under the Fair Credit Reporting Act. (FCRA).

Upon written request, we will tell you whether we have obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. We also request that by signing below, you certify the information provided by you to Oasis Legal Finance, LLC in your application and underwriting process is true, accurate and complete. You also authorize Oasis Legal Finance LLC to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis Legal Finance, LLC ("Oasis"), or its affiliates any and all information and documents pertaining to my current legal claim or lawsuit, including pleadings, discovery, investigation, contracts, medical records/reports, depositions, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application is true, accurate, and complete.

John Suber
_____

_____
Date

_____
Signature

_____
Social Security Number

_____
Telephone Number

_____
Date of Birth

Drivers License #: _____

State of Driver's License _____

_____
Street Address          City              State          Zip Code

⊙ 05/23/2012 12:12 PM
05/23/2012 Wed 12:12

RECEIVED 05/23/2012 13:11 9122333584
Fax Services → Stephen Stincer, Esq.
Oasis Legal Finance

CARDILLO AND STINCER
□ 6
ID: #564196 Page 6 of 14

# PURCHASE AGREEMENT
### PAGE 1 OF 6

| | |
|---|---|
| **Purchaser:** | Oasis Legal Finance, LLC (Oasis) |
| **Seller:** | John Suber |
| **Purchase Price:** | **$1,100.00** |

### Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| May 24, 2012 to November 23, 2012 | $1,650.00 |
| November 24, 2012 to May 23, 2013 | $1,815.00 |
| May 24, 2013 to August 23, 2013 | $2,475.00 |
| August 24, 2013 to November 23, 2013 | $2,750.00 |
| November 24, 2013 to May 23, 2014 | $3,025.00 |
| May 24, 2014 to November 23, 2014 | $3,575.00 |
| November 24, 2014 and thereafter | $3,850.00 |

| Fees Due at Payment | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $35.00 |

SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION

IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING. SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.

**SELLER:** John Suber  **Address:** 203 Eugene St, Valdosta, GA 31601

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of five (5) pages. I agree to be bound by the terms and conditions of this Purchase Agreement. This Agreement shall not be effective until the Purchase Price is paid to Seller.

Seller's Signature          Date                    Purchaser' Signature          Date

_____                    _____
John Suber                                  Oasis Legal Finance, LLC

## SECTION 1.    DEFINITIONS.

1.1    "**Legal Claim**" means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

1.2    "**Oasis Ownership Amount**" is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

1.3    "**Proceeds**" means whatever you receive as a result of the legal claim, for example through a judgment. Arbitration or the like.

1.4    "**Purchased Interest**" means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

# PURCHASE AGREEMENT
### PAGE 2 OF 6

    **1.5**    "Purchaser" means Oasis Legal Finance, LLC.

    **1.6**    "Seller" means John Suber.

    **1.7**    "Seller's Attorney" means, collectively, Stephen Stincer, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.**    **SELLER'S STATEMENTS.** Seller states to Purchaser as follows:

    **2.1**    **Purchase and Sale.** Seller sells, and the Purchaser buys, the Purchased Interest.

    **2.2**    **Title; Capacity.** Seller believes the Legal Claim to be meritorious and filed in good faith. Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

    **2.3**    **Information True, Complete and Correct.** Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3. SELLER'S ACKNOWLEDGEMENTS.** Seller acknowledges the following:

    **3.1**    **Risk of Loss.** This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser. The Oasis Ownership Amount has been negotiated to account for such risk.

    **3.2**    **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.** Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

    **3.3**    **No Previous Encumbrance** Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4. PURCHASER'S ACKNOWLEDGEMENT.** Purchaser acknowledges the following:

    **4.1**    **Purchaser's Acknowledgment.** Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5. SELLER'S AGREEMENTS.** Seller agrees as follows:

    **5.1**    **Treatment of Transaction.** Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes). Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

    **5.2**    **Treatment in Bankruptcy.** If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

    **5.3**    **No Assignment.** Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death. In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

# PURCHASE AGREEMENT
PAGE 3 OF 6

**5.4      Prosecution of Claim and Facilitation of Payment.** Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

**5.5      Subsequent Case Review.** Seller agrees to an additional case review charge of $20.00 each time seller requests and receives additional funding from Purchaser.

**5.6      Case Servicing Fee.** Seller agrees to pay to Purchaser a case servicing fee of $35.00 every six (6) months or increment thereof. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

**5.7      Substitution of Attorneys in the Legal Claim.** If Seller determines to hire new or additional attorneys to represent Seller in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

**5.8      No Assignment of Workers Compensation Benefits.** The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

**5.9      Requests for Documents and Information.** Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with: (a) prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6. PAYMENT AND PRIORITY.

**6.1      Priority Payment to Purchaser.** Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount. If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens. **If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Purchaser shall receive nothing**

**6.2      Mechanics and Timing of Payment.** The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction. Seller agrees not to have the Oasis Ownership amount paid to him. Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis. Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller. The Oasis Ownership Amount shall be determined as of the date it is received by Oasis. Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser. Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

**6.3      Risk of Loss.** Purchaser and Seller acknowledge that the Purchased Interest may be worthless. Purchaser accepts the risk of loss with respect to the Purchased Interest.

**6.4      RIGHT TO PAY PURCHASER FROM ANY SOURCE.**      THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME WITHOUT PENALTY PRIOR TO THE PROCEEDS DUE FROM THE LEGAL CLAIM BEING DISTRIBUTED. IF SELLER SO ELECTS, PAYMENT MUST BE RECEIVED AND ACKNOWLEDGED BY PURCHASER PRIOR TO SELLER RECEIVING ANY PROCEEDS FROM THE LEGAL CLAIM. UPON SELLER'S RECEIPT OF THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT, PURCHASER SHALL BE DEEMED TO HAVE TENDERED

# PURCHASE AGREEMENT
### PAGE 4 OF 6

BACK TO SELLER PURCHASER'S INTEREST IN THE PROCEEDS.

SECTION 7. EVENT OF DEFAULT; SPECIFIC DEFAULT; RIGHT OF RESCISSION.

**7.1** **Event of Default.** The breach by Seller of any of Seller's obligations under this Purchase Agreement shall constitute an "Event of Default" hereunder. In an Event of Default, Purchaser shall have all rights, powers, and remedies provided in the Purchase Agreement and as allowed by law or in equity.

**7.2** **Seller's Right of Rescission.** CONSUMER'S RIGHT TO CANCELLATION: YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE THE PURCHASE PRICE FROM PURCHASER.

TO CANCEL THIS AGREEMENT, YOU MUST EITHER:

(I)     RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER BY DELIVERING THE UNCASHED CHECK TO PURCHASER IN PERSON WITHIN FIVE (5) BUSINESS DAYS; OR

(II)    MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) BUSINESS DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S ADDRESS AS SET FORTH IN SECTION 8.2 BELOW.

SECTION 8.    MISCELLANEOUS.

**8.1** **Survival of Representations.** All of the representations, warranties, covenants and Purchase Agreements of the parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

**8.2** **Notices.** All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the parties at the following addresses:

if to Purchaser, to:      Oasis Legal Finance, LLC
                          40 North Skokie Blvd, Suite 500
                          Northbrook, Illinois 60062
                          Attn:    Controller

and if to Seller, to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the parties hereto shall have specified in writing to the other.

**8.3** **Financing Statements and Additional Documents.** Seller irrevocably authorizes Purchaser at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto. Purchaser may indicate the following information in such financial statements and amendments: (a) that a portion of the proceeds that are derived from the Legal Claim are owned by Purchaser; and (b) any other information required, in Purchaser's discretion, by the Uniform Commercial Code in any relevant jurisdiction.

**8.4** **Release to Contact Third Parties.** As part of this Purchase Agreement it may be necessary to disclose information to third parties. Seller explicitly and irrevocably authorizes Purchaser to disclose any information to third parties as it deems appropriate to the extent permitted by law and also as referenced in the Oasis Legal Finance, LLC privacy policy. Seller releases Purchaser from any and all liability as a result of the release of any information.

**8.5** **Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed

05/23/2012 12:12 PM
05/23/2012 Wed 12:12

RECEIVED  05/23/2012 13:11  9122333584         CARDILLO AND STINCER
Fax Services                    → Stephen Stincer, Esq.                      □ 10
Oasis Legal Finance                    ID: #564196  Page 10 of 14

# PURCHASE AGREEMENT
PAGE 5 OF 6

by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**8.6     Governing Law and Forum.** This Purchase Agreement, and all lawsuits, disputes, claims, or proceedings arising out of or relating to this Purchase Agreement or the relationships that result from this Purchase Agreement, shall be governed, construed and enforced in accordance with the laws of the State of Georgia.

The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in an inconvenient forum.

Each of the parties to the Contract further irrevocably consents to the service of process out of the Circuit Court of Cook County, Illinois by mailing copies thereof by Registered or Certified United States mail, postage prepaid, to each of the parties of the Purchase Agreement at its address specified in this Contract.

**8.7     Waiver of Jury Trial, Consolidation and Class Action; Costs.**

THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.

THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.

**8.8     Counterparts and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.

**8.9     Assignment; Use of Information.** Purchaser's rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller. Seller's rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser, except for transfer by intestate due to Seller's death in which case Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller agrees that Purchaser may share information that Purchaser obtained about Seller (whether from Seller or other person or entity) with potential assignees to whom Purchaser may assign its rights and obligations under this Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser; and (ii) Purchaser enters into an appropriate confidentiality Purchase Agreement with any such potential assignee.

**8.10     No Third Party Beneficiaries; Successors and Assigns.** Subject to the provisions of Section 8.9, (a) this Purchase Agreement is solely for the benefit of Purchaser and Seller; and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

**8.11     Severability.** If any provision of this Purchase Agreement or the application of any such provision to any party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that

# PURCHASE AGREEMENT
## PAGE 6 OF 6

any term or provision of this Purchase Agreement is invalid or unenforceable, the parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

8.12    **Legal Representation.**    SELLER UNDERSTANDS AND ACKNOWLEDGES THAT: (A) PURCHASER HAS RECOMMENDED THAT SELLER ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.

8.13    **Construction.**    The parties intend that this Purchase Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement

(REMAINDER OF PAGE LEFT INTENTIONALLY BLANK).

⊙ 05/23/2012 12:12 PM
05/23/2012 Wed 12:12

RECEIVED   05/23/2012 13:11   9122333584
Fax Services               → Stephen Stincer, Esq.
                 Oasis Legal Finance

CARDILLO AND STINCER
                           D 13
ID: #564196   Page 13 of 14

**Oasis** Legal Finance

# NOTICE OF PAYMENT SCHEDULE

May 23, 2012

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

RE:   OUR CLIENT: John Suber
      OUR CASE ID:P-GA-367408

Dear Stephen Stincer,

Oasis Legal Finance LLC has entered into a Purchase Agreement (attached) with John Suber. Oasis Legal Finance has purchased an interest in the potential proceeds from the legal claim of John Suber.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL OUR PURCHASED INTEREST (PLUS ANY APPLICABLE SECOND FUNDING OR SERVICING FEES) HAS BEEN SATISFIED.**

OASIS OWNERSHIP AMOUNT

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| May 24, 2012 to November 23, 2012 | $1,650.00 |
| November 24, 2012 to May 23, 2013 | $1,815.00 |
| May 24, 2013 to August 23, 2013 | $2,475.00 |
| August 24, 2013 to November 23, 2013 | $2,750.00 |
| November 24, 2013 to May 23, 2014 | $3,025.00 |
| May 24, 2014 to November 23, 2014 | $3,575.00 |
| November 24, 2014 and thereafter | $3,850.00 |

| Fees Due at Payment | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $35.00 |

Please call (866) 206-4800 (Press Option 6) or by fax at (847) 521-4392 to receive more information about payment.

**40 North Skokie Blvd, Suite 500, Northbrook, IL 60062**
**Phone (847) 521-4349 – Fax (847) 897-3143**
<TO_FAXNUM:1(912) 233-3584>
<NOTE:Case Number P-GA-367408 John Suber>
<TO_NAME: John Suber>

Case ID: P-GA-367408                                    All Ver. 3.0

05/23/2012 12:12 PM
05/23/2012 Wed 12:12
RECEIVED 05/23/2012 13:11 9122333584
Fax Services → Stephen Stincer, Esq.
Oasis Legal Finance
CARDILLO AND STINCER
□ 14
ID: #564196 Page 14 of 14

**OASIS LEGAL FINANCE, LLC PRIVACY POLICY**
Effective date January 2010

At Oasis Legal Finance we are committed to providing you the best service while earning your trust. A critical part of earning that trust is protecting your privacy rights. We have created this document to explain our privacy policy to you. In addition, we are complying with both federal and state laws which require financial services companies to notify you, our valued customers, about how we intend to treat your personal information that you have entrusted with us.

We want our customers to be aware of what information Oasis collects and how it is handled, with whom the information may be shared, and our customers' "opt out" rights. This policy sets forth our policies with respect to nonpublic personally identifiable information ("personal information") about potential, current, and former customers.

**I. PERSONAL INFORMATION**
To provide reliable, quality service Oasis Legal Finance must collect certain personal financial, legal, and medical information regarding its customers and potential customers. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information may include, but is not limited to, name, address, e-mail address, telephone number(s), your date of birth, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports.

**II. OASIS LEGAL FINANCE'S COLLECTION AND USE OF INFORMATION**
All personal information that Oasis Legal Finance collects when you or your attorney speak to an Oasis Legal Finance representative, or via any of Oasis' web sites when you inquire about or complete an application for one or more of our products or services (or begin the inquiry or application process, whether you complete the process or not), is handled by Oasis Legal Finance in accordance with this privacy statement.

Oasis Legal Finance uses personal information: for the stated purpose for which such information is gathered; for marketing analysis and sales planning purposes; for servicing and collection purposes; for legal, financial, accounting and tax record keeping; for other business purposes associated with its services; to manage its business; and to comply with requirements imposed by governmental authorities. Oasis Legal Finance discloses personal information to certain service providers that are contractually obligated to keep the information we provide them confidential and to use the personal information we share only to provide the services we ask them to perform.

In an effort to provide a diversity of product and service offers that may benefit our customers or potential customers, Oasis Legal Finance may provide non-public information about our customers to affiliated and unaffiliated companies. This information may include: name, address, e-mail address, and phone number(s). At no time will we ever disclose any medical, legal or transactional information for these purposes. Information that is collected or maintained by any company other than Oasis Legal Finance, including additional information collected by such company, will be governed by that other company's privacy policy.

Oasis Legal Finance will not disclose your personal information to a third party unless (i) disclosure is necessary to render services or to perform related business activities expressed in this privacy policy; (ii) disclosure is required pursuant a request for specific customer information to comply with a subpoena, court order, and/or other legal instrument, legal proceeding or relevant law, including compliance with the USA Patriot Act; or (iii) as otherwise permitted by law.

**III. OASIS LEGAL FINANCE'S INFORMATION SECURITY**

Oasis Legal Finance maintains physical, electronic, and procedural safeguards that comply with federal and state regulations to guard your personal information, and secure your information from unauthorized access, use and disclosure. To this end, we use industry-standard methods such as firewalls, encryption and system access controls, and our security practices are regularly reviewed against industry best practices by internal staff and independent third parties.

All personal information that Oasis Legal Finance collects is accessible by Oasis Legal Finance employees and contractors and, to the extent required for the tax, accounting, legal and other professionals hired by Oasis Legal Finance, for business purposes only and to fulfill their fiduciary or representative duty. All such professionals are bound to maintain the confidentiality of information supplied to them by contractual and/or ethical obligations.

**VI. "OPT-OUT" PROVISION**
Oasis Legal Finance offers any person the opportunity to "opt-out" of receiving future offers from Oasis or from affiliated and unaffiliated companies. To remove your information from our database so as not to receive future advertising communications, you can send an email to optout@oasislegal.com. Or you can send a written correspondence to the same effect to:

Opt-Out
Oasis Legal Finance, LLC
40 N. Skokie Blvd, Suite 500
Northbrook, IL 60062

Please note that it may take up to 30 days from the date of receipt of notification for your request to become active. In your opt-out instructions, so that we can accurately remove your record, please include your name, address, phone number, and attorney's name that is handling or handled your case.

California: In accordance with California law, Oasis Legal Finance will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

Vermont: In accordance with Vermont law, Oasis Legal Finance will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

**VII. REVISION OF THIS POLICY**
This Privacy Policy may be revised from time to time by Oasis Legal Finance. We will inform you of any changes as required by law. Amendments to this policy will be effective when posted to our website at www.oasislegal.com.

## PAYMENT INSTRUCTIONS
### Page 1 of 2

**Parties:** John Suber is Seller and Oasis Legal Finance, LLC is Purchaser

**Offer Date:** September 9, 2013

**Purchase Price to Seller:** $2,220.00



**Priority Processing featuring new E-Signature:** When Oasis receives your purchase agreement signed by both you and your attorney your funding will move to Next in Line and Oasis will have its Priority Processing staff rush the delivery of your funds in the way you have chosen. E-signature is only available with priority processing. With E-signature you can conveniently sign the purchase agreement through email on yours or a family members' smartphone or home computer. Priority Processing is available with or without E-Signature. A handling fee of $20.00 will be deducted from purchase price-no out of pocket cost to you.

(please initial)

## HOW DO YOU WANT TO RECEIVE YOUR MONEY?

**(Select only one, and please check the box next to the option that you choose):**

☐ **Money in Minutes** at any **WESTERN UNION | yes!** near you. The Fastest way to get your funding. Many Western Union locations are open late! No waiting on a delivery service or the mail for a check, no check cashing fee, and no waiting on a bank to cash that check or release the cash to you. Many Locations Open Late!

Funds available on the **SAME DAY** if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details.

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $97.00 |
| $751.00 | - | $1,250.00 | $113.00 |
| $1,251.00 | - | $2,000.00 | $149.00 |
| $2,001.00 | - | $5,000.00 | $199.00 |

☐ **Direct Deposit Wire Transfer** to bank account in my name.

Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day. Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details:

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $97.00 |
| $751.00 | - | $1,250.00 | $113.00 |
| $1,251.00 | - | $2,000.00 | $149.00 |
| $2,001.00 | - | $5,000.00 | $199.00 |



Note: The routing and account numbers may be in different places on your check

| | |
|---|---|
| Name of Bank: | |
| Bank's City, State: | |
| Routing/ABA Number: | |
| Account Number: | |
| Bank's Phone Number: | |
| Name on Account: (your name must be on the account) | |

Case ID: P-GA-509111

# PAYMENT INSTRUCTIONS
## Page 2 of 2

☐    A **Check** sent in my name by U.S. **First Class Mail** with Delivery Confirmation
(**Free**– delivered within 5 to 10 days from post date. Not responsible for delays due to postal or bank holidays, or weekends).

Street Address Apt/Unit # _____

City, _____ State _____ Zip _____

☐    A **Check** sent in my name by **Overnight Delivery** service for delivery by the next business day.
($99.00 deducted from purchase price-no out of pocket cost to you. Overnight delivery does not include weekends. Saturday delivery available for an extra charge):

Street Address Apt/Unit # _____

City, _____ State _____ Zip _____

**Terms:** Purchaser agrees to provide funds to the Seller as requested below by the Seller. Seller agrees that funds received from Purchaser are a purchase of property, not a loan, and that Purchaser owns a portion of the potential proceeds from the legal claim.

### Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| September 10, 2013 to March 9, 2014 | $3,330.00 |
| March 10, 2014 to September 9, 2014 | $3,663.00 |
| September 10, 2014 to December 9, 2014 | $4,995.00 |
| December 10, 2014 to March 9, 2015 | $5,550.00 |
| March 10, 2015 to September 9, 2015 | $6,105.00 |
| September 10, 2015 to March 9, 2016 | $7,215.00 |
| March 10, 2016 and thereafter | $7,770.00 |

Please describe how we helped you during these difficult times: _____

_____

By signing below, I hereby agree to the terms of the Payment Instructions and understand that I am responsible for the information that I have provided on this form and that Purchaser is not responsible for any problem in delivery or transfer of funds, so long as it follows the instructions provided by the Seller. I also agree to the use of the above statements in any way as Purchaser sees fit.

_____      _____      _____      _____
John Suber - Seller                    Date                Oasis Legal Finance, LLC - Purchaser      Date

**Oasis** Legal Finance

## CREDIT AND INFORMATION RELEASE

Oasis Legal Finance, LLC may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction.

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Legal Finance, LLC or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the agreement.

This authorization is valid for purposes of verifying information given pursuant to business negotiations, or any other lawful purpose covered under the Fair Credit Reporting Act (FCRA).

Upon written request, we will tell you whether we have obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. We also request that by signing below, you certify the information provided by you to Oasis Legal Finance, LLC in your application and underwriting process is true, accurate and complete. You also authorize Oasis Legal Finance LLC to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis Legal Finance, LLC ("Oasis"), or its affiliates any and all information and documents pertaining to my current legal claim or lawsuit, including pleadings, discovery, investigation, contracts, medical records/reports, depositions, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application is true, accurate, and complete.

John Suber
_____

_____
Date

_____
Signature

_____
Social Security Number

_____
Telephone Number

_____
Date of Birth

Drivers License #: _____

State of Driver's License _____

Street Address        City             State        Zip Code

09/09/2013 1:02 PM
09/09/2013 Mon 13:01

RECEIVED 09/09/2013 13:58 9122333584
(847) 897-3143
Carl Cook      (847) 897-3143

→ Stephen Stincer, Esq.

CARDILLO AND STINCER
D 6
ID: #725361  Page 6 of 15

# PURCHASE AGREEMENT
### PAGE 1 OF 6

| Purchaser: | Oasis Legal Finance, LLC (Oasis) |
|---|---|
| Seller: | John Suber |
| Purchase Price: | $2,220.00 |

**Oasis Ownership Amount**

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| September 10, 2013 to March 9, 2014 | $3,330.00 |
| March 10, 2014 to September 9, 2014 | $3,663.00 |
| September 10, 2014 to December 9, 2014 | $4,995.00 |
| December 10, 2014 to March 9, 2015 | $5,550.00 |
| March 10, 2015 to September 9, 2015 | $6,105.00 |
| September 10, 2015 to March 9, 2016 | $7,215.00 |
| March 10, 2016 and thereafter | $7,770.00 |

**Fees Due at Payment**

| | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Archival and Document Management Fee per Funding | $60.00 |

SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION

IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING. SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.
SELLER:   John Suber          Address:   4212 Wilshire Drive,  Valdosta, GA 31605

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages. I agree to be bound by the terms and conditions of this Purchase Agreement. This Agreement shall not be effective until the Purchase Price is paid to Seller.

Seller's Signature          Date                    Purchaser' Signature          Date

John Suber                                          Oasis Legal Finance, LLC

## SECTION 1.   DEFINITIONS.

   1.1   "**Legal Claim**" means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

   1.2   "**Oasis Ownership Amount**" is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

   1.3   "**Proceeds**" means whatever you receive as a result of the legal claim, for example through a judgment. Arbitration or the like.

   1.4   "**Purchased Interest**" means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

*Case ID: P-GA-509111*

⊙ 09/09/2013 1:02 PM    RECEIVED   09/09/2013 13:58   9122333584    CARDILLO AND STINCER
09/09/2013 Mon 13:01    (847) 897-3143    →Stephen Stincer, Esq.    D 7
   Carl Cook   (847) 897-3143    ID: #725361   Page 7 of 15

# PURCHASE AGREEMENT
## PAGE 2 OF 6

**1.5**    "**Purchaser**" means Oasis Legal Finance, LLC.

**1.6**    "**Seller**" means John Suber.

**1.7**    "**Seller's Attorney**" means, collectively, Stephen Stincer, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.**    **SELLER'S STATEMENTS.** Seller states to Purchaser as follows:

**2.1**    **Purchase and Sale.** Seller sells, and the Purchaser buys, the Purchased Interest.

**2.2**    **Title; Capacity.** Seller believes the Legal Claim to be meritorious and filed in good faith. Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

**2.3**    **Information True, Complete and Correct.** Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3. SELLER'S ACKNOWLEDGEMENTS.** Seller acknowledges the following:

**3.1**    **Risk of Loss.** This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser. The Oasis Ownership Amount has been negotiated to account for such risk.

**3.2**    **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.** Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

**3.3**    **No Previous Encumbrance** Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4. PURCHASER'S ACKNOWLEDGEMENT.** Purchaser acknowledges the following:

**4.1**    **Purchaser's Acknowledgment.** Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5. SELLER'S AGREEMENTS.** Seller agrees as follows:

**5.1**    **Treatment of Transaction.** Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes). Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

**5.2**    **Treatment in Bankruptcy.** If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

**5.3**    **No Assignment.** Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death. In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

09/09/2013 1:02 PM
09/09/2013 Mon 13:01

RECEIVED  09/09/2013 13:58  5122333564        CARDILLO AND STINGER   □ 8
(847) 897-3143            → Stephen Stincer, Esq.
Carl Cook  (847) 897-3143          ID: #725361  Page 8 of 15

# PURCHASE AGREEMENT
### PAGE 3 OF 6

**5.4**   **Prosecution of Claim and Facilitation of Payment.** Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

**5.5**   **Subsequent Case Review.** Seller agrees to an additional case review charge of $20.00 each time seller requests and receives additional funding from Purchaser.

**5.6**   **Case Servicing Fee.** Seller agrees to pay to Purchaser a case servicing fee of $35.00 every six (6) months or increment thereof.  Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

**5.7**   **Archiving and Document Management Fee.** Seller agrees to pay to Purchaser a fee of $60.00 per funding to defray Seller's archiving and document management costs.  Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount

**5.8**   **Substitution of Attorneys in the Legal Claim.**  If Seller determines to hire new or additional attorneys to represent Seller in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

**5.9**   **No Assignment of Workers Compensation Benefits.**  The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

**5.10**   **Requests for Documents and Information.**  Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with:  (a)  prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim;  (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6. PAYMENT AND PRIORITY.

**6.1**   **Priority Payment to Purchaser.**  Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount.  If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens.  **If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Purchaser shall receive nothing**

**6.2**   **Mechanics and Timing of Payment.**  The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction.  Seller agrees not to have the Oasis Ownership amount paid to him.  Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis.  Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller.  The Oasis Ownership Amount shall be determined as of the date it is received by Oasis.  Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser.  Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

**6.3**   **Risk of Loss.**  Purchaser and Seller acknowledge that the Purchased Interest may be worthless.  Purchaser accepts the risk of loss with respect to the Purchased Interest.

**6.4**   **RIGHT TO PAY PURCHASER FROM ANY SOURCE.**     THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME

Case ID: P-GA-509111

⊖ 09/09/2013 1:02 PM    RECEIVED  09/09/2013 13:58   9122333584    CARDILLO AND STINGER    Ð 9
  09/09/2013 Mon 13:01    (847) 897-3143        → Stephen Stincer, Esq.         ID: #725361  Page 9 of 15
                             Carl Cook   (847) 897-3143

# PURCHASE AGREEMENT
PAGE 4 OF 6

WITHOUT PENALTY PRIOR TO THE PROCEEDS DUE FROM THE LEGAL CLAIM BEING DISTRIBUTED. IF SELLER SO ELECTS, PAYMENT MUST BE RECEIVED AND ACKNOWLEDGED BY PURCHASER PRIOR TO SELLER RECEIVING ANY PROCEEDS FROM THE LEGAL CLAIM. UPON SELLER'S RECEIPT OF THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT, PURCHASER SHALL BE DEEMED TO HAVE TENDERED BACK TO SELLER PURCHASER'S INTEREST IN THE PROCEEDS.

SECTION 7.   EVENT OF DEFAULT; SPECIFIC DEFAULT; RIGHT OF RESCISSION.

      7.1    **Event of Default.**  The breach by Seller of any of Seller's obligations under this Purchase Agreement shall constitute an "Event of Default" hereunder.  In an Event of Default, Purchaser shall have all rights, powers, and remedies provided in the Purchase Agreement and as allowed by law or in equity.

      7.2    **Seller's Right of Rescission.**  CONSUMER'S RIGHT TO CANCELLATION:  YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE THE PURCHASE PRICE FROM PURCHASER.

TO CANCEL THIS AGREEMENT, YOU MUST EITHER:

      (I)    RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER BY DELIVERING THE UNCASHED CHECK TO PURCHASER IN PERSON WITHIN FIVE (5) BUSINESS DAYS; OR

      (II)    MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) BUSINESS DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S ADDRESS AS SET FORTH IN SECTION 8.2 BELOW.

SECTION 8.    MISCELLANEOUS.

      8.1    **Survival of Representations.**  All of the representations, warranties, covenants and Purchase Agreements of the parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

      8.2    **Notices.**  All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing.  All such notices or communications shall be deemed to have been given or made delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the parties at the following addresses:

if to Purchaser, to:      Oasis Legal Finance, LLC
                       40 North Skokie Blvd, Suite 500
                       Northbrook, Illinois 60062
                       Attn:    Controller

and if to Seller, to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the parties hereto shall have specified in writing to the other.

      8.3    **Financing Statements and Additional Documents.**  Seller irrevocably authorizes Purchaser at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto.  Purchaser may indicate the following information in such financial statements and amendments: (a) that a portion of the proceeds that are derived from the Legal Claim are owned by Purchaser; and (b) any other information required, in Purchaser's discretion, by the Uniform Commercial Code in any relevant jurisdiction.

      8.4    **Release to Contact Third Parties.**  As part of this Purchase Agreement it may be necessary to disclose information to third parties. Seller explicitly and irrevocably authorizes Purchaser to disclose any information to third parties as

# PURCHASE AGREEMENT
### PAGE 5 OF 6

it deems appropriate to the extent permitted by law and also as referenced in the Oasis Legal Finance, LLC privacy policy. Seller releases Purchaser from any and all liability as a result of the release of any information.

**8.5**    **Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**8.6**    **Governing Law and Forum.** This Purchase Agreement, and all lawsuits, disputes, claims, or proceedings arising out of or relating to this Purchase Agreement or the relationships that result from this Purchase Agreement, shall be governed, construed and enforced in accordance with the laws of the State of Georgia.

The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in an inconvenient forum.

Each of the parties to the Contract further irrevocably consents to the service of process out of the Circuit Court of Cook County, Illinois by mailing copies thereof by Registered or Certified United States mail, postage prepaid, to each of the parties of the Purchase Agreement at its address specified in this Contract.

**8.7**    Waiver of Jury Trial, Consolidation and Class Action; Costs.

THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.

THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.

**8.8**    **Counterparts and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.

**8.9**    **Assignment; Use of Information.** Purchaser's rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller. Seller's rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser, except for transfer by intestate due to Seller's death in which case Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller agrees that Purchaser may share information that Purchaser obtained about Seller (whether from Seller or other person or entity) with potential assignees to whom Purchaser may assign its rights and obligations under this Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser; and (ii) Purchaser enters into an appropriate confidentiality Purchase Agreement with any such potential assignee.

**8.10**    No Third Party Beneficiaries; Successors and Assigns. Subject to the provisions of Section 8.9, (a) this Purchase Agreement is solely for the benefit of Purchaser and Seller; and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

**8.11**    Severability. If any provision of this Purchase Agreement or the application of any such provision to any

09/09/2013 1:02 PM
09/09/2013 Mon 13:01

RECEIVED  09/09/2013 13:58  9122335584
(847) 897-3143                →Stephen Stincer, Esq.
                    Carl Cook  (847) 897-3143

CARDILLO AND STINCER
                                    D 11
ID: #725361  Page 11 of 15

# PURCHASE AGREEMENT
### PAGE 6 OF 6

party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law.  If any such court of competent jurisdiction declares that any term or provision of this Purchase Agreement is invalid or unenforceable, the parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

**8.12    Legal Representation.    SELLER UNDERSTANDS AND ACKNOWLEDGES THAT:    (A) PURCHASER HAS RECOMMENDED THAT SELLER ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.**

**8.13    Construction.**  The parties intend that this Purchase Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement

(REMAINDER OF PAGE LEFT INTENTIONALLY BLANK).

# NOTICE OF PAYMENT SCHEDULE

September 9, 2013

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

RE:   OUR CLIENT: John Suber
      OUR CASE ID:P-GA-509111

Dear Stephen Stincer,

Oasis Legal Finance LLC has entered into a Purchase Agreement (attached) with John Suber. Oasis Legal Finance has purchased an interest in the potential proceeds from the legal claim of John Suber.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL OUR PURCHASED INTEREST (PLUS ANY APPLICABLE SECOND FUNDING OR SERVICING FEES) HAS BEEN SATISFIED.**

## OASIS OWNERSHIP AMOUNT

| Payment Schedule | Oasis Ownership Amount |
| --- | --- |
| September 10, 2013 to March 9, 2014 | $3,330.00 |
| March 10, 2014 to September 9, 2014 | $3,663.00 |
| September 10, 2014 to December 9, 2014 | $4,995.00 |
| December 10, 2014 to March 9, 2015 | $5,550.00 |
| March 10, 2015 to September 9, 2015 | $6,105.00 |
| September 10, 2015 to March 9, 2016 | $7,215.00 |
| March 10, 2016 and thereafter | $7,770.00 |

| Fees Due at Payment | |
| --- | --- |
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $60.00 |

Please call (866) 206-4800 (Press Option 6) or by fax at (847) 521-4392 to receive more information about payment.

40 North Skokie Blvd, Suite 500, Northbrook, IL 60062
Phone (847) 521-4349 – Fax (847) 897-3143
<TO_FAXNUM:1(912) 233-3584>
<NOTE:Case Number P-GA-509111 John Suber>
<TO_NAME: John Suber>

Case ID P-GA-509111

09/09/2013 1:02 PM
09/09/2013 Mon 13:01

RECEIVED 09/09/2013 13:58 9122333584
(847) 897-3143 → Stephen Stincer, Esq.
Carl Cook (847) 897-3143

CARDILLO AND STINCER
□ 14
ID: #725361 Page 14 of 15

# OASIS LEGAL FINANCE, LLC PRIVACY POLICY

Effective date April 2012
The privacy and security of your personal information is important to Oasis. We provide this Privacy Policy to advise you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

## What personal information does Oasis collect?

The types of personal information we collect and share depend on the product or service you have with us, but is clearly stated on our applications. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information can include: name, address, e-mail address, telephone number(s), your date of birth, social security number, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports. We may also use your information in order to obtain additional information regarding you, such as credit or consumer reports.

## How does Oasis share personal information?

We share customers' personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law. Some of this sharing is necessary to provide you with the services you are requesting from us. In the section below, we list the primary reasons we share customers' personal information; the reasons Oasis chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Oasis share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes— such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes— to offer our products and services to you | Yes | Yes |
| For joint marketing with other financial companies | Yes | Yes |
| For our affiliates' everyday business purposes— information related to your transactions and experiences | Yes | No (except CA and VT residents) |
| For our affiliates' everyday business purposes— information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

To limit our sharing, simply complete our Opt-Out form by visiting us at www.oasislegal.com/privacy and follow the instructions on the site.

## Why can't I limit all sharing?

In many circumstances, sharing information is necessary for us to provide you the services you are requesting. Federal law gives you the right to limit only

- sharing for affiliates' everyday business purposes—information about your creditworthiness
- affiliates from using your information to market to you
- sharing for nonaffiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law.

California: In accordance with California law, Oasis Legal Finance will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

Vermont: In accordance with Vermont law, Oasis Legal Finance will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

Case ID P-GA-509111

RECEIVED 09/09/2013 13:58 9122333584 CARDILLO AND STINCER

⊙ 09/09/2013 1:02 PM (847) 897-3143 → Stephen Stincer, Esq. D 15
09/09/2013 Mon 13:01 Carl Cook (847) 897-3143 ID: #725361 Page 15 of 15

## How Does Oasis protect my personal information?

To protect your personal information from unauthorized access and use, we use reasonable security measures that comply with applicable laws. These measures include computer safeguards and secured files and buildings. Our agreements with service providers or other nonaffiliated companies require them to treat your personal information in a confidential and secure manner.

## How does Oasis collect my personal information?

We collect your personal information, for example, when you, your attorney, or third parties, such as credit bureaus, affiliates, or other companies provide it to us on applications and other forms, by phone, fax, the Internet, or other delivery services.

## What happens when I limit sharing for an account I hold jointly with someone else?

Your choices will apply to everyone on your account.

## Passive collection of information

While you are on our website, we may automatically track information related to your voluntary use of the website. Such voluntary provided information may include, among other things, URL tracking information, user's browser, user's IP address, files viewed by you and your path through the website, date, time and frequency of accessing website and length of time spent reviewing certain features. In addition we may (i) use pixels provided to us by a third party to track the pages viewed, the number of pages viewed, and the number of customer conversions obtained from third parties and marketing agencies, (ii) place a cookie, provided to us by a third party, on your computer that tracks if you click on an advertisement so that future advertisements can be targeted to you based on the advertisements clicked on by you and/or your other activities on the website.

## Definitions

| | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. |
| | *Our affiliates include Oasis Legal Finance Holding Company, LLC and Oasis Legal Finance Operating Company, LLC* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies |
| | *Nonaffiliates we share with can include companies such as money transfer companies, collection agencies, investment and insurance companies, mortgage and brokerage companies, retailers or marketing companies.* |
| Joint Marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |
| | *Our joint marketing partners include categories of companies such as banks or lending institutions and insurance companies.* |

## Other Terms

We may access or disclose information about you in order to: (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Oasis, our service providers or our customers, including the enforcement of our agreements or policies governing your use of our services; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Oasis' or our service providers' employees, customers or the public. We may also disclose personal information as part of a proposed or actual corporate transaction such as a merger or sale of assets.

Through our website, you can link to other websites of third parties that provide useful information, or who have agreed to offer goods and services to our users. Any personal information you provide on the linked pages is provided directly to the applicable third-party and is subject to that third party's privacy policy.

## Revisions to this Privacy Policy

This Privacy Policy may be revised from time to time by Oasis Legal Finance, LLC. We will provide notice on our website that the Privacy Policy has changed, and will otherwise inform you of any changes to the extent required by law. Amendments to this policy will be effective when posted to our website at www.oasislegal.com/privacy .

Case ID: P-GA-509111

# PAYMENT INSTRUCTIONS
## Page 1 of 2

**Parties:** John Suber is Seller and Oasis Legal Finance, LLC is Purchaser

**Offer Date:** October 1, 2013

**Purchase Price to Seller:**    $1,400.00



(please initial)

**Priority Processing featuring new E-Signature:** When Oasis receives your purchase agreement signed by both you and your attorney your funding will move to Next in Line and Oasis will have its Priority Processing staff rush the delivery of your funds in the way you have chosen. E-signature is only available with priority processing. With E-signature you can conveniently sign the purchase agreement through email on yours or a family members' smartphone or home computer. Priority Processing is available with or without E-Signature. A handling fee of $20.00 will be deducted from purchase price-no out of pocket cost to you.

## HOW DO YOU WANT TO RECEIVE YOUR MONEY?

**(Select only one, and please check the box next to the option that you choose):**

☒  🕐 **Money in Minutes at any** WESTERN UNION **near you.** The Fastest way to get your funding. Many Western Union locations are open late! No waiting on a delivery service or the mail for a check, no check cashing fee, and no waiting on a bank to cash that check or release the cash to you. Many Locations Open Late!
Funds available on the **SAME DAY** if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details.

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $97.00 |
| $751.00 | - | $1,250.00 | $113.00 |
| $1,251.00 | - | $2,000.00 | $149.00 |
| $2,001.00 | - | $5,000.00 | $199.00 |

☐  **Direct Deposit Wire Transfer** to bank account in my name.
Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day. Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details:

| Purchase Price to Seller | | | Handling Fee |
|---|---|---|---|
| $0 | - | $750.00 | $97.00 |
| $751.00 | - | $1,250.00 | $113.00 |
| $1,251.00 | - | $2,000.00 | $149.00 |
| $2,001.00 | - | $5,000.00 | $199.00 |

| | |
|---|---|
| Name of Bank: | |
| Bank's City, State: | |
| Routing/ABA Number: | |
| Account Number: | |
| Bank's Phone Number: | |
| Name on Account: (your name must be on the account) | |

Note: The routing and account numbers may be in different places on your check

Case ID: P-GA-509111

# PAYMENT INSTRUCTIONS
## Page 2 of 2

☐    A Check sent in my name by U.S. First Class Mail with Delivery Confirmation
       (Free– delivered within 5 to 10 days from post date. Not responsible for delays due to postal or bank holidays, or weekends).

       Street Address Apt/Unit # _____

       City, _____ State _____ Zip _____

☐    A Check sent in my name by **Overnight Delivery** service for delivery by the next business day.
       ($99.00 deducted from purchase price-no out of pocket cost to you. Overnight delivery does not include weekends. Saturday
       delivery available for an extra charge):

       Street Address Apt/Unit # _____

       City, _____ State _____ Zip _____

**Terms:** Purchaser agrees to provide funds to the Seller as requested below by the Seller. Seller agrees that funds received from
Purchaser are a purchase of property, not a loan, and that Purchaser owns a portion of the potential proceeds from the legal claim.

### Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| October 2, 2013 to April 1, 2014 | $2,100.00 |
| April 2, 2014 to October 1, 2014 | $2,310.00 |
| October 2, 2014 to January 1, 2015 | $3,150.00 |
| January 2, 2015 to April 1, 2015 | $3,500.00 |
| April 2, 2015 to October 1, 2015 | $3,850.00 |
| October 2, 2015 to April 1, 2016 | $4,550.00 |
| April 2, 2016 and thereafter | $4,900.00 |

Please describe how we helped you during these difficult times: _____

   ok _____

By signing below, I hereby agree to the terms of the Payment Instructions and understand that I am responsible for the information
that I have provided on this form and that Purchaser is not responsible for any problem in delivery or transfer of funds, so long as it
follows the instructions provided by the Seller. I also agree to the use of the above statements in any way as Purchaser sees fit.

*John Suber*

_____      10/1/2013      _____
John Suber - Seller        Date            Oasis Legal Finance, LLC - Purchaser     Date

Case ID: P-GA-509111

10/01/2013 1:39 PM
10/01/2013 Tue 13:38

(847) 897-3143
Brian Moonin

→ Stephen Stincer, Esq.
(847) 897-3143

CARDILLO AND STINCER
D 5
ID: #736984  Page 5 of 15

# Oasis Legal Finance

## CREDIT AND INFORMATION RELEASE

Oasis Legal Finance, LLC may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction.

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation any credit reporting agency, institution service bureau, institution, attorney, or insurance company contacted by Oasis Legal Finance, LLC or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the agreement.

This authorization is valid for purposes of verifying information given pursuant to business negotiations, or any other lawful purpose covered under the Fair Credit Reporting Act. (FCRA).

Upon written request, we will tell you whether we have obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. We also request that by signing below, you certify the information provided by you to Oasis Legal Finance, LLC in your application and underwriting process is true, accurate and complete. You also authorize Oasis Legal Finance. LLC to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis Legal Finance, LLC ("Oasis"), or its affiliates any and all information and documents pertaining to my current legal claim or lawsuit, including pleadings, discovery, investigation, contracts, medical records/reports, depositions, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application is true, accurate, and complete.

John Suber

*John Suber*
Signature

(229) 300-7474
Telephone Number

Drivers License # Redacted

4212 Wilshire Dr.
Street Address

Valdosta
City

10/1/2013
Date

Redacted
Social Security Number

Redacted  1980
Date of Birth

State of Driver's License  GA

GA
State

31605
Zip Code

Case ID: P-GA-509111

⊙ 10/01/2013 1:39 PM
D. 10/01/2013 Tue 13:38

RECEIVED 10/01/2013 14:35  9122333584
(847) 897-3143
→Stephen Stincer, Esq.
Brian Moonin   (847) 897-3143

CARDILLO AND STINCER
D 6
ID: #736984  Page 6 of 15

# PURCHASE AGREEMENT
## PAGE 1 OF 6

| | |
|---|---|
| **Purchaser:** | Oasis Legal Finance, LLC (Oasis) |
| **Seller:** | John Suber |
| **Purchase Price:** | $1,400.00 |

**Oasis Ownership Amount**

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| October 2, 2013 to April 1, 2014 | $2,100.00 |
| April 2, 2014 to October 1, 2014 | $2,310.00 |
| October 2, 2014 to January 1, 2015 | $3,150.00 |
| January 2, 2015 to April 1, 2015 | $3,500.00 |
| April 2, 2015 to October 1, 2015 | $3,850.00 |
| October 2, 2015 to April 1, 2016 | $4,550.00 |
| April 2, 2016 and thereafter | $4,900.00 |

| Fees Due at Payment | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Archival and Document Management Fee per Funding | $35.00 |

SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION

IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING. SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.
SELLER: John Suber   Address: 4212 Wilshire Drive, Valdosta, GA 31605

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages. I agree to be bound by the terms and conditions of this Purchase Agreement. This Agreement shall not be effective until the Purchase Price is paid to Seller.

| Seller's Signature   Date | Purchaser' Signature   Date |
|---|---|
| *John Suber* | |
| John Suber   10/1/2013 | Oasis Legal Finance, LLC |

## SECTION 1.   DEFINITIONS.

**1.1** **"Legal Claim"** means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

**1.2** **"Oasis Ownership Amount"** is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

**1.3** **"Proceeds"** means whatever you receive as a result of the legal claim, for example through a judgment, Arbitration or the like.

**1.4** **"Purchased Interest"** means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

⊙ 10/01/2013 1:39 PM    RECEIVED 10/01/2013 14:35   9122333584      CARDILLO AND STINCER
D. 10/01/2013 Tue 13:38    (847) 897-3143        →Stephen Stincer, Esq.        □7
       Brian Moonin    (847) 897-3143      ID: #736984   Page 7 of 15

# PURCHASE AGREEMENT
### PAGE 2 OF 6

     1.5    "**Purchaser**" means Oasis Legal Finance, LLC.

     1.6    "**Seller**" means John Suber.

     1.7    "**Seller's Attorney**" means, collectively, Stephen Stincer, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.**    **SELLER'S STATEMENTS.** Seller states to Purchaser as follows:

     2.1    **Purchase and Sale.** Seller sells, and the Purchaser buys, the Purchased Interest.

     2.2    **Title; Capacity.** Seller believes the Legal Claim to be meritorious and filed in good faith. Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

     2.3    **Information True, Complete and Correct.** Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3. SELLER'S ACKNOWLEDGEMENTS.** Seller acknowledges the following:

     3.1    **Risk of Loss.** This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser. The Oasis Ownership Amount has been negotiated to account for such risk.

     3.2    **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.** Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

     3.3    **No Previous Encumbrance** Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4. PURCHASER'S ACKNOWLEDGEMENT.** Purchaser acknowledges the following.

     4.1    **Purchaser's Acknowledgment.** Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5. SELLER'S AGREEMENTS.** Seller agrees as follows:

     5.1    **Treatment of Transaction.** Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes). Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

     5.2    **Treatment in Bankruptcy.** If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

     5.3    **No Assignment.** Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death. In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

⏱ 10/01/2013 1:39 PM     (847) 897-3143     →Stephen Stincer, Esq.     CARDILLO AND STINCER
D. 10/01/2013 Tue 13:38     Brian Moonin     (847) 897-3143     ☐ 8
ID: #736984   Page 8 of 15

# PURCHASE AGREEMENT
### PAGE 3 OF 6

**5.4**    **Prosecution of Claim and Facilitation of Payment.** Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

**5.5**    **Subsequent Case Review.** Seller agrees to an additional case review charge of $20.00 each time seller requests and receives additional funding from Purchaser.

**5.6**    **Case Servicing Fee.** Seller agrees to pay to Purchaser a case servicing fee of $35.00 every six (6) months or increment thereof. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

**5.7**    **Archiving and Document Management Fee.** Seller agrees to pay to Purchaser a fee of $35.00 per funding to defray Seller's archiving and document management costs. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount

**5.8**    **Substitution of Attorneys in the Legal Claim.** If Seller determines to hire new or additional attorneys to represent Seller in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

**5.9**    **No Assignment of Workers Compensation Benefits.** The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

**5.10**    **Requests for Documents and Information.** Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with: (a) prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6. PAYMENT AND PRIORITY.

**6.1**    **Priority Payment to Purchaser.** Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount. If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens. If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Purchaser shall receive nothing

**6.2**    **Mechanics and Timing of Payment.** The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction. Seller agrees not to have the Oasis Ownership amount paid to him. Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis. Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller. The Oasis Ownership Amount shall be determined as of the date it is received by Oasis. Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser. Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

**6.3**    **Risk of Loss.** Purchaser and Seller acknowledge that the Purchased Interest may be worthless. Purchaser accepts the risk of loss with respect to the Purchased Interest.

**6.4**    **RIGHT TO PAY PURCHASER FROM ANY SOURCE.**    THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME

⊙ 10/01/2013 1:39 PM
D. 10/01/2013 Tue 13:38
(847) 897-3143
→ Stephen Stincer, Esq.
Brian Moonin     (847) 897-3143
CARDILLO AND STINCER
D 9
ID: #736984   Page 9 of 15

# PURCHASE AGREEMENT
### PAGE 4 OF 6

WITHOUT PENALTY PRIOR TO THE PROCEEDS DUE FROM THE LEGAL CLAIM BEING DISTRIBUTED. IF SELLER SO ELECTS, PAYMENT MUST BE RECEIVED AND ACKNOWLEDGED BY PURCHASER PRIOR TO SELLER RECEIVING ANY PROCEEDS FROM THE LEGAL CLAIM. UPON SELLER'S RECEIPT OF THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT, PURCHASER SHALL BE DEEMED TO HAVE TENDERED BACK TO SELLER PURCHASER'S INTEREST IN THE PROCEEDS.

**SECTION 7.  EVENT OF DEFAULT; SPECIFIC DEFAULT; RIGHT OF RESCISSION.**

**7.1     Event of Default.** The breach by Seller of any of Seller's obligations under this Purchase Agreement shall constitute an "Event of Default" hereunder. In an Event of Default, Purchaser shall have all rights, powers, and remedies provided in the Purchase Agreement and as allowed by law or in equity.

**7.2     Seller's Right of Rescission.** CONSUMER'S RIGHT TO CANCELLATION: YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE THE PURCHASE PRICE FROM PURCHASER.

TO CANCEL THIS AGREEMENT, YOU MUST EITHER:

(I)     RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER BY DELIVERING THE UNCASHED CHECK TO PURCHASER IN PERSON WITHIN FIVE (5) BUSINESS DAYS; OR

(II)    MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) BUSINESS DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S ADDRESS AS SET FORTH IN SECTION 8.2 BELOW.

**SECTION 8.    MISCELLANEOUS.**

**8.1     Survival of Representations.** All of the representations, warranties, covenants and Purchase Agreements of the parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

**8.2     Notices.** All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the parties at the following addresses:

if to Purchaser, to:       Oasis Legal Finance, LLC
                           40 North Skokie Blvd, Suite 500
                           Northbrook, Illinois 60062
                           Attn:    Controller

and if to Seller, to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the parties hereto shall have specified in writing to the other.

**8.3     Financing Statements and Additional Documents.** Seller irrevocably authorizes Purchaser at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto. Purchaser may indicate the following information in such financial statements and amendments: (a) that a portion of the proceeds that are derived from the Legal Claim are owned by Purchaser; and (b) any other information required, in Purchaser's discretion, by the Uniform Commercial Code in any relevant jurisdiction.

**8.4     Release to Contact Third Parties.** As part of this Purchase Agreement it may be necessary to disclose information to third parties. Seller explicitly and irrevocably authorizes Purchaser to disclose any information to third parties as

# PURCHASE AGREEMENT
PAGE 5 OF 6

it deems appropriate to the extent permitted by law and also as referenced in the Oasis Legal Finance, LLC privacy policy. Seller releases Purchaser from any and all liability as a result of the release of any information.

**8.5     Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**8.6     Governing Law and Forum.** This Purchase Agreement, and all lawsuits, disputes, claims, or proceedings arising out of or relating to this Purchase Agreement or the relationships that result from this Purchase Agreement, shall be governed, construed and enforced in accordance with the laws of the State of Georgia.

The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in an inconvenient forum.

Each of the parties to the Contract further irrevocably consents to the service of process out of the Circuit Court of Cook County, Illinois by mailing copies thereof by Registered or Certified United States mail, postage prepaid, to each of the parties of the Purchase Agreement at its address specified in this Contract.

**8.7     Waiver of Jury Trial, Consolidation and Class Action; Costs.**

THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.

THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.

**8.8     Counterparts and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.

**8.9     Assignment; Use of Information.** Purchaser's rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller. Seller's rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser, except for transfer by intestate due to Seller's death in which case Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller agrees that Purchaser may share information that Purchaser obtained about Seller (whether from Seller or other person or entity) with potential assignees to whom Purchaser may assign its rights and obligations under this Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser; and (ii) Purchaser enters into an appropriate confidentiality Purchase Agreement with any such potential assignee.

**8.10     No Third Party Beneficiaries; Successors and Assigns.** Subject to the provisions of Section 8.9, (a) this Purchase Agreement is solely for the benefit of Purchaser and Seller; and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

**8.11     Severability.** If any provision of this Purchase Agreement or the application of any such provision to any

# PURCHASE AGREEMENT
PAGE 6 OF 6

party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that any term or provision of this Purchase Agreement is invalid or unenforceable, the parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

**8.12   Legal Representation.   SELLER UNDERSTANDS AND ACKNOWLEDGES THAT:   (A) PURCHASER HAS RECOMMENDED THAT SELLER ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.**

**8.13   Construction.**  The parties intend that this Purchase Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement

(REMAINDER OF PAGE LEFT INTENTIONALLY BLANK).

## Oasis Legal Finance

# NOTICE OF PAYMENT SCHEDULE

October 1, 2013

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

RE:     OUR CLIENT: John Suber
        OUR CASE ID:P-GA-509111

Dear Stephen Stincer,

Oasis Legal Finance LLC has entered into a Purchase Agreement (attached) with John Suber. Oasis Legal Finance has purchased an interest in the potential proceeds from the legal claim of John Suber.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL OUR PURCHASED INTEREST (PLUS ANY APPLICABLE SECOND FUNDING OR SERVICING FEES) HAS BEEN SATISFIED.**

### OASIS OWNERSHIP AMOUNT

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| October 2, 2013 to April 1, 2014 | $2,100.00 |
| April 2, 2014 to October 1, 2014 | $2,310.00 |
| October 2, 2014 to January 1, 2015 | $3,150.00 |
| January 2, 2015 to April 1, 2015 | $3,500.00 |
| April 2, 2015 to October 1, 2015 | $3,850.00 |
| October 2, 2015 to April 1, 2016 | $4,550.00 |
| April 2, 2016 and thereafter | $4,900.00 |

**Fees Due at Payment**

| | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $35.00 |

Please call (866) 206-4800 (Press Option 6) or by fax at (847) 521-4392 to receive more information about payment.

**40 North Skokie Blvd, Suite 500, Northbrook, IL 60062**
**Phone (847) 521-4349 – Fax (847) 897-3143**
          <TO_FAXNUM:1(912) 233-3584>
   <NOTE:Case Number P-GA-509111 John Suber>
          <TO_NAME: John Suber>

Case ID P-GA-509111

# OASIS LEGAL FINANCE, LLC PRIVACY POLICY

**Effective date April 2012**

The privacy and security of your personal information is important to Oasis. We provide this Privacy Policy to advise you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

## What personal information does Oasis collect?

The types of personal information we collect and share depend on the product or service you have with us, but is clearly stated on our applications. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information can include: name, address, e-mail address, telephone number(s), your date of birth, social security number, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports. We may also use your information in order to obtain additional information regarding you, such as credit or consumer reports.

## How does Oasis share personal information?

We share customers' personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law. Some of this sharing is necessary to provide you with the services you are requesting from us. In the section below, we list the primary reasons we share customers' personal information; the reasons Oasis chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Oasis share? | Can you limit this sharing? |
| --- | --- | --- |
| For our everyday business purposes— such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes— to offer our products and services to you | Yes | Yes |
| For joint marketing with other financial companies | Yes | Yes |
| For our affiliates' everyday business purposes— information related to your transactions and experiences | Yes | No (except CA and VT residents) |
| For our affiliates' everyday business purposes— information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

To limit our sharing, simply complete our Opt-Out form by visiting us at www.oasislegal.com/privacy and follow the instructions on the site.

## Why can't I limit all sharing?

In many circumstances, sharing information is necessary for us to provide you the services you are requesting. Federal law gives you the right to limit only

- sharing for affiliates' everyday business purposes—information about your creditworthiness
- affiliates from using your information to market to you
- sharing for nonaffiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law.

California: In accordance with California law, Oasis Legal Finance will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

Vermont: In accordance with Vermont law, Oasis Legal Finance will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

Case ID P-GA-509111

## How Does Oasis protect my personal information?

To protect your personal information from unauthorized access and use, we use reasonable security measures that comply with applicable laws. These measures include computer safeguards and secured files and buildings. Our agreements with service providers or other nonaffiliated companies require them to treat your personal information in a confidential and secure manner.

## How does Oasis collect my personal information?

We collect your personal information, for example, when you, your attorney, or third parties, such as credit bureaus, affiliates, or other companies provide it to us on applications and other forms, by phone, fax, the Internet, or other delivery services.

## What happens when I limit sharing for an account I hold jointly with someone else?

Your choices will apply to everyone on your account.

## Passive collection of information

While you are on our website, we may automatically track information related to your voluntary use of the website. Such voluntary provided information may include, among other things, URL tracking information, user's browser, user's IP address, files viewed by you and your path through the website, date, time and frequency of accessing website and length of time spent reviewing certain features. In addition we may (i) use pixels provided to us by a third party to track the pages viewed, the number of pages viewed, and the number of customer conversions obtained from third parties and marketing agencies, (ii) place a cookie, provided to us by a third party, on your computer that tracks if you click on an advertisement so that future advertisements can be targeted to you based on the advertisements clicked on by you and/or your other activities on the website.

## Definitions

| | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. |
| | *Our affiliates include Oasis Legal Finance Holding Company, LLC and Oasis Legal Finance Operating Company, LLC* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies |
| | *Nonaffiliates we share with can include companies such as money transfer companies, collection agencies, investment and insurance companies, mortgage and brokerage companies, retailers or marketing companies.* |
| Joint Marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |
| | *Our joint marketing partners include categories of companies such as banks or lending institutions and insurance companies.* |

## Other Terms

We may access or disclose information about you in order to: (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Oasis, our service providers or our customers, including the enforcement of our agreements or policies governing your use of our services; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Oasis' or our service providers' employees, customers or the public. We may also disclose personal information as part of a proposed or actual corporate transaction such as a merger or sale of assets.

Through our website, you can link to other websites of third parties that provide useful information, or who have agreed to offer goods and services to our users. Any personal information you provide on the linked pages is provided directly to the applicable third-party and is subject to that third party's privacy policy.

## Revisions to this Privacy Policy

This Privacy Policy may be revised from time to time by Oasis Legal Finance, LLC. We will provide notice on our website that the Privacy Policy has changed, and will otherwise inform you of any changes to the extent required by law. Amendments to this policy will be effective when posted to our website at www.oasislegal.com/privacy .

Case ID: P-GA-509111

·2016 11:32 AM    RECEIVED   10/04/2016 12:24   9122333584     CARDILLO AND STINGER
/04/2016 Tue 11:32    (847) 521-4386         →Stephen Stincer, Esq.           ☐ 3
                                     Vanessa Ellinger    (847) 521-4386            ID: #1221614   Page 3 of 15

## PAYMENT INSTRUCTIONS
### Page 1 of 2

Parties: John Suber is Seller and Oasis Financial is Purchaser

Offer Date: October 4, 2016

Purchase Price to Seller:      $620.00

 **Priority Processing featuring new E-Signature:** When Oasis receives your purchase agreement signed by both you and your attorney your funding will move to Next in Line and Oasis will have its Priority Processing staff rush the delivery of your funds in the way you have chosen. E-signature is only available with priority processing. With E-signature you can conveniently sign the purchase agreement through email on yours or a family members' smartphone or home computer. Priority Processing is available with or without E-Signature. A handling fee of $20.00 will be deducted from purchase price-no out of pocket cost to you.

(please initial)

## HOW DO YOU WANT TO RECEIVE YOUR MONEY?

**(Select only one, and please check the box next to the option that you choose):**

☐    Money in Minutes at any [WESTERN UNION] near you. The Fastest way to get your funding. Many Western Union locations are open late! No waiting on a delivery service or the mail for a check, no check cashing fee, and no waiting on a bank to cash that check or release the cash to you. Many Locations Open Late!
Funds available on the **SAME DAY** if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details.

| Purchase Price to Seller | Handling Fee |
|---|---|
| $0 - $750.00 | $97.00 |
| $751.00 - $1,250.00 | $113.00 |
| $1,251.00 - $2,000.00 | $149.00 |
| $2,001.00 - $5,000.00 | $199.00 |

☐    **Direct Deposit Wire Transfer** to bank account in my name
Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day. Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details:

| Purchase Price to Seller | Handling Fee |
|---|---|
| $0 - $750.00 | $97.00 |
| $751.00 - $1,250.00 | $113.00 |
| $1,251.00 - $2,000.00 | $149.00 |
| $2,001.00 - $5,000.00 | $199.00 |



| | |
|---|---|
| Name of Bank: | |
| Bank's City, State: | |
| Routing/ABA Number: | |
| Account Number: | |
| Bank's Phone Number: | |
| Name on Account: (your name must be on the account) | |

Case ID: P-GA-865898

10-04-2016 11:32 AM
10/04/2016 Tue 11:32

RECEIVED  10/04/2016 12:24   9122933584
(847) 521-4386        → Stephen Stincer, Esq.
Vanessa Ellinger    (847) 521-4386

CARDILLO AND STINCER

D 4
ID: #1221614  Page 4 of 15

## PAYMENT INSTRUCTIONS
### Page 2 of 2

☐ A Check sent in my name by **Overnight Delivery** service for delivery by the next business day.
($99.00 deducted from purchase price-no out of pocket cost to you.  Overnight delivery does not include weekends.
Saturday delivery available for an extra charge):

Street Address Apt/Unit : _____

City: _____  State: _____  Zip: _____

☐ A Check sent in my name by **U.S. First Class Mail** with Delivery Confirmation
(Free-- delivered within 5 to 10 days from post date.  Not responsible for delays due to postal or bank holidays, or
weekends).

Street Address Apt/Unit: _____

City: _____  State: _____  Zip: _____

Terms:  Purchaser agrees to provide funds to the Seller as requested below by the Seller. Seller agrees that funds received from
Purchaser are a purchase of property, not a loan, and that Purchaser owns a portion of the potential proceeds from the legal claim.

### Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount |
| --- | --- |
| October 5, 2016 to April 4, 2017 | $930.00 |
| April 5, 2017 to October 4, 2017 | $1,023.00 |
| October 5, 2017 to January 4, 2018 | $1,395.00 |
| January 5, 2018 to April 4, 2018 | $1,550.00 |
| April 5, 2018 to October 4, 2018 | $1,705.00 |
| October 5, 2018 to April 4, 2019 | $2,015.00 |
| April 5, 2019 and thereafter | $2,170.00 |

Please describe how we helped you during these difficult times:

_____

By signing below, I hereby agree to the terms of the Payment Instructions and understand that I am responsible for the information
that I have provided on this form and that Purchaser is not responsible for any problem in delivery or transfer of funds, so long as it
follows the instructions provided by the Seller.  I also agree to the use of the above statements in any way as Purchaser sees fit.

_____  _____  _____  _____
John Suber   Seller's Signature        Date        Oasis Financial - Purchaser    Date

Case ID: P-GA-865898



## CREDIT AND INFORMATION RELEASE

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation, any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Financial (Oasis) or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me, and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the Purchase Agreement.

Oasis may use your social security number and other identifying information to obtain a consumer credit report, financial information, and/or other credit information as part of the proposed transaction. Credit reports may be obtained after you are provisionally approved for funding for verification of liens. Please note your credit score is not considered as part of the underwriting process.

This authorization is valid for purposes of verifying information given including, but not limited to, use in funding database(s), and any other lawful purpose covered under the Fair Credit Reporting Act (FCRA). Upon written request, Oasis will tell you whether Oasis has obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. By signing below, you certify the information provided by you to Oasis in your application and during the underwriting process is true, accurate and complete. By signing below, you also authorize Oasis to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis, or its affiliates any and all information and documents pertaining to my current Legal Claim(s) or lawsuit, including pleadings, discovery, investigative reports, contracts, medical records/reports, deposition transcripts, settlement information, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application and during the underwriting process is true, accurate, and complete.

John Suber

| | |
|---|---|
| | Date: _____ |
| | Social Security Number: _____ |
| | Telephone Number: _____ |
| _____ | |
| Signature | Date of Birth: _____ |
| Drivers License # | State of Drivers License: _____ |

| | | | |
|---|---|---|---|
| Street Address | City | State | Zip Code |

Case ID: P-GA-865898

⊙ 10-04-2016 11:32 AM
10/04/2016 Tue 11:32

RECEIVED 10/04/2016 12:24 9122333564     CARDILLO AND STINGER
(847) 521-4386    →Stephen Stincer, Esq.     D 6
Vanessa Ellinger    (847) 521-4386      ID: #1221614   Page 6 of 15

## PURCHASE AGREEMENT
### PAGE 1 OF 6

| | |
|---|---|
| Purchaser: | Oasis Legal Finance, LLC d/b/a Oasis Financial (Oasis) |
| Seller: | John Suber |
| Purchase Price: | $620.00 |

**Oasis Ownership Amount**

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| October 5, 2016 to April 4, 2017 | $930.00 |
| April 5, 2017 to October 4, 2017 | $1,023.00 |
| October 5, 2017 to January 4, 2018 | $1,395.00 |
| January 5, 2018 to April 4, 2018 | $1,550.00 |
| April 5, 2018 to October 4, 2018 | $1,705.00 |
| October 5, 2018 to April 4, 2019 | $2,015.00 |
| April 5, 2019 and thereafter | $2,170.00 |

**Fees Due at Payment**

| | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Archival and Document Management Fee per Funding | $35.00 |

SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION

IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING. SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.

SELLER:   John Suber    Address:    2713 Pineview Dr,   Valdosta, GA 31602

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages. I agree to be bound by the terms and conditions of this Purchase Agreement. This Agreement shall not be effective until the Purchase Price is paid to Seller.

| Seller's Signature | Date | Purchaser' Signature | Date |
|---|---|---|---|
| | | Oasis Financial – Purchaser | |
| John Suber | | | |

## SECTION 1.   DEFINITIONS.

1.1    **"Legal Claim"** means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

1.2    **"Oasis Ownership Amount"** is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

1.3    **"Proceeds"** means whatever you receive as a result of the legal claim, for example through a judgment, Arbitration or the like.

1.4    **"Purchased Interest"** means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

Case ID: P-GA-865898

RECEIVED 10/04/2016 12:24    9122533584    CARDILLO AND STINCER
(847) 521-4386    →Stephen Stincer, Esq.    D7
Vanessa Ellinger    (847) 521-4386    ID: #1221614  Page 7 of 15

⊙ 10-04-2016 11:32 AM
10/04/2016 Tue 11:32

# PURCHASE AGREEMENT
### PAGE 2 OF 6

    1.5    "**Purchaser**" means Oasis Legal Finance, LLC d/b/a Oasis Financial.

    1.6    "**Seller**" means John Suber.

    1.7    "**Seller's Attorney**" means, collectively, Stephen Stincer, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.**    **SELLER'S STATEMENTS.** Seller states to Purchaser as follows:

    2.1    **Purchase and Sale.** Seller sells, and the Purchaser buys, the Purchased Interest.

    2.2    **Title; Capacity.** Seller believes the Legal Claim to be meritorious and filed in good faith. Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

    2.3    **Information True, Complete and Correct.** Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3. SELLER'S ACKNOWLEDGEMENTS.** Seller acknowledges the following:

    3.1    **Risk of Loss.** This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser. The Oasis Ownership Amount has been negotiated to account for such risk.

    3.2    **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.** Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

    3.3    **No Previous Encumbrance** Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4. PURCHASER'S ACKNOWLEDGEMENT.** Purchaser acknowledges the following:

    4.1    **Purchaser's Acknowledgment.** Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5. SELLER'S AGREEMENTS.** Seller agrees as follows:

    5.1    **Treatment of Transaction.** Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes). Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

    5.2    **Treatment in Bankruptcy.** If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

    5.3    **No Assignment.** Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death. In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

⊙ 10-04-2016 11:32 AM
10/04/2016 Tue 11:32

RECEIVED  10/04/2016 12:24   3122333364
(847) 521-4386          →Stephen Stincer, Esq.
Vanessa Ellinger    (847) 521-4386

GARDILES AND OFFICER
☐ 8
ID: #1221614  Page 8 of 15

# PURCHASE AGREEMENT
### PAGE 3 OF 6

**5.4** **Prosecution of Claim and Facilitation of Payment.** Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

**5.5** **Subsequent Case Review.** Seller agrees to an additional case review charge of $20.00 each time seller requests and receives additional funding from Purchaser.

**5.6** **Case Servicing Fee.** Seller agrees to pay to Purchaser a case servicing fee of $35.00 every six (6) months or increment thereof. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

**5.7** **Archiving and Document Management Fee.** Seller agrees to pay to Purchaser a fee of $35.00 per funding to defray Seller's archiving and document management costs. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount

**5.8** **Substitution of Attorneys in the Legal Claim.** If Seller determines to hire new or additional attorneys to represent Seller in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney(s) to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

**5.9** **No Assignment of Workers Compensation Benefits.** The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

**5.10** **Requests for Documents and Information.** Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with: (a) prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6. PAYMENT AND PRIORITY.

**6.1** **Priority Payment to Purchaser.** Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount. If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens. If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Purchaser shall receive nothing

**6.2** **Mechanics and Timing of Payment.** The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction. Seller agrees not to have the Oasis Ownership amount paid to him. Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis. Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller. The Oasis Ownership Amount shall be determined as of the date it is received by Oasis. Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser. Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

**6.3** **Risk of Loss.** Purchaser and Seller acknowledge that the Purchased Interest may be worthless. Purchaser accepts the risk of loss with respect to the Purchased Interest.

**6.4** **RIGHT TO PAY PURCHASER FROM ANY SOURCE.** THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME

⊙ 10-04-2016 11:32 AM
10/04/2016 Tue 11:32

RECEIVED 10/04/2016 12:24   9122333584
(847) 521-4386           →Stephen Stincer, Esq.
Vanessa Ellinger    (847) 521-4386

CARDILLO AND STINCER    □9
ID:#1221614  Page 9 of 15

# PURCHASE AGREEMENT
PAGE 4 OF 6

WITHOUT PENALTY PRIOR TO THE PROCEEDS DUE FROM THE LEGAL CLAIM BEING DISTRIBUTED. IF SELLER SO ELECTS, PAYMENT MUST BE RECEIVED AND ACKNOWLEDGED BY PURCHASER PRIOR TO SELLER RECEIVING ANY PROCEEDS FROM THE LEGAL CLAIM. UPON SELLER'S RECEIPT OF THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT, PURCHASER SHALL BE DEEMED TO HAVE TENDERED BACK TO SELLER PURCHASER'S INTEREST IN THE PROCEEDS.

SECTION 7. EVENT OF DEFAULT; SPECIFIC DEFAULT; RIGHT OF RESCISSION.

7.1     Event of Default. The breach by Seller of any of Seller's obligations under this Purchase Agreement shall constitute an "Event of Default" hereunder. In an Event of Default, Purchaser shall have all rights, powers, and remedies provided in the Purchase Agreement and as allowed by law or in equity.

7.2     Seller's Right of Rescission. CONSUMER'S RIGHT TO CANCELLATION: YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE THE PURCHASE PRICE FROM PURCHASER.

TO CANCEL THIS AGREEMENT, YOU MUST EITHER:

(I)     RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER BY DELIVERING THE UNCASHED CHECK TO PURCHASER IN PERSON WITHIN FIVE (5) BUSINESS DAYS; OR

(II)    MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) BUSINESS DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S ADDRESS AS SET FORTH IN SECTION 8.2 BELOW.

SECTION 8.    MISCELLANEOUS.

8.1     Survival of Representations. All of the representations, warranties, covenants and Purchase Agreements of the parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

8.2     Notices. All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the parties at the following addresses: .

if to Purchaser, to:     Oasis Financial
                         9525 W. Bryn Mawr, Suite 900
                         Rosemont, IL 60018
                         Attn:    Controller

and if to Seller, to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the parties hereto shall have specified in writing to the other.

8.3     Financing Statements and Additional Documents. Seller irrevocably authorizes Purchaser at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto. Purchaser may indicate the following information in such financial statements and amendments: (a) that a portion of the proceeds that are derived from the Legal Claim are owned by Purchaser; and (b) any other information required, in Purchaser's discretion, by the Uniform Commercial Code in any relevant jurisdiction.

8.4     Release to Contact Third Parties. As part of this Purchase Agreement it may be necessary to disclose information to third parties. Seller explicitly and irrevocably authorizes Purchaser to disclose any information to third parties as

10-04-2016 11:32 AM
10/04/2016 Tue 11:32

RECEIVED 10/04/2016 12:24 9122333584
(847) 521-4386 → Stephen Stincer, Esq.
Vanessa Ellinger (847) 521-4386

CARDILLO AND STINGER
D 10
ID:#1221614 Page 10 of 15

## PURCHASE AGREEMENT
### PAGE 5 OF 6

it deems appropriate to the extent permitted by law and also as referenced in the Oasis Financial privacy policy. Seller releases Purchaser from any and all liability as a result of the release of any information.

8.5     Waiver.  Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed by the party waiving such rights.  The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

8.6     Governing Law and Forum.  This Purchase Agreement, and all lawsuits, disputes, claims, or proceedings arising out of or relating to this Purchase Agreement or the relationships that result from this Purchase Agreement, shall be governed, construed and enforced in accordance with the laws of the State of Georgia.

The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in an inconvenient forum.

Each of the parties to the Contract further irrevocably consents to the service of process out of the Circuit Court of Cook County, Illinois by mailing copies thereof by Registered or Certified United States mail, postage prepaid, to each of the parties of the Purchase Agreement at its address specified in this Contract.

8.7     Waiver of Jury Trial, Consolidation and Class Action; Costs.

THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.  THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.

THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.

8.8     Counterparts and Facsimile Signatures.  This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.

8.9     Assignment; Use of Information.  Purchaser's rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller.  Seller's rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser, except for transfer by intestate due to Seller's death in which case Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.  Seller agrees that Purchaser may share information that Purchaser obtained about Seller (whether from Seller or other person or entity) with potential assignees to whom Purchaser may assign its rights and obligations under this Purchase Agreement, provided that:  (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser; and (ii) Purchaser enters into an appropriate confidentiality Purchase Agreement with any such potential assignee.

8.10    No Third Party Beneficiaries; Successors and Assigns. Subject to the provisions of Section 8.9, (a) this Purchase Agreement is solely for the benefit of Purchaser and Seller; and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

8.11    Severability.  If any provision of this Purchase Agreement or the application of any such provision to any

# PURCHASE AGREEMENT
### PAGE 6 OF 6

party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that any term or provision of this Purchase Agreement is invalid or unenforceable, the parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

    **8.12    Legal Representation.**    SELLER UNDERSTANDS AND ACKNOWLEDGES THAT:    (A) PURCHASER HAS RECOMMENDED THAT SELLER ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.

    **8.13    Construction.**  The parties intend that this Purchase Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement

    (REMAINDER OF PAGE LEFT INTENTIONALLY BLANK).

# Oasis Financial

9525 W. Bryn Mawr Ave, Suite 900
Rosemont, IL 60018

| | | | |
|---|---|---|---|
| Recipient: | *Stephen Stincer, Esq.* | Pages: | *15* |
| Fax Number: | *19122333584* | Date / Time: | *10/04/2016 Tue / 11:32* |
| Sender: | | Phone: | |
| Subject: | *John Suber* | | |

RECEIVED  10/04/2016 12:24    9122333584          CARDILLO AND STINCER
(847) 521-4386        → Stephen Stincer, Esq.                    □ 12
Vanessa Ellinger    (847) 521-4386         ID: #1221614  Page 12 of 15

⊙ 10-04-2016 11:32 AM
10/04/2016 Tue 11:32

## IRREVOCABLE LETTER OF DIRECTION
Sent by Fax to (912) 233-3584 and by US Mail

October 4, 2016

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

Dear Stephen Stincer,

Be advised that I have sold a portion of the proceeds of my legal claim equal to the Oasis Ownership Amount to Oasis Financial. I, John Suber, hereby irrevocably direct Stephen Stincer or any subsequent attorney(s) and law firms that may represent me, to tender the Oasis Ownership Amount to Oasis Financial pursuant to this purchase agreement from any and all of the proceeds due to me from the legal claim(s)/case(s) in which you represent me, after payment of any and all legal fees and reimbursable costs before releasing any funds to me unless Oasis Financial LLC advises you that I have already paid to them the Oasis Ownership Amount in full. If any dispute arises over the amount owed Oasis, I instruct you NOT to release any funds to me until that dispute is resolved. If a check is sent in my name, I hereby grant you a limited, irrevocable power of attorney to endorse and deposit my check into your trust account and pay to Oasis Financial, its Ownership Amount, before releasing any funds to me. I also state that I do not have any significant outstanding child support obligations. I understand that any such significant outstanding child support obligation may delay or prevent my funding.

_____
(please initial)

I have read the Purchase Agreement and fully understand my obligations. I understand that Oasis has relied on this Irrevocable Letter of Direction to fund the Purchase Agreement, that the purchase price is $620.00, and that the Oasis Ownership Amount will increase based on a multiple of the purchase price and the date Oasis receives payment per the Purchase Agreement. In the event that you no longer represent me, I instruct you to provide Oasis with any insurance, attorney or other information requested that will allow it to protect its interest and to follow my irrevocable instructions. This letter may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute an agreement. By signing the acknowledgement below, you acknowledge that this letter is from me and that you will comply with this Irrevocable Letter of Direction.

Sincerely,

_____
John Suber

### ATTORNEY ACKNOWLEDGMENT

- I, Stephen Stincer, Esq., acknowledge receipt of this Letter and the Purchase Agreement from my client.
- My fee agreement is on a contingency basis and there are liens (exclusive of attorneys fees and costs) against the case of approximately $_____, and I will honor my client's irrevocable letter of direction, subordinate to attorney fees, costs and appropriate medical liens as per instructions above. I acknowledge that John Suber has the right to pay the Oasis Ownership Amount in full from any source at any time prior to distribution of the proceeds.
- I fully expect and anticipate that any proceeds from the legal claim will be sent to me from the defendant and/or insurance company, and not to the Plaintiff, and I agree that all disbursements of funds, including plaintiff's share of proceeds, will be through my attorney trust account.
- I have not and will not accept any advice, direction or payment from Oasis Financial regarding the legal claim.
- To the best of my knowledge, John Suber has NOT received any previous cash fundings on his/her legal claim(s).
- Without the prior written consent of Oasis Financial, I will not participate in or acknowledge any future cash fundings for John Suber.

How should we contact your office for case updates?

_____                    _____
Stephen Stincer, Esq.                       E-mail is Preferred (or Fax Number)

Case ID: P-GA-865898

⊙ 10-04-2016 11:32 AM
10/04/2016 Tue 11:32

RECEIVED  10/04/2016 12:24   9122333584
(847) 521-4386          → Stephen Stincer, Esq.
                Vanessa Ellinger   (847) 521-4386

                                                                    □ 13
ID: #1221614  Page 13 of 15



# NOTICE OF PAYMENT SCHEDULE

October 4, 2016

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

RE:    OUR CLIENT: John Suber
       OUR CASE ID: P-GA-865898

Dear Stephen Stincer,

Oasis Financial has entered into a Purchase Agreement (attached) with John Suber. Oasis Financial has purchased an interest in the potential proceeds from the legal claim of John Suber.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL OUR PURCHASED INTEREST (PLUS ANY APPLICABLE SECOND FUNDING OR SERVICING FEES) HAS BEEN SATISFIED.**

## OASIS OWNERSHIP AMOUNT

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| October 5, 2016 to April 4, 2017 | $930.00 |
| April 5, 2017 to October 4, 2017 | $1,023.00 |
| October 5, 2017 to January 4, 2018 | $1,395.00 |
| January 5, 2018 to April 4, 2018 | $1,550.00 |
| April 5, 2018 to October 4, 2018 | $1,705.00 |
| October 5, 2018 to April 4, 2019 | $2,015.00 |
| April 5, 2019 and thereafter | $2,170.00 |

| Fees Due at Payment | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $35.00 |

Please call (866) 206-4800 (Press Option 6) or by fax at (847) 521-4392 to receive more information about payment.

**9525 W. Bryn Mawr, Suite 900, Rosemont, IL 60018**
**Phone (847) 521-4400 – Fax (847) 521-4386**
<TO_FAXNUM:1(912) 233-3584>
<NOTE:Case Number P-GA-865898 John Suber>
<TO_NAME: John Suber>

⊙ 10-04-2016 11:32 AM
10/04/2016 Tue 11:32

RECEIVED  10/04/2016 12:24  9122333584   CARDILLO AND STINCER   ☐ 14
(847) 521-4386         → Stephen Stincer, Esq.
Vanessa Ellinger    (847) 521-4386    ID: #1221614  Page 14 of 15

# OASIS FINANCIAL PRIVACY POLICY

Effective date April 2012

The privacy and security of your personal information is important to Oasis. We provide this Privacy Policy to advise you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

## What personal information does Oasis collect?

The types of personal information we collect and share depend on the product or service you have with us, but is clearly stated on our applications. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information can include: name, address, e-mail address, telephone number(s), your date of birth, social security number, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports. We may also use your information in order to obtain additional information regarding you, such as credit or consumer reports.

## How does Oasis share personal information?

We share customers' personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law. Some of this sharing is necessary to provide you with the services you are requesting from us. In the section below, we list the primary reasons we share customers' personal information; the reasons Oasis chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Oasis share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes— such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes—to offer our products and services to you | Yes | Yes |
| For joint marketing with other financial companies | Yes | Yes |
| For our affiliates' everyday business purposes— information related to your transactions and experiences | Yes | No (except CA and VT residents) |
| For our affiliates' everyday business purposes— information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

To limit our sharing, simply complete our Opt-Out form by visiting us at www.Oasisfinancial.com/privacy and follow the instructions on the site.

## Why can't I limit all sharing?

In many circumstances, sharing information is necessary for us to provide you the services you are requesting. Federal law gives you the right to limit only

- sharing for affiliates' everyday business purposes—information about your creditworthiness
- affiliates from using your information to market to you
- sharing for nonaffiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law.

California: In accordance with California law, Oasis Financial will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

Vermont: In accordance with Vermont law, Oasis Financial will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

Case ID P-GA-865898

## How Does Oasis protect my personal information?

To protect your personal information from unauthorized access and use, we use reasonable security measures that comply with applicable laws. These measures include computer safeguards and secured files and buildings. Our agreements with service providers or other nonaffiliated companies require them to treat your personal information in a confidential and secure manner.

## How does Oasis collect my personal information?

We collect your personal information, for example, when you, your attorney, or third parties, such as credit bureaus, affiliates, or other companies provide it to us on applications and other forms, by phone, fax, the Internet, or other delivery services.

## What happens when I limit sharing for an account I hold jointly with someone else?

Your choices will apply to everyone on your account.

## Passive collection of information

While you are on our website, we may automatically track information related to your voluntary use of the website. Such voluntary provided information may include, among other things, URL tracking information, user's browser, user's IP address, files viewed by you and your path through the website, date, time and frequency of accessing website and length of time spent reviewing certain features. In addition we may (i) use pixels provided to us by a third party to track the pages viewed, the number of pages viewed, and the number of customer conversions obtained from third parties and marketing agencies, (ii) place a cookie, provided to us by a third party, on your computer that tracks if you click on an advertisement so that future advertisements can be targeted to you based on the advertisements clicked on by you and/or your other activities on the website.

## Definitions

| | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. |
| | *Our affiliates include Oasis Financial Holding Company, LLC and Oasis Financial Operating Company, LLC* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies |
| | *Nonaffiliates we share with can include companies such as money transfer companies, collection agencies, investment and insurance companies, mortgage and brokerage companies, retailers or marketing companies.* |
| Joint Marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |
| | *Our joint marketing partners include categories of companies such as banks or lending institutions and insurance companies.* |

## Other Terms

We may access or disclose information about you in order to: (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Oasis, our service providers or our customers, including the enforcement of our agreements or policies governing your use of our services; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Oasis' or our service providers' employees, customers or the public. We may also disclose personal information as part of a proposed or actual corporate transaction such as a merger or sale of assets.

Through our website, you can link to other websites of third parties that provide useful information, or who have agreed to offer goods and services to our users. Any personal information you provide on the linked pages is provided directly to the applicable third-party and is subject to that third party's privacy policy.

## Revisions to this Privacy Policy

This Privacy Policy may be revised from time to time by Oasis Financial. We will provide notice on our website that the Privacy Policy has changed, and will otherwise inform you of any changes to the extent required by law. Amendments to this policy will be effective when posted to our website at www.OasisFinancial.com/privacy .

# EXHIBIT G

# PAYMENT INSTRUCTIONS
## Page 1 of 2

**Parties:** Shirley Williams is Seller and Oasis Legal Finance, LLC is Purchaser

**Offer Date:** June 12, 2015

**Purchase Price to Seller:**    $800.00



(please initial)

**Priority Processing featuring new E-Signature:** When Oasis receives your purchase agreement signed by both you and your attorney your funding will move to Next in Line and Oasis will have its Priority Processing staff rush the delivery of your funds in the way you have chosen. E-signature is only available with priority processing. With E-signature you can conveniently sign the purchase agreement through email on yours or a family members' smartphone or home computer. Priority Processing is available with or without E-Signature. A handling fee of $20.00 will be deducted from purchase price-no out of pocket cost to you.

## HOW DO YOU WANT TO RECEIVE YOUR MONEY?

### (Select only one, and please check the box next to the option that you choose):

**Money in Minutes** at any **WESTERN UNION** near you. The Fastest way to get your funding. Many Western Union locations are open late! No waiting on a delivery service or the mail for a check, no check cashing fee, and no waiting on a bank to cash that check or release the cash to you. Many Locations Open Late!
Funds available on the **SAME DAY** if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details.

| Purchase Price to Seller | Handling Fee |
|---|---|
| $0 - $750.00 | $97.00 |
| $751.00 - $1,250.00 | $113.00 |
| $1,251.00 - $2,000.00 | $149.00 |
| $2,001.00 - $5,000.00 | $199.00 |

**Direct Deposit Wire Transfer** to bank account in my name
Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day. Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details:

| Purchase Price to Seller | Handling Fee |
|---|---|
| $0 - $750.00 | $97.00 |
| $751.00 - $1,250.00 | $113.00 |
| $1,251.00 - $2,000.00 | $149.00 |
| $2,001.00 - $5,000.00 | $199.00 |



| | |
|---|---|
| Name of Bank: | |
| Bank's City, State: | |
| Routing/ABA Number: | |
| Account Number: | |
| Bank's Phone Number: | |
| Name on Account: (your name must be on the account) | |

Case ID: P-GA-697418

# PAYMENT INSTRUCTIONS
## Page 2 of 2

[ ] A **Check** sent in my name by **Overnight Delivery** service for delivery by the next business day.
($99.00 deducted from purchase price–no out of pocket cost to you. Overnight delivery does not include weekends.
Saturday delivery available for an extra charge):

Street Address Apt/Unit : _____

City: _____     State: _____     Zip: _____

[ ] A **Check** sent in my name by **U.S. First Class Mail** with Delivery Confirmation
(**Free**– delivered within 5 to 10 days from post date. Not responsible for delays due to postal or bank holidays, or
weekends).

Street Address Apt/Unit : _____

City: _____     State: _____     Zip: _____

**Terms:** Purchaser agrees to provide funds to the Seller as requested below by the Seller. Seller agrees that funds received from
Purchaser are a purchase of property, not a loan, and that Purchaser owns a portion of the potential proceeds from the legal claim.

### Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| June 13, 2015 to December 12, 2015 | $1,200.00 |
| December 13, 2015 to June 12, 2016 | $1,320.00 |
| June 13, 2016 to September 12, 2016 | $1,800.00 |
| September 13, 2016 to December 12, 2016 | $2,000.00 |
| December 13, 2016 to June 12, 2017 | $2,200.00 |
| June 13, 2017 to December 12, 2017 | $2,600.00 |
| December 13, 2017 and thereafter | $2,800.00 |

Please describe how we helped you during these difficult times: _____

_____

By signing below, I hereby agree to the terms of the Payment Instructions and understand that I am responsible for the information
that I have provided on this form and that Purchaser is not responsible for any problem in delivery or transfer of funds, so long as it
follows the instructions provided by the Seller. I also agree to the use of the above statements in any way as Purchaser sees fit.

_Shirley Williams_                     _6/12/15_

Shirley Williams    Purchaser's Signature          Date          Oasis Legal Finance, LLC –          Date
                                                                 Purchaser

## Oasis Legal Finance

## CREDIT AND INFORMATION RELEASE

Oasis Legal Finance, LLC may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction.

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Legal Finance, LLC or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the agreement.

This authorization is valid for purposes of verifying information given pursuant to business negotiations, or any other lawful purpose covered under the Fair Credit Reporting Act. (FCRA).
Upon written request, we will tell you whether we have obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. We also request that by signing below, you certify the information provided by you to Oasis Legal Finance, LLC in your application and underwriting process is true, accurate and complete. You also authorize Oasis Legal Finance LLC to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis Legal Finance, LLC ("Oasis"), or its affiliates any and all information and documents pertaining to my current legal claim or lawsuit, including pleadings, discovery, investigation, contracts, medical records/reports, depositions, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application is true, accurate, and complete.

Shirley Williams

Signature: _Shirley Williams_

Drivers License #

Street Address: 1207 E 68 St        City: Savannah        State: GA        Zip Code: 31404

Date: 6/12/15

Social Security Number: Redacted

Telephone Number: 912 4122854

Date of Birth: Redacted

State of Drivers License:

Case ID: P-GA-697418

# PURCHASE AGREEMENT
### PAGE 1 OF 6

| | |
|---|---|
| **Purchaser:** | Oasis Legal Finance, LLC (Oasis) |
| **Seller:** | Shirley Williams |
| **Purchase Price:** | $800.00 |

### Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| June 13, 2015 to December 12, 2015 | $1,200.00 |
| December 13, 2015 to June 12, 2016 | $1,320.00 |
| June 13, 2016 to September 12, 2016 | $1,800.00 |
| September 13, 2016 to December 12, 2016 | $2,000.00 |
| December 13, 2016 to June 12, 2017 | $2,200.00 |
| June 13, 2017 to December 12, 2017 | $2,600.00 |
| December 13, 2017 and thereafter | $2,800.00 |

**Fees Due at Payment**

| | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Archival and Document Management Fee per Funding | $35.00 |

SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION

IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING. SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.

SELLER:    Shirley Williams     **Address:**     1207 E 58th St, Savannah, GA 31404

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages. I agree to be bound by the terms and conditions of this Purchase Agreement. This Agreement shall not be effective until the Purchase Price is paid to Seller.

Seller's Signature ~~Shirley Williams~~   Date 6/12/15   Purchaser' Signature     Date

Shirley Williams         Oasis Legal Finance, LLC - Purchaser

## SECTION 1.    DEFINITIONS.

1.1    **"Legal Claim"** means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

1.2    **"Oasis Ownership Amount"** is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

1.3    **"Proceeds"** means whatever you receive as a result of the legal claim, for example through a judgment. Arbitration or the like.

1.4    **"Purchased Interest"** means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

# PURCHASE AGREEMENT
### PAGE 2 OF 6

1.5     **"Purchaser"** means Oasis Legal Finance, LLC.

1.6     **"Seller"** means Shirley Williams.

1.7     **"Seller's Attorney"** means, collectively, Stephen Stincer, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.**     **SELLER'S STATEMENTS.** Seller states to Purchaser as follows:

2.1     **Purchase and Sale.** Seller sells, and the Purchaser buys, the Purchased Interest.

2.2     **Title; Capacity.** Seller believes the Legal Claim to be meritorious and filed in good faith. Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

2.3     **Information True, Complete and Correct.** Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3. SELLER'S ACKNOWLEDGEMENTS.** Seller acknowledges the following:

3.1     **Risk of Loss.** This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser. The Oasis Ownership Amount has been negotiated to account for such risk.

3.2     **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.** Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

3.3     **No Previous Encumbrance** Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4. PURCHASER'S ACKNOWLEDGEMENT.** Purchaser acknowledges the following:

4.1     **Purchaser's Acknowledgment.** Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5. SELLER'S AGREEMENTS.** Seller agrees as follows:

5.1     **Treatment of Transaction.** Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes). Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

5.2     **Treatment in Bankruptcy.** If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

5.3     **No Assignment.** Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death. In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

⊙ 06-12-2015 10:03 AM
06/12/2015 Fri 10:03

RECEIVED  06/12/2015 10:57  9122333564          CARDILLO AND STINGER
(847) 897-3143                  →Stephen Stincer, Esq.                                    D 8
Brandon Reisman    (847) 897-3143          ID: #1019013  Page 8 of 15

# PURCHASE AGREEMENT
### PAGE 3 OF 6

**5.4    Prosecution of Claim and Facilitation of Payment.**  Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

**5.5    Subsequent Case Review.**  Seller agrees to an additional case review charge of $20.00 each time seller requests and receives additional funding from Purchaser.

**5.6    Case Servicing Fee.**  Seller agrees to pay to Purchaser a case servicing fee of $35.00 every six (6) months or increment thereof.  Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

**5.7    Archiving and Document Management Fee.**  Seller agrees to pay to Purchaser a fee of $35.00 per funding to defray Seller's archiving and document management costs.  Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount

**5.8    Substitution of Attorneys in the Legal Claim.**  If Seller determines to hire new or additional attorneys to represent Seller in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

**5.9    No Assignment of Workers Compensation Benefits.**  The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

**5.10    Requests for Documents and Information.**  Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with: (a) prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6.  PAYMENT AND PRIORITY.

**6.1    Priority Payment to Purchaser.**  Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount.  If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens. **If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Purchaser shall receive nothing**

**6.2    Mechanics and Timing of Payment.**  The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction. Seller agrees not to have the Oasis Ownership amount paid to him. Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis.  Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller.  The Oasis Ownership Amount shall be determined as of the date it is received by Oasis. Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser.  Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

**6.3    Risk of Loss.**  Purchaser and Seller acknowledge that the Purchased Interest may be worthless.  Purchaser accepts the risk of loss with respect to the Purchased Interest.

**6.4    RIGHT TO PAY PURCHASER FROM ANY SOURCE.    THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME**

# PURCHASE AGREEMENT
### PAGE 4 OF 6

WITHOUT PENALTY PRIOR TO THE PROCEEDS DUE FROM THE LEGAL CLAIM BEING DISTRIBUTED. IF SELLER SO ELECTS, PAYMENT MUST BE RECEIVED AND ACKNOWLEDGED BY PURCHASER PRIOR TO SELLER RECEIVING ANY PROCEEDS FROM THE LEGAL CLAIM. UPON SELLER'S RECEIPT OF THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT, PURCHASER SHALL BE DEEMED TO HAVE TENDERED BACK TO SELLER PURCHASER'S INTEREST IN THE PROCEEDS.

SECTION 7. EVENT OF DEFAULT; SPECIFIC DEFAULT; RIGHT OF RESCISSION.

7.1    **Event of Default.** The breach by Seller of any of Seller's obligations under this Purchase Agreement shall constitute an "Event of Default" hereunder. In an Event of Default, Purchaser shall have all rights, powers, and remedies provided in the Purchase Agreement and as allowed by law or in equity.

7.2    **Seller's Right of Rescission.** CONSUMER'S RIGHT TO CANCELLATION: YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE THE PURCHASE PRICE FROM PURCHASER.

TO CANCEL THIS AGREEMENT, YOU MUST EITHER:

(I)    RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER BY DELIVERING THE UNCASHED CHECK TO PURCHASER IN PERSON WITHIN FIVE (5) BUSINESS DAYS; OR

(II)    MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) BUSINESS DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S ADDRESS AS SET FORTH IN <u>SECTION 8.2</u> BELOW.

SECTION 8.    MISCELLANEOUS.

8.1    **Survival of Representations.** All of the representations, warranties, covenants and Purchase Agreements of the parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

8.2    **Notices.** All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the parties at the following addresses:

if to Purchaser, to:    Oasis Legal Finance, LLC
9525 W. Bryn Mawr, Suite 900
Rosemont, IL 60018
Attn:    Controller

and if to Seller, to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the parties hereto shall have specified in writing to the other.

8.3    **Financing Statements and Additional Documents.** Seller irrevocably authorizes Purchaser at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto. Purchaser may indicate the following information in such financial statements and amendments: (a) that a portion of the proceeds that are derived from the Legal Claim are owned by Purchaser; and (b) any other information required, in Purchaser's discretion, by the Uniform Commercial Code in any relevant jurisdiction.

8.4    **Release to Contact Third Parties.** As part of this Purchase Agreement it may be necessary to disclose information to third parties. Seller explicitly and irrevocably authorizes Purchaser to disclose any information to third parties as

# PURCHASE AGREEMENT
### PAGE 5 OF 6

it deems appropriate to the extent permitted by law and also as referenced in the Oasis Legal Finance, LLC privacy policy. Seller releases Purchaser from any and all liability as a result of the release of any information.

**8.5     Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**8.6     Governing Law and Forum.** This Purchase Agreement, and all lawsuits, disputes, claims, or proceedings arising out of or relating to this Purchase Agreement or the relationships that result from this Purchase Agreement, shall be governed, construed and enforced in accordance with the laws of the State of Georgia.

The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in an inconvenient forum.

Each of the parties to the Contract further irrevocably consents to the service of process out of the Circuit Court of Cook County, Illinois by mailing copies thereof by Registered or Certified United States mail, postage prepaid, to each of the parties of the Purchase Agreement at its address specified in this Contract.

**8.7     Waiver of Jury Trial, Consolidation and Class Action; Costs.**

THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.

THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.

**8.8     Counterparts and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.

**8.9     Assignment; Use of Information.** Purchaser's rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller. Seller's rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser, except for transfer by intestate due to Seller's death in which case Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller agrees that Purchaser may share information that Purchaser obtained about Seller (whether from Seller or other person or entity) with potential assignees to whom Purchaser may assign its rights and obligations under this Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser; and (ii) Purchaser enters into an appropriate confidentiality Purchase Agreement with any such potential assignee.

**8.10     No Third Party Beneficiaries; Successors and Assigns.** Subject to the provisions of Section 8.9, (a) this Purchase Agreement is solely for the benefit of Purchaser and Seller; and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

**8.11     Severability.** If any provision of this Purchase Agreement or the application of any such provision to any

06-12-2015 10:03 AM
06/12/2015 Fri 10:03
(847) 897-3143
Brandon Reisman
→ Stephen Stincer, Esq.
(847) 897-3143
D 11
ID: #1019013  Page 11 of 15

# PURCHASE AGREEMENT
### PAGE 6 OF 6

party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that any term or provision of this Purchase Agreement is invalid or unenforceable, the parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

8.12  **Legal Representation.**  SELLER UNDERSTANDS AND ACKNOWLEDGES THAT:  (A) PURCHASER HAS RECOMMENDED THAT SELLER ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.

8.13  **Construction.**  The parties intend that this Purchase Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement

(REMAINDER OF PAGE LEFT INTENTIONALLY BLANK).



# NOTICE OF PAYMENT SCHEDULE

June 12, 2015

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

RE:     OUR CLIENT: Shirley Williams
          OUR CASE ID: P-GA-697418

Dear Stephen Stincer,

Oasis Legal Finance LLC has entered into a Purchase Agreement (attached) with Shirley Williams. Oasis Legal Finance has purchased an interest in the potential proceeds from the legal claim of Shirley Williams.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL OUR PURCHASED INTEREST (PLUS ANY APPLICABLE SECOND FUNDING OR SERVICING FEES) HAS BEEN SATISFIED.**

### OASIS OWNERSHIP AMOUNT

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| June 13, 2015 to December 12, 2015 | $1,200.00 |
| December 13, 2015 to June 12, 2016 | $1,320.00 |
| June 13, 2016 to September 12, 2016 | $1,800.00 |
| September 13, 2016 to December 12, 2016 | $2,000.00 |
| December 13, 2016 to June 12, 2017 | $2,200.00 |
| June 13, 2017 to December 12, 2017 | $2,600.00 |
| December 13, 2017 and thereafter | $2,800.00 |

| Fees Due at Payment | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $35.00 |

Please call (866) 206-4800 (Press Option 6) or by fax at (847) 521-4392 to receive more information about payment.

9525 W. Bryn Mawr, Suite 900, Rosemont, IL 60018
Phone (847) 521-4349 – Fax (847) 897-3143
<TO_FAXNUM:1(912) 233-3584>
<NOTE:Case Number P-GA-697418 Shirley Williams>
<TO_NAME: Shirley Williams>

Case ID: P-GA-697418

⊙ 06-12-2015 10:03 AM
06/12/2015 Fri 10:03

RECEIVED 06/12/2015 10:57 9122333584
(847) 897-3143 →Stephen Stincer, Esq.
Brandon Reisman (847) 897-3143

CARDILLO AND STINGER
□ 14
ID: #1019013 Page 14 of 15

# OASIS LEGAL FINANCE, LLC PRIVACY POLICY

**Effective date April 2012**

The privacy and security of your personal information is important to Oasis. We provide this Privacy Policy to advise you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

## What personal information does Oasis collect?

The types of personal information we collect and share depend on the product or service you have with us, but is clearly stated on our applications. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information can include: name, address, e-mail address, telephone number(s), your date of birth, social security number, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports. We may also use your information in order to obtain additional information regarding you, such as credit or consumer reports.

## How does Oasis share personal information?

We share customers' personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law. Some of this sharing is necessary to provide you with the services you are requesting from us. In the section below, we list the primary reasons we share customers' personal information; the reasons Oasis chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Oasis share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes— such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes—to offer our products and services to you | Yes | Yes |
| For joint marketing with other financial companies | Yes | Yes |
| For our affiliates' everyday business purposes— information related to your transactions and experiences | Yes | No (except CA and VT residents) |
| For our affiliates' everyday business purposes— information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

**To limit our sharing, simply complete our Opt-Out form by visiting us at www.oasislegal.com/privacy and follow the instructions on the site.**

## Why can't I limit all sharing?

In many circumstances, sharing information is necessary for us to provide you the services you are requesting. Federal law gives you the right to limit only

- sharing for affiliates' everyday business purposes—information about your creditworthiness
- affiliates from using your information to market to you
- sharing for nonaffiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law.

**California:** In accordance with California law, Oasis Legal Finance will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

**Vermont:** In accordance with Vermont law, Oasis Legal Finance will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

Case ID: P-GA-697418

## How Does Oasis protect my personal information?

To protect your personal information from unauthorized access and use, we use reasonable security measures that comply with applicable laws. These measures include computer safeguards and secured files and buildings. Our agreements with service providers or other nonaffiliated companies require them to treat your personal information in a confidential and secure manner.

## How does Oasis collect my personal information?

We collect your personal information, for example, when you, your attorney, or third parties, such as credit bureaus, affiliates, or companies provide it to us on applications and other forms, by phone, fax, the Internet, or other delivery services.

## What happens when I limit sharing for an account I hold jointly with someone else?

Your choices will apply to everyone on your account.

## Passive collection of information

While you are on our website, we may automatically track information related to your voluntary use of the website. Such voluntary provided information may include, among other things, URL tracking information, user's browser, user's IP address, files viewed by you and your path through the website, date, time and frequency of accessing website and length of time spent reviewing certain features. In addition we may (i) use pixels provided to us by a third party to track the pages viewed, the number of pages viewed, and the number of customer conversions obtained from third parties and marketing agencies, (ii) place a cookie, provided to us by a third party, on your computer that tracks if you click on an advertisement so that future advertisements can be targeted to you based on the advertisements clicked on by you and/or your other activities on the website.

## Definitions

| | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. |
| | *Our affiliates include Oasis Legal Finance Holding Company, LLC and Oasis Legal Finance Operating Company, LLC* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies |
| | *Nonaffiliates we share with can include companies such as money transfer companies, collection agencies, investment and insurance companies, mortgage and brokerage companies, retailers or marketing companies.* |
| Joint Marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |
| | *Our joint marketing partners include categories of companies such as banks or lending institutions and insurance companies.* |

## Other Terms

We may access or disclose information about you in order to: (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Oasis, our service providers or our customers, including the enforcement of our agreements or policies governing your use of our services; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Oasis' or our service providers' employees, customers or the public. We may also disclose personal information as part of a proposed or actual corporate transaction such as a merger or sale of assets.

Through our website, you can link to other websites of third parties that provide useful information, or who have agreed to offer goods and services to our users. Any personal information you provide on the linked pages is provided directly to the applicable third-party and is subject to that third party's privacy policy.

## Revisions to this Privacy Policy

This Privacy Policy may be revised from time to time by Oasis Legal Finance, LLC. We will provide notice on our website that the Privacy Policy has changed, and will otherwise inform you of any changes to the extent required by law. Amendments to this policy will be effective when posted to our website at www.oasislegal.com/privacy .

Case ID: P-GA-697418

⊙ 06-12-2015 10:03 AM
06/12/2015 Fri 10:03

RECEIVED 06/12/2015 16:37 3122333504
(847) 897-3143 →Stephen Stincer, Esq.
Brandon Reisman (847) 897-3143

CARDILLO AND STINCER
D 12
ID:#1019013 Page 12 of 15

# IRREVOCABLE LETTER OF DIRECTION
### Sent by Fax to (912) 233-3584 and by US Mail

June 12, 2015

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

Dear Stephen Stincer,

Be advised that I have sold a portion of the proceeds of my legal claim equal to the Oasis Ownership Amount to Oasis Legal Finance, LLC. I, Shirley Williams, hereby irrevocably direct Stephen Stincer or any subsequent attorney(s) and law firms that may represent me, to tender the Oasis Ownership Amount to Oasis Legal Finance, LLC pursuant to this purchase agreement from any and all of the proceeds due to me from the legal claim(s)/case(s) in which you represent me, after payment of any and all legal fees and reimbursable costs before releasing any funds to me unless Oasis Legal Finance LLC advises you that I have already paid to them the Oasis Ownership Amount in full. If any dispute arises over the amount owed Oasis, I instruct you NOT to release any funds to me until that dispute is resolved. If a check is sent in my name, I hereby grant you a limited, irrevocable power of attorney to endorse and deposit my check into your trust account and pay to Oasis Legal Finance, LLC, its Ownership Amount, before releasing any funds to me. I also state that I do not have any significant outstanding child support obligations. I understand that any such significant outstanding child support obligation may delay or prevent my funding.

_____
SW
(please initial)

I have read the Purchase Agreement and fully understand my obligations. I understand that Oasis has relied on this Irrevocable Letter of Direction to fund the Purchase Agreement, that the purchase price is $800.00, and that the Oasis Ownership Amount will increase based on a multiple of the purchase price and the date Oasis receives payment per the Purchase Agreement. In the event that you no longer represent me, I instruct you to provide Oasis with any insurance, attorney or other information requested that will allow it to protect its interest and to follow my irrevocable instructions. This letter may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute an agreement. By signing the acknowledgement below, you acknowledge that this letter is from me and that you will comply with this Irrevocable Letter of Direction

Sincerely,

_____
Shirley Williams

### ATTORNEY ACKNOWLEDGMENT

- I, Stephen Stincer, Esq., acknowledge receipt of this Letter and the Purchase Agreement from my client.
- My fee agreement is on a contingency basis and there are liens (exclusive of attorneys fees and costs) against the case of approximately $_____, and I will honor my client's irrevocable letter of direction, subordinate to attorney fees, costs and appropriate medical liens as per instructions above. I acknowledge that Shirley Williams has the right to pay the Oasis Ownership Amount in full from any source at any time prior to distribution of the proceeds.
- I fully expect and anticipate that any proceeds from the legal claim will be sent to me from the defendant and/or insurance company, and not to the Plaintiff, and I agree that all disbursements of funds, including plaintiff's share of proceeds, will be through my attorney trust account,
- I have not and will not accept any advice, direction or payment from Oasis Legal Finance LLC regarding the legal claim.
- To the best of my knowledge, Shirley Williams has NOT received any previous cash fundings on his/her legal claim(s), except for the Purchase Agreement dated Apr 13, 2015 with Oasis Legal Finance, LLC.
- Without the prior written consent of Oasis Legal Finance, LLC, I will not participate in or acknowledge any future cash fundings for Shirley Williams.

How should we contact your office for case updates?

_____
Stephen Stincer, Esq.

_____
E-mail is Preferred (or Fax Number)

Case ID: P-GA-697418

```
                    TRANSMISSION VERIFICATION REPORT

                                        TIME  : 06/12/2015 12:54
                                        NAME  : CARDILLO AND STINCER
                                        FAX   : 9122333584
                                        TEL   : 9122338922
                                        SER.# : K1J883805


        DATE,TIME                       06/12  12:48
        FAX NO./NAME                    18478973143
        DURATION                        00:05:43
        PAGE(S)                         15
        RESULT                          OK
        MODE                            STANDARD
```

```
          ┌─────────────────────────────────────────┐
          │   TRANSMISSION VERIFICATION REPORT       │
          └─────────────────────────────────────────┘

                                    TIME   : 06/12/2015 13:24
                                    NAME   : CARDILLO AND STINCER
                                    FAX    : 9122333584
                                    TEL    : 9122338922
                                    SER.#  : K1J883805


┌──────────────────────────────────────────────────────────────────────┐
│                                                                        │
│   DATE,TIME                        06/12  13:23                         │
│   FAX NO./NAME                     18478973143                          │
│   DURATION                         00:00:35                             │
│   PAGE(S)                          01                                   │
│   RESULT                           OK                                   │
│   MODE                             STANDARD                             │
│                                                                        │
└──────────────────────────────────────────────────────────────────────┘
```

## PAYMENT INSTRUCTIONS
### Page 1 of 2

Parties: Shirley Williams is Seller and Oasis Legal Finance, LLC is Purchaser

Offer Date: August 12, 2015

Purchase Price to Seller:    $1,000.00



(please initial)

**Priority Processing featuring new E-Signature:** When Oasis receives your purchase agreement signed by both you and your attorney your funding will move to Next in Line and Oasis will have its Priority Processing staff rush the delivery of your funds in the way you have chosen. E-signature is only available with priority processing. With E-signature you can conveniently sign the purchase agreement through email on yours or a family members' smartphone or home computer. Priority Processing is available with or without E-Signature. A handling fee of $20.00 will be deducted from purchase price-no out of pocket cost to you.

## HOW DO YOU WANT TO RECEIVE YOUR MONEY?

### (Select only one, and please check the box next to the option that you choose):

☑ Money in Minutes at any [WESTERN UNION] near you.   The Fastest way to get your funding. Many Western Union locations are open late! No waiting on a delivery service or the mail for a check, no check cushing fee, and no waiting on a bank to cash that check or release the cash to you. Many Locations Open Late!
Funds available on the **SAME DAY** if Oasis receives the purchase agreement signed both by you and your attorney by 4:00 p.m. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details.

| Purchase Price to Seller | Handling Fee |
|---|---|
| $0 - $750.00 | $97.00 |
| $751.00 - $1,250.00 | $113.00 |
| $1,251.00 - $2,000.00 | $149.00 |
| $2,001.00 - $5,000.00 | $159.00 |

☐ **Direct Deposit Wire Transfer** to bank account in my name
Direct deposit wire transfer is possible when Oasis receives the signed (by you and your attorney) purchase agreement by 2:00 p.m. on the funding day. Oasis is not responsible for any hold placed on the funds, or any additional fees charged by the receiving bank. A handling fee will be deducted from purchase price-no out of pocket cost to you-see schedule below for details:

| Purchase Price to Seller | Handling Fee |
|---|---|
| $0 - $750.00 | $97.00 |
| $751.00 - $1,250.00 | $113.00 |
| $1,251.00 - $2,000.00 | $149.00 |
| $2,001.00 - $5,000.00 | $159.00 |



Note: The routing and account numbers may be in different places on your check

| | |
|---|---|
| Name of Bank: | |
| Bank's City, State: | |
| Routing/ABA Number: | |
| Account Number: | |
| Bank's Phone Number: | |
| Name on Account: (your name must be on the account) | |

Case ID: P-GA-697418

# PAYMENT INSTRUCTIONS
## Page 2 of 2

☐ A **Check** sent in my name by **Overnight Delivery** service for delivery by the next business day.
($99.00 deducted from purchase price-no out of pocket cost to you.  Overnight delivery does not include weekends.
Saturday delivery available for an extra charge):

Street Address Apt/Unit : _____

City: _____    State: _____    Zip: _____

☐ A **Check** sent in my name by **U.S. First Class Mail** with Delivery Confirmation
(**Free**– delivered within 5 to 10 days from post date.  Not responsible for delays due to postal or bank holidays, or
weekends).

Street Address Apt/Unit: _____

City: _____    State: _____    Zip: _____

**Terms:** Purchaser agrees to provide funds to the Seller as requested below by the Seller. Seller agrees that funds received from
Purchaser are a purchase of property, not a loan, and that Purchaser owns a portion of the potential proceeds from the legal claim.

### Oasis Ownership Amount

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| August 13, 2015 to February 12, 2016 | $1,500.00 |
| February 13, 2016 to August 12, 2016 | $1,650.00 |
| August 13, 2016 to November 12, 2016 | $2,250.00 |
| November 13, 2016 to February 12, 2017 | $2,500.00 |
| February 13, 2017 to August 12, 2017 | $2,750.00 |
| August 13, 2017 to February 12, 2018 | $3,250.00 |
| February 13, 2018 and thereafter | $3,500.00 |

· Please describe how we helped you during these difficult times:

_____

By signing below, I hereby agree to the terms of the Payment Instructions and understand that I am responsible for the information
that I have provided on this form and that Purchaser is not responsible for any problem in delivery or transfer of funds, so long as it
follows the instructions provided by the Seller.  I also agree to the use of the above statements in any way as Purchaser sees fit.

_Shirley Williams_  _8/12/15_

Shirley Williams / Purchaser's Signature              Date                Oasis Legal Finance, LLC -        Date
                                                                          Purchaser

## Oasis Legal Finance

### CREDIT AND INFORMATION RELEASE

Oasis Legal Finance, LLC may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction.

PLEASE READ CAREFULLY: BY MY SIGNATURE BELOW, I hereby authorize, without any reservation any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by Oasis Legal Finance, LLC or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction and at any time after the transaction until I have completely satisfied my obligations under the agreement.

This authorization is valid for purposes of verifying information given pursuant to business negotiations, or any other lawful purpose covered under the Fair Credit Reporting Act (FCRA).

Upon written request, we will tell you whether we have obtained a credit report and, if so, the name and address of the credit reporting agency that provided it. We also request that by signing below, you certify the information provided by you to Oasis Legal Finance, LLC in your application and underwriting process is true, accurate and complete. You also authorize Oasis Legal Finance LLC to report this transaction and matters related to it to any of the above entities.

Additionally, I the undersigned, direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Oasis Legal Finance, LLC ("Oasis"), or its affiliates any and all information and documents pertaining to my current legal claim or lawsuit, including pleadings, discovery, investigation, contracts, medical records/reports, depositions, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections. A copy and/or facsimile of this authorization bearing the signature of the undersigned shall be deemed to be the equivalent of the original.

I certify that the information provided by me to Oasis in my application is true, accurate, and complete.

Shirley Williams

Date: 8/12/15

Social Security Number: Redacted

Signature: *Shirley Williams*

Telephone Number: 912 412 2804

Date of Birth: Redacted /5-3

Drivers License #

State of Drivers License:

Street Address     City     State     Zip Code

Case ID: P-GA-697418

## PURCHASE AGREEMENT
### PAGE 1 OF 6

| | |
|---|---|
| **Purchaser:** | Oasis Legal Finance, LLC (Oasis) |
| **Seller:** | Shirley Williams |
| **Purchase Price:** | $1,000.00 |

**Oasis Ownership Amount**

| Payment Schedule | Oasis Ownership Amount |
|---|---|
| August 13, 2015 to February 12, 2016 | $1,500.00 |
| February 13, 2016 to August 12, 2016 | $1,650.00 |
| August 13, 2016 to November 12, 2016 | $2,250.00 |
| November 13, 2016 to February 12, 2017 | $2,500.00 |
| February 13, 2017 to August 12, 2017 | $2,750.00 |
| August 13, 2017 to February 12, 2018 | $3,250.00 |
| February 13, 2018 and thereafter | $3,500.00 |

**Fees Due at Payment**

| | |
|---|---|
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Archival and Document Management Fee per Funding | $35.00 |

SELLER EXPLICITLY AFFIRMS THAT THE LEGAL CLAIM REFERENCED HEREIN WAS BROUGHT IN GOOD FAITH, PREDATES THIS PURCHASE AGREEMENT, AND THAT NO PART OF THE PURCHASE PRICE WILL BE USED TO SUPPORT, DIRECT OR MAINTAIN THE LEGAL CLAIM OR ITS PROSECUTION

IF SELLER COMPLIES WITH THIS PURCHASE AGREEMENT AND RECOVERS NOTHING FROM THE LEGAL CLAIM CITED BELOW, THEN PURCHASER SHALL RECEIVE NOTHING. SELLER IS NOT ENTITLED TO RECEIVE ANY PROCEEDS UNTIL PURCHASER HAS RECEIVED THE OASIS OWNERSHIP AMOUNT.

SELLER:    Shirley Williams    **Address:**    1207 E 58th St, Savannah, GA 31404

I certify that I have read and agree to the statements above and the entire Purchase Agreement consisting of six (6) pages. I agree to be bound by the terms and conditions of this Purchase Agreement. This Agreement shall not be effective until the Purchase Price is paid to Seller.

Seller's Signature *Shirley Williams* Date 8/12/15 Purchaser' Signature    Date

Shirley Williams           Oasis Legal Finance, LLC - Purchaser

## SECTION 1. DEFINITIONS.

1.1 **"Legal Claim"** means (a) the pending legal action and/or lawsuit to obtain money or property in which the Seller is engaged as a result of injuries and/or damages arising out of a personal injury or other claim; (b) all applicable proceedings, proceedings on appeal or remand, enforcement, ancillary, parallel, or alternative dispute resolution proceedings and processes arising out of or relating to such case; (c) any other proceedings founded on the underlying facts giving rise to such case in which Seller is a party.

1.2 **"Oasis Ownership Amount"** is the amount Purchaser is to be paid out of the Proceeds and as determined as of the date Purchaser receives payment based on the Payment Schedule on Page 1 of this Purchase Agreement.

1.3 **"Proceeds"** means whatever you receive as a result of the legal claim, for example through a judgment. Arbitration or the like.

1.4 **"Purchased Interest"** means the right to receive a portion of the Proceeds equal to the Oasis Ownership Amount on the further terms and conditions provided for in this Purchase Agreement.

# PURCHASE AGREEMENT
### PAGE 2 OF 6

**1.5** "**Purchaser**" means Oasis Legal Finance, LLC.

**1.6** "**Seller**" means Shirley Williams.

**1.7** "**Seller's Attorney**" means, collectively, Stephen Stincer, Esq., which is Seller's attorney(s) in respect of the Legal Claim and any substitute, new or additional attorney representing Seller in the Legal Claim.

**SECTION 2.**    **SELLER'S STATEMENTS.** Seller states to Purchaser as follows:

**2.1**    **Purchase and Sale.** Seller sells, and the Purchaser buys, the Purchased Interest.

**2.2**    **Title; Capacity.** Seller believes the Legal Claim to be meritorious and filed in good faith. Seller is the plaintiff in the Legal Claim and has full right, title and interest in, to and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Purchase Agreement.

**2.3**    **Information True, Complete and Correct.** Seller warrants that all information provided to Purchaser is true complete and correct and that Seller has informed Purchaser of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**SECTION 3. SELLER'S ACKNOWLEDGEMENTS.** Seller acknowledges the following:

**3.1**    **Risk of Loss.** This transaction involves a substantial economic risk and a bona fide risk of loss to Purchaser. The Oasis Ownership Amount has been negotiated to account for such risk.

**3.2**    **No Attorney-Client Relationship; No Obligations with Respect to Legal Claim.** Purchaser is not engaged in the practice of law and is not serving as Seller's attorney and does not assume or have any responsibility or obligation of any kind whatsoever to Seller or Seller's Attorney in connection with the Legal Claim.

**3.3**    **No Previous Encumbrance** Seller has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no pending or threatened claims, liens, or judgments against Seller or Seller's assets that would materially impair the value, priority or collectibility of the Proceeds payable to Seller in connection with the Legal Claim or the amounts owed to Purchaser pursuant to this Purchase Agreement.

**SECTION 4. PURCHASER'S ACKNOWLEDGEMENT.** Purchaser acknowledges the following:

**4.1**    **Purchaser's Acknowledgment.** Purchaser acknowledges and agrees that Purchaser shall have no right to and will not make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof and that the right to make such decisions remains solely with Seller and Seller's Attorney.

**SECTION 5. SELLER'S AGREEMENTS.** Seller agrees as follows:

**5.1**    **Treatment of Transaction.** Seller agrees to treat and report the sale and purchase of the Purchased Interest as a sale transaction and not as a loan for all purposes (including tax purposes). Purchaser and Seller agree that this is a purchase and sale and that no creditor relationship has been created between them.

**5.2**    **Treatment in Bankruptcy.** If Seller commences or has commenced against it any case or other proceeding pursuant to any bankruptcy, insolvency or similar law prior to payment of the full Oasis Ownership Amount to Purchaser, Seller shall cause the Purchased Interest to be described as an asset of Purchaser (and not as a debt obligation of Seller) in any oral or written communications, including, without limitation, any schedule or other document filed in connection with such case or proceeding.

**5.3**    **No Assignment.** Seller shall not sell, assign, pledge, or transfer (whether voluntarily, by operation of law or otherwise) any interest in the Legal Claim or the Proceeds without the prior written consent of Purchaser, except for transfers by intestate due to Seller's death. In the event an interest in the Legal Claim or the Proceeds is transferred by intestate due to Seller's death, Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement.

# PURCHASE AGREEMENT
## PAGE 3 OF 6

**5.4    Prosecution of Claim and Facilitation of Payment.** Seller intends to use its best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment and shall use its best efforts to enforce collection of all sums due under this purchase agreement including executing the release and disbursement sheet.

**5.5    Subsequent Case Review.** Seller agrees to an additional case review charge of $20.00 each time seller requests and receives additional funding from Purchaser.

**5.6    Case Servicing Fee.** Seller agrees to pay to Purchaser a case servicing fee of $35.00 every six (6) months or increment thereof. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount.

**5.7    Archiving and Document Management Fee.** Seller agrees to pay to Purchaser a fee of $35.00 per funding to defray Seller's archiving and document management costs. Said sum(s) shall be due at the time Seller pays to Purchaser its ownership amount

**5.8    Substitution of Attorneys in the Legal Claim.** If Seller determines to hire new or additional attorneys to represent Seller in the Legal Claim, Seller agrees that, prior to such hiring, Seller shall (a) provide Purchaser with written notice of such determination and (b) deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney, (c) require such new or additional attorney to execute and deliver to Purchaser an Attorney Acknowledgement of the Irrevocable Letter of Direction. Any such new or additional attorney(s) shall be considered part of "Seller's Attorney in the Legal Claim" upon such hiring for all purposes of this Agreement.

**5.9    No Assignment of Workers Compensation Benefits.** The parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined by state law.

**5.10    Requests for Documents and Information.** Seller shall provide and authorizes and directs Seller's Attorney to provide Purchaser with: (a) prompt written notice of any receipt by Seller or Seller's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

## SECTION 6. PAYMENT AND PRIORITY.

**6.1    Priority Payment to Purchaser.** Seller shall not be entitled to receive any Proceeds until Purchaser has received the Oasis Ownership Amount. If the Proceeds are insufficient to pay the Oasis Ownership Amount in full, Purchaser shall receive all of the Proceeds, subordinate to only attorneys' fees and costs and medical liens. **If Seller complies with this purchase agreement and recovers nothing from the legal claim, then Purchaser shall receive nothing**

**6.2    Mechanics and Timing of Payment.** The Oasis Ownership Amount shall be paid to Purchaser by the Seller's Attorney in accordance with the Irrevocable Letter of Direction. Seller agrees not to have the Oasis Ownership amount paid to him. Should the Oasis Ownership Amount be paid to Seller, Seller is appointed as Purchaser's trustee with respect to said Oasis Ownership Amount, and Seller acknowledges and accepts the trust and that Seller holds the Oasis Ownership amount in trust for Oasis. Seller then shall pay such amounts to Purchaser within ten days of receipt of the Proceeds in the Legal Claim by Seller. The Oasis Ownership Amount shall be determined as of the date it is received by Oasis. Seller waives any and all defenses with respect to the sale of the Purchased Interest and agrees not to avoid payment of any Proceeds that are payable to Purchaser. Purchaser reserves the right to assess an additional 1.5 percent (or the highest amount allowed by law, whichever is lower) per month late fee if the Oasis Ownership Amount is more than 10 days past due.

**6.3    Risk of Loss.** Purchaser and Seller acknowledge that the Purchased Interest may be worthless. Purchaser accepts the risk of loss with respect to the Purchased Interest.

**6.4    RIGHT TO PAY PURCHASER FROM ANY SOURCE.    THE SELLER MAY ELECT TO PAY PURCHASER THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT FROM ANY SOURCE AT ANY TIME**

# PURCHASE AGREEMENT
### PAGE 4 OF 6

WITHOUT PENALTY PRIOR TO THE PROCEEDS DUE FROM THE LEGAL CLAIM BEING DISTRIBUTED. IF SELLER SO ELECTS, PAYMENT MUST BE RECEIVED AND ACKNOWLEDGED BY PURCHASER PRIOR TO SELLER RECEIVING ANY PROCEEDS FROM THE LEGAL CLAIM. UPON SELLER'S RECEIPT OF THE FULL AMOUNT OF ITS OWNERSHIP AMOUNT, PURCHASER SHALL BE DEEMED TO HAVE TENDERED BACK TO SELLER PURCHASER'S INTEREST IN THE PROCEEDS.

SECTION 7. EVENT OF DEFAULT; SPECIFIC DEFAULT; RIGHT OF RESCISSION.

     **7.1**     **Event of Default.** The breach by Seller of any of Seller's obligations under this Purchase Agreement shall constitute an "Event of Default" hereunder. In an Event of Default, Purchaser shall have all rights, powers, and remedies provided in the Purchase Agreement and as allowed by law or in equity.

     **7.2**     **Seller's Right of Rescission.** CONSUMER'S RIGHT TO CANCELLATION: YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE YOU RECEIVE THE PURCHASE PRICE FROM PURCHASER.

TO CANCEL THIS AGREEMENT, YOU MUST EITHER:

         (I)     RETURN THE FULL AMOUNT OF THE PURCHASE PRICE TO PURCHASER BY DELIVERING THE UNCASHED CHECK TO PURCHASER IN PERSON WITHIN FIVE (5) BUSINESS DAYS; OR

         (II)     MAIL NOTICE OF CANCELLATION ALONG WITH THE FULL AMOUNT OF THE PURCHASE PRICE (EITHER BY RETURN OF PURCHASER'S UNCASHED CHECK, REGISTERED OR CERTIFIED CHECK, OR MONEY ORDER) BY INSURED, REGISTERED OR CERTIFIED U.S. MAIL, POSTMARKED ON OR WITHIN FIVE (5) BUSINESS DAYS OF RECEIVING THE PURCHASE PRICE, TO PURCHASER'S ADDRESS AS SET FORTH IN SECTION 8.2 BELOW.

SECTION 8.    MISCELLANEOUS.

     **8.1**     **Survival of Representations.** All of the representations, warranties, covenants and Purchase Agreements of the parties hereto contained in this Purchase Agreement or contained in any document furnished or to be furnished hereunder shall survive the date of this Purchase Agreement.

     **8.2**     **Notices.** All notices and other communications given or made pursuant to this Purchase Agreement shall be in writing. All such notices or communications shall be deemed to have been given or made delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the parties at the following addresses:

if to Purchaser, to:      Oasis Legal Finance, LLC
                       9525 W. Bryn Mawr, Suite 900
                       Rosemont, IL 60018
                       Attn:     Controller

and if to Seller, to the address set forth on the first page of this Purchase Agreement, or at such other addresses as either of the parties hereto shall have specified in writing to the other.

     **8.3**     **Financing Statements and Additional Documents.** Seller irrevocably authorizes Purchaser at any time and from time to time to file in any Uniform Commercial Code jurisdiction any initial financing statements and amendments thereto. Purchaser may indicate the following information in such financial statements and amendments: (a) that a portion of the proceeds that are derived from the Legal Claim are owned by Purchaser; and (b) any other information required, in Purchaser's discretion, by the Uniform Commercial Code in any relevant jurisdiction.

     **8.4**     **Release to Contact Third Parties.** As part of this Purchase Agreement it may be necessary to disclose information to third parties. Seller explicitly and irrevocably authorizes Purchaser to disclose any information to third parties as

# PURCHASE AGREEMENT
### PAGE 5 OF 6

it deems appropriate to the extent permitted by law and also as referenced in the Oasis Legal Finance, LLC privacy policy. Seller releases Purchaser from any and all liability as a result of the release of any information.

**8.5    Waiver.** Any waiver by any party of its rights under this Purchase Agreement shall be in writing and signed by the party waiving such rights. The failure of either party to enforce, at any time, any of the provisions of this Purchase Agreement or any of the rights set forth in this Purchase Agreement, shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**8.6    Governing Law and Forum.** This Purchase Agreement, and all lawsuits, disputes, claims, or proceedings arising out of or relating to this Purchase Agreement or the relationships that result from this Purchase Agreement, shall be governed, construed and enforced in accordance with the laws of the State of Georgia.

The Parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Circuit Court of Cook County, Illinois for any disputes, claims or other proceedings arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, and agree not to commence any such lawsuit, dispute, claim or other proceeding except in the Circuit Court of Cook County, Illinois. The parties hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, dispute, claim or other proceeding arising out of or relating to this Purchase Agreement, or the relationships that result from this Purchase Agreement, in the Circuit Court of Cook County, Illinois, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in the Circuit Court of Cook County, Illinois that any such lawsuit, dispute, claim or other proceeding brought in the Circuit Court of Cook County, Illinois has been brought in an inconvenient forum.

Each of the parties to the Contract further irrevocably consents to the service of process out of the Circuit Court of Cook County, Illinois by mailing copies thereof by Registered or Certified United States mail, postage prepaid, to each of the parties of the Purchase Agreement at its address specified in this Contract.

**8.7    Waiver of Jury Trial, Consolidation and Class Action; Costs.**

THE PARTIES HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY. THE PARTIES ALSO WAIVE ANY RIGHT TO CONSOLIDATE OR TO HAVE HANDLED AS A CLASS ACTION ANY PROCEEDING ON ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY WITH ANY PROCEEDING ON ANY LAWSUITS, DISPUTES, CLAIMS, OR CONTROVERSIES INVOLVING ANY PERSON OR ENTITY NOT A PARTY TO THIS AGREEMENT.

THE PREVAILING PARTY IN ANY LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY SHALL BE ENTITLED TO ALL REASONABLE ATTORNEYS' FEES AND COSTS, EXPENSES AND DISBURSEMENTS WITH RESPECT TO SUCH LAWSUIT, DISPUTE, CLAIM, OR CONTROVERSY.

**8.8    Counterparts and Facsimile Signatures.** This Purchase Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Purchase Agreement.

**8.9    Assignment; Use of Information.** Purchaser's rights and obligations under this Purchase Agreement may be assigned in its sole discretion without the consent of or notice to Seller. Seller's rights and obligations under this Purchase Agreement may not be assigned or transferred without the written consent of Purchaser, except for transfer by intestate due to Seller's death in which case Seller's heirs, estate executors and personal representatives will be bound by this Purchase Agreement. Seller agrees that Purchaser may share information that Purchaser obtained about Seller (whether from Seller or other person or entity) with potential assignees to whom Purchaser may assign its rights and obligations under this Purchase Agreement, provided that: (i) such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Purchaser; and (ii) Purchaser enters into an appropriate confidentiality Purchase Agreement with any such potential assignee.

**8.10    No Third Party Beneficiaries; Successors and Assigns.** Subject to the provisions of Section 8.9, (a) this Purchase Agreement is solely for the benefit of Purchaser and Seller; and (b) this Purchase Agreement shall be binding upon and inure to the benefit of the parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

**8.11    Severability.** If any provision of this Purchase Agreement or the application of any such provision to any

# PURCHASE AGREEMENT
### PAGE 6 OF 6

party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Purchase Agreement, or the application of such provision to such party or circumstances other than those to which it is so determined to be invalid or unenforceable, shall not be affected, and each provision of this Purchase Agreement shall be enforced to the fullest extent permitted by law. If any such court of competent jurisdiction declares that any term or provision of this Purchase Agreement is invalid or unenforceable, the parties hereto agree that such court shall have the power to modify the scope of such term or provision, to delete specific words or phrases, and to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable, and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Purchase Agreement shall be enforceable as so modified.

    **8.12**    **Legal Representation.**    SELLER UNDERSTANDS AND ACKNOWLEDGES THAT: (A) PURCHASER HAS RECOMMENDED THAT SELLER ENGAGE AN ATTORNEY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT; AND (B) SELLER HAS BEEN REPRESENTED BY OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY AN ATTORNEY OF SELLER'S CHOOSING IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS PURCHASE AGREEMENT.

    **8.13**    **Construction.**  The parties intend that this Purchase Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Purchase Agreement

        (REMAINDER OF PAGE LEFT INTENTIONALLY BLANK).

## IRREVOCABLE LETTER OF DIRECTION
Sent by Fax to (912) 233-3584 and by US Mail

August 12, 2015

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

Dear Stephen Stincer,

Be advised that I have sold a portion of the proceeds of my legal claim equal to the Oasis Ownership Amount to Oasis Legal Finance, LLC. I, Shirley Williams, hereby irrevocably direct Stephen Stincer or any subsequent attorney(s) and law firms that may represent me, to tender the Oasis Ownership Amount to Oasis Legal Finance, LLC pursuant to this purchase agreement from any and all of the proceeds due to me from the legal claim(s)/case(s) in which you represent me, after payment of any and all legal fees and reimbursable costs before releasing any funds to me unless Oasis Legal Finance LLC advises you that I have already paid to them the Oasis Ownership Amount in full. If any dispute arises over the amount owed Oasis, I instruct you **NOT** to release any funds to me until that dispute is resolved. If a check is sent in my name, I hereby grant you a limited, irrevocable power of attorney to endorse and deposit my check into your trust account and pay to Oasis Legal Finance, LLC, its Ownership Amount, before releasing any funds to me. I also state that I do not have any significant outstanding child support obligations. I understand that any such significant outstanding child support obligation may delay or prevent my funding.

_____
(please initial)

I have read the Purchase Agreement and fully understand my obligations. I understand that Oasis has relied on this Irrevocable Letter of Direction to fund the Purchase Agreement, that the purchase price is $1,000.00, and that the Oasis Ownership Amount will increase based on a multiple of the purchase price and the date Oasis receives payment per the Purchase Agreement. In the event that you no longer represent me, I instruct you to provide Oasis with any insurance, attorney or other information requested that will allow it to protect its interest and to follow my irrevocable instructions. This letter may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute an agreement. By signing the acknowledgement below, you acknowledge that this letter is from me and that you will comply with this Irrevocable Letter of Direction.

Sincerely,

_____
Shirley Williams

### ATTORNEY ACKNOWLEDGMENT

- I, Stephen Stincer, Esq., acknowledge receipt of this Letter and the Purchase Agreement from my client.
- My fee agreement is on a contingency basis and there are liens (exclusive of attorneys fees and costs) against the case of approximately $_____, and I will honor my client's irrevocable letter of direction, subordinate to attorney fees, costs and appropriate medical liens as per instructions above. I acknowledge that Shirley Williams has the right to pay the Oasis Ownership Amount in full from any source at any time prior to distribution of the proceeds.
- I fully expect and anticipate that any proceeds from the legal claim will be sent to me from the defendant and/or insurance company, and not to the Plaintiff, and I agree that all disbursements of funds, including plaintiff's share of proceeds, will be through my attorney trust account.
- I have not and will not accept any advice, direction or payment from Oasis Legal Finance LLC regarding the legal claim.
- To the best of my knowledge, Shirley Williams has **NOT** received any previous cash fundings on his/her legal claim(s), except for the Purchase Agreements dated Apr 13, 2015 and Jun 12, 2015 with Oasis Legal Finance, LLC.
- Without the prior written consent of Oasis Legal Finance, LLC, I will not participate in or acknowledge any future cash fundings for Shirley Williams.

_How should we contact your office for case updates?_

_____
Stephen Stincer, Esq.

_____
E-mail is Preferred (or Fax Number)



# NOTICE OF PAYMENT SCHEDULE

August 12, 2015

Stephen Stincer, Esq.
219 West Bryan Street
Savannah, GA 31401

RE:    OUR CLIENT: Shirley Williams
       OUR CASE ID:P-GA-697418

Dear Stephen Stincer,

Oasis Legal Finance LLC has entered into a Purchase Agreement (attached) with Shirley Williams. Oasis Legal Finance has purchased an interest in the potential proceeds from the legal claim of Shirley Williams.

**PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY OF THE PROCEEDS UNTIL OUR PURCHASED INTEREST (PLUS ANY APPLICABLE SECOND FUNDING OR SERVICING FEES) HAS BEEN SATISFIED.**

### OASIS OWNERSHIP AMOUNT

| Payment Schedule | Oasis Ownership Amount |
| --- | --- |
| August 13, 2015 to February 12, 2016 | $1,500.00 |
| February 13, 2016 to August 12, 2016 | $1,650.00 |
| August 13, 2016 to November 12, 2016 | $2,250.00 |
| November 13, 2016 to February 12, 2017 | $2,500.00 |
| February 13, 2017 to August 12, 2017 | $2,750.00 |
| August 13, 2017 to February 12, 2018 | $3,250.00 |
| February 13, 2018 and thereafter | $3,500.00 |

| Fees Due at Payment | |
| --- | --- |
| Case Servicing Fee every 6 months | $35.00 |
| Subsequent Case Review for each additional funding | $20.00 |
| Facsimile and Photocopying Costs per Funding | $35.00 |

Please call (866) 206-4800 (Press Option 6) or by fax at (847) 521-4392 to receive more information about payment.

9525 W. Bryn Mawr, Suite 900, Rosemont, IL 60018
Phone (847) 521-4349 – Fax (847) 897-3143
<TO_FAXNUM:1(912) 233-3584>
<NOTE:Case Number P-GA-697418 Shirley Williams>
<TO_NAME: Shirley Williams>

Case ID: P-GA-697418

# OASIS LEGAL FINANCE, LLC PRIVACY POLICY

Effective date April 2012

The privacy and security of your personal information is important to Oasis. We provide this Privacy Policy to advise you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

## What personal information does Oasis collect?

The types of personal information we collect and share depend on the product or service you have with us, but is clearly stated on our applications. This is information that you, your attorney, or third parties provide to us on applications and other forms, by phone, fax, the Internet, or other delivery services. This information can include: name, address, e-mail address, telephone number(s), your date of birth, social security number, employment and income information, specific medical information pertaining to your personal injury, specific case details and claims information, witness statements and police reports. We may also use your information in order to obtain additional information regarding you, such as credit or consumer reports.

## How does Oasis share personal information?

We share customers' personal information in order to run our everyday business, such as to process or administer transactions, provide you with the services you are requesting from us, comply with legal requirements and as permitted by law. Some of this sharing is necessary to provide you with the services you are requesting from us. In the section below, we list the primary reasons we share customers' personal information; the reasons Oasis chooses to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Does Oasis share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes— such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes—to offer our products and services to you | Yes | Yes |
| For joint marketing with other financial companies | Yes | Yes |
| For our affiliates' everyday business purposes— information related to your transactions and experiences | Yes | No (except CA and VT residents) |
| For our affiliates' everyday business purposes— information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

To limit our sharing, simply complete our Opt-Out form by visiting us at www.oasislegal.com/privacy and follow the instructions on the site.

## Why can't I limit all sharing?

In many circumstances, sharing information is necessary for us to provide you the services you are requesting. Federal law gives you the right to limit only

- sharing for affiliates' everyday business purposes—information about your creditworthiness
- affiliates from using your information to market to you
- sharing for nonaffiliates to market to you

State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law.

California: In accordance with California law, Oasis Legal Finance will automatically opt out California residents from sharing with unaffiliated companies and will not share information we collect about California residents with unaffiliated companies except as permitted by law, such as with the consent of the customer or to service the customer's accounts. We will limit sharing with affiliates to the extent required by applicable California law.

Vermont: In accordance with Vermont law, Oasis Legal Finance will automatically opt out Vermont residents from sharing with unaffiliated companies and will not share information we collect about Vermont residents with unaffiliated companies except as permitted by law, such as with the consent of the customer, to service the customer's accounts or to other financial institutions with which we have joint marketing agreements. We will not share application information, consumer report information and information from outside sources about Vermont residents with affiliated companies except with the authorization or consent of the Vermont resident.

## How Does Oasis protect my personal information?

To protect your personal information from unauthorized access and use, we use reasonable security measures that comply with applicable laws. These measures include computer safeguards and secured files and buildings. Our agreements with service providers or other nonaffiliated companies require them to treat your personal information in a confidential and secure manner.

## How does Oasis collect my personal information?

We collect your personal information, for example, when you, your attorney, or third parties, such as credit bureaus, affiliates, or other companies provide it to us on applications and other forms, by phone, fax, the Internet, or other delivery services.

## What happens when I limit sharing for an account I hold jointly with someone else?

Your choices will apply to everyone on your account.

## Passive collection of information

While you are on our website, we may automatically track information related to your voluntary use of the website. Such voluntary provided information may include, among other things, URL tracking information, user's browser, user's IP address, files viewed by you and your path through the website, date, time and frequency of accessing website and length of time spent reviewing certain features. In addition we may (i) use pixels provided to us by a third party to track the pages viewed, the number of pages viewed, and the number of customer conversions obtained from third parties and marketing agencies, (ii) place a cookie, provided to us by a third party, on your computer that tracks if you click on an advertisement so that future advertisements can be targeted to you based on the advertisements clicked on by you and/or your other activities on the website.

## Definitions

| | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies. |
| | *Our affiliates include Oasis Legal Finance Holding Company, LLC and Oasis Legal Finance Operating Company, LLC* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies |
| | *Nonaffiliates we share with can include companies such as money transfer companies, collection agencies, investment and insurance companies, mortgage and brokerage companies, retailers or marketing companies.* |
| Joint Marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. |
| | *Our joint marketing partners include categories of companies such as banks or lending institutions and insurance companies.* |

## Other Terms

We may access or disclose information about you in order to: (a) comply with the law or respond to lawful requests or legal process; (b) protect the rights or property of Oasis, our service providers or our customers, including the enforcement of our agreements or policies governing your use of our services; or (c) act on a good faith belief that such access or disclosure is necessary to protect the personal safety of Oasis' or our service providers' employees, customers or the public. We may also disclose personal information as part of a proposed or actual corporate transaction such as a merger or sale of assets.

Through our website, you can link to other websites of third parties that provide useful information, or who have agreed to offer goods and services to our users. Any personal information you provide on the linked pages is provided directly to the applicable third-party and is subject to that third party's privacy policy.

## Revisions to this Privacy Policy

This Privacy Policy may be revised from time to time by Oasis Legal Finance, LLC. We will provide notice on our website that the Privacy Policy has changed, and will otherwise inform you of any changes to the extent required by law. Amendments to this policy will be effective when posted to our website at www.oasislegal.com/privacy .

Case ID: P-GA-697418

# EXHIBIT H


**Credit**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

---

## FORM 8-K

---

### CURRENT REPORT
Pursuant to section 13 or 15(d)
of the Securities Exchange Act of 1934

Date of Report (Date of Earliest Event Reported): November 4, 2013

---

# THL Credit, Inc.
(Exact name of registrant as specified in its charter)

---

| Delaware | 814-00789 | 27-0344947 |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Commission File Number) | (IRS Employer Identification Number) |

100 Federal Street, 31st Floor, Boston, MA 02110
(Address of principal executive offices)

Registrant's telephone number, including area code (800) 450-4424

Not Applicable
(Former name or former address, if changed since last report)

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

"We are pleased with another quarter of portfolio growth with $100 million of capital deployed by the Company this quarter. THL Credit, including its Greenway funds, has now deployed over $1 billion across 60 companies since 2009," said James K. Hunt, chief executive officer of THL Credit. "We continue to seek out the most attractive investments with the appropriate risk-adjusted return profiles for our shareholders and have seen such opportunities in first or second lien investments in recent quarters. We remain poised for continued growth from an active pipeline driven by our national origination platform. This growth will be funded with the recently announced upsizing of our credit facilities by $85 million in commitments to $325 million and increased commitments to Greenway II. This capital, along with several senior additions to the investment team across our five offices, enhances our resources to take advantage of investment opportunities generated by our proprietary origination efforts."

## PORTFOLIO AND INVESTMENT ACTIVITY

In the third quarter, THL Credit closed on $94.8 million in five new investments and $5.4 million in follow-on investments in four existing portfolio companies.

Investments for the quarter included:

- $21.0 million investment in the second lien term loan of Specialty Brands Holdings, LLC, a company formed to consolidate the controlling interests of Papa Gino's and D'Angelo restaurants as well as the Smith & Wollensky Restaurant Group, headquartered in Boston, MA;

- $13.2 million investment in the senior secured term loan of Key Brand Entertainment, Inc., an operator of the largest third-party online ticketing agency for Broadway and a developer, producer and distributor of live theater events in North America, headquartered in New York, NY;

- $26.7 million investment in the senior secured term loan of NCM Group Holdings, LLC, a provider of demolition and environmental remediation services, headquartered in Brea, CA;

- $10.0 million investment in the subordinated notes of Dryden Senior Loan Fund, a collateralized loan obligation managed by Prudential Investment Management, Inc. in Newark, NJ;

- $23.9 million investment in the second lien term loan of Oasis Legal Finance Holding Company LLC, a consumer legal finance company, headquartered in Northbrook, IL; and

- Follow-on investments of $4.2 million in the subordinated term loan of The Studer Group, L.L.C., a $0.2 million limited partnership equity investment in Gryphon Partners 3.5, L.P., a $0.2 million incremental equity investment in Airborne Tactical Advantage Company, LLC and $0.8 million in the revolving loan of Hart InterCivic, Inc.

The weighted average yield on investments made this quarter was 11.9%. The Company's first and second lien holdings in the investment portfolio, on an amortized cost basis, have increased from 44 percent as of Dec. 31, 2012 to 59 percent as of Sept. 30, 2013.

Realizations for the quarter included:

- $13.5 million in proceeds and escrowed funds from the repayment of THL Credit's debt investment in IMDS Corporation;

# EXHIBIT I

## Item 5.02.   Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.

On June 26, 2014, THL Credit, Inc. ("TCRD") and THL Credit Advisors LLC (collectively, "THL Credit") announced the promotions of Christopher J. Flynn and Sam Tillinghast to Co-Chief Executive Officers and Co-Chief Investment Officers of both TCRD and its investment adviser, THL Credit Advisors LLC. In that capacity, they will be succeeding James K. Hunt, who will continue as Chairman of the Board of TCRD and a member of the board of directors of THL Credit Advisors LLC, and will serve as Executive Chairman of THL Credit Advisors LLC. This transition will be effective July 31, 2014.

Prior to his appointment as Co-Chief Executive Officer and Co-Chief Investment Officer, Mr. Flynn, 41, served as Co-President and, prior to that, as a Managing Director of TCRD and THL Credit Advisors LLC. Prior to joining THL Credit in 2007, Mr. Flynn was previously a Vice President at AIG in the Leveraged Capital Group. Mr. Flynn joined AIG in February 2005 after working for Black Diamond Capital Management, a hedge fund with offices in Illinois and Connecticut. Mr. Flynn was a Senior Financial Analyst at Black Diamond where he was responsible for underwriting new debt investment opportunities as well as monitoring a portfolio of leveraged loans. From 2000 to 2003, Mr. Flynn worked in a variety of roles at GE Capital, lastly as an Assistant Vice President within the Capital Markets Syndication Group. Prior to joining GE Capital, Mr. Flynn worked at BNP Paribas as a financial analyst and at Bank One as a commercial banker. Mr. Flynn is a board member of WallpaperFabric Holdings LLC, and currently maintains a board observer role for Airborne Tactical Advantage Company, LLC, Connecture, Inc., Country Pure Foods, Inc., Express Courier International Inc., HEATHCAREfirst, Inc., Papa Gino's, Inc., Sheplers, Inc., The Smith & Wollensky Restaurant Group, Inc. and Tri Starr Management Services, Inc. Mr. Flynn earned his MBA with a concentration in finance and strategy from Northwestern University's Kellogg Graduate School of Business and his BA in Finance from DePaul University.

There is no arrangement or understanding between Mr. Flynn and any other person pursuant to which he was appointed as Co-Chief Executive Officer and Co-Chief Investment Officer, nor is there any family relationship between Mr. Flynn and any of our directors or other executive officers. There are no transactions since the beginning of our last fiscal year, or any currently proposed transaction, in which we are a participant, the amount involved exceeds $120,000, and in which Mr. Flynn had, or will have, a direct or indirect material interest.

Prior to his appointment as Co-Chief Executive Officer and Co-Chief Investment Officer, Mr. Tillinghast, 51, served as Co-President and Chief Risk Officer of TCRD and THL Credit Advisors LLC. Prior to joining THL Credit in 2007, Mr. Tillinghast was formerly Managing Director and Head of the Private Placement Group for AIG where he was responsible for private debt investments, project finance transactions and private asset-backed securitizations. Mr. Tillinghast joined AIG with the acquisition of SunAmerica Inc. in January 1999, and successfully integrated the private debt investment groups of SunAmerica, AIG and American General (acquired by AIG in 2001). Mr. Tillinghast managed the approximately $28 billion AIG private debt portfolio and was responsible for $20 billion of investments made over a five year period. Mr. Tillinghast was an executive vice president of American General Investment Management Corporation and was named Head of AIG Global Investment Group in Houston, Texas. While at SunAmerica, where he joined in 1988, Mr. Tillinghast was Executive Vice President of SunAmerica Corporate Finance and his investment experience included corporate bonds, securitizations, leveraged loans, CDOs, portfolio acquisitions, and equipment leasing. He is a former member of the board of directors of Falcon Financial, LLC. Mr. Tillinghast currently maintains a board observer role for Food Processing Holdings, LLC, Hart InterCivic, Inc., Martex Fiber Southern Corp., Trinity Services Group, Inc., Oasis Legal Finance Holding Company LLC, Holland Intermediate Acquisition Corp., and Wingspan Portfolio Holdings, Inc. Mr. Tillinghast received his BS in finance at the University of South Alabama and his MBA from the University of Texas at Austin.

# EXHIBIT J

10-K 1 d854678d10k.htm FORM 10-K

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, DC 20549

# FORM 10-K

**(Mark One)**

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934.**

**For the fiscal year ended December 31, 2014**

OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934.**

**For the transition period from                to**

**Commission file number 814-00789**

# THL CREDIT, INC.

### (Exact Name of Registrant as Specified in Its Charter)

| | |
|---|---|
| **Delaware** | **27-0344947** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| **100 Federal St., 31st Floor, Boston, MA** | **02110** |
| (Address of Principal Executive Offices) | (Zip Code) |

**Registrant's Telephone Number, Including Area Code: 800-450-4424**

**Securities registered pursuant to 12(b) of the Act:**

| Title of Each Class | Name of Each Exchange on Which Registered |
|---|---|
| Common Stock, par value $0.001 per share | NASDAQ Global Select Market |
| 6.75% Senior Notes due 2021 | The New York Stock Exchange |

**Securities registered pursuant to 12(g) of the Act:**
**None.**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☐   No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).   Yes ☐   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of the Registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☐ | Accelerated filer | ☒ |
| Non-Accelerated filer | ☐ (Do not check if a smaller reporting company) | Smaller reporting company | ☐ |

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Securities Exchange Act of 1934).   Yes ☐   No ☒

The aggregate market value of common stock held by non-affiliates of the Registrant as of the last business day of the Registrant's most recently completed second fiscal quarter was approximately $474.7 million based on the closing price on that date of $14.00 on the NASDAQ Global Select Market. For the purposes of calculating this amount only, all directors and executive officers of the Registrant have been treated as affiliates.

As of March 10, 2015, there were 33,905,202 shares of the Registrant's common stock outstanding.

**Documents Incorporated by Reference**

Portions of the Registrant's definitive Proxy Statement relating to its 2015 Annual Meeting of Stockholders, to be filed pursuant to Regulation 14A with the Securities and Exchange Commission, are incorporated by reference into Part III of this Annual Report on Form 10-K as indicated herein.

.

Table of Contents

- Partial sale of $4.9 million, which included a nominal realized gain, and a $10.0 million repayment, which included a prepayment premium of $0.2 million, of a second lien debt investment in Surgery Center Holdings, Inc;

- Repayment of a second lien debt investment in Tectum Holdings Inc. at par, resulting in proceeds of $12.0 million;

- Repayment of a subordinated debt investment in Trinity Services Group Inc., resulting in proceeds of $23.5 million, which included a prepayment premium of $0.5 million;

- Repayment of a second lien debt investment in TriMark USA, LLC, resulting in proceeds of $20.2 million, which included a prepayment premium of $0.2 million;

- Repayment of a subordinated term loan in Express Courier International, Inc. at par, resulting in proceeds of $7.8 million;

- Partial sale of a second lien debt investment in Expert Global Solutions, Inc., which resulted in proceeds of $5.1 million and included a realized loss of $0.3 million;

- Sale of a CLO residual interest in Octagon Income Note XIV, Ltd, which resulted in proceeds of $7.7 million and included a realized gain of $0.2 million;

- Partial sale of a second lien debt investment in BBB US Industries Holdings, Inc., which resulted in proceeds of $9.5 million and included a realized gain of $0.1 million.

For the year ended December 31, 2013

- Repayment of a first lien secured debt investment in Firebirds International, LLC, resulting in proceeds of $8.3 million, which included a $0.1 million prepayment premium;

- Repayment of a second lien debt investment in YP Intermediate Holdings Corp. at par, resulting in proceeds of $3.4 million;

- Repayment of a second lien debt investment in AIM Media Texas Operating, LLC resulting in proceeds of $10.2 million, which included a $0.3 million prepayment premium;

- Sale of a participation in second lien debt investment in Allen Edmonds Corporation, resulting in proceeds of $9.8 million;

- Sale of debt investments in Gold, Inc., Embarcadero Technologies, Inc., Holland Intermediate Acquisition Corp., Ingenio Acquisition LLC, Connecture, Inc., Tri Starr Management Services, Inc. and Wingspan Portfolio Holdings, Inc. to Greenway II, at fair value, resulting in proceeds of $19.5 million;

- Sale of a subordinated debt investment in Gold, Inc., resulting in proceeds of $14.2 million

- Sale of a subordinated debt investment in Wingspan Portfolio Holdings, Inc., resulting in proceeds of $4.9 million;

- Sale of a first lien secured debt investment in Holland Intermediate Acquisition Corp., resulting in proceeds of $4.9 million;

- Repayment of an initial first lien secured debt investment in Cydcor LLC at par, resulting in proceeds of $14.3 million, which were subsequently reinvested in a $14.3 million first lien secured debt investment;

- Repayment of a subordinated debt investment in Food Processing Holdings, LLC at par, resulting in proceeds of $14.2 million, which were subsequently reinvested in $21.8 million first lien secured debt investment;

- Repayment of a subordinated debt investment in IMDS Corporation at par, resulting in $12.7 million in proceeds and $1.8 million in escrowed funds. Escrowed funds were ultimately not collected and we recognized a realized loss for the year ended December 31, 2014;

75

Table of Contents

- Sale of a second lien term loan in Oasis Legal Finance Holdings Company LLC, resulting in proceeds of $9.8 million;

- Repayment of a second lien debt investment in Pinnacle Operating Corporation, resulting in proceeds of $10.3 million, which included a $0.3 million prepayment premium; and

- Repayment of a subordinated debt investment in Surgery Center Holdings, Inc., resulting in proceeds of $19.3 million, which included a $0.6 million prepayment premium. Proceeds of $14.6 million were subsequently reinvested in a second lien debt investment.

Our level of investment activity can vary substantially from period to period depending on many factors, including the amount of debt and equity capital available to middle market companies, the level of merger and acquisition activity, the general economic environment and the competitive environment for the types of investments we make. The frequency of volume of any prepayments may fluctuate significantly from period to period. The level of prepayment and sales activity increased between the years ended December 31, 2014 and 2013 as the result of portfolio company refinancings, reflecting the tightening interest rate environment.

### Investment Risk

The value of our investments will generally fluctuate with, among other things, changes in prevailing interest rates, federal tax rates, counterparty risk, general economic conditions, the condition of certain financial markets, developments or trends in any particular industry and the financial condition of the issuer. During periods of limited liquidity and higher price volatility, our ability to dispose of investments at a price and time that we deem advantageous may be impaired.

Lower-quality debt securities involve greater risk of default or price changes due to changes in the credit quality of the issuer. The value of lower-quality debt securities often fluctuates in response to company, political, or economic developments and can decline significantly over short periods of time or during periods of general or regional economic difficulty. Lower-quality debt securities can be thinly traded or have restrictions on resale, making them difficult to sell at an acceptable price. The default rate for lower-quality debt securities is likely to be higher during economic recessions or periods of high interest rates.

### THL Credit Logan JV LLC

On December 3, 2014, we entered into an agreement with Perspecta Trident LLC, an affiliate of Perspecta Trust LLC, or Perspecta, to create THL Credit Logan JV LLC, or Logan JV, a joint venture, which will invest primarily in senior secured first lien term loans. All Logan JV investment decisions must be unanimously approved by the Logan JV investment committee consisting of one representative from each of us and Perspecta.

Logan JV is capitalized with equity contributions which are generally called from its members as transactions are completed. As of December 31, 2014, Logan JV had equity commitments totaling $150.0 million, of which we committed $120.0 million and Perspecta committed $30.0 million. Equity contributions are called from each member pro-rata, based on their equity commitments. As of December 31, 2014, Logan JV had received $8.0 million in aggregate capital of which we funded $6.4 million. As of December 31, 2014 Logan JV had called but not yet received an additional $13.0 million in aggregate capital of which our pro-rata share is $10.4 million and which is record as a payable for investments purchased in the Consolidated Statements of Assets and Liabilities. As of December 31, 2014, remaining equity commitments to Logan JV totaled $129.0 million, of which our share is $103.2 million and Perspecta's share is $25.8 million, respectively.

We have determined that Logan JV is an investment company under ASC 946 and as such we will not consolidate our non-controlling interest in Logan JV.

On December 17, 2014, Logan JV entered into a senior credit facility, or the Logan JV Credit Facility, with Deutsche Bank AG which allows Logan JV to borrow up to $50.0 million subject to leverage and borrowing base

76

# EXHIBIT K

 Credit

# THL Credit Reports Third Quarter 2016 Financial Results and Announces Adjustment of Quarterly Dividend to $0.27 Per Share

*November 09, 2016 16:05 ET* | **Source:** THL Credit, Inc.

BOSTON, Nov. 09, 2016 (GLOBE NEWSWIRE) -- THL Credit, Inc. (NASDAQ:TCRD) ("THL Credit"), a direct lender to lower middle market companies, today announced financial results for its third fiscal quarter ended Sept. 30, 2016. Additionally, THL Credit announced that its Board of Directors has declared a fourth fiscal quarter 2016 dividend of $0.27 per share payable on December 30, 2016, to stockholders of record as of December 15, 2016.

## HIGHLIGHTS

| ($ in millions, except per share amounts) | | |
|---|---|---|
| Portfolio results | As of Sept. 30, 2016 | |
| Total assets | $    690.8 | |
| Investment portfolio, at fair value | $    672.8 | |
| Net assets | $    392.7 | |
| Net asset value per share | $    11.84 | |
| Weighted average yield on investments | 11.4% | |
| | Quarter ended Sept. 30, 2016 | Quarter ended Sept. 30, 2015 |
| Portfolio activity | | |
| Total portfolio investments made, at par | $    32.8 | $    37.6 |
| Number of new portfolio investments | 2 | 1 |
| Number of portfolio investments at end of period | 47 | 55 |
| Operating results | | |
| Total investment income | $    21.6 | $    23.1 |
| Net investment income | $    10.5 | $    11.6 |
| Net increase in net assets from operations | $    9.9 | $    2.6 |
| Net investment income per share | $    0.32 | $    0.35 |
| Dividends declared per share | $    0.34 | $    0.34 |

"Our dividend policy has consistently been to make distributions to shareholders in line with what we earn," said Sam Tillinghast, Co-CEO. "Over the past two years, we have worked to shift our portfolio into first lien assets in sponsored companies. At the same time, yields for quality secured investments have contracted. The Board of Directors has decided to adjust our dividend to reflect our current investment strategy and the reality of lower yields in the current market environment."

"Maintaining the dividend at the prior level would require us to invest in riskier assets, which we believe would add increased risk and volatility to our portfolio," said Chris Flynn, Co-CEO. "We believe that our current strategy of investing in predominantly first lien senior secured loans will result in more stable and predictable returns for our shareholders over the long term."

## PORTFOLIO AND INVESTMENT ACTIVITY

In the third quarter, THL Credit closed on two new investments totaling $21.0 million and an additional $11.8 million in follow-on investments at par in four existing portfolio companies.

New investments and follow-on investments for the third quarter included:

- $15.0 million investment in the senior secured term loan and a $0.5 million preferred and common equity co-investment in Merical, LLC and affiliated entities, a contract manufacturer of vitamins, minerals and supplements;
- $8.9 million purchase of first lien senior secured term loans and revolvers of Tri-Starr Management Services, Inc. at a discount as part of a restructuring;
- $5.5 million investment in the first lien senior secured term loan in It's Just Lunch International LLC, a personalized matchmaking service; and
- $2.9 million of investments in the senior secured term loans of BeneSys Inc., Loadmaster Derrick & Equipment, Inc. and a small follow-on investment in a fund.

Notable proceeds from realizations for the quarter included:

- $17.3 million from the repayment of a second lien term loan in Granicus, Inc., which included a prepayment premium of $0.3 million;
- $12.7 million from the repayment of a second lien term loan in Oasis Legal Finance Operating Company LLC, which included a prepayment premium of $0.1 million;
- $10.2 million from the repayment of a second lien term loan in American Covers, Inc., which included a prepayment premium of $0.2 million;
- $4.9 million from the sale of a residual interest in Dryden CLO, Ltd., which resulted in a realized loss.

These transactions bring the total fair value of THL Credit's investment portfolio to $672.8 million across 47 portfolio investments at the end of the third quarter. As of Sept. 30, 2016, THL Credit's investment portfolio at fair value was allocated 55 percent in first lien debt, which includes unitranche investments, 14 percent in second lien debt, 7 percent in subordinated debt, 9 percent in THL Credit Logan JV LLC (the "Logan JV"), 3 percent in other income-producing securities and 12 percent in equity and other securities. The weighted average yield on new and follow-on investments made in the third quarter of 2016 was 11.6 percent. As of Sept. 30, 2016, the weighted average yield of the debt and income-producing securities, including the Logan JV, in the investment portfolio at their current cost basis was 11.4 percent. As of Sept. 30, 2016, THL Credit had loans in two issuers on non-accrual status with an aggregate amortized cost of $21.1 million and fair value of $18.7 million, or 3.1 percent and 2.8 percent of the portfolio's amortized cost and

## CERTIFICATE OF SERVICE

This is to certify that I have filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the following:

Christine Skoczylas, Esq.
BARNES & THORNBURG LLP
One North Wacker Drive
Suite 4400
Chicago, IL  60606-2833
christine.skoczylas@btlaw.com

Respectfully submitted this 30th day of March, 2017.

Robert Bartley Turner
Georgia Bar No. 006440
Attorney for Plaintiffs

Savage, Turner, Pinckney & Savage
Post Office Box 10600
Savannah, Georgia
Telephone: 912.231.1140
Facsimile: 912.231.9157